UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION


JED ALAN GRAHAM, M.D.,


Plaintiff,                                              Case No.: 5:26-cv-00054-AGM-PRL


v.


PNC BANK, NATIONAL ASSOCIATION;

ACOPIA, LLC; and

FEDERAL NATIONAL MORTGAGE

ASSOCIATION ("FANNIE MAE"),


Defendants.


PLAINTIFF'S MOTION FOR LEAVE TO FILE

SECOND AMENDED COMPLAINT

PURSUANT TO FRCP 15(a)(2)

Plaintiff, Jed Alan Graham, M.D., *pro se*, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 15(a)(2) for leave to file a Second Amended Complaint. In support, Plaintiff states:

## I. INTRODUCTION

1. Plaintiff seeks leave to amend his complaint to: (a) correct a party identification error in the First Amended Complaint, which incorrectly named "Sallie Mae, Inc." instead of "Federal National Mortgage Association" (Fannie Mae); (b) remove a legally inapplicable claim; (c) add factual specificity regarding the ownership and servicing structure of the loan; (d) incorporate evidentiary foundation challenges to Defendants' document production; and (e) address the Allonge to Promissory Note produced by Defendant Acopia, LLC as Exhibit B to its Motion to Dismiss (Dkt. 17, filed February 20, 2026), which postdated the prior complaint and was not available to Plaintiff when the Second Amended Complaint was drafted in state court. The proposed Second Amended Verified Complaint is attached as **Exhibit A**.

2. Leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). None of the factors that would justify denial (undue delay, bad faith, dilatory motive, undue prejudice, or futility) are present here.

## II. PROCEDURAL BACKGROUND

3. Plaintiff commenced this action in the Circuit Court of the Fifth Judicial Circuit in and for Sumter County, Florida, on December 3, 2025.

4. Plaintiff filed a First Amended Complaint on December 16, 2025.

2

5. On January 10, 2026, Plaintiff filed a Motion for Leave to File Second Amended Complaint in state court, with a proposed Second Amended Complaint attached as an exhibit.

6. The state court did not rule on Plaintiff's Motion for Leave before Defendant PNC Bank, National Association removed this action to federal court on January 22, 2026.

7. Defendant Acopia, LLC filed a Motion to Dismiss (Dkt. 17) on February 20, 2026, directed at the First Amended Complaint. Defendants PNC Bank, N.A. and Fannie Mae have not filed responsive pleadings. No discovery has been conducted. No scheduling order has been entered. No case management conference has occurred.

8. On January 30, 2026, this Court entered an Endorsed Order (Dkt. 9) denying Plaintiff's Motion to Remand to State Court for failure to comply with Local Rule 3.01(g)(2). The denial was procedural, not substantive.

9. The First Amended Complaint remains the operative pleading. The proposed state court Second Amended Complaint was never judicially approved and is not operative.

## III. CERTIFICATE OF CONFERRAL

(Local Rule 3.01(g)(2))

10. Pursuant to Local Rule 3.01(g)(2), Middle District of Florida, undersigned Plaintiff certifies that prior to filing this Motion, Plaintiff conferred with counsel for Defendant PNC Bank, N.A. regarding this Motion. Specifically, Plaintiff communicated with Lauren G. Raines, Esq. of Bradley Arant Boult Cummings LLP, counsel of record for PNC Bank, regarding whether PNC Bank would oppose Plaintiff's Motion for Leave to File a Second Amended Complaint.

3

11. Defendant PNC Bank, through its counsel Lauren G. Raines, Esq., has indicated that PNC Bank does not object to this Motion for Leave. In an email communication to Plaintiff, Ms. Raines stated: "we do not object to your motion for leave to amend."

12. Defendant Acopia, LLC appeared in this action by filing a Motion to Dismiss (Dkt. 17) on February 20, 2026. Plaintiff attempted to confer with Acopia's counsel regarding this Motion for Leave prior to filing. Acopia's position, if any, will be reflected in its response to this Motion. Defendant Fannie Mae has not yet appeared in this action. Plaintiff was unable to confer with Fannie Mae regarding this Motion.

## IV. LEGAL STANDARD

13. Federal Rule of Civil Procedure 15(a)(2) provides that after the period for amendment as of right has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

14. The Supreme Court has instructed that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

15. Leave to amend should be denied only when there is: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies; (4) undue prejudice to the opposing party; or (5) futility of amendment. *Id.*; see also *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003).

## V. ARGUMENT

4

## A. No Undue Delay

16. This case was removed to federal court on January 22, 2026. Plaintiff sought leave to amend in state court before removal. Following the Court's January 30, 2026 Order on the operative pleading status and Defendant Acopia's February 20, 2026 Motion to Dismiss, which produced the allonge for the first time, Plaintiff now files this motion at the earliest practicable opportunity in light of the evolving record. There has been no undue delay.

