IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION


JED ALAN GRAHAM, M.D.,


Plaintiff,


v.


ACOPIA, LLC; PNC BANK, NATIONAL

ASSOCIATION; FEDERAL NATIONAL

MORTGAGE ASSOCIATION ("FANNIE MAE");

and any and all SUCCESSOR ENTITIES,

SERVICERS, ASSIGNEES, OR TRANSFEREES,


Defendants.


Case No. 5:26-cv-00054-AGM-PRL


**PLAINTIFF'S RESPONSE IN OPPOSITION TO**

**DEFENDANT ACOPIA, LLC'S MOTION TO DISMISS**


**I.    INTRODUCTION**

Acopia, LLC ("Acopia") moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), claiming it assigned the Promissory Note to Fannie Mae in March 2022 and therefore bears no responsibility for anything that followed. That argument fails on the central claim against Acopia: a statutory RESPA violation that occurred in December 2024, nearly three years after the alleged assignment, when Acopia issued a defective servicing transfer notice while acting as servicer of record. The timing of the Note sale is irrelevant to that obligation. Acopia cannot discharge its December 2024 statutory duties by pointing to a March 2022 transaction.

The motion is also procedurally deficient. Acopia's exhibits are unauthenticated, the MERS report is outside the pleadings, and the allonge Acopia produced in this litigation was never disclosed by co-defendant PNC Bank despite PNC responding to a Qualified Written Request in September 2025. If the Court considers Acopia's exhibits, conversion to summary judgment is required and discovery is necessary. If the Court declines to consider them, the motion fails on its face.

The motion should be denied in its entirety. Dismissal with prejudice is particularly improper given the independent, pre-assignment RESPA violation that no amendment could eliminate.

## II.    ACOPIA'S RESPA LIABILITY IS INDEPENDENT OF NOTE OWNERSHIP

The RESPA claim against Acopia is not predicated on Acopia's ownership of the Note. It is predicated on Acopia's conduct as servicer of record in December 2024. Section 2605(b)(1) of RESPA, 12 U.S.C. § 2605(b)(1), imposes an independent obligation on the transferor servicer to provide the borrower with written notice of a servicing transfer not less than 15 days before the effective date of the transfer.

Acopia's transfer notice was dated December 17, 2024, with the transfer effective January 1, 2025. That is 14 days' notice. RESPA requires 15. The violation is documented, date-specific, and not curable by pointing to the 2022 Note sale.

Acopia does not dispute that it was the servicer of record through January 1, 2025. The MERS report Acopia itself filed as Exhibit A confirms it: the milestone entry titled "Transfer Seasoned Servicing Rights" dated January 6, 2025 identifies the old servicer as "1000649 Acopia, LLC" and the old subservicer as "1001484 Dovenmuehle Mortgage, Inc." Acopia was the servicer. The RESPA obligation was Acopia's. It was triggered by Acopia's own December 17, 2024 conduct, not by anything related to Note ownership.

Acopia's motion cites no authority for the proposition that a servicer is immune from RESPA liability for violations occurring during its servicing tenure simply because it no longer services the loan at the time of suit. No such authority exists. The obligation accrued at the time of the violation. The cause of action belongs to the borrower from that date forward. See 12 U.S.C. § 2605(f) (providing a private right of action to borrowers damaged by RESPA violations, with no limitation requiring the defendant to be a current servicer).

3

Acopia's Rule 12(b)(6) argument that it has "no continuing obligations" post-assignment conflates two separate tracks. Acopia's Note ownership ended in March 2022. Acopia's servicing obligations did not. The motion fails to address this distinction because it cannot survive it.

