Jed Graham
6234 Danielson Loop
The Villages FL, 32163
Phone: 864-993-1984
jedgraham@rocketmail.com
DATE: 09/12/2025


To:
 PNC BANK
 P.O. BOX 1820
 Dayton, OH 45401-1820

**RE: Debt Challenge & Proof of Claim – Account Loan #▮▮▮▮2046**

To Whom It May Concern,

I am writing in response to your recent communication regarding the alleged debt referenced above. I do **not acknowledge** this debt and am demanding full **validation and proof of claim** under:

- **15 USC § 1692g** – Fair Debt Collection Practices Act (FDCPA)

- **15 USC § 1601** – Truth in Lending Act (TILA)

- **UCC § 3-301 & 3-302** – Right to enforce a negotiable instrument

- **UCC § 9-210** – Right to request a full accounting

- **UCC § 3-305** – Defenses against enforcement


Please provide the following documentation:

1. A copy of the **original signed contract or promissory note**

2. Proof that you are the **person entitled to enforce the instrument** under UCC § 3-301

3. A complete **accounting ledger** showing all debits, credits, and charge-offs

4. A full **chain of custody/assignment** from the original creditor to your company

5. IRS forms **1099-C or 1099-A**, if the debt was sold, discharged, or canceled

6. Proof of **lawful consideration** and full disclosure at the time of origination

7. Confirmation of any **securitization or sale of the note** (including PSA info)

8. A copy of any **insurance claim or credit default swap payout** connected to this loan

Until this request is fully complied with, this debt is **disputed and not validated**. Any further collection activity, including reporting to credit bureaus, may be considered a **violation of federal law**.

I reserve all rights under **UCC § 1-308**. This letter is a good faith effort to resolve this matter lawfully and honorably.

Sincerely,

Jed Graham
Living Human

*Send via Certified Mail with Return Receipt*

Jed Graham
6234 Danielson Loop
The Villages FL, 32163
Phone: 864-993-1984
jedgraham@rocketmail.com

September 18, 2025

To:
PNC BANK
P.O. BOX 1820
Dayton, OH 45401-1820

**Subject: Qualified Written Request (QWR) under 12 USC § 2605(e)**
**Loan Number:** Account Loan # ████ 2046

To Whom It May Concern,

This is a formal Qualified Written Request ("QWR") under the Real Estate Settlement Procedures Act (**RESPA, 12 USC § 2605(e)**) and the Truth in Lending Act (**TILA, 15 USC § 1601 et seq.**).

I am requesting clarification and documentation regarding the servicing and ownership of the mortgage loan referenced above. Please provide the following:

1. A full and itemized accounting of the loan from origination to present 2. The name, address, and contact info of the **current creditor or note holder** 3. A **certified copy of the original promissory note**, including endorsements and assignments
4. Proof that your institution is the legal **servicer or agent of the creditor**
5. Disclosure of whether the loan was **sold, securitized, or transferred** 6. A copy of the **pooling and servicing agreement (PSA)** if applicable 7. A complete **transaction history** from the date of origination to now 8. Any **1099-A or 1099-C filings** related to this account
9. A copy of the original **closing disclosure or HUD-1 Settlement Statement**
10. Proof of **lawful consideration** exchanged at the origination of this loan

Please respond within **30 business days** as required by law. If no response is received, I will consider your claim invalid and report noncompliance to the CFPB and other regulatory agencies.

State of __FLORIDA__
County of __LAKE__
On this __18th__ day of __September 2025__
personally appeared before me by means of
[✓] Physical presence or [ ] Remote online notarization
__Jed-Alan Graham__
to me known to be the person who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed
SEAL (signed) _____
NOTARY PUBLIC

Sincerely,

*Jed-Alan: Graham*
Jed-Alan: Graham
[Signature]
*Certified Mail with Return Receipt*
9589 0710 5270 1806 9893 0178

Notary Public State of Florida
Dhruv Patel
My Commission HH 418275
Expires 7/27/2027

**PNC BANK**

Customer Service Contact Information:
PNC Bank, B6-YM14-01-O
PO Box 1820
Dayton, OH 45401-1820
1-800-822-5626

September 26, 2025

Jed Alan Graham
6234 Danielson Loop
The Villages FL 32163

RE:     Loan No.: ▮▮▮▮2046
        Borrower: Jed Alan Graham
        Property Address: 6234 Danielson Loop, The Villages, FL 32163

Dear Mr. Graham:

On September 16, 2025, and September 22, 2025, PNC received your correspondences dated September 12, 2025, and September 18, 2025, respectively, concerning a validation of debt for the above-referenced loan.

Please note, at the top of your correspondence dated September 18, 2025, you referred to your letter as a Qualified Written Request. Recent regulations by the Consumer Financial Protection Bureau (CFPB) make it clear that a QWR must assert a specific error relating to the servicing of the mortgage loan or request specific information with respect to a borrower's mortgage loan. Moreover, servicers may designate a specific address for such noticed of error and requests for information and PNC has done so. Requests not received at that mailbox are not subject to the protections of the law.

We have attached a copy of the Note and Mortgage that you executed during loan origination. We have also included all available Payment history, Payment history Transaction Code Sheet, Loan Application, the most recent Mortgage Statement dated September 2, 2025, and the Closing Disclosure.

The original creditor for this loan was Acopia, LLC, a Corporation. Our records indicate that your loan was acquired by PNC on January 1, 2025. A copy of our Notice of Servicing Transfer Letter dated December 18, 2024, has been enclosed for your reference.

---

PNC BANK

**Customer Service Contact Information:**
PNC Bank, B6-YM14-01-O
PO Box 1820
Dayton, OH 45401-1820
1-800-822-5626

PNC affirms the validity of the debt and will continue to service the referenced loan per the terms of the Note and Mortgage until all debt is paid in full.

The Note and Mortgage documents that you executed during loan origination clearly explain the obligations when borrowing the funds secured by the Mortgage. Pursuant to the terms of the loan documents and all applicable laws, PNC will continue to service the above-referenced loan, and any collection and foreclosure efforts will continue if applicable.

Our records indicate your loan is currently due for the October 1, 2025, contractual monthly payment in the amount of $2,876.55.

The remainder of the information you requested is outside the scope of what can be requested as, to the extent that such information exists, it is confidential, irrelevant, or privileged, and the request was overly broad and unduly burdensome.

We trust that this response has addressed your concerns.

Please call Customer Service at 1-800-822-5626 with any further questions regarding this loan.

Enclosures:
- Note
- Mortgage
- Payment History
- Payment History Transaction Code Sheet
- Loan Application
- September 2, 2025, Mortgage Statement
- December 18, 2024, Notice of Servicing Transfer Letter
- Closing Disclosure

KJE

LOAN #: ███████ 7122
MIN: ████████████

# NOTE

| February 2, 2022 | The Villages, | Florida |
|---|---|---|
| [Date] | [City] | [State] |

6234 Danielson Loop, The Villages, FL 32163
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $321,536.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Acopia, LLC, a Corporation.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.750 %.**
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **1st**    day of each month beginning on **April 1, 2022.**        I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2052,**        I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  **306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072**

or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. **$1,489.08.**

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of **15**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %**      of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Initials: _JGl MMG_

FLORIDA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3210 1/01
ICE Mortgage Technology, Inc.                               Page 1 of 2                                    F3200FLN   0221
                                                                                                                          F3200FLN (CLS)
                                                                                              02/01/2022 02:00 PM PST

LOAN #: ▮▮▮▮7122

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
JED ALAN GRAHAM

Lender: Acopia, LLC
NMLS ID: 4664
Loan Originator: James M Cannata
NMLS ID: 328552

[Sign Original Only]

Initials: ▮▮ ▮▮

THIS IS TO CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL
PENINSULA LAND & TITLE

When recorded, return to:
Acopia, LLC
Attn: Final Document Department
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

This document was prepared by:
Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072
615-859-6537

Title Order No.: 40028-01

LOAN #: ████7122

———————— [Space Above This Line for Recording Data] ————————

## MORTGAGE

MIN ████████████

MERS PHONE #: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated February 2, 2022,      together with all Riders to this document.
(B) "Borrower" is   JED ALAN GRAHAM AND MICHELE GRAHAM, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   Acopia, LLC.

Lender is  a Corporation,                                                                                   organized and existing
under the laws of   Tennessee.
Lender's address is 306 Northcreek Blvd, Suite 100, Goodlettsville, TN 37072

(E) "Note" means the promissory note signed by Borrower and dated February 2, 2022.      The Note states that Borrower owes Lender  THREE HUNDRED TWENTY ONE THOUSAND FIVE HUNDRED THIRTY SIX AND NO/100*
*********************************************************** Dollars (U.S. $321,536.00      )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 1, 2052.

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                   Page 1 of 10

Initials: _____

FLEDEED  3120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: [REDACTED]7122

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☒ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ V.A. Rider
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County    of    Sumter
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: K01D029

which currently has the address of   6234 Danielson Loop, The Villages,

[Street] [City]

Florida  32163    ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.    Page 2 of 10

Initials: [signature]
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: ████7122

Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.                                Page 3 of 10

Initials: _____
PLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: ▮▮▮7122

to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

Initials: ▮▮▮
FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: ▮▮▮▮7122

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN # ████7122

coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either

Initials: _____

FLEDEED 1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: ▮▮▮▮7122

to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.                                    Page 7 of 10

Initials: ▯▯▯▯

FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: ███████7122

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.                     Page 8 of 10

Initials:
FLEDEED 1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: ███████ 7122

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  2/2/22  (Seal)
JEB ALAN GRAHAM                              DATE
123 Edinborough Circle
Greenwood, SC 29649

_____  2/2/22  (Seal)
MICHELE GRAHAM                              DATE

Initials: _____

FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN # [REDACTED]7122

Witnesses:
Signed, sealed and delivered in the presence of:

Christian Snead

Christian Snead

Printed Name

_____

Printed Name

THIS IS TO CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL
PENINSULA LAND & TITLE

State of ~~FLORIDA~~ South Carolina ⌐S    County of ~~SUMTER~~ Greenwood ⌐S

The foregoing Instrument was acknowledged before me by means of ☑ physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM AND MICHELE GRAHAM, who is/are personally known to me or who has/have produced _____D/L_____ as identification.

