*Graham v. PNC Bank, N.A., et al.*                                    *Case No. 5:26-cv-00054-AGM-PRL*

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

Case No.: 5:26-cv-00054-AGM-PRL


JED GRAHAM,

    Plaintiff,


v.


ACOPIA, LLC; PNC BANK, NATIONAL

ASSOCIATION; FEDERAL NATIONAL MORTGAGE

ASSOCIATION ("FANNIE MAE"); and any and all

SUCCESSOR ENTITIES, SERVICERS, ASSIGNEES,

OR TRANSFEREES,

    Defendants.

_____/


## PLAINTIFF'S OPPOSITION TO DEFENDANT PNC BANK,

## NATIONAL ASSOCIATION'S AMENDED MOTION TO DISMISS

### [DKT. 30]


### INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Middle District of Florida Local Rule

3.01(c), Plaintiff Jed Graham, M.D. respectfully submits this Opposition to PNC Bank, National

1

Association's Amended Motion to Dismiss [Dkt. 30]. PNC's motion fails on threshold, procedural, and substantive grounds and should be denied in its entirety.

**1. Threshold—The Motion Is Premature and Should Be Denied Pending the Unopposed Motion to Amend.** Plaintiff's Motion for Leave to File a Second Amended Complaint [Dkt. 25] is pending and unopposed. PNC's lead counsel confirmed in writing: "we do not object to your motion for leave to amend." Dkt. 25 at ¶11. The SAC is already before the Court as Exhibit A to Dkt. 25, and every deficiency PNC identifies in Dkt. 30 is addressed in that pleading. A motion to dismiss directed at a complaint the plaintiff has sought leave to supersede, and which the defendant does not oppose superseding, is an inefficient use of judicial resources and should be denied pending the amendment.

**2. Shotgun Pleading—Leave to Amend Is Required.** Even if the Amended Complaint were a shotgun pleading, Eleventh Circuit precedent requires the district court to provide at least one opportunity to amend before dismissal with prejudice. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). The SAC submitted with Dkt. 25 is that cure. Dismissal with prejudice is not warranted.

**3. Substantive Grounds—Each Claim Is Well-Pleaded.** The Amended Complaint alleges that PNC is collecting monthly mortgage payments on a property in The Villages, Florida, while being unable to produce any authenticated documentation establishing an unbroken chain of authority from the original lender. PNC's co-defendant, Acopia, LLC, made an unconditional, irrevocable, on-the-record disclaimer of any interest in the property. Acopia's own MERS filing submitted as Dkt. 17, Exhibit A—Acopia's own court submission—reflects entries consistent with a third-party transfer of the note as early as March 2022, nearly three years before PNC claimed an "acquisition." PNC has never identified the current owner of the loan, has never produced a § 1641(g) notice for any ownership transfer, and cannot establish through any admissible source that it has a lawful right to collect. PNC's motion selectively addresses each count in isolation and does not engage with this core fact pattern.

## LEGAL STANDARD

4. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading standard demands only that the complaint contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts additionally construe pro se pleadings liberally, holding them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ARGUMENT

## I. THE MOTION TO DISMISS SHOULD BE DENIED AS PREMATURE PENDING PLAINTIFF'S UNOPPOSED MOTION TO AMEND [DKT. 25].

5. Pursuant to Federal Rule of Civil Procedure 15(a)(2), leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). No countervailing factor— undue delay, bad faith, prejudice, or futility—exists here. PNC did not oppose the pending Motion to Amend [Dkt. 25], and its lead counsel confirmed in writing that PNC "does not object" to the amendment. Dkt. 25 at ¶11.