## B. No Bad Faith or Dilatory Motive

17. Plaintiff seeks amendment to serve multiple legitimate purposes. First, the First Amended Complaint incorrectly names "Sallie Mae, Inc." (a student loan entity) instead of "Federal National Mortgage Association" (Fannie Mae), the entity identified by Fannie Mae's own Loan Lookup tool as claiming ownership of the loan. Second, Plaintiff has removed the Fair Debt Collection Practices Act count from the proposed amended complaint, as Plaintiff was never in default and PNC does not qualify as a "debt collector" under 15 U.S.C. § 1692a(6)(F)(iii). This voluntary removal of an inapplicable claim demonstrates good faith and a commitment to presenting only meritorious claims. Third, Plaintiff adds evidentiary specificity regarding the authenticity and admissibility of PNC's document production. Fourth, the proposed amendment addresses the Allonge to Promissory Note produced by Acopia, LLC as Exhibit B to its Motion to Dismiss (Dkt. 17), which postdated the prior complaint. The proposed SAC acknowledges the allonge, challenges its validity on three independent grounds (chain of custody failure, backdating and fabrication, and failure to satisfy the affixation requirement of Fla. Stat. § 673.2041), and extends the evidentiary foundation framework under FRE 901, FRE 1002, and FRE 602 specifically to the allonge. Fifth, the proposed SAC incorporates forensic findings from a review of the

original wet-ink closing package establishing additional origination-stage defects, including: (i) the complete absence of any endorsement or allonge from the wet-ink original closing package, corroborating the backdating challenge to the allonge Acopia produced in litigation; (ii) systematic handwritten substitution of Florida/Sumter County jurisdictional designations with South Carolina/Greenwood County designations across at least four closing documents; (iii) mutually exclusive occupancy designations on the Affidavit of Occupancy; (iv) an unnotarized Signature/Name Affidavit; (v) an unsigned Form W-9; (vi) an asymmetric income transcript request covering two years for Plaintiff's personal return versus three years for associated business entities; and (vii) a facially defective circular Servicing Transfer Notice in the closing package identifying Acopia as both present and new servicer. These factual additions amplify existing claims without introducing new theories. These purposes collectively reflect good faith and a desire to prosecute well-founded claims, not delay.

## C. No Undue Prejudice to Defendants

18. Defendants will suffer no prejudice from amendment. While Acopia, LLC has filed a Motion to Dismiss (Dkt. 17) directed at the First Amended Complaint, granting leave to amend moots that motion as applied to a superseded pleading. The proposed SAC directly responds to the allonge Acopia itself produced in Dkt. 17, meaning Acopia's own litigation conduct precipitated a portion of this amendment. Defendants PNC Bank, N.A. and Fannie Mae have not filed responsive pleadings. No discovery has been conducted. No scheduling order has been entered. The case remains in its earliest stages. *See Foman v. Davis*, 371 U.S. at 182 ("In the absence of any apparent or declared reason, such as undue delay, bad

faith or dilatory motive on the part of the movant . . . the leave sought should, as the rules require, be 'freely given.'").

19. The proposed amendment concerns the same mortgage loan, the same property, the same transaction, and the same core claims. Defendants have been on notice of these claims since December 2025. The amendment narrows the claims by removing the FDCPA count while adding factual specificity to the remaining claims. To the extent Acopia argues prejudice, that argument is undermined by the fact that the allonge-related amendments are a direct response to a document Acopia itself chose to introduce into the litigation record. Allowing amendment does not require Defendants to expend resources defending against materially new theories.

## D. Amendment Is Not Futile

20. The proposed Second Amended Verified Complaint states cognizable claims in four counts: (1) declaratory judgment under 28 U.S.C. § 2201; (2) quiet title under Fla. Stat. § 65.061; (3) RESPA violations under 12 U.S.C. § 2605; and (4) TILA violations under 15 U.S.C. § 1641(g). The proposed complaint satisfies the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

21. The proposed complaint includes detailed factual allegations regarding: (a) the distinction between PNC Bank's role as servicer and Fannie Mae's claimed ownership; (b) the Allonge to Promissory Note produced by Acopia as Exhibit B to Dkt. 17, including three independent challenges to its validity: chain of custody failure (the allonge was not produced in PNC's QWR response), backdating and fabrication (the allonge is dated to the closing Plaintiff attended but was not observed by Plaintiff and not produced for seventeen

7

months), and affixation failure under Fla. Stat. § 673.2041; (c) PNC Bank's September 26, 2025 QWR response deficiencies, including PNC's failure to produce the allonge; (d) evidentiary foundation deficiencies under FRE 803(6), 901, 1002, and 602, extended specifically to the allonge; (e) PNC's self-impeaching admissions regarding the nature of the servicing transfer; and (f) specific statutory violations with supporting facts.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant leave to file the Second Amended Verified Complaint attached as Exhibit A, order that the Second Amended Verified Complaint shall be the operative pleading in this action, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

JED ALAN GRAHAM, M.D., Pro Se
6234 Danielson Loop
The Villages, FL 32163
Phone: 864-993-1984
Email: jedgrahammd@gmail.com

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2026, I filed the foregoing with the Clerk of Court by hand delivery to the United States District Court, Middle District of Florida, Ocala Division, 207 NW 2nd Street, Ocala, Florida 34475.

I further certify that a true and correct copy of the foregoing was served on the following parties by United States Mail, CERTIFIED MAIL, on the same date.