The scope of Acopia's RESPA exposure extends beyond the December 2024 violation. The original closing package Acopia delivered to Plaintiff in February 2022 contained a Notice of Servicing Transfer that identified Acopia, LLC as both the present servicer and the new servicer, listing identical name, address, and telephone number for each designation, with an effective date of April 1, 2022. A notice that identifies the same entity as both transferor and transferee provides zero chain-of-title information and fails the disclosure requirements of 12 U.S.C. § 2605(b). This origination-stage defect predates the March 2022 Note sale by weeks and confirms that Acopia's RESPA compliance failures are not isolated to the December 2024 transfer notice. Acopia's motion asks this Court to treat it as a party with no obligations after March 2022. The origination-stage circular notice is one more reason why that framing is insupportable.

### III.    THE ALLONGE IS UNAUTHENTICATED, UNAFFIXED, AND CONTRADICTED BY PLAINTIFF'S TESTIMONY

For the first time in this litigation, Acopia has produced a document titled "Allonge to Promissory Note" as Exhibit B to its motion. This document purports to bear a blank endorsement from Acopia signed by Joseph Davidson, President, dated February 2, 2022. Three independent deficiencies prevent this document from having any legal effect at this stage.

4

## A.    PNC's Failure to Produce the Allonge

On September 18, 2025, Plaintiff sent PNC Bank a Qualified Written Request pursuant to 12 U.S.C. § 2605(e) demanding, among other things, all documentation establishing PNC's authority to enforce the Note, including any endorsements, assignments, and transfer instruments. PNC responded on September 26, 2025 with a 53-page document package that included a copy of the Promissory Note. PNC did not produce the allonge. PNC claimed the Note owner's identity was "confidential, irrelevant, and privileged" and produced no endorsement or transfer documentation.

Acopia now produces an allonge in February 2026, seventeen months after PNC's QWR response, as an exhibit to a motion to dismiss. If this allonge was part of the original loan file maintained by Acopia as originating lender, PNC should have had it as part of the loan package it received when it assumed servicing in January 2025. PNC's failure to disclose it while Acopia produces it years later in litigation raises serious chain-of-custody questions that cannot be resolved on a motion to dismiss.

## B.    Plaintiff's Testimony as to Condition at Signing

The Complaint alleges with specificity that at the time Plaintiff executed the Note on February 2, 2022, at Greenwood Family Practice Inc., 805 Montague St., Suite A, Greenwood, South Carolina, the instrument bore no endorsements, stamps, or transfer markings of any kind. The complete wet-ink original closing package delivered to Plaintiff, spanning more than thirty documents, contains no endorsement on the face, verso, or signature page of the Note and no allonge anywhere in the package. Plaintiff is competent to testify to the condition of a document he personally signed. See Fed. R. Evid. 602. The allonge Acopia now produces is dated February 2, 2022. If it existed at closing, Plaintiff did not see it, was not informed of its existence, and did not receive a copy of it. The absence of the allonge from the entire wet-ink closing package is not merely Plaintiff's recollection; it is the documented condition of the original instruments. On a Rule 12 motion, Plaintiff's well-pleaded allegations are taken as true. A document dated to the closing date that Plaintiff did not observe, that was absent from the wet-ink original closing package, and that the purported custodian did not produce for seventeen months cannot be resolved in Acopia's favor at the pleading stage.

## C.    The Affixation Requirement

Under Florida's enactment of UCC Article 3, codified at Fla. Stat. § 673.2041, an allonge is effective as part of a negotiable instrument only if it is affixed to the instrument. A standalone

6

document produced years after closing in litigation, without any declaration establishing that it was physically attached to the Note at any relevant time, does not satisfy the affixation requirement. Acopia provides no affidavit from Joseph Davidson, no chain of custody attestation, and no evidence of physical attachment. The allonge cannot establish endorsement status on this record.

## IV.    THE MERS REPORT IS OUTSIDE THE PLEADINGS AND, IF CONSIDERED, CONFIRMS PLAINTIFF'S ALLEGATIONS

Under Rule 12(b)(6), the Court's review is limited to the complaint, documents incorporated by reference, and matters subject to judicial notice. The MERS report is not incorporated into the Complaint and is not subject to judicial notice as a self-authenticating government record. It is a private database report produced without a declaration from a MERS custodian. It should not be considered in resolving the Rule 12(b)(6) motion.