Christian Snead
Signature

Christian Snead
Printed Name

Notary Public
Title or Rank

_____
Serial Number (if any)

Lender: Acopia, LLC
NMLS ID: 4664
Loan Originator: James M Cannata
NMLS ID: 328552

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                              Page 10 of 10

Initials: [initials]
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

THIS IS TO CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL
PENINSULA LAND & TITLE

# Exhibit A

Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

Parcel Identification Number: K01D029

File Number: V20143                                                                    DoubleTime®

THIS IS TO CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL
PENINSULA LAND & TITLE

LOAN #: [REDACTED]7122

MIN: [REDACTED]

## SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 2nd     day of **February, 2022**     and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to **Acopia, LLC, a Corporation**

(the "Lender")
of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at: **6234 Danielson Loop, The Villages, FL 32163.**

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower will occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property, including short-term rentals, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property. Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Second Home Rider, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.—

JED ALAN GRAHAM     2/2/22     (Seal)
                                DATE

MICHELE GRAHAM     2/2/22     (Seal)
                                DATE

MULTISTATE SECOND HOME RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01 (rev. 4/19)     Initials:
ICE Mortgage Technology, Inc.
F3890RDU  0519
F3890RLU (CLS)
02/01/2022 02:00 PM PST

## Previous System History - All Transactions Transactions

433 - PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

**Loan Number:** ████ 2046                                   **Borrower Name:** GRAHAM,JED ALAN

| Transaction Date | 11/06/2024 | 11/01/2024 | 10/01/2024 | 09/03/2024 | 08/01/2024 | 07/01/2024 | 06/03/2024 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 11/24/2024 | 11/24/2024 | 10/24/2024 | 09/24/2024 | 08/24/2024 | 07/24/2024 | 06/24/2024 |
| Transaction Type/Code | 3  12 | 1  71 | 1  71 | 1  71 | 1  71 | 1  71 | 1  71 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | -$12,135.90 | $2,695.43 | $2,695.43 | $2,695.43 | $2,695.43 | $2,695.43 | $2,695.43 |
| Principal Paid Amt. | $0.00 | $533.46 | $531.80 | $530.14 | $528.49 | $526.85 | $525.20 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $955.62 | $957.28 | $958.94 | $960.59 | $962.23 | $963.88 |
| Escrow Paid | -$12,135.90 | $1,206.35 | $1,206.35 | $1,206.35 | $1,206.35 | $1,206.35 | $1,206.35 |
| Escrow Balance | $1,050.50 | $13,186.40 | $11,980.05 | $10,773.70 | $9,567.35 | $8,361.00 | $7,154.65 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 11/06/2024 | 11/01/2024 | 10/01/2024 | 09/03/2024 | 08/01/2024 | 07/01/2024 | 06/03/2024 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | 11/06/2024 | 11/01/2024 | 10/01/2024 | 09/03/2024 | 08/01/2024 | 07/01/2024 | 06/03/2024 |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous System History - All Transactions Transactions
### 433 - PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

**Loan Number:** ▇2046                          **Borrower Name:** GRAHAM,JED ALAN

| Transaction Date | 05/01/2024 | 04/01/2024 | 03/01/2024 | 02/01/2024 | 01/04/2024 | 01/02/2024 | 12/01/2023 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 05/24/2024 | 04/24/2024 | 03/24/2024 | 02/24/2024 | 02/24/2024 | 01/24/2024 | 12/23/2024 |
| Transaction Type/Code | 1 71 | 1 71 | 1 71 | 1 71 | 3 51 | 1 71 | 1 71 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $2,695.43 | $2,695.43 | $2,695.43 | $2,695.43 | -$2,254.00 | $2,484.44 | $2,484.44 |
| Principal Paid Amt. | $523.57 | $521.94 | $520.31 | $518.69 | $0.00 | $517.07 | $515.46 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $965.51 | $967.14 | $968.77 | $970.39 | $0.00 | $972.01 | $973.62 |
| Escrow Paid | $1,206.35 | $1,206.35 | $1,206.35 | $1,206.35 | -$2,254.00 | $995.36 | $995.36 |
| Escrow Balance | $5,948.30 | $4,741.95 | $3,535.60 | $2,329.25 | $1,122.90 | $3,376.90 | $2,381.54 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 05/01/2024 | 04/01/2024 | 03/01/2024 | 02/01/2024 | 01/04/2024 | 01/02/2024 | 12/01/2023 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | 05/01/2024 | 04/01/2024 | 03/01/2024 | 02/01/2024 | 01/04/2024 | 01/02/2024 | 12/01/2023 |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous System History - All Transactions Transactions

### 433 - PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

Loan Number ███████2046    Borrower Name: GRAHAM,JED ALAN

| Transaction Date | 11/06/2023 | 11/01/2023 | 10/02/2023 | 09/01/2023 | 08/01/2023 | 07/03/2023 | 06/01/2023 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 11/23/2024 | 11/23/2024 | 10/23/2024 | 09/23/2024 | 08/23/2024 | 07/23/2024 | 06/23/2024 |
| Transaction Type/Code | 3  12 | 1  71 | 1  71 | 1  71 | 1  71 | 1  71 | 1  71 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | -$11,135.81 | $2,484.44 | $2,484.44 | $2,484.44 | $2,484.44 | $2,484.44 | $2,484.44 |
| Principal Paid Amt. | $0.00 | $513.86 | $512.26 | $510.66 | $509.07 | $507.48 | $505.90 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $975.22 | $976.82 | $978.42 | $980.01 | $981.60 | $983.18 |
| Escrow Paid | -$11,135.81 | $995.36 | $995.36 | $995.36 | $995.36 | $995.36 | $995.36 |
| Escrow Balance | $1,386.18 | $12,521.99 | $11,526.63 | $10,531.27 | $9,535.91 | $8,540.55 | $7,545.19 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 11/06/2023 | 11/01/2023 | 10/02/2023 | 09/01/2023 | 08/01/2023 | 07/03/2023 | 06/01/2023 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | 11/06/2023 | 11/01/2023 | 10/02/2023 | 09/01/2023 | 08/01/2023 | 07/03/2023 | 06/01/2023 |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous System History - All Transactions Transactions

433 - PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

Loan Number: [redacted]2046

Borrower Name: GRAHAM,JED ALAN

| Transaction Date | 05/01/2023 | 04/03/2023 | 03/01/2023 | 02/01/2023 | 01/24/2023 | 01/03/2023 | 12/01/2022 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 05/23/2024 | 04/23/2024 | 03/23/2024 | 02/23/2024 | 02/23/2024 | 01/23/2024 | 12/22/2024 |
| Transaction Type/Code | 1 71 | 1 71 | 1 71 | 1 71 | 3 51 | 1 71 | 1 71 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $2,484.44 | $2,484.44 | $2,484.44 | $2,484.44 | -$1,413.00 | $2,484.44 | $2,484.44 |
| Principal Paid Amt. | $504.33 | $502.76 | $501.19 | $499.63 | $0.00 | $498.07 | $496.52 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $984.75 | $986.32 | $987.89 | $989.45 | $0.00 | $991.01 | $992.56 |
| Escrow Paid | $995.36 | $995.36 | $995.36 | $995.36 | -$1,413.00 | $995.36 | $995.36 |
| Escrow Balance | $6,549.83 | $5,554.47 | $4,559.11 | $3,563.75 | $2,568.39 | $3,981.39 | $9,172.21 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 05/01/2023 | 04/03/2023 | 03/01/2023 | 02/01/2023 | 01/24/2023 | 01/03/2023 | 12/01/2022 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | 05/01/2023 | 04/03/2023 | 03/01/2023 | 02/01/2023 | 01/24/2023 | 01/03/2023 | 12/01/2022 |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous System History - All Transactions Transactions

433 - PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

**Loan Number:** ███2046                                      **Borrower Name:** GRAHAM,JED ALAN

| Transaction Date | 11/09/2022 | 11/01/2022 |
|---|---|---|
| Sequence Number | 1 | 1 |
| Segment Number | | |
| Due Date | 11/22/2024 | 11/22/2024 |
| Transaction Type/Code | 3  12 | 1  71 |
| Hi Type | 1 | 1 |
| Transaction Amount | -$3,461.79 | $2,484.44 |
| Principal Paid Amt. | $0.00 | $494.97 |
| Principal Balance | $0.00 | $0.00 |
| Interest Paid | $0.00 | $994.11 |
| Escrow Paid | -$3,461.79 | $995.36 |
| Escrow Balance | $8,176.85 | $11,638.64 |
| A&H Insurance | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 |
| Fee Code | | |
| Fee Amount | $0.00 | $0.00 |
| Fee Description | | |
| Misc. Paid Reason Code | | |
| Miscellaneous Paid | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 |
| Suspense Description | | |
| HUD Amount | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | |
| Payee Description | | |
| Check Number | | |
| Current Payment Due | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | |
| Corporate Adv. Payee Code | | |
| Corporate Adv. Tran. Reason | | |
| Effective Date | 11/09/2022 | 11/01/2022 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 |
| Prior Due Date | 11/09/2022 | 11/01/2022 |
| Credit Card Description 1 | | |
| Credit Card Description 2 | | |

**Previous System History - All Transactions Transactions**

433 - PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

Loan Number: ███2046                                                        Borrower Name: GRAHAM,JED ALAN

| Transaction Date | 11/09/2022 | 11/01/2022 |
| --- | --- | --- |

```
                  CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 09/26/25
                                                               PAGE   1


          JED ALAN GRAHAM
          6234 DANIELSON LOOP
          THE VILLAGES FL 32163                    LOAN NUMBER:  ████2046
                                                   REQ BY KJE



          IF YOU HAVE QUESTIONS ABOUT THIS STATEMENT,
          PLEASE CALL PNC'S CUSTOMER SERVICE AT
          1-800-822-5626. VISIT PNC.COM TO ACCESS
          ACCOUNT INFORMATION.
*************************************************************************************
------------------------- CURRENT ACCOUNT INFORMATION -------------------------
    DATE        TOTAL       PRINCIPAL      LOAN        CURRENT
  PAYMENT      PAYMENT      & INTEREST    INTEREST     PRINCIPAL        ESCROW
    DUE        AMOUNT        PAYMENT        RATE       BALANCE          BALANCE
 10-01-25     2,876.55      1,489.08      3.75000     299,837.27      12,671.62
    2ND MORTGAGE:                         0.00  0.00000        0.00
*************************************************************************************


                ACTIVITY FOR PERIOD 01/01/25 - 09/26/25
 PROCESS     DUE     TRANSACTION            TRANSACTION          EFFECTIVE DATE
  DATE      DATE     CODE                   DESCRIPTION          OF TRANSACTION
-----------------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/        ESCROW PAID/ ------------OTHER-------------
    AMOUNT      BALANCE   INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------------
 09-02-25  09-25   171  PAYMENT                                       09-01-25
    2,876.55       550.37     938.71    1387.47
                299,837.27             12671.62    NEW PRINCIPAL/ESCROW BALANCES
 08-01-25  08-25   171  PAYMENT
    2,876.55       548.65     940.43    1387.47
                300,387.64             11284.15    NEW PRINCIPAL/ESCROW BALANCES
 07-01-25  07-25   171  PAYMENT
    2,876.55       546.94     942.14    1387.47
                300,936.29              9896.68    NEW PRINCIPAL/ESCROW BALANCES
 06-02-25  06-25   171  PAYMENT                                       06-01-25
    2,876.55       545.24     943.84    1387.47
                301,483.23              8509.21    NEW PRINCIPAL/ESCROW BALANCES
 05-01-25  05-25   171  PAYMENT
    2,876.55       543.54     945.54    1387.47
                302,028.47              7121.74    NEW PRINCIPAL/ESCROW BALANCES
 04-01-25  04-25   171  PAYMENT
    2,876.55       541.85     947.23    1387.47
                302,572.01              5734.27    NEW PRINCIPAL/ESCROW BALANCES
```

```
                        CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 09/26/25
REQ BY KJE                                                            PAGE    2


JED ALAN GRAHAM
LOAN NUMBER:      ████  2046

                     ACTIVITY FOR PERIOD 01/01/25 - 09/26/25
PROCESS    DUE     TRANSACTION              TRANSACTION              EFFECTIVE DATE
 DATE      DATE    CODE                     DESCRIPTION              OF TRANSACTION
---------------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/         ESCROW PAID/ ------------OTHER-------------
   AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
---------------------------------------------------------------------------------
03-28-25  04-25  173  PAYMENT                                          03-27-25
     19.26         0.00        0.00      19.26
                                       4346.80     NEW PRINCIPAL/ESCROW BALANCES
03-03-25  03-25  171  PAYMENT                                          03-01-25
   2,695.43      540.16      948.92    1206.35
                303,113.86             4327.54     NEW PRINCIPAL/ESCROW BALANCES
02-11-25  12-25  351  HOMEOWNERS INSURANCE DISBURSEMENT
   1,548.36-       0.00        0.00    1548.36-
                                       3121.19     NEW PRINCIPAL/ESCROW BALANCES
02-03-25  02-25  171  PAYMENT                                          02-01-25
   2,695.43      538.48      950.60    1206.35
                303,654.02             4669.55     NEW PRINCIPAL/ESCROW BALANCES
01-09-25  01-25  171  PAYMENT
   2,695.43      536.80      952.28    1206.35
                304,192.50             3463.20     NEW PRINCIPAL/ESCROW BALANCES
01-08-25  01-25  173  PAYMENT
      0.00         0.00        0.00    2256.85   2,256.85-  SUSPENSE
                                       2256.85     NEW PRINCIPAL/ESCROW BALANCES
01-06-25  01-25  173  PAYMENT
      0.00         0.00        0.00    ·0.00
01-03-25  01-25  170  BEGINNING BALANCES (ESCROW, INTEREST, ETC.)     02-02-22
   2,256.85        0.00        0.00      0.00    2,256.85   SUSPENSE
01-03-25  01-25  142  LOAN SETUP
      0.00    304,729.30-      0.00      0.00
                304,729.30             NEW PRINCIPAL/ESCROW BALANCES
```