**5a. Jurisdictional and Venue Language—Technicality Cured by the SAC.** To the extent PNC argues that Dkt. 22's state-court jurisdictional citations (Fla. Stat. § 26.012) and venue reference (Fla. Stat. § 47.011) defeat federal subject-matter jurisdiction, the argument fails. Federal subject-matter jurisdiction vested at removal under 28 U.S.C. § 1441(a) and is independently supported by federal question jurisdiction under 28 U.S.C. § 1331 for the TILA, RESPA, and FDCPA counts, with supplemental jurisdiction over state-law counts under 28 U.S.C. § 1367. Venue is proper by virtue of the removal itself. The state-court citations are a technical artifact of the pre-removal

3

filing that the Second Amended Complaint corrects; they do not divest this Court of the jurisdiction PNC itself invoked.

6. When a motion for leave to amend is pending, a motion to dismiss directed at the complaint proposed to be superseded is properly denied as premature. *See Strickland v. City of Pensacola*, No. 3:14-cv-407, 2014 WL 6886338, at *1 (N.D. Fla. Dec. 5, 2014) (denying motion to dismiss as moot upon granting leave to amend); *Williams v. Board of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1292 (11th Cir. 2007) (leave to amend moots Rule 12(b)(6) challenge to original pleading). Here, the Court should grant the unopposed Dkt. 25 and deny PNC's Dkt. 30 as moot, or in the alternative deny Dkt. 30 without prejudice with leave for PNC to file a renewed motion directed at the Second Amended Complaint.

7. The SAC submitted with Dkt. 25 resolves the core deficiencies PNC identifies: (a) drops the FDCPA count; (b) substitutes Federal National Mortgage Association for the incorrectly named party; (c) provides defendant-specific factual allegations against PNC separately from those against Acopia; (d) eliminates catch-all incorporation; and (e) expands the allonge challenge to three grounds: chain-of-custody failure, the document's suspicious emergence forty-seven months post-closing, and failure to satisfy Fla. Stat. § 673.2041's affixation requirement. PNC consented to the SAC in writing and cannot challenge its sufficiency here.

## II. EVEN IF THE AMENDED COMPLAINT CONSTITUTES A SHOTGUN PLEADING, DISMISSAL WITH PREJUDICE IS NOT AVAILABLE.

### A. The Eleventh Circuit Requires Leave to Amend Before Dismissal With Prejudice.

8. Pursuant to the Eleventh Circuit's rule in *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018), "[w]hen a district court dismisses a complaint that it finds to be a shotgun pleading, it must give the plaintiff at least one chance to re-plead before dismissing the action with prejudice." PNC's motion seeks dismissal with prejudice. Dkt. 30 at 14. That relief is categorically unavailable on a first-time shotgun dismissal, and PNC does not acknowledge *Vibe Micro* or its holding. Because the Amended Complaint has not previously been dismissed as a shotgun

pleading, *Vibe Micro* independently requires that Plaintiff receive an opportunity to cure. The SAC submitted with Dkt. 25 is that cure.

**9.** PNC further did not identify specific deficiencies Plaintiff could have corrected before PNC filed its motion. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014). The complaint's background section contains specific factual allegations: PNC began servicing in December 2024 pursuant to a December 17, 2024 transfer notice; Acopia originated the loan on February 2, 2022; Acopia's own MERS filing [Dkt. 17, Ex. A] reflects a prior ownership transfer as early as March 2022; and PNC's QWR response [Dkt. 27-1] claims an "acquisition" nowhere reflected as an ownership transfer in that same MERS chain. These are specific, documented facts upon which each count depends.

**9a. PNC's Shotgun Authorities Are Distinguishable.** PNC relies on *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), for the proposition that shotgun pleadings warrant dismissal. But *Weiland* itself identifies four categories of shotgun pleadings and does not hold that every imperfect pleading requires dismissal with prejudice. Id. at 1321–23. Plaintiff's Amended Complaint provides a factual background section identifying specific conduct by PNC—the December 2024 transfer notice, the September 2025 QWR response, the absence of any allonge—followed by counts incorporating those facts. Any structural deficiency in the incorporation-by-reference format is cured in the SAC.