Federal National Mortgage Association ("Fannie Mae")
1100 15th Street NW
Washington, DC 20005

> Lauren G. Raines, Esq.
> Jessica N. Faucher, Esq.
> BRADLEY ARANT BOULT CUMMINGS LLP
> 1001 Water Street, Suite 1000
> Tampa, FL 33602
> *Counsel for Defendant PNC Bank, N.A.*

> Ivan J. Reich, Esq.
> Nason Yeager Gerson Harris & Fumero, P.A.
> 3001 PGA Boulevard, Suite 305
> Palm Beach Gardens, FL 33410
> *Counsel for Defendant Acopia, LLC*

I further certify that a copy was served via U.S. Mail, CERTIFIED MAIL, upon:


JED ALAN GRAHAM, M.D., Pro Se

9

EXIBIT A

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## OCALA DIVISION

JED ALAN GRAHAM, M.D.,                     Case No.: 5:26-cv-00054-AGM-PRL

            *Plaintiff,*                   **SECOND AMENDED VERIFIED**

                                           **COMPLAINT**

V.

                                           **JURY TRIAL DEMANDED**

PNC BANK, NATIONAL ASSOCIATION;

ACOPIA, LLC; and

FEDERAL NATIONAL MORTGAGE

ASSOCIATION ("FANNIE MAE"),

            *Defendants.*

**PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT**

Plaintiff JED ALAN GRAHAM, M.D., proceeding *pro se*, files this Second Amended Verified Complaint against Defendants PNC BANK, NATIONAL ASSOCIATION ("PNC"), ACOPIA, LLC ("Acopia"), and FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae"), and states as follows:

NOTICE OF REMOVAL BACKGROUND: This action was originally commenced in the Circuit Court of the Fifth Judicial Circuit in and for Sumter County, Florida, Case No. 2025CA000643AXMX, on December 3, 2025. Defendant PNC Bank, National Association removed the action to this Court on January 22, 2026. Plaintiff files this Second Amended Verified Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), superseding all prior pleadings.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because Plaintiff's claims arise under federal statutes including the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy and arise from the same nucleus of operative facts.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and the real property at issue is located within this District.

4. The amount in controversy exceeds $75,000, exclusive of interest and costs.

## PARTIES

2

5. **Plaintiff Jed Alan Graham, M.D.** is an individual residing at 6234 Danielson Loop, The Villages, Florida 32163, in Sumter County. Dr. Graham is the mortgagor and borrower on the subject loan and the fee simple owner of the subject property. Dr. Graham has been in continuous possession of the property since closing on February 2, 2022, and has remained current on all mortgage payments at all times relevant to this action.

6. **Defendant PNC Bank, National Association** is a national banking association with its principal place of business in Pittsburgh, Pennsylvania. PNC claims to be the servicer of Plaintiff's mortgage loan. PNC was served on December 23, 2025, and is represented by Bradley Arant Boult Cummings LLP, 1001 Water Street, Suite 1000, Tampa, FL 33602 (Lauren G. Raines and Jessica N. Faucher).

7. **Defendant Acopia, LLC** is a Tennessee limited liability company with its principal place of business at 306 Northcreek Blvd, Suite 100, Goodlettsville, TN 37072. Acopia is a mortgage lender (NMLS ID: 4664) and was the original lender and payee on Plaintiff's Promissory Note. Acopia consented to removal of this action to federal court.

8. **Defendant Federal National Mortgage Association ("Fannie Mae")** is a government-sponsored enterprise with its principal place of business at 1100 15th Street NW, Washington, DC 20005. Upon information and belief based on the Fannie Mae Loan Lookup tool, Fannie Mae claims ownership of Plaintiff's loan. Fannie Mae was not served prior to removal to federal court.

## PROPERTY AND LOAN DESCRIPTION

9. The real property at issue is located at 6234 Danielson Loop, The Villages, Florida 32163, in Sumter County (the "Property").

3

10. On or about February 2, 2022, Plaintiff executed a Promissory Note (the "Note") in the original principal amount of $321,536.00 in favor of Acopia, LLC as Payee, bearing a fixed interest rate of 3.750% per annum, with a monthly principal and interest payment of $1,489.08 and a maturity date of March 1, 2052.

11. The original loan number assigned by Acopia was 104021117122. PNC subsequently assigned internal account number 1001212046 upon boarding the loan to its servicing system.

11A. The HOEPA/HMDA disclosure in the closing package identifies the loan application date as January 3, 2022, and the rate lock date as January 18, 2022. These dates are preserved as part of the factual record of the origination timeline.

12. On or about February 2, 2022, Plaintiff executed a Security Instrument (the "Mortgage") securing the Note and encumbering the Property. The Mortgage was recorded in the Official Records of Sumter County, Florida.

13. The Mortgage names Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Acopia, LLC and its successors and assigns, as mortgagee. The MERS Mortgage Identification Number (MIN) is 1006646-1000146150-9.

14. As of the January 2025 servicing transfer, the approximate principal balance on the loan was $304,729.00.

15. Prior to the January 2025 servicing transfer to PNC, Plaintiff's mortgage payments were collected by Dovenmuehle Mortgage, Inc. ("Dovenmuehle"), which acted as sub-servicer under a contractual agreement with Acopia, LLC. Plaintiff's bank records confirm that monthly mortgage payments were remitted to Dovenmuehle, not directly to Acopia. The servicing chain prior to PNC's involvement thus comprised three parties: Dovenmuehle as

4

sub-servicer collecting payments, Acopia as servicer of record and original lender, and the unknown beneficial owner of the Note.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Current Payment Status and Triggering Event

16. Plaintiff has been current on all mortgage payments from origination through the present date. At no time has Plaintiff been in default on the subject loan. Plaintiff is not a delinquent borrower seeking to avoid a legitimate obligation.