If the Court does consider it, the MERS report confirms every central allegation in the Complaint. The milestone chain shows: (1) Acopia as the originating organization at registration; (2) Dovenmuehle Mortgage, Inc. as subservicer, independently corroborating the three-party servicing chain alleged in the Complaint; (3) Fannie Mae as investor since March 10-11, 2022; and (4) PNC Bank as the new servicer effective January 2025 under a transaction titled "Transfer Seasoned Servicing Rights" in which only the servicer designation changed.

7

This is directly relevant to PNC's co-defendant liability. PNC responded to Plaintiff's QWR claiming it "acquired" the loan. The MERS system of record, produced by Acopia, shows no such acquisition. It shows a servicing transfer. PNC's claim of ownership is therefore contradicted not only by its own servicing transfer documentation, but now by the MERS report its co-defendant filed in this case. Acopia's Exhibit A is an admission by a party that PNC is a servicer, not an owner. If the Court considers the MERS report, it should do so in full, including this implication.

## V.    DEFENDANT HAS NOT MET ITS BURDEN UNDER RULE 12(b)(1)

Acopia's Rule 12(b)(1) argument conflates two distinct standing concepts. The question is not whether Acopia has standing to enforce the Note. The question is whether Plaintiff has standing to sue Acopia. He plainly does: he is the borrower, the RESPA violation was committed by Acopia, and he suffered direct statutory injury from receipt of deficient notice. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (injury-in-fact, causation, and redressability).

When a defendant mounts a factual challenge to standing under Rule 12(b)(1), it bears the burden of establishing jurisdictional facts with competent evidence. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). The MERS report is not sworn, not certified, and not accompanied by a custodian declaration. It is offered for the truth of the alleged assignment without any evidentiary foundation. It does not satisfy Acopia's burden as a factual standing challenge.

## VI.    CONVERSION UNDER RULE 12(d)

If the Court considers Acopia's Exhibits A, B, or C in resolving this motion, those exhibits are matters outside the pleadings and Rule 12(d) requires the motion to be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Plaintiff respectfully requests conversion and a reasonable opportunity for limited discovery, including: (a) the chain of custody of the allonge from February 2, 2022 to present; (b) communications between Acopia and PNC regarding the loan file and the allonge; (c) the complete original Note with all attachments as maintained by Acopia, PNC, and any custodian; and (d) the MERS database records with custodian certification. Plaintiff cannot oppose Acopia's factual claims regarding the allonge without access to these materials.

## VII.    ACOPIA'S DISCLAIMER RESOLVES THE QUIET TITLE CLAIM WITHOUT PREJUDICE

Acopia states in Section IV of its motion that its disclaimer of interest is "unconditional and irrevocable." This disclaimer is now a court record. Count II of the Complaint seeks quiet title relief against all defendants, including removal of any cloud on title created by Acopia's asserted interests. Acopia's unconditional on-record disclaimer achieves that outcome as to Acopia.

The appropriate resolution as to Count II is a finding or stipulation that Acopia has no interest in the Note, Mortgage, or Property, not dismissal with prejudice of claims arising from Acopia's pre-disclaimer conduct. Acopia cannot extinguish its December 2024 RESPA liability by filing a disclaimer of property interest in February 2026. The disclaimer is relevant to the quiet title count; it is irrelevant to the statutory notice count.

9

## VIII.   DISMISSAL WITH PREJUDICE IS IMPROPER

Acopia's conclusion requests dismissal with prejudice, citing Footnote 3 of its motion for the proposition that amendment cannot cure the absence of standing. That argument proves too much. As demonstrated above, Plaintiff has standing to assert a RESPA § 2605(b)(1) claim against Acopia based on its December 2024 conduct as servicer. The factual basis for that claim existed before this suit was filed and cannot be amended away.