**PNC Mortgage**
A division of PNC Bank, National Association

3232 Newmark Drive • Miamisburg, Ohio 45342
Telephone (937) 910-1200

**Mailing Address:**
**Mail: B6-YM07-01-7**
P.O. Box 1820        Dayton, Ohio 45401-1820

# PNC Mortgage
## Payment History Transaction Codes

Commonly used codes have been highlighted for reference.

| | | |
|---|---|---|
| 132 Late Charge Adjustment | 301 Misc. Escrow Disbursement | 493 Arm Change |
| 142 New Loan Balance | 302 HUD Refund | 601 Corporate Advance Disbursement |
| 146 Bad Check Reversal (Short Form Reversal) | 303 Replacement Reserve Disbursement | 630 Attorney Fees - Corporate Advance |
| 147 Misapplication Reversal | 304 Restricted Escrow Disbursement | 631 Property Maintenance Corporate Advance |
| 148 Bad Check Reversal (Long Form Reversal) | 305 Escrow to mortgagor | 632 Statutory Expenses Corporate Advance |
| 152 Late Charge Assessed | 306 Excess Escrow Refund | 633 Bankruptcy/Foreclosure Costs Corporate Advance |
| 156 Escrow Transferred | 307 Escrow to Mortgagor | |
| 160 Interest on Escrow | 310 MIP/PMI Disbursement | 710 Attorney Fees Deposit |
| 161 Escrow Advance | 311 City/County Disbursement 312 County Tax Disbursement | 711 Property Maintenance Deposit 712 Statutory Expenses Deposit |
| 162 MIP/PMI Refund | | |
| 163 Hazard Refund | 313 City Tax Disbursement | |
| 164 Tax Refund | 314 School Tax Disbursement | 713 Bankruptcy/Foreclosure Costs Deposit |
| 165 Lien Refund | 315 Assessment Disbursement | |
| 166 Special Escrow Deposit | 316 Ground Rent Disbursement | 714 Investor Deposit |
| 167 HUD Funds Deposit | 317 Water/Sewer Disbursement | 766 Corporate Deposit |
| 168 Escrow Advance Refund | 318 Fire District Disbursement | |
| 169 Restricted Escrow Deposit | 319 Homeowner Association Disbursement | |
| 170 Pre-distributed Payment | 320 M.U.D. Disbursement | |
| 171 Coupon Payment | 321 Village Disbursement 323 Village Disbursement | |
| 172 Modified Payment | | |
| 173 Irregular Payment | 330 Attorney Fees | |
| | 331 Property Maintenance | |
| 174 Payment Shorting Escrow | 332 Statutory Expenses | |
| 175 Principal Payment | 333 Bankruptcy/Foreclosure Costs | |
| 179 Special Insurance Payment | 351 Hazard Insurance Disbursement | |
| 181 Paid In Full | 352 Flood Insurance Disbursement | |
| 182 Foreclosure | 353 Additional Insurance Disbursement | |
| 183 Partial Settlement 185 Payment in full with delinquent payments | 354 Disability Insurance Premium | |
| | 355 Life Insurance Premium | |
| 186 Full Settlement = Repurchase | | |

*To be completed by the Lender.*
Lender Loan No./Universal Loan Identifier ███████████████     Agency Case No. _____

# Uniform Residential Loan Application

Verify and complete the information on this application. If you are applying for this loan with others, each additional Borrower must provide information as directed by your Lender.

## Section 1: Borrower Information. This section asks about your personal information and your income from employment and other sources, such as retirement, that you want considered to qualify for this loan.

### 1a. Personal Information

**Name** *(First, Middle, Last, Suffix)*
Jed Alan Graham

**Alternate Names** – *List any names by which you are known or any names under which credit was previously received (First, Middle, Last, Suffix)*

**Social Security Number** ██████████
*(or Individual Taxpayer Identification Number)*

**Date of Birth**
*(mm/dd/yyyy)* ████████

**Citizenship**
● U.S. Citizen
○ Permanent Resident Alien
○ Non-Permanent Resident Alien

**Type of Credit**
● I am applying for individual credit.
○ I am applying for joint credit. Total Number of Borrowers: _____

Each Borrower intends to apply for joint credit. *Your initials:* _____

**List Name(s) of Other Borrower(s) Applying for this Loan**
*(First, Middle, Last, Suffix) - Use a separator between names*

**Marital Status**
● Married
○ Separated
○ Unmarried
*(Single, Divorced, Widowed, Civil Union, Domestic Partnership, Registered Reciprocal Beneficiary Relationship)*

**Dependents** *(not listed by another Borrower)*
Number 0
Ages _____

**Contact Information**
Home Phone  864-993-1984
Cell Phone  864-993-1984
Work Phone  _____  Ext. _____
Email jedgraham@rocketmail.com

**Current Address**
Street 123 Edinborough Circle     Apartment #9
City Greenwood     State SC     ZIP 29649     Country _____
How Long at Current Address? 0 Years 1 Months    Housing ○ No primary housing expense  ○ Own  ● Rent ($ 2,045 /month)

If at Current Address for LESS than 2 years, list Former Address     ☐ *Does not apply*
Street 104 Windjammer     Building _____
City Greenwood     State SC     ZIP 29649     Country _____
How Long at Former Address? 9 Years 0 Months    Housing ○ No primary housing expense  ● Own  ○ Rent ($ _____ /month)

Mailing Address – *if different from Current Address*  ☒ *Does not apply*
Street _____     Unit # _____
City _____     State _____     ZIP _____     Country _____

### 1b. Current Employment/Self Employment and Income    ☐ *Does not apply*

| | | **Gross Monthly Income** | |
|---|---|---|---|
| Employer or Business Name P Jones Enterprises INC | Phone 864-223-6621 | Base | $14,025.63 /month |
| Street 4500 E Sam Houston Parkway | Building S | Overtime | _____ /month |
| City Pasadena   State TX   ZIP 77505 | Country _____ | Bonus | _____ /month |

Position or Title Physician
Start Date 11 / 11 / 2015 *(mm/dd/yyyy)*
How long in this line of work? 17 Years 5 Months

Check if this statement applies:
☐ I am employed by a family member, property seller, real estate agent, or other party to the transaction.

☒ Check if you are the Business Owner or Self-Employed
○ I have an ownership share of less than 25%.
● I have an ownership share of 25% or more.

| | |
|---|---|
| Commission | _____ /month |
| Military Entitlements | _____ /month |
| Other | _____ /month |
| TOTAL | $14,026.00 /month |

Monthly Income (or Loss)
$14,025.63

Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

1 of 9



GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

## 1c. IF APPLICABLE, Complete Information for Additional Employment/Self Employment and Income    ☐ Does not apply

Employer or Business Name Greenwood Family Practice          Phone 864-223-6621

Street 805 Montague Ave A                                    Unit # _____

City Greenwood                State SC    ZIP 29649    Country US

Position or Title Physician

Start Date 06 / 06 / 2003    (mm/dd/yyyy)

How long in this line of work? __20__ Years ____ Months

Check if this statement applies:
☐ I am employed by a family member, property seller, real estate agent, or other party to the transaction.

☒ Check if you are the Business Owner or Self-Employed
○ I have an ownership share of less than 25%.
◉ I have an ownership share of 25% or more.

Monthly Income (or Loss)    $2,001.58

| Gross Monthly Income | |
|---|---|
| Base | $2,001.58 /month |
| Overtime | /month |
| Bonus | /month |
| Commission | /month |
| Military Entitlements | /month |
| Other | /month |
| TOTAL | $2,002.00 /month |

## 1d. IF APPLICABLE, Complete Information for Previous Employment/Self Employment and Income    ☒ Does not apply

## 1e. Income from Other Sources    ☒ Does not apply

# Section 2: Financial Information — Assets and Liabilities. This section asks about things you own that are worth money and that you want considered to qualify for this loan. It then asks about your liabilities (or debts) that you pay each month, such as credit cards, alimony, or other expenses.

## 2a. Assets - Bank Accounts, Retirement, and Other Accounts You Have

Include all accounts below. Under Account Type, choose from the types listed here:

- Checking
- Savings
- Money Market
- Certificate of Deposit
- Mutual Fund
- Stocks
- Stock Options
- Bonds
- Retirement (e.g., 401k, IRA)
- Bridge Loan Proceeds
- Individual Development Account
- Trust Account
- Cash Value of Life Insurance (used for the transaction)

| Account Type – use list above | Financial Institution | Account Number | Cash or Market Value |
|---|---|---|---|
| Checking Account | Wells Fargo | ■■■ | $62,129.69 |
| Checking Account | TD Ameritrade | ■■■ | $100,000.00 |
| Checking Account | TD Ameritrade | ■■■ | $17,110.20 |
| | | | |
| | | | |
| | | Provide TOTAL Amount Here | $179,239.89 |

## 2b. Other Assets and Credits You Have    ☐ Does not apply

Include all other assets and credits below. Under Asset or Credit Type, choose from the types listed here:

**Assets**
- Proceeds from Real Estate Property to be sold on or before closing
- Proceeds from Sale of Non-Real Estate Asset
- Secured Borrowed Funds
- Unsecured Borrowed Funds
- Other

**Credits**
- Earnest Money
- Employer Assistance
- Lot Equity
- Relocation Funds
- Rent Credit
- Sweat Equity
- Trade Equity

| Asset or Credit Type – use list above | Cash or Market Value |
|---|---|
| Other - Other Liquid Asset | $330,741.35 |
| Pending Net Sale Proceeds From Real Estate Assets | $60,000.00 |
| | |
| | |
| Provide TOTAL Amount Here | $390,741.35 |

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

2 of 9

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

## 2c. Liabilities - Credit Cards, Other Debts, and Leases that You Owe ☐ *Does not apply*

List all liabilities below (except real estate) and include deferred payments. Under Account Type, choose from the types listed here:
• Revolving *(e.g., credit cards)* • Installment *(e.g., car, student, personal loans)* • Open 30-Day *(balance paid monthly)* • Lease *(not real estate)* • Other

| Account Type – use list above | Company Name | Account Number | Unpaid Balance | To be paid off at or before closing | Monthly Payment |
|---|---|---|---|---|---|
| Installment | NELNET LOANS | ▉ | $68,898.00 | ☐ | $846.00 |
| Installment | MB FIN SVCS | ▉ | $37,831.00 | ☐ | $853.00 |
| Installment | NELNET LOANS | ▉ | $24,111.00 | ☐ | $500.00 |
| Installment | SUNTRUST BANK | ▉ | $13,326.00 | ☐ | $603.00 |
| Revolving | SYNCB/NTWK | ▉ | $1,711.00 | ☐ | $92.00 |
| Collections Judgments And Liens | JPMCB CARD | ▉ | $292.00 | ☐ | $0.00 |

## 2d. Other Liabilities and Expenses ☒ *Does not apply*

# Section 3: Financial Information — Real Estate. This section asks you to list all properties you currently own and what you owe on them. ☐ *I do not own any real estate*

## 3a. Property You Own    If you are refinancing, list the property you are refinancing FIRST

Address Street 618 and 620 Grier St _____ Condo 618 and 620

City Greenwood _____ State SC    ZIP 29649    Country _____

| Property Value | Status: Sold, Pending Sale, or Retained | Intended Occupancy: Investment, Primary Residence, Second Home, Other | Monthly Insurance, Taxes, Association Dues, etc. if not included in Monthly Mortgage Payment | For 2-4 Unit Primary or Investment Property | |
|---|---|---|---|---|---|
| | | | | Monthly Rental Income | For LENDER to calculate: Net Monthly Rental Income |
| $70,000.00 | Pending Sale | Investment | | $ | $ |

Mortgage Loans on this Property    ☒ *Does not apply*

## 3b. IF APPLICABLE, Complete Information for Additional Property    ☒ *Does not apply*

## 3c. IF APPLICABLE, Complete Information for Additional Property    ☒ *Does not apply*

# Section 4: Loan and Property Information. This section asks about the loan's purpose and the property you want to purchase or refinance.