### B. The Amended Complaint Identifies PNC-Specific Conduct.

**10.** Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint's background allegations identify PNC-specific conduct: PNC began collecting payments in December 2024; PNC's September 26, 2025 QWR response claims an "acquisition" contradicted by co-defendant Acopia's own MERS filing; and the allonge supporting PNC's authority claim appeared for the first time in this litigation, absent from both Plaintiff's wet-ink closing package and PNC's own 53-page QWR production. These are specific, documented facts. The SAC

submitted with Dkt. 25 cures whatever structural deficiencies remain, and the Court should allow it rather than dismiss with prejudice.

## III. COUNTS I AND III STATE A JUSTICIABLE CLAIM FOR DECLARATORY RELIEF BECAUSE THERE IS A PRESENT, SUBSTANTIAL CONTROVERSY ABOUT PNC'S AUTHORITY TO COLLECT.

### A. PNC Is Currently Collecting Payments, Creating a Live Controversy.

11. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights of any party to an "actual controversy." The Supreme Court has defined the threshold as "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). PNC is currently demanding monthly mortgage payments from Plaintiff on a property in The Villages, Florida. That ongoing collection activity under disputed authority satisfies the immediacy and reality requirements of the Declaratory Judgment Act.

12. PNC's own filings demonstrate the controversy. PNC's September 26, 2025 QWR response, filed as Exhibit A to PNC's original motion [Dkt. 27-1], asserts PNC "acquired" the loan. Yet PNC's co-defendant Acopia's own filed Exhibit A (MERS report, Dkt. 17)—admissible as a party admission under FRE 801(d)(2)—reflects MERS entries consistent with a prior ownership transfer as of March 2022, and PNC's own January 2025 MERS entry is titled "Transfer Seasoned Servicing Rights," not an acquisition of ownership. PNC has not explained how it "acquired" a loan whose chain, as reflected in its own co-defendant's filed exhibit, shows a prior transfer PNC has never identified. This internal contradiction between PNC's "acquisition" claim and the filed MERS chain is the paradigm of a "substantial controversy between parties having adverse legal interests." *MedImmune*, 549 U.S. at 127.

**13.** Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration that PNC lacks a presently enforceable interest in the property—not merely a ruling about document-production obligations. This is a distinct claim from demanding the original note in a vacuum. Plaintiff is asking the Court to declare whether PNC's claimed authority is legally valid given the documented contradictions in the record.

**13a. PNC's Declaratory Judgment Authorities Are Distinguishable.** *Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632 (11th Cir. 2015), which PNC cites, involved a plaintiff who sought to use a potential statute-of-limitations bar as a sword against future enforcement—a speculative future controversy. Here, the collection is ongoing and the contradictions in the record are documented and present. *Burnette v. Nationstar Mortg., LLC*, No. 8:20-cv-742, 2020 WL 5633202 (M.D. Fla. Sept. 21, 2020), addressed a declaratory judgment claim seeking a determination of document sufficiency in the abstract. This case involves documented contradictions between the servicer's own "acquisition" claim and the originator's filed MERS records—factual disputes that go to the validity of PNC's authority to collect, not merely document sufficiency.

**13b. PNC's "Acquisition" Claim Is Unauthenticated.** PNC's "acquisition" claim rests on a QWR response [Dkt. 27-1] signed only by initials "AH" with no name, title, or sworn foundation—unauthenticated under FRE 901(a) and lacking FRE 602 personal knowledge. Under *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), the Court cannot credit PNC's disputed, unauthenticated "acquisition" claim at the pleading stage.

### B. The Allonge Defects Create an Independent Live Controversy.

**14.** Pursuant to Florida Statutes § 673.2041, an allonge "must be so firmly affixed to the instrument that it becomes a part thereof." The allonge at issue did not appear until Acopia filed it as Exhibit B to its Amended Motion to Dismiss [Dkt. 17] in February 2026—forty-seven months after the loan closing on February 2, 2022, and more than a year after PNC's own 53-page QWR response in September 2025 (filed as Exhibit A to PNC's original motion [Dkt. 27-1]), which contained no allonge. PNC has not explained how an allonge purportedly dated February 2, 2022 (closing day) was absent from the entire wet-ink closing package delivered to Plaintiff and absent from PNC's

7

own QWR production, but appeared for the first time as litigation commenced. No witness has been identified with personal knowledge of its creation, affixation, or chain of custody. Under FRE 901 and FRE 803(6), the allonge remains unauthenticated; it cannot be considered on a Rule 12 motion and its disputed status creates a live controversy that supports, rather than undermines, the need for declaratory relief.