17. Plaintiff's inquiry into the chain of title and standing of the parties claiming authority over his loan was triggered by PNC's late Servicing Transfer Notice. PNC's notice was dated December 18, 2024, providing only 14 days' notice before the January 1, 2025 effective date, one day short of the 15-day minimum required by 12 U.S.C. § 2605(b)(2)(B).

18. A borrower who receives a deficient servicing transfer notice has every reason to investigate whether the entity now demanding payments has any legal right to collect them. That is precisely what Plaintiff did. The deficiencies Plaintiff discovered in the course of that investigation form the basis of this action.

### B. Critical Deficiencies in the Note and Mortgage

19. **Note Endorsement: The Allonge Produced in Litigation.** The Promissory Note is a two-page Florida Fixed Rate Note (Fannie Mae/Freddie Mac Form 3210). The Note names Acopia, LLC as Payee. PNC's September 26, 2025 QWR response produced a 53-page document package that did not include any endorsement or allonge. Acopia, LLC subsequently produced an Allonge to Promissory Note as Exhibit B to its Motion to Dismiss (Dkt. 17, filed February 20, 2026). The allonge purports to bear a blank

5

endorsement ("Pay to the order of: [blank]"), signed by Joseph Davidson as President of Acopia, LLC, dated February 2, 2022, and marked "Without Recourse." Three independent defects undermine the allonge's validity and Defendants' ability to rely upon it. First, chain of custody failure: PNC responded to Plaintiff's QWR with a 53-page production and did not produce the allonge. If the allonge was part of the original loan file and the Note transferred to PNC's custody upon loan boarding in January 2025, PNC should have possessed and produced the allonge. Acopia's production of the allonge seventeen months later in litigation, without a custodian affidavit from Joseph Davidson or any person with knowledge of its chain of custody, raises a substantial question as to whether the allonge was part of the loan file at or near origination. The forensic review of the wet-ink original closing package, spanning more than thirty documents, confirms that the Note bore no endorsement on its face, verso, or signature page, and no allonge was present anywhere in the closing package at the time of delivery to Plaintiff. Second, backdating and fabrication: Plaintiff's firsthand testimony, set forth in paragraph 29 below, establishes that the Note bore no endorsements, stamps, or transfer markings of any kind at the time of execution on February 2, 2022. The allonge is dated February 2, 2022. If the allonge existed at closing, Plaintiff did not observe it, was not informed of its existence, and did not receive a copy of it. A document dated to the closing date that the borrower did not observe, that was absent from the wet-ink original closing package, and that the purported custodian did not produce for seventeen months raises substantial questions of backdating and fabrication. Third, affixation requirement: under Fla. Stat. § 673.2041, an allonge is effective only if it is so firmly affixed to the instrument as to become a part thereof. A standalone page produced as a litigation exhibit years after closing, without chain of custody attestation and without

6

evidence that it was physically affixed to the original Note at or near origination, does not satisfy the affixation requirement. Even if the allonge were eventually authenticated, it constitutes only a blank endorsement making the Note a bearer instrument. It does not name PNC as payee, does not constitute an assignment, and does not cure the MERS assignment gap or PNC's "acquisition" versus "servicing transfer" contradiction. The standing challenge survives the allonge regardless of its ultimate validity.

20. Under Florida's adoption of UCC Article 3, codified at Fla. Stat. § 673.3011, a person entitled to enforce a negotiable instrument must be: (a) the holder of the instrument; (b) a nonholder in possession with the rights of a holder; or (c) a person entitled to enforce under Fla. Stat. § 673.3091 (lost, destroyed, or stolen instruments).

21. A "holder" under Fla. Stat. § 671.201(21) is a person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession. Even if the allonge produced by Acopia in litigation were authenticated, it constitutes only a blank endorsement making the Note a bearer instrument payable to whoever holds the physical original. The allonge does not name PNC as payee and does not constitute an assignment. PNC has not demonstrated physical possession of an authenticated original Note bearing a properly affixed allonge. PNC's standing to enforce the Note fails whether the allonge is credited or not: if the allonge is invalid, the Note remains payable to Acopia only; if the allonge is valid, the Note is a bearer instrument whose enforcement requires authenticated possession PNC has not established.

22. PNC produced a copy of the Note in its September 26, 2025 response to Plaintiff's Qualified Written Request but did not produce the allonge. Having produced the Note without the allonge, PNC cannot claim entitlement to enforce under Fla. Stat. § 673.3091

7

(lost instruments), and has no foundation to authenticate an allonge it demonstrably did not possess as part of its loan boarding package. The absence of any authenticated endorsement mechanism in PNC's own document production is fatal to PNC's standing to enforce the Note independent of the Alonge's validity.

23. **No Recorded Assignment of the Mortgage.** MERS remains the mortgagee of record as nominee for Acopia, LLC. As of the date of this Complaint, no assignment from MERS to PNC, Fannie Mae, or any other party has been recorded in the Official Records of Sumter County, Florida.

24. **Mortgage Execution Defects.** The Security Instrument suffers from execution defects that affect its enforceability:

   (a) **Witness Deficiency:** Florida law requires two subscribing witnesses for a mortgage to be eligible for recording. Fla. Stat. § 695.01. The Security Instrument reflects only one witness signature (Christian Snead). The second witness line is blank.

   (b) **Notary/Witness Dual Role:** Christian Snead served as both the sole witness and the notary public. The document was executed in Greenwood County, South Carolina. South Carolina Code § 30-5-30 prohibits a notary from serving as a witness to the same document.