The standard for dismissal with prejudice requires that amendment would be futile. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). Where, as here, additional facts regarding the allonge's chain of custody, authentication, and affixation remain undiscovered, amendment is not only possible but likely warranted. Dismissal with prejudice at the pleading stage, before any discovery, is inappropriate. If this Court finds any deficiency in the current pleading as to Acopia, Plaintiff respectfully requests leave to amend.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1.   Deny Acopia's Motion to Dismiss in its entirety;

2.   If the Court considers Acopia's exhibits, convert the motion to one for summary judgment under Rule 12(d) and grant Plaintiff a reasonable period for limited discovery as identified above;

10

3.  If any count against Acopia is dismissed, dismiss without prejudice and grant leave to amend;

and

4.  Grant such other and further relief as this Court deems just and proper.


Respectfully submitted,


_JED ALAN GRAHAM, M.D., Pro Se_
6234 Danielson Loop
The Villages, FL 32163
Phone: 864-993-1984
Email: jedgrahammd@gmail.com
Date: March 10, 2026

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2026, a true and correct copy of the foregoing was served via U.S. Mail, CERTIFIED MAIL, to:

Ivan J. Reich, Esq.
Nason Yeager Gerson Harris & Fumero, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Counsel for Defendant Acopia, LLC

Lauren G. Raines, Esq.
Jessica N. Faucher, Esq.
Bradley Arant Boult Cummings LLP
1001 Water Street, Suite 1000
Tampa, FL 33602
Counsel for Defendant PNC Bank, N.A.

Federal National Mortgage Association ("Fannie Mae")
1100 15th Street NW
Washington, DC 20005

JED ALAN GRAHAM, M.D., Pro Se

12



UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

JED ALAN GRAHAM, M.D.,

*Plaintiff,*

v.

PNC BANK, NATIONAL ASSOCIATION;

ACOPIA, LLC; and

FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"),

Defendants.

Case No. 5:26-cv-00054-AGM-PRL

**PLAINTIFF'S CERTIFICATE OF COMPLIANCE WITH STANDING ORDER ON
CERTIFICATION OF NO THIRD-PARTY LITIGATION FUNDING [Doc. 21]**

1

Pursuant to the Court's Standing Order on Certification of No Third-Party Litigation Funding [Doc. 21], Plaintiff JED ALAN GRAHAM, M.D., proceeding *pro se*, hereby certifies as follows:

1. Plaintiff has read the Court's Standing Order on Certification of No Third-Party Litigation Funding.

2. Plaintiff is proceeding pro se and is not represented by counsel in this action.

3. No person or entity other than Plaintiff has a contractual right to receive compensation that is contingent on, or is calculated based upon, the proceeds of this litigation, including any settlement, judgment, or other resolution of this action.

4. Plaintiff has no agreement with any third-party litigation funder, and no third party has agreed to fund, in whole or in part, the prosecution of this action.

Plaintiff will promptly file an amended Certificate of Compliance if any of the foregoing representations change.

Respectfully submitted,

**JED ALAN GRAHAM, M.D., Pro Se**
6234 Danielson Loop
The Villages, FL 32163
Phone: 864-993-1984
Email: jedgrahammd@gmail.com
Date: March 10, 2026

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2026, I filed the foregoing with the Clerk of Court by hand delivery to the United States District Court, Middle District of Florida, Ocala Division, 207 NW 2nd Street, Ocala, Florida 34475.

I further certify that a true and correct copy of the foregoing was served on the following parties by United States Mail, CERTIFIED MAIL, on the same date:

Ivan J. Reich, Esq.
Nason Yeager Gerson Harris & Fumero, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
*Counsel for Defendant Acopia, LLC*

Lauren G. Raines, Esq.
Jessica N. Faucher, Esq.
Bradley Arant Boult Cummings LLP
1001 Water Street, Suite 1000
Tampa, FL 33602
*Counsel for Defendant PNC Bank, N.A.*

Federal National Mortgage Association ("Fannie Mae")
1100 15th Street NW
Washington, DC 20005

**JED ALAN GRAHAM, M.D., Pro Se**

3