## 4a. Loan and Property Information

Loan Amount $ 321,536.00 _____ Loan Purpose ⦿Purchase ○Refinance ○Other *(specify)* _____

Property Address Street 6234 Danielson Loop _____ Unit # _____

City The Villages _____ State FL    ZIP 32163    County Sumter _____

Number of Units 1 _____ Property Value $ 960,000.00 _____

Occupancy ○Primary Residence ⦿Second Home ○Investment Property    FHA Secondary Residence ☐

1. Mixed-Use Property. If you will occupy the property, will you set aside space within the property to operate your own business? *(e.g., daycare facility, medical office, beauty/barber shop)*    ⦿NO ○YES

2. Manufactured Home. Is the property a manufactured home? *(e.g., a factory built dwelling built on a permanent chassis)*    ⦿NO ○YES

## 4b. Other New Mortgage Loans on the Property You are Buying or Refinancing    ☒ *Does not apply*

## 4c. Rental Income on the Property You Want to Purchase    For Purchase Only    ☒ *Does not apply*

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

3 of 9

GURLA20_S 0713
GURLA20S (CLS)
02/02/2022 09:02 AM PST

**4d. Gifts or Grants You Have Been Given or Will Receive for this Loan**    ☒ *Does not apply*

Include all gifts and grants below. Under Source, choose from the sources listed here:

- Community Nonprofit
- Employer
- Federal Agency
- Local Agency
- Relative
- Religious Nonprofit
- State Agency
- Unmarried Partner
- Lender
- Other

## Section 5: Declarations. This section asks you specific questions about the property, your funding, and your past financial history.

### 5a. About this Property and Your Money for this Loan

| | |
|---|---|
| A. Will you occupy the property as your primary residence? | ⦿ NO   ○ YES |
| If YES, have you had an ownership interest in another property in the last three years? | ○ NO   ○ YES |
| If YES, complete (1) and (2) below: | |
| (1) What type of property did you own: primary residence (PR), FHA secondary residence (SR), second home (SH), or investment property (IP)? | _____ |
| (2) How did you hold title to the property: by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | _____ |
| B. If this is a Purchase Transaction: Do you have a family relationship or business affiliation with the seller of the property? | ⦿ NO   ○ YES |
| C. Are you borrowing any money for this real estate transaction *(e.g., money for your closing costs or down payment)* or obtaining any money from another party, such as the seller or realtor, that you have not disclosed on this loan application? | ⦿ NO   ○ YES |
| If YES, what is the amount of this money? | $ _____ |
| D. 1. Have you or will you be applying for a mortgage loan on another property (not the property securing this loan) on or before closing this transaction that is not disclosed on this loan application? | ⦿ NO   ○ YES |
| 2. Have you or will you be applying for any new credit *(e.g., installment loan, credit card, etc.)* on or before closing this loan that is not disclosed on this application? | ⦿ NO   ○ YES |
| E. Will this property be subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid through your property taxes *(e.g., the Property Assessed Clean Energy Program)*? | ⦿ NO   ○ YES |

### 5b. About Your Finances

| | |
|---|---|
| F. Are you a co-signer or guarantor on any debt or loan that is not disclosed on this application? | ⦿ NO   ○ YES |
| G. Are there any outstanding judgments against you? | ⦿ NO   ○ YES |
| H. Are you currently delinquent or in default on a Federal debt? | ⦿ NO   ○ YES |
| I. Are you a party to a lawsuit in which you potentially have any personal financial liability? | ⦿ NO   ○ YES |
| J. Have you conveyed title to any property in lieu of foreclosure in the past 7 years? | ⦿ NO   ○ YES |
| K. Within the past 7 years, have you completed a pre-foreclosure sale or short sale, whereby the property was sold to a third party and the Lender agreed to accept less than the outstanding mortgage balance due? | ⦿ NO   ○ YES |
| L. Have you had property foreclosed upon in the last 7 years? | ⦿ NO   ○ YES |
| M. Have you declared bankruptcy within the past 7 years? If YES, identify the type(s) of bankruptcy:   ☐ Chapter 7   ☐ Chapter 11   ☐ Chapter 12   ☐ Chapter 13 | ⦿ NO   ○ YES |

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

4 of 9

GURLA20_S 0718
GURLA20S   (CLS)
02/02/2022 08:02 AM PST

# Section 6: Acknowledgements and Agreements. This section tells you about your legal obligations when you sign this application.

## Acknowledgments and Agreements

Definitions:
- "Lender" includes the Lender's agents, service providers, and any of their successors and assigns.
- "Other Loan Participants" includes (i) any actual or potential owners of a loan resulting from this application (the "Loan"), (ii) acquirers of any beneficial or other interest in the Loan, (iii) any mortgage insurer, (iv) any guarantor, (v) any servicer of the Loan, and (vi) any of these parties' service providers, successors or assigns.

I agree to, acknowledge, and represent the following:

(1) The Complete Information for this Application
- The information I have provided in this application is true, accurate, and complete as of the date I signed this application.
- If the information I submitted changes or I have new information before closing of the Loan, I must change and supplement this application, including providing any updated/supplemented real estate sales contract.
- For purchase transactions: The terms and conditions of any real estate sales contract signed by me in connection with this application are true, accurate, and complete to the best of my knowledge and belief. I have not entered into any other agreement, written or oral, in connection with this real estate transaction.
- The Lender and Other Loan Participants may rely on the information contained in the application before and after closing of the Loan.
- Any intentional or negligent misrepresentation of information may result in the imposition of:
    (a) civil liability on me, including monetary damages, if a person suffers any loss because the person relied on any misrepresentation that I have made on this application, and/or
    (b) criminal penalties on me including, but not limited to, fine or imprisonment or both under the provisions of Federal law (18 U.S.C. §§ 1001 *et seq.*).

(2) The Property's Security
The Loan I have applied for in this application will be secured by a mortgage or deed of trust which provides the Lender a security interest in the property described in this application.

(3) The Property's Appraisal, Value, and Condition
- Any appraisal or value of the property obtained by the Lender is for use by the Lender and Other Loan Participants.
- The Lender and Other Loan Participants have not made any representation or warranty, express or implied, to me about the property, its condition, or its value.

(4) Electronic Records and Signatures
- The Lender and Other Loan Participants may keep any paper record and/or electronic record of this application, whether or not the Loan is approved.

- If this application is created as (or converted into) an "electronic application", I consent to the use of "electronic records" and "electronic signatures" as the terms are defined in and governed by applicable Federal and/or state electronic transactions laws.
- I intend to sign and have signed this application either using my:
    (a) electronic signature; or
    (b) a written signature and agree that if a paper version of this application is converted into an electronic application, the application will be an electronic record, and the representation of my written signature on this application will be my binding electronic signature.
- I agree that the application, if delivered or transmitted to the Lender or Other Loan Participants as an electronic record with my electronic signature, will be as effective and enforceable as a paper application signed by me in writing.

(5) Delinquency
- The Lender and Other Loan Participants may report information about my account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report and will likely affect my credit score.
- If I have trouble making my payments I understand that I may contact a HUD-approved housing counseling organization for advice about actions I can take to meet my mortgage obligations.

(6) Authorization for Use and Sharing of Information
By signing below, in addition to the representations and agreements made above, I expressly authorize the Lender and Other Loan Participants to obtain, use, and share with each other (i) the loan application and related loan information and documentation, (ii) a consumer credit report on me, and (iii) my tax return information, as necessary to perform the actions listed below, for so long as they have an interest in my loan or its servicing:
    (a) process and underwrite my loan;
    (b) verify any data contained in my consumer credit report, my loan application and other information supporting my loan application;
    (c) inform credit and investment decisions by the Lender and Other Loan Participants;
    (d) perform audit, quality control, and legal compliance analysis and reviews;
    (e) perform analysis and modeling for risk assessments;
    (f) monitor the account for this loan for potential delinquencies and determine any assistance that may be available to me; and
    (g) other actions permissible under applicable law.

Borrower Signature _____    Date (mm/dd/yyyy) 02/02/2022
Jed Alan Graham

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application                    5 of 9
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

GURLA2C_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

## Section 7: Military Service. This section asks questions about your (or your deceased spouse's) military service.

### Military Service of Borrower

Military Service -- Did you (or your deceased spouse) ever serve, or are you currently serving, in the United States Armed Forces? ⦿ NO ○ YES
*If YES, check all that apply:* ☐ Currently serving on active duty with projected expiration date of service/tour ____ / ____ / _____ *(mm/dd/yyyy)*
☐ Currently retired, discharged, or separated from service
☐ Only period of service was as a non-activated member of the Reserve or National Guard
☐ Surviving spouse

## Section 8: Demographic Information. This section asks about your ethnicity, sex, and race.

### Demographic Information of Borrower

The purpose of collecting this information is to help ensure that all applicants are treated fairly and that the housing needs of communities and neighborhoods are being fulfilled. For residential mortgage lending, Federal law requires that we ask applicants for their demographic information (ethnicity, sex, and race) in order to monitor our compliance with equal credit opportunity, fair housing, and home mortgage disclosure laws. You are not required to provide this information, but are encouraged to do so. You may select one or more designations for "Ethnicity" and one or more designations for "Race." The law provides that we may not discriminate on the basis of this information, or on whether you choose to provide it. However, if you choose not to provide the information and you have made this application in person, Federal regulations require us to note your ethnicity, sex, and race on the basis of visual observation or surname. The law also provides that we may not discriminate on the basis of age or marital status information you provide in this application. If you do not wish to provide some or all of this information, please check below.

**Ethnicity:** *Check one or more*

☐ Hispanic or Latino
    ☐ Mexican ☐ Puerto Rican ☐ Cuban
    ☐ Other Hispanic or Latino -- *Print origin:*

    _____
    *For example: Argentinean, Colombian, Dominican, Nicaraguan,*
    *Salvadoran, Spaniard, and so on.*
☒ Not Hispanic or Latino
☐ I do not wish to provide this information

**Sex**
☐ Female
☒ Male
☐ I do not wish to provide this information

**Race:** *Check one or more*

☐ American Indian or Alaska Native -- *Print name of enrolled*
    *or principal tribe:* _____
☐ Asian
    ☐ Asian Indian ☐ Chinese ☐ Filipino
    ☐ Japanese    ☐ Korean ☐ Vietnamese
    ☐ Other Asian -- *Print race:* _____
    *For example: Hmong, Laotian, Thai, Pakistani, Cambodian, and so on.*
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
    ☐ Native Hawaiian ☐ Guamanian or Chamorro ☐ Samoan
    ☐ Other Pacific Islander -- *Print race:*

    _____
    *For example: Fijian, Tongan, and so on.*
☒ White
☐ I do not wish to provide this information

**To Be Completed by Financial Institution** *(for application taken in person):*

| | |
|---|---|
| Was the ethnicity of the Borrower collected on the basis of visual observation or surname? | ⦿ NO ○ YES |
| Was the sex of the Borrower collected on the basis of visual observation or surname? | ⦿ NO ○ YES |
| Was the race of the Borrower collected on the basis of visual observation or surname? | ⦿ NO ○ YES |

The Demographic Information was provided through:

○ Face-to-Face Interview *(includes Electronic Media w/ Video Component)*   ○ Telephone Interview   ○ Fax or Mail   ⦿ Email or Internet

---

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 - Fannie Mae Form 1003
*Effective 1/2021*

6 of 9



GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

# Section 9: Loan Originator Information. To be completed by your Loan Originator.

### Loan Originator Information

Loan Originator Organization Name Acopia Home Loans

Address 10570 S. US Highway One, Suite #102, Port St Lucie, FL 34952

Loan Originator Organization NMLSR ID# 4664          State License ID# MLD1224

Loan Originator Name James M Cannata

Loan Originator NMLSR ID# 328552          State License ID# LO8495

Email jcannata@acopiahomeloans.com          Phone 772-236-3007

Signature _____ Date (mm/dd/yyyy) _____

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

7 of 9

GURLA20_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

**To be completed by the Lender:**
Lender Loan No./Universal Loan Identifier ████████████████    Agency Case No. _____

# Uniform Residential Loan Application — Lender Loan Information
This section is completed by your Lender.

## L1. Property and Loan Information

**Community Property State**
☐ At least one borrower lives in a community property state.
☐ The property is in a community property state.