## IV. COUNT II STATES A VALID QUIET TITLE CLAIM BECAUSE THE DECEMBER 2024 ACOPIA-TO-PNC "GRANT" IS VOID AB INITIO UNDER THE DOCTRINE OF NEMO DAT.

### A. A Void Instrument—Not Merely a Voidable or Improper Assignment—Constitutes a Cloud on Title.

15. The documented chain of title reveals the following undisputed sequence of events:

(a) **February 2, 2022:** Acopia, LLC originates the mortgage loan on 6234 Danielson Loop, The Villages, FL 32163, Sumter County.

(b) **March 2022:** Acopia's own MERS filing [Dkt. 17, Ex. A]—admissible as a party admission under FRE 801(d)(2)—reflects entries consistent with a transfer of the note to a third party.

(c) **September 2025:** PNC's 53-page QWR response [Dkt. 27-1] claims PNC "acquired" the loan but identifies no owner, produces no endorsement chain, and contains no allonge.

(d) **December 2024–January 2025:** PNC's MERS entry is titled "Transfer Seasoned Servicing Rights," not an ownership transfer.

(e) **February 2026:** An allonge purportedly dated February 2, 2022, appears for the first time as Exhibit B to Acopia's Amended Motion to Dismiss [Dkt. 17]—forty-seven months after closing.

(f) **No recorded assignment:** No recorded assignment from Acopia, MERS, or any predecessor to PNC appears in the Official Records of Sumter County, Florida.

*Graham v. PNC Bank, N.A., et al.*                              *Case No. 5:26-cv-00054-AGM-PRL*

**16.** Pursuant to Florida's quiet title statute, Fla. Stat. § 65.061, a party may bring an action to remove a cloud on title when any instrument creates a claim to the property that is void. PNC's authorities address voidable assignments—instruments that are merely improper or unrecorded, but made by a party with the authority to make them. *See Fontaine v. JP Morgan Chase Bank, N.A.*, No. 3:16-CV-1301, 2017 WL 9398637, at *7 (M.D. Fla. July 26, 2017) (unrecorded or improper assignment); *Roder v. RH Funding Co.*, 2012 WL 6799690, at *4 (M.D. Fla. Dec. 10, 2012) (defect in securitization chain). Those cases do not address the circumstance here: a purported conveyance made by an entity that held no interest to convey.

**17.** The doctrine of *nemo dat quod non habet*—no one can give what they do not have—is foundational to property and commercial law. Acopia's own MERS filing [Dkt. 17, Ex. A] reflects entries consistent with Acopia's divestiture of any interest in the note as early as March 2022, nearly three years before Acopia purported to convey that interest to PNC in December 2024. Acopia's December 2024 conveyance is void ab initio because the grantor demonstrably held nothing to convey. A void instrument is a legal nullity; it creates a cloud on title because it records a claim of authority upon which PNC is currently acting. PNC did not address the *nemo dat* argument or Acopia's own documented divestiture in its motion.

**17a.** Acopia's own amended motion to dismiss [Dkt. 17] states an unconditional, irrevocable disclaimer of all interest in the property. If Acopia has no interest—as it affirmatively represents on the court record—then the December 2024 instrument purporting to grant Acopia's rights to PNC conveyed nothing. PNC's claimed authority traces to a grantor that simultaneously disclaims having any authority to give.