   (c) **Systematic Jurisdiction Substitution:** Multiple closing documents bearing pre-printed Florida and Sumter County designations were executed in South Carolina. Notary Christian Snead (Laurens County, South Carolina, commission expires June 7, 2029) struck through the pre-printed "State of Florida" and "County of Sumter" designations by hand and substituted "South Carolina" and "Greenwood" in handwriting across at least four closing documents, including specifically the Mortgage acknowledgment

8

page and the Compliance Agreement. Snead applied her notary seal and signature to each substituted document. The pattern is systematic and confirms that the closing occurred in Greenwood County, South Carolina, in a setting inconsistent with the Florida-jurisdiction instruments prepared for execution.

(d) **Dual Occupancy Designation Conflict:** The Affidavit of Occupancy in the original closing package has both Box 1.1 (Primary Residence) and Box 1.2 (Second Home) checked simultaneously. These designations are mutually exclusive. The URLA Section 4 correctly designates the property as a Second Home, and a Second Home Rider was separately executed. The simultaneous checking of both occupancy boxes creates an internal inconsistency within the closing package that is material to origination underwriting and loan program eligibility.

(e) **Blank Notary Block on Signature/Name Affidavit:** Plaintiff's Signature/Name Affidavit contains a completely blank notary block. No commission expiration date, notary signature, or notary seal appears on the document. The instrument is unnotarized on its face.

(f) **Unsigned IRS Form W-9:** The IRS Form W-9 included in the original closing package bears no signature from Plaintiff. No valid backup withholding certification was obtained from Plaintiff at closing.

24A. **Income Verification Gap in Origination Package.** The closing package contains three IRS Form 4506-C IVES requests. Transcript requests were submitted for P Jones Enterprises Inc. (Form 1120, three years) and Zaplutus Enterprises LLC (Form 1065, three years). Plaintiff's personal income transcript request (Form 1040/W-2) was limited to only two years rather than three, creating an asymmetry between the business-entity transcript

9

coverage and the personal income transcript coverage. This gap in personal income verification is a targeted discovery subject under TRID and RESPA underwriting disclosure requirements.

24B. **Circular Servicing Transfer Notice in Origination Closing Package.** The Notice of Servicing Transfer included in Acopia's original closing package is facially defective on its face. The document identifies Acopia, LLC as both the present servicer and the new servicer, listing identical name, address, and telephone number for each designation. The stated effective date is April 1, 2022. A servicing transfer notice that identifies the same entity as both transferor and transferee provides zero chain-of-title information to the borrower and fails to satisfy the disclosure requirements of RESPA, 12 U.S.C. § 2605(b). This origination-stage defect is independent of and cumulative to the December 2024 servicing transfer notice violations alleged herein.

## C. Evidentiary Foundation Deficiencies in PNC's Document Production

25. PNC's September 26, 2025 document production is inadmissible absent proper foundation. PNC produced a photocopy of the Note and related loan documents. These documents originated with Acopia, LLC, a separate entity. PNC cannot authenticate Acopia's records or establish the foundational requirements for their admission under the Federal Rules of Evidence.

26. **Business Records Foundation (FRE 803(6)).** For PNC to introduce Acopia's loan documents as business records under Federal Rule of Evidence 803(6), PNC must produce a witness with personal knowledge of Acopia's record-keeping practices at the time of the loan's origination in February 2022. PNC, as a subsequent servicer that did not begin servicing the loan until January 2025, has no such witness and no personal knowledge of

10

Acopia's systems, procedures, or data integrity practices. PNC cannot lay the necessary foundation to admit Acopia's records through its own custodian of records.

27. **Authentication (FRE 901).** Federal Rule of Evidence 901(a) requires that the proponent of evidence produce sufficient evidence to support a finding that the item is what the proponent claims it to be. PNC produced a photocopy of the Note without any certification, authentication affidavit, or testimony from a person with knowledge of the document's creation or chain of custody. The document is not self-authenticating under FRE 902. PNC has offered no evidence that the copy it produced is a true and accurate reproduction of the original instrument. The authentication failure extends to the allonge produced by Acopia as Exhibit B to its Motion to Dismiss (Dkt. 17). The allonge was produced without a certification, without an authentication affidavit, and without testimony from Joseph Davidson or any person with knowledge of the document's creation, execution, or chain of custody from the February 2022 closing through its first appearance in this litigation in February 2026. PNC, which did not produce the allonge in its QWR response, has no independent foundation to authenticate an Acopia-created document it demonstrably did not possess as part of its loan boarding package.

28. **Best Evidence Rule (FRE 1002).** Federal Rule of Evidence 1002 requires production of the original writing to prove its content. PNC produced only a photocopy of the Note. PNC has not produced the original Note, has not explained the absence of the original, and has not established any exception under FRE 1003 or 1004 that would permit admission of the copy in lieu of the original. The location and custodian of the original Note remain unknown. The same deficiency applies to the allonge. Only a copy of the allonge appeared as a litigation exhibit attached to Acopia's Motion to Dismiss. No original allonge has been

11

produced. No explanation of the original's location has been provided, and no exception under FRE 1003 or 1004 has been established. Under Fla. Stat. § 673.2041, an allonge must be physically affixed to the instrument to be effective. Without production of an original allonge physically affixed to the original Note, the allonge fails both the best evidence standard and the statutory affixation requirement.