**Transaction Detail**
☐ Conversion of Contract for Deed or Land Contract
☐ Renovation
☐ Construction-Conversion/Construction-to-Permanent
  ○ Single-Closing ○ Two-Closing
Construction/Improvement Costs $ _____
Lot Acquired Date ___ / ___ / _____ *(mm/dd/yyyy)*
Original Cost of Lot $ _____

**Refinance Type**
○ No Cash Out
○ Limited Cash Out
○ Cash Out

**Refinance Program**
○ Full Documentation
○ Interest Rate Reduction
○ Streamlined without Appraisal
○ Other _____

**Energy Improvement**
☐ Mortgage loan will finance energy-related improvements.
☐ Property is currently subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid for through property taxes *(e.g., the Property Assessed Clean Energy program).*

Project Type ☐ Condominium ☐ Cooperative ☐ Planned Unit Development (PUD) ☒ Property is not located in a project

## L2. Title Information

**Title to the Property Will be Held in What Name(s):**
Jed Alan Graham and Michele Graham

**For Refinance: Title to the Property is Currently Held in What Name(s):**

**Estate Will be Held in**
◉ Fee Simple
○ Leasehold Expiration Date ___ / ___ / _____ *(mm/dd/yyyy)*

**Manner in Which Title Will be Held**
○ Sole Ownership    ○ Joint Tenancy with Right of Survivorship
○ Life Estate    ○ Tenancy by the Entirety
○ Tenancy In Common    ◉ Other

**Trust Information**
○ Title Will be Held by an *Inter Vivos (Living)* Trust
○ Title Will be Held by a Land Trust

**Indian Country Land Tenure**
○ Fee Simple On a Reservation
○ Individual Trust Land *(Allotted/Restricted)*
○ Tribal Trust Land On a Reservation
○ Tribal Trust Land Off Reservation
○ Alaska Native Corporation Land

## L3. Mortgage Loan Information

**Mortgage Type Applied For**
◉ Conventional    ○ USDA-RD
○ FHA    ○ VA    ○ Other: _____

**Amortization Type**
◉ Fixed Rate    ○ Other *(explain):* _____
○ Adjustable Rate
  If Adjustable Rate.
  Initial Period Prior to First Adjustment _____ *(months)*
  Subsequent Adjustment Period _____ *(months)*

**Loan Features**
☐ Balloon / Balloon Term _____ *(months)*
☐ Interest Only / Interest Only Term _____ *(months)*
☐ Negative Amortization
☐ Prepayment Penalty / Prepayment Penalty Term _____ *(months)*
☐ Temporary Interest Rate Buydown / Initial Buydown Rate _____ %
☐ Other *(explain):* _____

**Terms of Loan**
Note Rate 3.750 %
Loan Term 360 *(months)*

**Mortgage Lien Type**
◉ First Lien
○ Subordinate Lien

| Proposed Monthly Payment for Property | |
|---|---|
| First Mortgage *(P & I)* | $ 1,489.08 |
| Subordinate Lien(s) *(P & I)* | $ |
| Homeowner's Insurance | $ 108.42 |
| Supplemental Property Insurance | $ |
| Property Taxes | $ 886.94 |
| Mortgage Insurance | $ |
| Association/Project Dues *(Condo, Co-Op, PUD)* | $ 164.00 |
| Other | $ |
| Total | $ 2,648.44 |

Borrower Name(s): Jed Alan Graham
Uniform Residential Loan Application — Lender Loan Information
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

8 of 9



GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

### L4. Qualifying the Borrower – Minimum Required Funds or Cash Back

**DUE FROM BORROWER(S)**

| | |
|---|---|
| A. Sales Contract Price | $ 946,531.00 |
| B. Improvements, Renovations, and Repairs | $ |
| C. Land *(if acquired separately)* | $ |
| D. For Refinance: Balance of Mortgage Loans on the Property to be paid off in the Transaction *(See Table 3a. Property You Own)* | $ |
| E. Credit Cards and Other Debts Paid Off *(See Table 2c. Liabilities — Credit Cards, Other Debts, and Leases that You Owe)* | $ |
| F. Borrower Closing Costs *(including Prepaid and Initial Escrow Payments)* | $ 19,396.02 |
| G. Discount Points | $ 800.62 |
| H. TOTAL DUE FROM BORROWER(s) *(Total of A thru G)* | $ 966,727.64 |

**TOTAL MORTGAGE LOANS**

| | |
|---|---|
| I. Loan Amount<br>Loan Amount Excluding Financed Mortgage Insurance *(or Mortgage Insurance Equivalent)* $ 321,536.00<br>Financed Mortgage Insurance *(or Mortgage Insurance Equivalent)* Amount $ | $ 321,536.00 |
| J. Other New Mortgage Loans on the Property the Borrower(s) is Buying or Refinancing *(See Table 4b. Other New Mortgage Loans on the Property You are Buying or Refinancing)* | $ |
| K. TOTAL MORTGAGE LOANS *(Total of I and J)* | $ 321,536.00 |

**TOTAL CREDITS**

| | |
|---|---|
| L. Seller Credits *(Enter the amount of Borrower(s) costs paid by the property seller)* | $ 6,636.20 |
| M. Other Credits *(Enter the sum of all other credits — Borrower Paid Fees, Earnest Money, Employer Assisted Housing, Lease Purchase Fund, Lot Equity, Relocation Funds, Sweat Equity, Trade Equity, Other)* | $ 180,837.69 |
| N. TOTAL CREDITS *(Total of L and M)* | $ 187,473.89 |

**CALCULATION**

| | |
|---|---|
| TOTAL DUE FROM BORROWER(s) *(Line H)* | $ 966,727.64 |
| LESS TOTAL MORTGAGE LOANS *(Line K)* AND TOTAL CREDITS *(Line N)* | - $ 509,009.89 |
| Cash From/To the Borrower *(Line H minus Line K and Line N)*<br>NOTE: This amount does not include reserves or other funds that may be required by the Lender to be verified. | $ 457,717.75 |

Borrower Name(s): Jed Alan Graham
Uniform Residential Loan Application — Lender Loan Information          9 of 9
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 06:02 AM PST

## PNC BANK

P.O. Box 1820
Dayton, Ohio 45401-1820

**Mortgage Statement**

Statement Date          09/02/2025

8-749-27793-0002103-001-000-000-000-000

Customer Service: **1-800-822-5626**

| | |
|---|---|
| **Account Number** | 1001212046 |
| **Payment Due Date** | 10/01/2025 |

JED ALAN GRAHAM
6234 DANIELSON LOOP
THE VILLAGES FL  32163-5941

**Amount Due**          **$2,876.55**

*If payment is received after 10/16/2025, a $74.45 late fee will
be charged.*

---

### Account Information

| | |
|---|---|
| Outstanding Principal | $299,837.27 |
| Interest Rate | 3.7500% |

### Explanation of Amount Due

| | |
|---|---|
| Principal | $552.09 |
| Interest | $936.99 |
| Escrow (Taxes and Insurance) | $1,387.47 |
| **Regular Monthly Payment** | **$2,876.55** |
| **Total Amount Due** | **$2,876.55** |

### Transaction Activity (08/02/2025 to 09/02/2025)

Payments received after 09/02/2025 are not reflected on this statement.

| Date Received | Description | Charges | Payments |
|---|---|---|---|
| 09/02/2025 | Payment | | $2,876.55 |

### Past Payments Breakdown

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $550.37 | $4,892.03 |
| Interest | $938.71 | $8,509.69 |
| Escrow (Taxes and Insurance) | $1,387.47 | $14,219.98 |
| Fees | $0.00 | $0.00 |
| Unapplied Funds* | $0.00 | $0.00 |
| **Total** | **$2,876.55** | **$27,621.70** |

***Partial Payments:** Any partial payments that you make are not applied to your loan, but instead are held in a separate Unapplied Funds
Account. If you pay the balance of a partial payment, the funds may be applied to your loan or the funds may be returned to you depending
on the status of your loan.

---

## PNC BANK

JED ALAN GRAHAM

| Account Number | Payment Due Date | Next Payment Amount Due | Past Due Amounts | Total Amount Due | If Received After | *Payment Amount Due |
|---|---|---|---|---|---|---|
| 2046 | 10/01/2025 | $2,876.55 | $0.00 | $2,876.55 | 10/16/2025 | $2,951.00 |

Make checks payable to PNC Bank.       *Includes Late Fees
This Statement is for your information ONLY. Use this coupon to make additional principal
payments or to make a payment if your EFT is returned for any reason by your financial institution.

PNC BANK PAYMENTS
PO BOX 771021
CHICAGO, IL 60677-1021

FOR PRINCIPAL ONLY

☐

CHECK BOX

Payments in excess of the Amount Due will be applied to
the account pursuant to the terms of your loan documents.
If your current payment has already been received, you may
make an additional PRINCIPAL ONLY payment by checking
the box to the left and sending the coupon with your payment.

Total Amount  $

## Property Information

Property Address:  6234 DANIELSON LOOP
THE VILLAGES FL 32163

Escrow Balance:  $12,671.62

### Important Messages (Please note that important messages may continue on another page)

To avoid potential delays from mail delivery that could result in a late payment, we encourage you to consider alternative payment options, such as Online Banking, Automated Payments, or our phone payment options. Call us at 800-822-5626 if you have any questions or need assistance with alternative payment methods.

(continued on the next page)

### Payment Options

- PNC Online Banking: Visit PNC.com/onlinebanking
- Automated Payments Form: Visit PNC.com/MortgageAutopay
- Visit a Branch
- Send check: Overnight or Express Mail to:

  PNC Bank
  Lockbox 771021
  350 East Devon Ave
  Itasca, IL 60143-1249

- Voice Banking: Call 1-800-822-5626. To use this service, select a payment amount and provide the requested authentication information to authorize PNC Bank to debit your designated account via ACH or other electronic entry. Your payment cannot be canceled once submitted.
- Payoff: To obtain a payoff quote, call 1-800-822-5626.