**17b. No Recorded Assignment—Independent Cloud on Title.** Under Fla. Stat. § 701.02, a mortgage assignment must be recorded to provide constructive notice. No recorded assignment from Acopia, MERS, or any predecessor to PNC appears in the Official Records of Sumter County. PNC's chain of authority rests on unrecorded, unverified internal documents—none bearing an FRE 901 authentication foundation—which independently establishes the cloud on title supporting Count II.

9

**B. Plaintiff Has Standing to Challenge a Void Instrument; PNC Cannot Qualify as a Holder in Due Course.**

**18.** The rule that a non-party lacks standing to challenge an assignment applies only to voidable assignments—instruments made by a party with authority to act. *Bank of New York Mellon v. Lopez*, 408 So. 3d 773, 776 (Fla. 4th DCA 2025), which PNC cites, addressed challenges to endorsements made by parties who held the note at the time of endorsement. Here, Plaintiff challenges a conveyance as void because the grantor held nothing—a categorically different question. A void instrument is a legal nullity from its inception and need not be set aside by a court; any affected party may raise its nullity. *See Deutsche Bank Nat'l Trust Co. v. Clarke*, 87 So. 3d 58, 61 (Fla. 4th DCA 2012); *see also Dupree v. Fed. Nat'l Mortg. Ass'n*, No. 3:18-cv-1279-J-34JBT, 2019 WL 3226893, at *5 (M.D. Fla. July 17, 2019) (permitting quiet title claim to proceed where plaintiff alleged the assignment was void because the assignor lacked authority to convey).

**18a.** *Taharra Assets, LLC v. Byrd*, No. 4D2023-1745 (Fla. 4th DCA 2024), cited by PNC for the proposition that quiet title claims fail absent proof of superiority, involved a plaintiff who could not demonstrate any defect in the defendant's chain of title. Here, the defect is documented on the court record: Acopia's own filed MERS report [Dkt. 17, Ex. A] shows a March 2022 transfer, Acopia simultaneously disclaims all interest, and no recorded assignment bridges the gap between Acopia's divestiture and PNC's claimed authority. Plaintiff need not prove superior title; Plaintiff need only demonstrate that PNC's claimed instrument is a legal nullity—which Acopia's own court filings establish.

**19.** PNC additionally argues the note "remains a valid and enforceable lien" because the debt is unpaid. Dkt. 30 at 7 (citing *Dixon v. Green Tree Servicing*). That argument does not engage with Plaintiff's claim. Plaintiff does not dispute the existence or validity of the underlying debt, the original promissory note, or the original mortgage. Plaintiff challenges the derivative instrument— the December 2024 Acopia-to-PNC conveyance—as a void nullity that clouds title by recording a false claim of authority. Whatever entity holds the original lien, Acopia's own filed documents establish that Acopia had divested itself of any interest well before December 2024. The December

10

2024 instrument is void because it purports to convey rights that Acopia's own court submissions confirm Acopia no longer possessed. These are two separate instruments. PNC did not address the distinction.

**19a. PNC Cannot Qualify as a Holder in Due Course.** Under Fla. Stat. § 673.3011, a holder in due course must take without notice of any claim or defense. "Notice" under § 673.2021 exists when the holder "has reason to know" of a defect. The allonge defects and chain-of-custody failures detailed in ¶14, supra, together with Acopia's MERS filing [Dkt. 17, Ex. A] reflecting entries inconsistent with PNC's claimed acquisition, independently establish that PNC had reason to know of defects in the chain of title. An acquiring party who does not account for such discrepancies does not take "without notice." Holder in due course status is unavailable.

## V. COUNT IV STATES A VALID RESPA CLAIM: ELEMENT-BY-ELEMENT ANALYSIS.

**20.** To state a claim under 12 U.S.C. § 2605(e), a plaintiff must allege: (1) a qualified written request was sent to the servicer; (2) the request related to servicing of the loan; (3) the servicer received the request; and (4) the servicer failed to provide an adequate response within the statutory timeframe. Each element is satisfied here.