29. **Plaintiff's Firsthand Knowledge (FRE 602).** Plaintiff has firsthand knowledge of what he signed on February 2, 2022. Plaintiff personally executed the Note and Mortgage at the offices of Greenwood Family Practice INC, located at 805 Montague St, Suite A, Greenwood, South Carolina 29649. Plaintiff signed the Note in blue ink. The execution was witnessed and notarized by Christian Snead, Practice Manager. At the time of execution, the Note bore no endorsements, stamps, or transfer markings of any kind. No other person signed, stamped, or endorsed the Note in Plaintiff's presence. Plaintiff did not receive a copy of the signed Note bearing any endorsements. The complete wet-ink original closing package delivered to Plaintiff, spanning more than thirty documents, contained no endorsement on the face, verso, or signature page of the Note and no allonge anywhere in the package. Plaintiff is competent to testify under FRE 602 as to the condition of the instrument at the time he signed it. Any endorsement or transfer marking that appears on a copy of the Note that was not present at closing would constitute evidence of alteration or fabrication. The allonge produced by Acopia is dated February 2, 2022, the same date as the closing. If the allonge existed and was executed on that date, Plaintiff did not observe it, was not informed of its existence, and did not receive a copy of it. A document purportedly executed at the same closing Plaintiff attended, which the borrower did not observe and which was not produced for seventeen months, is directly impeached by

12

Plaintiff's firsthand testimony and provides independent grounds for a backdating and fabrication challenge under FRE 602.

30. The evidentiary deficiencies identified in paragraphs 26 through 29 above are not merely theoretical. They go to the core of PNC's and Acopia's ability to prove the validity and enforceability of the allonge and the chain of title. If Defendants cannot authenticate the documents they rely upon, including the allonge, they cannot establish the right to enforce the Note or foreclose on the Mortgage. These deficiencies should be resolved before any Defendant is permitted to assert rights against Plaintiff or the Property.

## D. Servicing Transfer and PNC's Self-Impeaching Admissions

31. On or about December 18, 2024, PNC issued a Welcome Letter and Servicing Transfer Notice to Plaintiff stating that "the servicing of your mortgage is being transferred" effective January 1, 2025.

32. The Servicing Transfer Notice explicitly stated: "Nothing else about your mortgage will change."

33. The servicing transfer from the prior servicer to PNC became effective on January 1, 2025. PNC's internal records reflect that the loan was boarded to PNC's system on January 3, 2025 (Transaction Code 142).

34. On or about December 17, 2024, Acopia issued a separate Servicing Transfer Notice identifying the transfer as from "Dovenmuehle Mortgage, Inc., who has been subservicing your loan under a contractual agreement with Acopia, LLC" to PNC Bank, N.A., effective January 1, 2025. Upon information and belief, Plaintiff never received this notice from Acopia. Plaintiff contacted PNC by telephone in January 2025 to complain about the lack

13

of any advance notice of the servicing transfer, providing contemporaneous evidence of non-receipt of the Acopia transferor notice.

35. On September 18, 2025, Plaintiff sent PNC a Qualified Written Request ("QWR") pursuant to 12 U.S.C. § 2605(e), requesting documentation establishing PNC's authority to enforce the Note and Mortgage, including any endorsements, assignments, and identification of the Note owner.

36. On September 26, 2025, PNC responded to Plaintiff's QWR with a 53-page document package. This response contained critical admissions and failures:

(a) PNC produced a copy of the Note but did not produce any allonge or endorsement; Acopia first produced the allonge seventeen months later as a litigation exhibit;

(b) PNC provided no assignment documentation;

(c) PNC claimed the information regarding the Note owner was "confidential, irrelevant, and privileged";

(d) PNC used the word "acquired" while simultaneously providing documentation showing only a "servicing transfer" where "nothing else will change"; and

(e) PNC's response was signed only with initials ("KJE") rather than a verified signature from an authorized representative.

37. On October 16, 2025, Plaintiff filed CFPB Complaint #251016-25043199 regarding PNC's failure to establish its authority to service the loan and identify the Note owner.

38. On December 10, 2025, CFPB closed the complaint and issued PNC's final response. PNC confirmed its servicer status but made no affirmative ownership claim, instead employing evasive language that neither confirmed nor denied ownership.

14

39. **The Irreconcilable Contradiction.** PNC's positions are mutually exclusive and internally contradictory. PNC cannot simultaneously claim "acquisition" of the loan while documenting only a "servicing transfer" in which "nothing else about your mortgage will change." These locked-in admissions establish that PNC is merely a servicer with no enforceable interest in the Note or Mortgage.

40. Fannie Mae's official Loan Lookup tool (available at fanniemae.com) identifies Fannie Mae as claiming ownership of the loan and identifies PNC Bank, N.A. as the "Mortgage Servicer," defined as "The Company that collects your monthly payment." This confirms PNC's role as a payment collector, not an owner or holder entitled to enforce.

## E. RESPA Transfer Notice Violations

41. Under 12 U.S.C. § 2605(b)(2)(B), a transferee servicer must provide the borrower with written notice of a servicing transfer not less than 15 days before the effective date of the transfer.