### Fees (All fees are subject to change without notice, subject to applicable laws.)

| | | | |
|---|---|---|---|
| Escrow Deletion | 0.25% of Unpaid Principal Balance (UPB) at the time of approval. | Non-Sufficient Funds (NSF) | Subject to Applicable Law |
| | | Partial Release | $500.00 |
| Late Charges | Per Contract | Principal Reduction Re-Amortization* | $250.00 |
| Loan Assumption* (dependent on loan type) | Not to Exceed $900.00 | Subordination of Junior Lien | Per Contract |
| | | *Fees are subject to loan qualification. | |

### Our Contact Information: Make sure your contact information is up to date. While servicing your loan, we may call, text or email you.

| | |
|---|---|
| Information available 24 hours a day/7 days a week: | Visit: PNC.com/onlinebanking |
| General Inquiries: | PNC Bank, PO Box 1820, B6-YM14-01-O, Dayton, OH 45401-1820 |
| Customer Service: | 1-800-822-5626, Visit PNC.com/MortgageCustomerCare |
| Home Lending Needs? Call Home Lending Center: | 1-800-513-1578 |
| Credit Bureau Disputes: | PNC Bank, PO Box 8703, Dayton, OH 45401-8703 |
| PNC Homeowners Assistance and Collections: | 1-866-622-2657, Visit: PNC.com/HomeOwnersAssistance PNC Homeowners Assistance, 3232 Newmark Drive, Miamisburg, OH 45342 |
| Insurance Bills: | 1-888-229-5429, PNC Bank National Association ISAOA ATIMA, PO Box 7433, Springfield, OH 45501 |
| Notice of Error and Information Request: | To assert an error or to request information regarding your account, you must submit the notice of error or request for information in writing to PNC Bank, PO Box 8807, Dayton, OH 45401-8807 |
| Military Servicemembers SCRA Benefits Questions: | 1-844-762-7272, PNC Bank, Servicemembers Operations Center BR-YB58-01-8, PO Box 5570 Cleveland, OH 44101-0570 |

Please remember to include your name and loan number on all payment remittances or written correspondence.

This is an attempt to collect a debt and/or enforce our lien. Any information obtained will be used for that purpose unless prohibited by applicable law. However, if this debt has been discharged or if you are protected by the automatic stay in bankruptcy, we are not attempting to collect the debt from you personally, and if we have obtained relief from the automatic stay, we will only exercise our rights against any collateral. By providing this notice we do not waive any applicable exemptions from state or federal collection laws.

If you are requesting modified payments or other loss mitigation, please note that normal collection activity, collection litigation and/or foreclosure activity may continue on your loan to the extent allowed by law while your request is being reviewed. Any information requested may be necessary to determine your eligibility for loss mitigation options.

Financial counseling is available through a HUD-approved counseling agency. To locate an agency near you, call 1-800-569-4287 (TDD 1-800-877-8339) or visit www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. For assistance in finding a HUD-approved housing counselor at no charge or to request further explanation of the borrower notices, call the HOPE Hotline at 1-888-995-HOPE and ask for hardship assistance.

### IMPORTANT NOTICES REGARDING CREDIT REPORTING

Under Federal law, we are required to provide you with notice that we may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

If you believe that any information we have reported to the consumer reporting agencies specific to this loan is incomplete or inaccurate, please write us at the following address: PNC Bank, PO Box 8703, Dayton, OH 45401-8703. In your letter please provide us with your name, address, account number, the information you believe to be incorrect, and any other documentation which supports your claim or error.

**Crediting of Payments:** Payments received by 5:00 p.m. (Central Time/Chicago, IL or Pacific Time/Pasadena, CA) will be credited as of that day, without consideration of the date on the check, as long as the following conditions are met. **Checks will be deposited upon receipt. Do not send post-dated checks.**

- Make your check, money order or cashier's check payable to **PNC Bank.** All checks/money orders must be drawn in U.S. dollars on a U.S. Financial institution. **Do not send cash by mail.**
- The payment must be accompanied by the proper payment coupon using the envelope provided or proper billing statement coupon and envelope.
- Be sure to write your loan number on your check, money order or cashier's check.
- Do not fold the enclosed check, payment coupon, or billing statement coupon. Do not include paper clips, staples, tape, or other correspondence or more than one payment in the envelope.

Payments that do not meet these requirements may not be credited for up to 5 days after the day of receipt.

Your remittance will be applied according to your contract. If your intention is to pay additional principal, your loan must be in a current status.

**Customers Paying by Check:** When you make a payment with a personal check, **you authorize us to use information from your check to make a one-time electronic transfer from your account or to process the payment as a check transaction.** This means your account could be debited as early as the same day the payment is received. Your check will no longer be sent to your bank for processing; it will be destroyed, and a copy will be retained. Therefore, you will no longer receive the original or a copy of your check back from your bank. Also, the way in which the transaction appears on your bank statement will change. **Your statement will now show a line item for an electronic entry initiated by PNC Bank and will include the check number, payee and the check amount.** If you have questions, please contact Customer Service at 1-800-822-5626.

**Conditional Payments:** Any payment you send to us for less than the full balance marked with the words "Paid in Full" or similar language must be sent to Payment Services (B6-YM14-01-1), P.O. Box 1820, Dayton, OH 45401-1820. We may refuse to accept such payments. If you send such payments to any other address or we determine that there is no valid dispute as to the amount you owe us, we reserve all of our rights with regard to the payment – including our right to accept any such payment and still require you to pay us any remaining balance. All other payments made by mail should be sent to the payment address printed on your statement coupon.

**AVOID LATE CHARGES.** Your full monthly payment should be received on or before the due date. Any check or automatic draft that is returned by your bank may result in additional processing fees, subject to applicable law.

8-749-27793-0002103-001-000-000-000-000

(continued from previous page)

**Important Messages Continued**

Our records indicate you are currently participating in our Electronic Funds Transfer (EFT) program. This statement is being sent for your information only and is not a bill. Your payment is scheduled to draft on a monthly basis from your designated bank account. Note the payment amount for your records, as it may change. The attached payment coupon can be used to make additional principal payments or to make a monthly loan payment if your scheduled EFT payment is returned (not paid) for any reason by your financial institution.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

 **PNC BANK**  PNC Bank
P.O. Box 1820
Dayton, OH 45401-1820

JED ALAN GRAHAM
6234 DANIELSON LOOP
THE VILLAGES FL  32163-5941

# Your mortgage is transferring to PNC Bank

## Welcome to PNC Bank, Jed Alan Graham

We're happy to be your new mortgage servicing partner. As an award-winning, national lender and servicer of residential mortgage loans, we are committed to providing exceptional customer service. We want to make this a smooth and easy transition by sharing what you can expect from the mortgage transfer process and guiding you through the next steps.

## What's in this package?

 ### Notice of Servicing Transfer
This is the official legal notice informing you that your mortgage loan is transferring to PNC. It includes your new account number, so keep it handy.

 ### Mortgage Transfer Checklist
**This guide walks you through the mortgage transfer process,** including key steps like making your first payment to PNC.

 ### Automated Payment Information
**It is important that you immediately sign and return the enclosed Automated Payment Authorization Form or complete it electronically on the PNC Home Loan Transfer Portal.** PNC will continue automatically drafting your loan payments (as was previously performed by Acopia, LLC) for a period of time after transfer. If we do not receive the enclosed form, PNC will notify you if we are unable to continue your automated payments at which time you will need to make alternate payment arrangements.

 ### Privacy Policy
This document outlines what personal information we collect, how we protect it and why we sometimes share it.

**For more than 150 years, PNC has been committed to providing great service and powerful financial expertise to help customers like you meet their financial goals.** We're here to answer any questions. For more information visit **pnc.com/mortgagetransfer** or call **1-800-822-5626**.

Sincerely,

**Your PNC Bank Mortgage Transfer Team**

PNC is a registered service mark of The PNC Financial Services Group, Inc. ("PNC"). All loans are provided by PNC Bank, National Association, a subsidiary of PNC, and are subject to credit approval and property appraisal.

 ©2024 The PNC Financial Services Group, Inc. All rights reserved.
PNC Bank, National Association. **Member FDIC**

0-749-10962-0000599-001-3-000-010-000-000

 **PNC BANK** PNC Bank
P.O. Box 1820
Dayton, OH 45401-1820

**Customer Service Contact Information**
PNC Bank
P.O. Box 1820
Dayton, Ohio 45401-1820
1-800-822-5626

JED ALAN GRAHAM
6234 DANIELSON LOOP
THE VILLAGES FL  32163-5941

Loan Number: ███2046
Date: December 18, 2024
Page 1 of 2

> ❗ **Notice of Servicing Transfer for:** 6234 DANIELSON LOOP
> THE VILLAGES FL  32163

Dear Jed Alan Graham

**The servicing of your mortgage is being transferred, effective January 1, 2025.** This means that after this date, a new servicer will be collecting your mortgage payments from you. Nothing else about your mortgage will change.

Acopia, LLC is now collecting your payments. Acopia, LLC will stop accepting payments received from you after December 31, 2024.

PNC Bank, National Association (PNC Bank) will collect your payments going forward. PNC Bank will start accepting payments received from you on January 1, 2025.

**Send all payments due on or after January 1, 2025 to PNC Bank at this address:**

> **PNC Bank**
> **Attn: PNC Loan Payments**
> **PO Box 771021**
> **Chicago, IL 60677**

Important Note about Automated Payment Drafting: Please ensure funds are available in your checking or savings account on your due date as PNC Bank will only attempt one automatic deduction from this account.   Enclosed are the PNC Bank terms and conditions for Automated Payment drafting, including instructions on how to cancel this service once your loan has transferred to PNC, if you would so desire.

---

To request information or notify us of an error regarding your account, please send a written request/notice to:
PNC Bank; PO Box 8807; Dayton, OH 45401-8807

**Page 2** _____ **December 18, 2024**

If you have any questions for either your present servicer, Acopia, LLC or your new servicer, PNC Bank, about your mortgage or this transfer, please contact them using the information below:

**Current Servicer: Through (December 31, 2024)**
Acopia, LLC
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
855-447-7210

Hours of Operation: Monday - Friday, 8:30 a.m-5:30 p.m CT

**New Servicer: On or After (January 1, 2025)**
PNC Bank
Customer Service
PO Box 1820
Dayton, OH 45401-1820
1-800-822-5626
Please have your new account number available.

If you have questions or need assistance, please call us at 1-800-822-5626. Representatives are available Monday through Friday, 8 a.m. to 9 p.m. ET and Saturday through Sunday, 8 a.m. to 5 p.m. ET.
Visit us online at: www.pnc.com/MortgageTransfer for Mortgage or www.pnc.com/WelcomeToPNC for Home Equity.

Other important information you need to know:

To assert an error or to request information regarding your account, you must submit the notice of error or request for information in writing to the following address:

PNC Bank
P.O. Box 8807
Dayton, OH 45401-8807

Please include your name, loan number, along with a description of the information requested or the potential error that you believe occurred.

Please note that, while servicing the loan, we may call, text or email you.

Important Note about Optional Insurance

If you have mortgage life, disability, or any other type of optional insurance through your mortgage, the transfer of servicing rights may affect your insurance in the following way: This service will be discontinued. You should do the following to maintain coverage: Contact the insurance provider to inquire about direct billing to you.

You can verify your homeowners insurance information, including insurance disbursement information, as well as other loan information on the mycoverageinfo.com/pnc website. If you have further questions about your homeowners insurance, please call PNC Bank's Mortgage Homeowners Insurance Processing Center at 888-229-5429. We appreciate you and your business.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Sincerely,

PNC Bank, National Association
AT021

REPRESENTATION OF PRINTED DOCUMENT 9-10962-0000599-001-5-000-010-000-000

 **PNC BANK**

# ✓ Your Mortgage Transfer Checklist

Stay on track during your mortgage transfer with this handy guide that will help you remember important dates and milestones. The **checked boxes** represent items **PNC has already taken care of.** The **unchecked boxes** let you know what **additional action you need to take.**



Track your mortgage transfer progress at pnc.com/mortgagetransfer with our **PNC Home Loan Transfer Portal.**

## 🧾 Automated Mortgage Payments

**When will my automated payments occur?**

✓ **Good news – the date your automated payments are made won't change with the transfer of your mortgage to PNC.** It is possible that your first automated payment to PNC may be delayed by up to seven business days, **but you will not be charged a late fee for this one-time payment delay and it will not be reported to the credit bureaus.**

**What do I need to do?**

○ **It is important that you immediately sign and return the enclosed Automated Payment Authorization Form or complete it electronically on the PNC Home Loan Transfer Portal.** PNC will continue automatically drafting your loan payments (as was previously performed by Acopia, LLC) for a period of time after transfer. If we do not receive the enclosed form, PNC will notify you if we are unable to continue your automated payments at which time you will need to make alternate payment arrangements.