### A. Element One: Plaintiff Sent a Qualified Written Request.

**21.** Plaintiff sent a written request to PNC Bank, Customer Service, PO Box 1820, Dayton, OH 45401-1820, seeking a full accounting of all payments received and applied, identification of the loan's owner, and the complete chain of endorsement. This constitutes a "qualified written request" under 12 U.S.C. § 2605(e)(1)(B) because it included "a statement of the reasons for the belief of the borrower . . . that the account is in error" and "sufficient detail" regarding the information sought. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016) (setting out QWR requirements).

### B. Element Two: The Request Related to Loan Servicing.

**22.** Pursuant to 12 U.S.C. § 2605(i)(3), "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest." The QWR requested a full accounting of all payments received and applied—squarely within that definition. Moreover, 12 U.S.C. § 2605(e)(2)(A) independently requires a servicer, in response to any QWR, to provide "the name and address of, and other relevant contact information for, the owner or assignee of the loan." Congress's explicit inclusion of loan-owner identification as a mandatory QWR response item confirms that such a request is within RESPA's scope. PNC's motion did not address this statutory provision.

### C. Element Three: PNC Received the QWR.

**23.** PNC's own September 26, 2025 response letter, filed as Exhibit A to PNC's original motion [Dkt. 27-1], states: "On September 16, 2025, and September 22, 2025, PNC received your correspondences dated September 12, 2025, and September 18, 2025, respectively." That is an unambiguous, written, on-the-record acknowledgment that PNC received the QWR on September 22, 2025. A party cannot simultaneously argue in a court filing that its obligations were never triggered while pointing to an exhibit in which it confirmed the date it received the triggering document.

**23a. PNC's Designated-Address Defense Fails on the Record.** PNC's reliance on *Bivens v. Bank of America, N.A.*, 868 F.3d 915, 919 (11th Cir. 2017), is inapposite. *Bivens* requires that a servicer "designate a particular address" and that the borrower "fail[] to send the QWR to that address." 868 F.3d at 919. It does not address a servicer whose written communications consistently feature the general customer service address (Box 1820) as the primary contact, with the QWR-designated address (Box 8807) disclosed only in recurring fine-print footer boilerplate. PNC's December 18, 2024 Notice of Servicing Transfer prominently identifies Box 1820 under the heading "New Servicer: On or After (January 1, 2025)." Box 8807 appears only in a single-sentence small-print footer. Every subsequent PNC letter—the December 28, 2024 payment confirmation, the February 11, 2025 email acknowledgment, and the February 12, 2025 insurance notice—bears Box 1820 on the letterhead. Whether a single-sentence footer—never identified on any letterhead and never the

subject of a standalone notice—satisfies Regulation X's requirement that a designation be "reasonably calculated to reach the borrower," 12 C.F.R. § 1024.35(c), is at minimum a disputed factual question inappropriate for Rule 12(b)(6) resolution.

**23b. Additional RESPA Authorities Cited by PNC Are Distinguishable.** *Hudgins v. Rushmore Loan Mgmt. Servs., LLC*, No. 8:18-cv-2465, 2019 WL 1429577 (M.D. Fla. Mar. 29, 2019), dismissed a RESPA claim where the borrower sent the QWR to an entirely unrelated address with no basis for believing it would reach the servicer. Here, Plaintiff used the address PNC itself prominently designated in its servicing transfer notice. *Helman v. Bank of America, N.A.*, No. 6:14-cv-86, 2014 WL 2198742 (M.D. Fla. May 27, 2014), involved a failure to allege receipt at all. Here, PNC's own exhibit confirms receipt on September 22, 2025.

### D. Element Four: PNC Failed to Provide an Adequate Response.

**24.** Under 12 U.S.C. § 2605(e)(2), upon receipt of a QWR, a servicer must within thirty days: (A) provide the name and contact information of the owner or assignee of the loan; (B) provide a statement of the reasons the servicer believes the account is correct; or (C) provide the information requested. PNC's September 26, 2025 response [Dkt. 27-1] fails on each subpart:

> **(A) Owner identification:** The response asserts PNC "acquired" the loan but names no owner, identifies no chain of endorsement, and produces no allonge. If PNC is the owner, it did not state so clearly. If PNC is the servicer for an undisclosed owner, it failed to identify that owner as required.