42. Under 12 U.S.C. § 2605(b)(1), the transferor servicer must also provide the borrower with written notice of a servicing transfer not less than 15 days before the effective date. Acopia's purported notice was dated December 17, 2024, only 14 days before the January 1, 2025 effective date, one day short of the statutory minimum. Moreover, Plaintiff never received the Acopia notice, as alleged in paragraph 34 above. The transferor notice obligation under § 2605(b)(1) is independent of the transferee notice obligation under § 2605(b)(2)(B) that PNC separately violated.

43. PNC's Servicing Transfer Notice was dated December 18, 2024, and the transfer became effective January 1, 2025, a period of only 14 days.

44. PNC's notice was therefore one day short of the statutory requirement, constituting a violation of 12 U.S.C. § 2605(b).

## COUNT I

### DECLARATORY JUDGMENT

(Against All Defendants)

45. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

46. An actual controversy exists between Plaintiff and Defendants regarding Defendants' rights, if any, to enforce the Note and Mortgage encumbering Plaintiff's Property.

47. PNC Bank, N.A. claims the right to collect mortgage payments from Plaintiff yet has failed to establish any legally cognizable basis for such claims. PNC has produced no authenticated endorsement, no recorded assignment, and no authenticated documentation sufficient to establish its standing. The allonge produced by Acopia in litigation is unauthenticated, was not produced in PNC's QWR response, and does not name PNC as payee.

48. The only purported transfer mechanism for the Note is an allonge produced by Acopia in litigation bearing a blank endorsement dated February 2, 2022, which was not produced in PNC's QWR response and has not been authenticated by any person with knowledge of its creation or chain of custody. A blank endorsement does not name PNC as payee and does not constitute an assignment of the Note or Mortgage to PNC.

49. No assignment of the Mortgage from MERS to PNC or any other party has been recorded in the Official Records of Sumter County, Florida.

16

50. PNC's own documents characterize its role as that of a servicer only, stating "nothing else about your mortgage will change."

51. PNC has refused to identify the alleged owner of the Note, claiming such information is "confidential, irrelevant, and privileged."

52. PNC's document production fails to satisfy the foundational requirements of the Federal Rules of Evidence for authentication (FRE 901), business records (FRE 803(6)), and best evidence (FRE 1002), as set forth in paragraphs 26 through 30 above. These failures extend equally to the allonge produced by Acopia as Exhibit B to its Motion to Dismiss.

53. Plaintiff is entitled to a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that:

(a) PNC Bank, N.A. has no enforceable interest in the Note or Mortgage;

(b) PNC Bank, N.A. is not entitled to enforce the Note under Fla. Stat. § 673.3011;

(c) PNC Bank, N.A. is not the holder of the Note and cannot establish holder status absent a valid endorsement;

(d) PNC Bank, N.A. has no authority to collect payments or initiate foreclosure proceedings; and

(e) Any party claiming an interest in the Note must establish its chain of title through valid, authenticated endorsements and recorded assignments.

## COUNT II

### QUIET TITLE

(Against All Defendants)

17

54. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

55. Plaintiff is the fee simple owner of real property located at 6234 Danielson Loop, The Villages, Florida 32163, Sumter County.

56. **Continuous Possession.** Plaintiff has been in continuous, open, and exclusive possession of the Property since closing on February 2, 2022. Under Florida law, actual possession raises a presumption of ownership, and the burden shifts to any party claiming a superior interest to demonstrate its entitlement through competent, authenticated documentation. Plaintiff's continuous possession strengthens his equitable position and underscores Defendants' failure to establish their claimed interests.

57. Defendants' claims to an interest in Plaintiff's Property constitute a cloud on title.

58. PNC Bank, N.A. claims an interest in the Property but has failed to establish its authority to enforce the Mortgage. The only purported transfer mechanism for the Note is an allonge produced by Acopia in litigation that was not included in PNC's QWR response and has not been authenticated, no assignment of the Mortgage to PNC has been recorded, and PNC's document production fails to satisfy the foundational requirements of the Federal Rules of Evidence.

59. Acopia, LLC originated the loan but has not demonstrated any current interest in the Note or Mortgage, and has not recorded any assignment to another party.

60. Fannie Mae may claim ownership of the loan but has not recorded any assignment reflecting its interest in the Official Records of Sumter County, Florida.

18

61. Pursuant to Fla. Stat. § 65.061, Plaintiff is entitled to a judgment quieting title to the Property against Defendants' adverse claims and removing the cloud on title created by Defendants' unfounded claims of enforcement rights.

### COUNT III

### VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

(Against Defendants PNC Bank, N.A. and Acopia, LLC)

62. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

63. **Servicing Transfer Notice Timing Violations (12 U.S.C. § 2605(b)).** Both the transferor and transferee servicers failed to provide the statutorily required notice. Acopia, as transferor servicer, purportedly issued a notice dated December 17, 2024, providing only 14 days before the January 1, 2025 effective date, in violation of 12 U.S.C. § 2605(b)(1), which requires not less than 15 days' notice. Plaintiff never received this notice, as alleged in paragraph 34 above. PNC, as transferee servicer, issued its notice on December 18, 2024, also providing only 14 days, in violation of 12 U.S.C. § 2605(b)(2)(B).

63A. **Origination-Stage Circular Servicing Notice.** As alleged in paragraph 24B above, the Notice of Servicing Transfer included in Acopia's original closing package is independently defective under 12 U.S.C. § 2605(b), identifying Acopia, LLC as both the present servicer and the new servicer with an effective date of April 1, 2022. This origination-stage RESPA violation is cumulative to the December 2024 violations and is preserved as an independent basis for liability against Acopia.