##  PNC Online Banking

**When can I enroll in PNC Online Banking?**

○ **On January 1, 2025, you can visit pnc.com/olb to enroll. Please note, your loan information will be available in PNC Online Banking**[1] **starting January 8, 2025.**

**What's the benefit of enrolling?**

✓ We encourage you to enroll in PNC Online Banking, which allows you to securely track and schedule payments, set up alerts, access escrow and year-end tax statements – even go paperless.

##  Escrow

**What happens to my escrow account?**

✓ If you have an escrow established for taxes and/or insurance, as your mortgage servicer, PNC will take over managing it on your behalf. We'll keep you up to date on any changes to your escrow account.

**1** Online Banking is free to customers with an eligible account; however, there may be a fee for certain optional services. We reserve the right to decline or revoke access to Online Banking or any of its services. All Online Banking services are subject to and conditional upon adherence to the terms and conditions of the PNC Online Banking Service Agreement.

PNC is a registered service mark of The PNC Financial Services Group, Inc. ("PNC"). All loans are provided by PNC Bank, National Association, a subsidiary of PNC, and are subject to credit approval and property appraisal.

©2024 The PNC Financial Services Group, Inc. All rights reserved.
PNC Bank, National Association. **Member FDIC**

# Automated Payment Authorization Form For PNC Mortgages  PNC

**Instructions:** This Automated Payment Authorization Form must be signed by the PNC Borrower who must also be the Deposit Account Owner. Please confirm the information below that you selected with your prior servicer and sign where indicated.

**Important Information:**

- You will receive a confirmation letter once we have received this signed Authorization Form.
- You must contact PNC at least three (3) business days before your next payment due date if you wish to cancel this authorization.
- If you have questions, want to change your automated payment information, or if you need to cancel the automated payment service for your PNC account, please call us at 1-800-822-5626.

**Payment Information Definitions:** (Refer to your loan agreement for additional details)

- *Minimum Payment Due* = The minimum payment per the terms of your loan agreement.
- *Additional Principal Payment* = An additional amount (if any) above the minimum payment due. Subject to the terms of your loan agreement, any additional amount above the minimum payment will be applied to the principal balance only and cannot be applied as additional escrow funds.
- *Delay Days* = Allows for the payment withdrawal to be delayed between 1 and 14 days from your due date. If not indicated, then your payment will be made on your due date.

---

**Borrower(s) Named on PNC Mortgage:**

JED ALAN GRAHAM

**PNC Loan Information:**

**PNC Loan Account Number ending in:** 2046

---

**Automated Payment Information**

**Deposit Account Routing Number:** 053207766
**Deposit Account Number ending in:** 2413
**Deposit Account Type:** Checking
**Payment Amount:** Minimum Payment Due
**Additional Principal:** 0.00
**Delay Days:** 0

**Note:** Except for mortgage loans where delay days have been requested, the date that the payment is scheduled to transfer from your designated deposit account (your due date) will be shown each month on your account statement along with the payment amount. If your due date falls on a weekend or holiday, your automated payment will be scheduled to transfer from your deposit account on the following business day, but will still be credited to your account as of your due date.

---

**Signature of Deposit Account Owner**

*Important: The PNC Bank Borrower that is signing this form must be an authorized signer on the designated deposit account.*

I understand and accept the Automated Payment Terms and Conditions provided with this form, and I affirm that I am an authorized signer on the above referenced deposit account. I authorize PNC Bank to electronically withdraw funds from the deposit account and apply these funds to the PNC loan account each month there is a balance owed on my account.

I accept that automated payments will continue on my account until I, or PNC, cancel the service.

**X** _____

Signature                                          Name (please print)                                          Date

**Review, sign, and return this form**

| **MAIL** Return this page in the enclosed postage-paid, self-addressed envelope | **E-MAIL** Scan this page, and email it to: LPACH@pnc.com. Please do not send any other communications to this email address. | **FAX** Fax this page to **1-855-291-2453** | **BRANCH** Take this page to a PNC Bank branch so a banker can scan or fax it as shown here. Go to pnc.com/locator to find a nearby bank branch. |
|---|---|---|---|

**SEE THE AUTOMATED PAYMENT TERMS AND CONDITIONS PROVIDED WITH THIS FORM**

# Automated Payment Terms and Conditions for PNC Mortgages

**Please keep for your records**

1. By enrolling in the Automated Payment Service (the "Service"), you are authorizing PNC Bank to make your loan payment each month by automatically transferring funds from the financial institution account specified by you.

2. The Service cannot be used to pay fees or additional escrow payments. Payments for fees or additional escrow must be remitted separately.

3. For first lien mortgages only, you may request for your automated payment to be made up to 14 calendar days after your mortgage payment due date ("Delay Days"), taking into consideration your late charge assessment date per your mortgage.

4. PNC Bank will send you a written confirmation of your authorization confirming your automated payment arrangement. Please review and confirm that the information is accurate and report any errors or changes to PNC Bank immediately. You are responsible for making all payments on time if the automated payment information is inaccurate and automated payments cannot be drafted.

5. If we are unable to process your request to set up automated payments, we will notify you by mail regarding why the request could not be completed.

6. The "Automated Payment Date" is the payment due date, unless Delay Days have been selected.

7. If your loan is not in a current status, your automated payment will not be made, the Service may be cancelled, and you will be responsible for making your monthly payments on time using another payment method.

8. All notifications regarding automated payments sent by mail will be directed to the address on file for the PNC Bank Loan Account. To confirm or change the address on file, please contact us at 1-888-PNC-BANK (1-888-762-2265).

9. If your scheduled Automated Payment Date falls on a weekend or legal bank holiday, the automated payment will occur on the next business day, but the payment will be applied to your account as if the payment had been received on the Automated Payment Date.

10. Be sure to check your financial institution account statement to verify the date and amount of any automated payments initiated by PNC Bank. In the event of an error, please notify your financial institution and PNC Bank immediately.

11. Under the terms of your loan, your PNC Bank payment may change (for example, an escrow or adjustable rate change). The Service will adjust the amount of the automated payment from your financial institution account to accommodate these changes. If you have opted for an additional principal amount to be included with your automated payment each month, the additional principal amount will not change.

12. If you intend to remit an additional principal payment separately from the Service, mail your check to the PNC address in the "How to contact us" section below. Write "PRINCIPAL ONLY" on the memo portion of the check along with your loan account number. **NOTE:** Excess funds will be applied pursuant to the terms of your loan agreement.

13. You may request that PNC Bank make changes to the Service *(e.g., banking information, additional principal amounts, and/or Delay Days (if applicable))* by completing a new Automated Payment Authorization Form and either faxing it to 1-855-242-0633 or mailing it to the Automated Payment correspondence address below. Automated Payment Authorization Forms are available by calling our Customer Care Consultants or online (www.pnc.com/AutomatedPaymentForm)
**NOTE:** Please allow at least ten (10) business days prior to the next scheduled Automated Payment Date for PNC Bank to process your request.

14. Cancellations must be made at least three (3) business days before the next payment due date by using any of the following methods: (a) call Customer Service, (b) fax your request to 1-855-242-0633, (c) visit the nearest PNC Branch, (d) mail your request to the Automated Payment Correspondence address below.

15. You are responsible for making all payments on time following cancellation or other termination of the Service. The payment due date set forth in your loan agreement is unaffected by enrollment with or cancellation of the Service.

16. If your financial institution returns an automated payment unpaid for any reason, PNC Bank has the right to assess a reasonable fee, subject to applicable law. You are then responsible to remit that payment to PNC Bank. If your payment is not received before the end of your courtesy period, your payment for that period will be past due and a late payment fee will be assessed, subject to applicable law.

17. PNC Bank reserves the right to cancel or otherwise terminate the Service for any reason including, but not limited to your loan entering Bankruptcy, a Loss Mitigation program, or Foreclosure status.

18. How to contact us:
    a. PNC Customer Care Consultants are available at 1-888-PNC Bank (1-888-762-2265)
    b. Visit pnc.com/homehq and click on *Customer Service* to access account information, make payments and more – 24/7.
    c. Automated Payment Correspondence Address: PNC Bank – Automated Payments, Mailcode: B6-YM10-01-4, PO Box 1820, Dayton, OH 45401

0-749-10962-0000599-001-9-000-010-000-000

3.NF-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          160787-0624          LS-9702



Rev. June 2024

| FACT | WHAT DOES PNC DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• Account balances and account transactions<br>• Credit scores and payment history |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons PNC chooses to share, and whether you can limit this sharing. |

| Reasons we can share your personal information | Does PNC share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), conduct portfolio analysis, respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes —** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | Yes |
| **For our affiliates' everyday business purposes —** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes —** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | No | We don't share |

| To limit our sharing | • Call 1-800-762-2118 — our menu will prompt you through your choice(s)<br>• Visit us online: www.PNC.com/privacy (Online Banking customers only)<br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
|---|---|
| Questions? | Call 1-800-762-2118 |

**Page 2**

| Who we are | |
|---|---|
| **Who is providing this notice?** | PNC Bank, National Association; PNC Investments, LLC; PNC Capital Advisors, LLC; PNC Capital Markets, LLC; Harris Williams, LLC; PNC Delaware Trust Company; PNC Ohio Trust Company; PNC Alternatives Solutions, LLC |

| What we do | |
|---|---|
| **How does PNC protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. <br><br> Additionally, PNC requires and trains its employees to comply with its privacy standards and policies, which are designed to protect customer information. |
| **How does PNC collect my personal information?** | We collect your personal information, for example, when you <br> • open an account or deposit money <br> • pay your bills or apply for a loan <br> • use your credit or debit card <br><br> We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only <br> • sharing for affiliates' everyday business purposes — information about your creditworthiness <br> • affiliates from using your information to market to you <br> • sharing for non-affiliates to market to you <br><br> State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account, unless you tell us otherwise. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. <br> • *Our affiliates include companies with the PNC name, and financial companies such as Harris Williams, LLC.* |
| **Non-affiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies. <br> • *PNC does not share with non-affiliates so they can market to you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. <br> • *Our joint marketing partners include mortgage and lending companies, insurance companies, and other companies that provide financial products and services.* |

| Other important information |
|---|
| **All statements to Federal Law mentioned above reference U.S. Federal Law. <u>California and Vermont:</u>** If your account has a California or Vermont billing address, we will automatically limit sharing your information with affiliates and non-affiliates or for joint marketing with other financial companies. **<u>Nevada Residents Only:</u>** This notice is provided to you pursuant to state law. To stop marketing calls from us, follow the directions in the section "To limit our sharing" to be placed on the PNC do not call list. Nevada law requires that we also provide you with the following contact information: Office of the Nevada Attorney General, telephone: 1-702-486-3132; email: aginfo@ag.nv.gov; 555 E. Washington Avenue, Suite 3900, Las Vegas, NV 89101. **PNC Information Sharing Options**: telephone: 1-800-762-2118; via PNC Online and Mobile Banking under Privacy Preferences. **<u>Important information about phone calls, texts, prerecorded and email messages:</u>** If, at any time, you provide to PNC Bank, its affiliates or designees (PNC) contact numbers that are wireless telephone number(s) including, but not limited to, cell or VoIP numbers, you are consenting to PNC using an automated dialing system to call or text you, or to send prerecorded messages to you, in order to service, and collect on, any PNC personal account(s) and business account(s) (for which you are an authorized signer, guarantor or designated contact person) but not to market to you. For any type of phone calls with PNC, you consent that the call may be monitored or recorded for quality control and training purposes. By providing your email address, you consent to receive electronic mail from PNC. |