> **(B) Account accuracy:** The response provided no statement of reasons the account is correct or that PNC's authority is valid in light of Plaintiff's inquiry about the chain of title.

> **(C) Information requested:** The QWR sought the complete chain of endorsement and a full payment accounting. The response produced neither.

**25.** PNC's motion did not address whether its September 2025 response was adequate under any of the three statutory subparts. The motion focuses entirely on the address defense and does not engage with the substance of the RESPA violation. That failure alone warrants denial.

## VI. COUNT V IS VOLUNTARILY WITHDRAWN IN THE PROPOSED SECOND AMENDED COMPLAINT; THE COURT SHOULD DENY PNC'S MOTION AS MOOT.

26. Plaintiff acknowledges that under *Hendrix-Smith v. JP Morgan Chase Bank, N.A.*, No. 20-10831, 2021 WL 4059784, at *3 (11th Cir. Sept. 7, 2021), a servicer who acquired a loan before default is excluded from the FDCPA's definition of debt collector. Because PNC began servicing in December 2024 before any default is established, Plaintiff has withdrawn the FDCPA count in the SAC submitted with Dkt. 25. The appropriate disposition is denial of PNC's motion as moot pending the amendment.

## VII. COUNT VI STATES A VALID TILA CLAIM: ELEMENT-BY-ELEMENT ANALYSIS.

27. To state a claim under 15 U.S.C. § 1641(g)(1), a plaintiff must allege: (1) the mortgage loan was "sold or otherwise transferred or assigned to a third party"; (2) the new owner or assignee failed to "notify the borrower in writing of such transfer"; and (3) the notice was not provided "not later than 30 days after the date on which" the transfer occurred. Each element is satisfied under either of two alternative theories.

### A. Fork One: The 2022 Ownership Transfer Reflected in Acopia's MERS Filing.

28. Acopia's own MERS filing submitted as Dkt. 17, Exhibit A—admissible as a party admission under FRE 801(d)(2)—reflects MERS entries consistent with a note ownership transfer as early as March 2022. PNC correctly notes that § 1641(g) applies to ownership transfers, not servicing transfers. *Giles v. Wells Fargo Bank, N.A.*, 519 F. App'x 576, 578 (11th Cir. 2013). However, PNC's argument rests on a misidentification of which transfer triggers the claim. The 2022 ownership transfer reflected in Acopia's MERS filing is the triggering event. Plaintiff does not contend he can identify the transferee from this record alone. What is established—from Acopia's own filing—is that an ownership transfer occurred. No § 1641(g) notice of any such transfer was ever provided to Plaintiff by Acopia, PNC, or anyone else.

### B. Fork Two: PNC's Own December 2024 "Acquisition."

14

**29.** PNC's QWR response [Dkt. 27-1] asserts that PNC "acquired" the loan from Acopia. If that claim is accurate, § 1641(g) applies directly to PNC's own December 2024 acquisition, requiring a written ownership-transfer notice to Plaintiff within 30 days. PNC has produced no such notice. PNC's own QWR response filed as Dkt. 27-1—a 53-page document package PNC submitted as its own exhibit—contains no § 1641(g) notice.

### C. PNC Cannot Escape TILA Liability Under Either Fork.

**30.** PNC's reliance on Plaintiff's own allegation that "PNC is the loan servicer" places PNC in an untenable position. If PNC received only servicing rights and not ownership, PNC cannot claim a right to collect under the note as a "holder" under Fla. Stat. § 673.3011. A servicer collecting on behalf of an undisclosed owner is doing so as agent for that undisclosed owner. The critical question is not who the owner is—it is whether Plaintiff was ever notified of any ownership transfer under § 1641(g), and whether PNC complied with its obligation under 12 U.S.C. § 2605(e)(2)(A) to identify that owner in response to the QWR.