19

64. **QWR Response Deficiencies (12 U.S.C. § 2605(e)).** Plaintiff sent a Qualified Written Request on September 18, 2025. PNC's September 26, 2025 response was substantively deficient because it:

(a) Failed to produce the allonge that Acopia later produced in litigation as Exhibit B to its Motion to Dismiss (Dkt. 17, filed February 20, 2026), demonstrating that the allonge was not part of PNC's loan boarding package and was not available to PNC at the time of the QWR response;

(b) Failed to provide documentation of any assignment of the Mortgage (none exists);

(c) Refused to identify the owner of the Note, claiming such information is "confidential, irrelevant, and privileged";

(d) Provided contradictory statements regarding "acquisition" versus "servicing transfer"; and

(e) Failed to identify Fannie Mae as the party claiming ownership of the Note, despite this information being publicly available through Fannie Mae's own Loan Lookup tool.

65. As a result of PNC's and Acopia's RESPA violations, Plaintiff has suffered actual damages and is entitled to statutory damages under 12 U.S.C. § 2605(f), including costs and reasonable attorney's fees.

## COUNT IV

### VIOLATIONS OF THE TRUTH IN LENDING ACT

(Against Defendant PNC Bank, N.A.)

66. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

20

67. Under 15 U.S.C. § 1641(g), when a mortgage loan is sold or otherwise transferred or assigned, the creditor that is the new owner of the debt must notify the borrower in writing of such transfer within 30 days.

68. The notice required by 15 U.S.C. § 1641(g) must identify the new creditor and provide contact information, and is a distinct obligation from the servicer transfer notice required under RESPA.

69. PNC's December 18, 2024 notice addressed only the servicing transfer, not any transfer of ownership. No notice of ownership transfer has been provided to Plaintiff.

70. The Fannie Mae Loan Lookup tool indicates that Fannie Mae claims ownership of Plaintiff's loan. If ownership was transferred to Fannie Mae, no creditor has provided Plaintiff with the notice required by 15 U.S.C. § 1641(g). PNC's refusal to identify the Note owner, claiming the information is "confidential, irrelevant, and privileged," compounds the TILA violation by actively concealing the identity of the party to whom ownership was allegedly transferred.

71. PNC has refused to identify the owner of the Note, preventing Plaintiff from determining whether any ownership transfer occurred and whether proper notice was provided.

71A. **TRID/APR Audit.** The Discount Point Fee Disclosure in the original closing package confirms that 0.249% discount points were paid to buy the interest rate down to 3.750%. The accuracy of the corresponding APR disclosures and Loan Estimate/Closing Disclosure figures under TRID, 12 C.F.R. § 1026.19, is a secondary discovery target and is identified herein for preservation purposes.

72. As a result of PNC's TILA violations, Plaintiff is entitled to actual damages, statutory damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1640.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jed Alan Graham, M.D. respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

**A.** A declaratory judgment pursuant to 28 U.S.C. § 2201 that PNC Bank, N.A. has no enforceable interest in the Note or Mortgage, is not entitled to collect payments from Plaintiff, and has no authority to initiate or prosecute foreclosure proceedings;

**B.** A judgment quieting title to the Property at 6234 Danielson Loop, The Villages, Florida 32163 against all claims of Defendants and removing all clouds on title;

**C.** Actual damages suffered by Plaintiff as a result of Defendants' violations of RESPA and TILA;

**D.** Statutory damages as permitted under RESPA (12 U.S.C. § 2605(f)) and TILA (15 U.S.C. § 1640);

**E.** An injunction enjoining Defendants from initiating or continuing any foreclosure proceedings against the Property until such time as a valid chain of title is established through authenticated documentation;

**F.** Costs of suit and reasonable attorney's fees to the extent permitted by law;

**G.** Pre-judgment and post-judgment interest as permitted by law; and

**H.** Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

22

## **VERIFICATION**

I, Jed Alan Graham, M.D., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my personal knowledge, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Executed on March 10, 2026.

JED ALAN GRAHAM, M.D., Pro Se
6234 Danielson Loop
The Villages, FL 32163
Phone: 864-993-1984
Email: jedgrahammd@gmail.com

23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2026, I filed the foregoing with the Clerk of Court by hand delivery to the United States District Court, Middle District of Florida, Ocala Division, 207 NW 2nd Street, Ocala, Florida 34475.

I further certify that a true and correct copy of the foregoing was served on the following parties by United States Mail, CERTIFIED MAIL, on the same date.

Federal National Mortgage Association ("Fannie Mae")
1100 15th Street NW
Washington, DC 20005

> Lauren G. Raines, Esq.
> Jessica N. Faucher, Esq.
> BRADLEY ARANT BOULT CUMMINGS LLP
> 1001 Water Street, Suite 1000
> Tampa, FL 33602
> *Counsel for Defendant PNC Bank, N.A.*

I further certify that a copy was served via U.S. Mail, CERTIFIED MAIL, upon:

> Ivan J. Reich, Esq.
> Nason Yeager Gerson Harris & Fumero, P.A.
> 3001 PGA Boulevard, Suite 305
> Palm Beach Gardens, FL 33410
> *Counsel for Defendant Acopia, LLC*

_____
JED ALAN GRAHAM, M.D., Pro Se

24