0-749-10962-0000599-001-000-010-000-000



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES



**BUSINESS REPLY MAIL**
FIRST-CLASS MAIL    PERMIT NO. 143    DAYTON OH

POSTAGE WILL BE PAID BY ADDRESSEE

PNC BANK - LOAN PERFECTION
B6-YM13-01-1
PO BOX 8800
DAYTON OH   45482-0340

DocuSign Envelope ID: 231AA92C-307C-4531-B6EE-C79E9E573FD9

# Closing Disclosure

This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| Date Issued | 1/18/2022 | Borrower | Jed Alan Graham | Loan Term | 30 years |
| Closing Date | 1/21/2022 | | 123 Edinborough Circle | Purpose | Purchase |
| Disbursement Date | 1/21/2022 | | Greenwood, SC 29649 | Product | Fixed Rate |
| Settlement Agent | Peninsula Land and Title | Seller | The Villages Land Company LLC | | |
| File # | V20143 | | 3619 Kiessel Road | Loan Type | ☒ Conventional ☐ FHA |
| Property | 6234 Danielson Loop | | The Villages, FL 32163 | | ☐ VA ☐ _____ |
| | The Villages, FL 32163 | Lender | Acopia, LLC | Loan ID # | 104021117122 |
| Sale Price | $921,536 | | | MIC # | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $321,536 | **NO** |
| **Interest Rate** | 3.75 % | **NO** |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $1,489.08 | **NO** |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **NO** |

## Projected Payments

| Payment Calculation | Years 1-30 | |
|---|---|---|
| Principal & Interest | | $1,489.08 |
| Mortgage Insurance | + | 0 |
| Estimated Escrow *Amount can increase over time* | + | 1,027.27 |
| **Estimated Total Monthly Payment** | | **$2,516.35** |

| Estimated Taxes, Insurance & Assessments *Amount can increase over time* *See page 4 for details* | $1,191.27 Monthly | This estimate includes | In escrow? |
|---|---|---|---|
| | | ☒ Property Taxes | YES |
| | | ☒ Homeowner's Insurance | YES |
| | | ☒ Other: HOA Dues | NO |
| | | *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | |

## Costs at Closing

| | | |
|---|---|---|
| **Closing Costs** | $17,496.75 | Includes $6,187.42 in Loan Costs + $11,309.33 in Other Costs - $0 in Lender Credits. *See page 2 for details.* |
| **Cash to Close** | $435,290.85 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* |

DocuSign Envelope ID: 231AA92C-307C-4531-B6EE-C79E9E573FD9

## Closing Cost Details

| Loan Costs | | Borrower-Paid At Closing | Borrower-Paid Before Closing | Seller-Paid At Closing | Seller-Paid Before Closing | Paid by Others |
|---|---|---|---|---|---|---|
| **A. Origination Charges** | | **$2,490.62** | | | | |
| 01 0.249 % of Loan Amount (Points) | | $800.62 | | | | |
| 02 Origination Fee | | $495.00 | | | | |
| 03 Processing Fees | | $400.00 | | | | |
| 04 Underwriting Fees | | $795.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **B. Services Borrower Did Not Shop For** | | **$755.50** | | | | |
| 01 Appraisal Fee | to Acopia, LLC fbo Valutrust | $550.00 | | | | |
| 02 Credit Report | to Acopia, LLC fbo CIC Credit | $30.50 | | | | |
| 03 Final Inspection | to Acopia, LLC fbo Valutrust | $175.00 | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| 09 | | | | | | |
| 10 | | | | | | |
| **C. Services Borrower Did Shop For** | | **$2,941.30** | | | | |
| 01 Land Survey | to CFB | $370.00 | | | | |
| 02 Title - Lender's Title Insurance | to Old Republic National Title / Peninsula | $1,901.30 | | | | |
| 03 Title - Settlement Fee | to Peninsula Land & Title | $610.00 | | $156.00 | | |
| 04 Title - Title Search | to Peninsula Land & Title | $60.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$6,187.42** | | | | |
| Loan Costs Subtotals (A + B + C) | | $6,187.42 | | | | |

## Other Costs

| Other Costs | | Borrower-Paid At Closing | Borrower-Paid Before Closing | Seller-Paid At Closing | Seller-Paid Before Closing | Paid by Others |
|---|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$2,069.17** | | | | |
| 01 Recording Fees | Deed: $35.50    Mortgage: $265.00 | $300.50 | | | | |
| 02 State Tax/Stamps | to Sumter County Clerk of the Circuit | $1,125.60 | | $6,451.20 | | |
| 03 Transfer Taxes | to Sumter County Clerk of the Circuit | $643.07 | | | | |
| **F. Prepaids** | | **$2,047.33** | | | | |
| 01 Homeowner's Insurance Premium (12 mo.) to ASI | | $1,684.00 | | | | |
| 02 Mortgage Insurance Premium ( mo.) | | | | | | |
| 03 Prepaid Interest ( $33.03 per day from 1/21/22 to 2/1/22 ) | | $363.33 | | | | |
| 04 Property Taxes ( mo.) | | | | | | |
| 05 | | | | | | |
| **G. Initial Escrow Payment at Closing** | | **$3,452.39** | | | | |
| 01 Homeowner's Insurance | $140.33 per month for 3 mo. | $420.99 | | | | |
| 02 Mortgage Insurance | per month for mo. | | | | | |
| 03 Property Taxes | $886.94 per month for 5 mo. | $4,434.70 | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 Aggregate Adjustment | | -$1,403.30 | | | | |
| **H. Other** | | **$3,740.44** | | | | |
| 01 Homeowner's Dues | to CSU | $68.77 | | | | |
| 02 Real Estate Commission | to Properties of the Villages Inc. | | | $1.00 | | |
| 03 Title - Owner's Title Insurance (optional) to Old Republic National Title / | | $3,465.00 | | | | |
| 04 Utility Fee | to Sumter County Board of County | $206.67 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$11,309.33** | | | | |
| Other Costs Subtotals (E + F + G + H) | | $11,309.33 | | | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$17,496.75** | | | | |
| Closing Costs Subtotals (D + I) | | $17,496.75 | | $6,608.20 | | |
| Lender Credits | | | | | | |

01/18/2022 03:26 PM PST                                              GTRIDCDWSS (PRE)

DocuSign Envelope ID: 231AA92C-307C-4531-B6EE-C79E9E573FD9

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $25,068.00 | $17,496.75 | YES · See Total Loan Costs (D) and Total Other Costs (I). |
| Closing Costs Paid Before Closing | $0 | $0 | NO |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | NO |
| Down Payment/Funds from Borrower | $600,000.00 | $600,000.00 | NO |
| Deposit | -$184,308.00 | -$184,308.00 | NO |
| Funds for Borrower | $0 | $0 | NO |
| Seller Credits | -$6,451.00 | $0 | YES · See Seller-Paid column on page 2 and Seller Credits in Section L. |
| Adjustments and Other Credits | $0 | $2,102.10 | YES · See details in Section K and Section L. |
| **Cash to Close** | **$434,309.00** | **$435,290.85** | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

### BORROWER'S TRANSACTION

| K. Due from Borrower at Closing | $941,286.00 |
|---|---|
| 01 Sale Price of Property | $921,536.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | $17,496.75 |
| 04 Principal Reduction | |
| **Adjustments** | |
| 05 Change Order #1 Fee | $500.00 |
| 06 | |
| 07 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 08 City/Town Taxes to | |
| 09 County Taxes to | |
| 10 Assessments 01/21/22 to 09/30/22 | $1,753.25 |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

| L. Paid Already by or on Behalf of Borrower at Closing | $505,995.15 |
|---|---|
| 01 Deposit | $184,308.00 |
| 02 Loan Amount | $321,536.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Lender Cure for 801/802 | |
| 05 Seller Credit | |
| **Other Credits** | |
| 06 | |
| 07 | |
| **Adjustments** | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| **Adjustments for Items Unpaid by Seller** | |
| 12 City/Town Taxes to | |
| 13 County Taxes 01/01/22 to 01/21/22 | $151.15 |
| 14 Assessments to | |
| 15 | |
| 16 | |
| 17 | |

### SELLER'S TRANSACTION

| M. Due to Seller at Closing | $923,289.25 |
|---|---|
| 01 Sale Price of Property | $921,536.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 09 City/Town Taxes to | |
| 10 County Taxes to | |
| 11 Assessments 01/21/22 to 09/30/22 | $1,753.25 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | $191,067.35 |
|---|---|
| 01 Excess Deposit | $184,308.00 |
| 02 Closing Costs Paid at Closing (J) | $6,608.20 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| **Adjustments for Items Unpaid by Seller** | |
| 14 City/Town Taxes to | |
| 15 County Taxes 01/01/22 to 01/21/22 | $151.15 |
| 16 Assessments to | |
| 17 | |
| 18 | |
| 19 | |

### CALCULATION

| | |
|---|---|
| Total Due from Borrower at Closing (K) | $941,286.00 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | -$505,995.15 |
| **Cash to Close ☒ From ☐ To Borrower** | **$435,290.85** |

### CALCULATION

| | |
|---|---|
| Total Due to Seller at Closing (M) | $923,289.25 |
| Total Due from Seller at Closing (N) | -$191,067.35 |
| **Cash ☐ From ☒ To Seller** | **$732,221.90** |

DocuSign Envelope ID: 231AA92C-307C-4531-B6EE-C79E9E573FD9

# Additional Information About This Loan

## Loan Disclosures

### Assumption

If you sell or transfer this property to another person, your lender

☐ will allow, under certain conditions, this person to assume this loan on the original terms.

☒ will not allow assumption of this loan on the original terms.

### Demand Feature

Your loan

☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

☒ does not have a demand feature.

### Late Payment

If your payment is more than  15  days late, your lender will charge a late fee of *5% of the principal and interest overdue.*

### Negative Amortization (Increase in Loan Amount)

Under your loan terms, you

☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☒ do not have a negative amortization feature.

### Partial Payments

Your lender

☒ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

☐ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest

You are granting a security interest in
*6234 Danielson Loop, The Villages, FL 32163*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

***For now,*** your loan

☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | $11,299.97 | Estimated total amount over year 1 for your escrowed property costs: *Property Taxes, Homeowner's Insurance* |
| Non-Escrowed Property Costs over Year 1 | $1,804.00 | Estimated total amount over year 1 for your non-escrowed property costs: *HOA Dues* <br><br> You may have other property costs. |
| Initial Escrow Payment | $3,452.39 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $1,027.27 | The amount included in your total monthly payment. |

☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

### In the future,

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

DocuSign Envelope ID: 231AA92C-307C-4531-B6EE-C79E9E573FD9

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $542,621.97 |
| **Finance Charge.** The dollar amount the loan will cost you. | $217,999.17 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $318,072.05 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 3.839 % |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 66.835 % |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
[X] state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
[ ] state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | Acopia Home Loans | | | Properties of the Villages Inc. | Peninsula Land and Title |
| **Address** | 10570 S. US Highway One, Suite #102 Port St Lucie, FL 34952 | | | 2757 Glen Hollow Way The Villages, FL 32162 | 950 Lakeshore Drive The Villags, FL 32162 |
| **NMLS ID** | 4664 | | | | |
| **FL License ID** | MLD1224 | | | CQ1002909 | CC150486 |
| **Contact** | James M Cannata | | | Katie Crane | Ronda Carroll |
| **Contact NMLS ID** | 328552 | | | | |
| **Contact FL License ID** | LO8495 | | | SL3467424 | |
| **Email** | jcannata@acopiahomeloans.com | | | Katie.Crane@TheVillages.com | Ronda.Carroll@pltitle.com |
| **Phone** | 772-236-3007 | | | 352-446-2317 | 352-753-4690 |

DocuSign Envelope ID: 231AA92C-307C-4531-B6EE-C79E9E573FD9

## Addendum to Closing Disclosure

*This form is a continued statement of final loan terms and closing costs.*

**Confirm Receipt**

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

DocuSigned by:

*Jed Alan Graham*                                    **1/18/2022**

Jed Alan Graham                                          DATE


Michele Graham                                           DATE

CLOSING DISCLOSURE · GTRIDCDWS_S
01/18/2022 03:26 PM PST

LOAN ID # ████7122
GTRIDCDWSS (PRE)