**30a.** PNC therefore cannot escape TILA liability under either characterization of its role: if "servicing only," then the pre-2025 ownership transfer reflected in Acopia's own MERS filing [Dkt. 17] triggered a § 1641(g) notice obligation that was never satisfied by whoever acquired the note; if "acquisition," then PNC's own 2024 acquisition triggered a § 1641(g) obligation that PNC has never satisfied. Under either fork, the TILA violation is established and the appropriate party bears strict-liability statutory damages under 15 U.S.C. § 1640(a)(2)(A)(iv)—not less than $400 and not more than $4,000 per violation, plus costs and attorney fees under § 1640(a)(3)—without any requirement to prove actual harm.

**30b. The Statutory Burden Falls on the Acquiring Entity, Not the Borrower.** PNC implies Plaintiff's inability to name the current note owner defeats the TILA claim. That inverts the statute: § 1641(g) imposes disclosure on "the creditor that is the new owner or assignee"—not on the borrower to independently identify the transferee. 15 U.S.C. § 1641(g)(1); 12 C.F.R. § 1026.39(a). If Plaintiff cannot name the owner, it is because Acopia and PNC—who were required by statute to disclose that identity—failed to do so. The TILA claim does not fail because Plaintiff cannot

name the transferee; it succeeds precisely because those required to identify the transferee never did.

## CONCLUSION

31. Pursuant to Federal Rule of Civil Procedure 15(a)(2) and the Eleventh Circuit's decision in *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018), Plaintiff respectfully requests that the Court deny PNC's Amended Motion to Dismiss [Dkt. 30] for four independent reasons:

(1) The motion is premature and moot pending Plaintiff's unopposed Motion to Amend [Dkt. 25], which PNC has consented to in writing;

(2) Dismissal with prejudice is unavailable on a first-time shotgun dismissal under *Vibe Micro*, and the SAC submitted with Dkt. 25 cures any structural deficiencies;

(3) Counts I, II, III, IV, and VI each state a plausible claim on the facts alleged, with each element of each statutory claim supported by documented evidence already on the court record; and

(4) Count V has been voluntarily withdrawn, rendering PNC's request for dismissal of that count moot.

Plaintiff further respectfully requests that the Court grant the pending unopposed Motion for Leave to File a Second Amended Complaint [Dkt. 25].

In the alternative, should the Court grant any portion of the motion, Plaintiff requests that any dismissal be without prejudice and with leave to file the SAC submitted with Dkt. 25 within fourteen (14) days of such order.

Respectfully submitted,

JED ALAN GRAHAM, M.D., Pro Se
6234 Danielson Loop
The Villages, Florida 32163
jedgrahammd@gmail.com

*Graham v. PNC Bank, N.A., et al.*                                    *Case No. 5:26-cv-00054-AGM-PRL*

Phone: 864-993-1984

Date: March 25, 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 25, 2026, I filed the foregoing with the Clerk

of Court by hand delivery to the United States District Court, Middle District of

Florida, Ocala Division, 207 NW 2nd Street, Ocala, Florida 34475.

I further certify that a true and correct copy of the foregoing was served on the

following parties by United States Mail, Certified Mail, on the same date:

Ivan J. Reich, Esq.
Nason Yeager Gerson Harris & Fumero, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Counsel for Defendant Acopia, LLC

Lauren G. Raines, Esq.
Jessica N. Faucher, Esq.
Bradley Arant Boult Cummings LLP
1001 Water Street, Suite 1000
Tampa, FL 33602
Counsel for Defendant PNC Bank, N.A.

Federal National Mortgage Association ("Fannie Mae")
1100 15th Street NW
Washington, DC 2005

JED ALAN GRAHAM, M.D., Pro Se
6234 Danielson Loop
The Villages, FL 32163
Phone: 864-993-1984
Email: jedgrahammd@gmail.com
Date: April 2, 2026

17