APR 8 2026 PM1:39
FILED - USDC - FLMD - OCA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Case No.: 5:26-cv-00054-AGM-PRL

JED ALAN GRAHAM, M.D.,
Plaintiff,

v.

PNC BANK, NATIONAL ASSOCIATION;
ACOPIA, LLC; and
FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"),
Defendants.

## SECOND AMENDED VERIFIED COMPLAINT

## JURY TRIAL DEMANDED

Plaintiff JED ALAN GRAHAM, M.D., proceeding pro se, files this Second Amended Verified Complaint against Defendants PNC BANK, NATIONAL ASSOCIATION ("PNC"), ACOPIA, LLC ("Acopia"), and FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae"), and states as follows:

## NOTICE OF REMOVAL BACKGROUND

This action was originally commenced in the Circuit Court of the Fifth Judicial Circuit in and for Sumter County, Florida, Case No. 2025CA000643AXMX, filed December 16, 2025. Defendant PNC Bank, National Association removed the action to this Court on January 22, 2026 (Doc. 1, Notice of Removal). Plaintiff files this Second Amended Verified Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), superseding all prior pleadings.

## JURISDICTION AND VENUE

1

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). This action arises under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 (Count III, RESPA Violations), and the Truth in Lending Act, 15 U.S.C. § 1641(g) (Count IV, TILA Violations). Supplemental jurisdiction extends to state law claims under 28 U.S.C. § 1367(a).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy and arise from the same nucleus of operative facts.

3. Venue is proper in the United States District Court for the Middle District of Florida, Ocala Division under 28 U.S.C. § 1391(b)(2). The property that is the subject of this action (6234 Danielson Loop, The Villages, Florida 32163) is located in Sumter County, Florida, within the territorial jurisdiction of this Court. A substantial part of the events or omissions giving rise to the claims occurred in this District, including the servicing transfer, QWR response, and all notices to Plaintiff.

4. The amount in controversy exceeds $75,000, exclusive of interest and costs, calculated as follows: (a) RESPA statutory damages under 12 U.S.C. § 2605(f); (b) TILA statutory damages under 15 U.S.C. § 1640(a)(2)(B); (c) actual damages incurred by Plaintiff in responding to conflicting notices, dispute resolution, and legal consultation; (d) quiet title relief regarding the cloud on title to the Property at 6234 Danielson Loop, The Villages, Florida 32163, valued at approximately $300,000; and (e) costs and reasonable attorney's fees under RESPA § 2605(f) and TILA § 1640(a)(3).

## PARTIES

2

5. Plaintiff Jed Alan Graham, M.D. is an individual residing at 6234 Danielson Loop, The Villages, Florida 32163, in Sumter County. Dr. Graham is the mortgagor and borrower on the subject loan and the fee simple owner of the subject property. Dr. Graham has been in continuous possession of the property since closing on February 2, 2022, and has remained current on all mortgage payments at all times relevant to this action. Plaintiff has suffered concrete injury under the TILA and RESPA statutory regimes through Defendants' violations, and seeks redress within the zone of interests protected by 12 U.S.C. § 2605(e) and 15 U.S.C. § 1641(g).

6. Defendant PNC Bank, National Association is a national banking association organized under federal law, with its principal place of business in Pittsburgh, Pennsylvania. PNC was served with the Original Complaint on December 23, 2025. In its Qualified Written Request response (September 26, 2025), PNC represents itself as servicer of Plaintiff's mortgage loan. PNC has not established its authority to serve as servicer, its ownership interest in the Note, or its right to collect payments. Counsel of record: Lauren G. Raines and Jessica Noelle Faucher, Bradley Arant Boult Cummings LLP, 1001 Water Street, Suite 1000, Tampa, FL 33602.

7. Defendant Acopia, LLC is a Tennessee limited liability company with its principal place of business at 306 Northcreek Blvd, Suite 100, Goodlettsville, Tennessee 37072. NMLS ID 4664. Acopia is the original lender and original payee of the Promissory Note dated February 2, 2022, with original principal amount of $321,536.00. Acopia appears in this Court through counsel. Counsel of record: Ivan Jac Reich, Nason Yeager Gerson Harris & Fumero, P.A., 3001 PGA Boulevard, Suite 305, Palm Beach Gardens, FL 33410.

3

8. Defendant Federal National Mortgage Association ('Fannie Mae') is a government-sponsored enterprise with its principal place of business at 1100 15th Street NW, Washington, DC 20005. Upon information and belief based on the Fannie Mae Loan Lookup tool, Fannie Mae claims ownership of Plaintiff's loan. Fannie Mae has not been served as of the date of this filing. Plaintiff intends to effect service on Fannie Mae's registered agent within seven (7) days of this filing in accordance with Fed. R. Civ. P. 4(h)(1).

## PROPERTY AND LOAN DESCRIPTION

9. The real property at issue is located at 6234 Danielson Loop, The Villages, Florida 32163, in Sumter County (the 'Property').

10. On or about February 2, 2022, Plaintiff executed a Promissory Note (the 'Note') in the original principal amount of $321,536.00 in favor of Acopia, LLC as Payee, bearing a fixed interest rate of 3.750% per annum, with a monthly principal and interest payment of $1,489.08 and a maturity date of March 1, 2052. The Note is a two-page Florida Fixed Rate Note (Fannie Mae/Freddie Mac Uniform Note Form 3210). The original Note is a negotiable instrument under Fla. Stat. § 673.3101 et seq. (UCC Article 3).

11. The original loan number assigned by Acopia was 104021117122. PNC subsequently assigned internal servicer tracking number 1001212046 upon boarding the loan to its servicing system.

12. On or about February 2, 2022, Plaintiff executed a Security Instrument (the 'Mortgage') securing the Note and encumbering the Property. The Mortgage was

4

recorded in the Official Records of Sumter County, Florida.

13. The Mortgage names Mortgage Electronic Registration Systems, Inc. ('MERS'), solely as nominee for Acopia, LLC and its successors and assigns, as mortgagee. The MERS Mortgage Identification Number (MIN) is 1006646-1000146150-9. No assignment from MERS to any successor mortgagee or investor has been recorded in the Official Records of Sumter County, Florida.

14. As of the servicing transfer effective January 1, 2025, the outstanding principal balance of the Mortgage Loan was $304,729.00, as stated in PNC's servicing transfer package (December 18, 2024 Notice). Plaintiff has made all required monthly payments and remains current.

15. Prior to the January 1, 2025 servicing transfer to PNC, the loan was serviced by Acopia, LLC, with Dovenmuehle Mortgage, Inc. ('Dovenmuehle') serving as sub-servicer under a contractual agreement with Acopia. Plaintiff's monthly payments were directed to Dovenmuehle. The actual beneficial owner of the Note and Mortgage — the party receiving payments from Acopia and entitled to enforce the Note — has not been disclosed by any defendant, despite Plaintiff's request in the Qualified Written Request (¶35, infra). Fannie Mae's Loan Lookup tool identifies Fannie Mae as the owner, but neither PNC nor Acopia has confirmed this identification.

## FACTUAL ALLEGATIONS

A. Plaintiff's Current Payment Status and Triggering Event

5

16. Plaintiff has been current on all mortgage payments from origination through the present date. At no time has Plaintiff been in default on the subject loan. Plaintiff is not a delinquent borrower seeking to avoid a legitimate obligation.

17. Plaintiff's inquiry into the chain of title and standing of the parties claiming authority over his loan was triggered by PNC's late Servicing Transfer Notice. PNC's notice was dated December 18, 2024, providing only 14 days' notice before the January 1, 2025 effective date, one day short of the 15-day minimum required by 12 U.S.C. § 2605(b). The deficiencies Plaintiff discovered in the course of that investigation form the basis of this action.

B. Critical Deficiencies in the Note and Mortgage

18. Note Endorsement: The Allonge Produced in Litigation. The Promissory Note is a two-page Florida Fixed Rate Note (Fannie Mae/Freddie Mac Form 3210). The Note names Acopia, LLC as Payee. When Plaintiff submitted a Qualified Written Request on September 18, 2025, asking for documentation of chain of title and endorsements, PNC's response on September 26, 2025 (53 pages) contained NO allonge or endorsement. Plaintiff's firsthand knowledge (¶28, infra) confirms that the original closing package contained no allonge. Nearly four years after loan origination, Acopia produced an alleged allonge as Exhibit B to its Amended Motion to Dismiss (Doc. 17, filed February 20, 2026). The allonge purports to bear a blank endorsement ('Pay to the order of: [blank]'), signed by Joseph Davidson as President of Acopia, LLC, dated February 2, 2022, and marked 'Without Recourse.' Three independent defects undermine the allonge's validity and Defendants' ability to rely upon it:

6

(i) Chain of Custody Failure: PNC Bank's September 26, 2025 QWR response contains 53 pages of loan file documents but does not include the allonge. If the allonge existed and was part of the loan file transferred to PNC on January 1, 2025, PNC's servicer obligation under 12 U.S.C. § 2605 required production of the allonge in response to Plaintiff's QWR. Acopia produced the allonge nearly four years after loan origination, in litigation, as Exhibit B to its Amended Motion to Dismiss (Doc. 17, 2/20/26). Acopia's production is accompanied by NO: (A) custodian declaration attesting to the document's execution, custody, storage, condition, or chain of custody; (B) authentication affidavit verifying the signature of Joseph Davidson (purported signer); or (C) evidence that the allonge was affixed to the Note at any point. Under Federal Rule of Evidence 901(a), authentication of a writing requires evidence sufficient to support a finding that the offered evidence is what the proponent claims it to be. Acopia has provided no such evidence.

(ii) Backdating and Fabrication Concerns: Plaintiff's firsthand knowledge (detailed in ¶28, infra) establishes that: (A) at execution on February 2, 2022, the Promissory Note bore NO endorsements, stamps, notations, or transfer markings of any kind; (B) the complete wet-ink closing package (comprising 30+ original signed documents) contained no allonge or endorsement page; (C) no person other than Plaintiff executed any endorsement in Plaintiff's presence; (D) Plaintiff was not informed of the existence of any allonge; and (E) no copy of any allonge was provided to Plaintiff. The allonge produced by Acopia in February 2026 is dated

7

February 2, 2022 — the same date as Note execution — yet Plaintiff has no knowledge of this document's execution, was not present at its execution, and it was not included in materials provided to Plaintiff at closing. This chronology — a document purportedly signed on the closing date but not in possession of the borrower, not in the servicer's QWR response, and produced unexpectedly nearly four years later only in litigation — raises substantial questions of backdating and fabrication.

(iii-A) Affixation Failure: Under Fla. Stat. § 673.2041 (UCC § 3-204), an allonge must be firmly affixed to the instrument. Acopia produced the allonge only as a standalone page, as Exhibit B to its Amended Motion to Dismiss. No evidence exists in the record that the allonge is or ever was physically affixed to the original Promissory Note. Without evidence of firm physical affixation, the purported allonge is not legally part of the Note and cannot serve as a valid continuation of the Note's endorsement chain.

(iii-B) Blank Endorsement Inadequacy: Even if the allonge is authenticated and deemed affixed, it bears only a blank endorsement ('Pay to the order of: [blank]'). A blank endorsement does not name a payee or transferee. Fla. Stat. § 673.2051(2). A blank endorsement converts the Note to a bearer instrument (Fla. Stat. § 673.2051(2)), but a bearer instrument negotiated by mere delivery does not automatically establish holder status in PNC. PNC must still establish physical possession of the original Note with affixed allonge and an unbroken chain of possession from Acopia to PNC.

8

**(iii-C) Non-Cure of MERS Assignment Gap:** Even if the blank allonge is authenticated and affixed, it does not name any transferee and therefore does not cure the MERS assignment gap. MERS is recorded as mortgagee of record (¶13). No assignment from MERS to PNC or any intervening party is recorded in Sumter County Official Records. The blank allonge does not authorize MERS to assign to any particular party and does not evidence that such assignment ever occurred.

Even if the allonge were eventually authenticated, it constitutes only a blank endorsement making the Note a bearer instrument. It does not name PNC as payee, does not constitute an assignment, and does not cure the MERS assignment gap or PNC's 'acquisition' versus 'servicing transfer' contradiction. The standing challenge survives the allonge regardless of its ultimate validity.

19. Under Florida's adoption of UCC Article 3, codified at Fla. Stat. § 673.3011, a person entitled to enforce a negotiable instrument must be: (a) the holder of the instrument; (b) a nonholder in possession with the rights of a holder; or (c) a person entitled to enforce under Fla. Stat. § 673.3091 (lost, destroyed, or stolen instruments). As of the date of this Complaint, PNC has made no declaration, affidavit, or sworn testimony regarding possession of the original Note. No custodian declaration from PNC confirms that PNC possesses the original Note with affixed allonge. Absent such proof, PNC cannot satisfy Fla. Stat. § 673.3011. Standing fails whether the allonge is credited as authenticated or rejected as inadequate.

20. A 'holder' under Fla. Stat. § 671.201(21) is a person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession. Even if the allonge produced by Acopia in litigation were authenticated, it constitutes only a blank endorsement making the Note a bearer instrument payable to whoever holds the physical original. The allonge does not name PNC as payee and does not constitute an assignment. PNC has not demonstrated physical possession of an authenticated original Note bearing a properly affixed allonge.

21. PNC produced a copy of the Note in its September 26, 2025 response to Plaintiff's Qualified Written Request but did not produce the allonge. Having produced the Note without the allonge, and having no foundation to authenticate an allonge it demonstrably did not possess as part of its loan boarding package, PNC cannot claim entitlement to enforce under Fla. Stat. § 673.3011. The absence of any authenticated endorsement mechanism in PNC's own document production is fatal to PNC's standing to enforce the Note independent of the allonge's validity.

22. No Recorded Assignment of the Mortgage. MERS, Inc. remains the mortgagee of record as nominee for Acopia, LLC (MIN: 1006646-1000146150-9). Plaintiff has conducted a search of the Sumter County Official Records and has found NO recorded assignment of the Mortgage from MERS to PNC, Fannie Mae, or any other party subsequent to the original recording. Absent a recorded assignment, no successor mortgagee has acquired enforceable lien rights to the Property, and the cloud on title persists.

23. Mortgage Execution Defects. The Security Instrument suffers from execution defects that affect its enforceability:

(a) Witness Deficiency: Florida law requires two subscribing witnesses for a mortgage to be eligible for recording. Fla. Stat. § 695.01. The Security Instrument reflects only one witness signature (Christian Snead). The second witness line is blank.

(b) Systematic Jurisdiction Substitution: Multiple closing documents bearing pre-printed Florida and Sumter County designations were executed in South Carolina. Notary Christian Snead (Laurens County, South Carolina, commission expires June 7, 2029) struck through the pre-printed 'State of Florida' and 'County of Sumter' designations and substituted 'South Carolina' and 'Greenwood' in handwriting across at least four closing documents, including specifically the Mortgage acknowledgment page and the Compliance Agreement. The pattern is systematic and confirms that the closing occurred in Greenwood, South Carolina, in a setting inconsistent with the Florida-jurisdiction instruments prepared for execution.

(c) Dual Occupancy Designation Conflict: The Affidavit of Occupancy in the original closing package has both Box 1.1 (Primary Residence) and Box 1.2 (Second Home) checked simultaneously. These designations are mutually exclusive. The URLA Section 4 correctly designates the property as a Second Home, and a Second Home Rider was separately executed. The simultaneous checking of both occupancy boxes creates an internal inconsistency within the

closing package.

(d) Blank Notary Block on Signature/Name Affidavit: Plaintiff's Signature/Name Affidavit contains a completely blank notary block. No commission expiration date, notary signature, or notary seal appears on the document.

(e) Unsigned IRS Form W-9: The IRS Form W-9 included in the original closing package bears no signature from Plaintiff.

23A. Income Verification Gap in Origination Package. The closing package contains three IRS Form 4506-C IVES requests. Transcript requests were submitted for P Jones Enterprises Inc. (Form 1120, three years) and Zaplutus Enterprises LLC (Form 1065, three years). Plaintiff's personal income transcript request (Form 1040/W-2) was limited to only two years rather than three, creating an asymmetry between the business-entity transcript coverage and the personal income transcript coverage. This gap in personal income verification is a targeted discovery subject under TRID and RESPA underwriting disclosure requirements.

23B. Circular Servicing Transfer Notice in Origination Closing Package. The Notice of Servicing Transfer included in Acopia's original closing package is facially defective on its face. The document identifies Acopia, LLC as both the present servicer and the new servicer, listing identical name, address, and telephone number for each designation. The stated effective date is April 1, 2022. A servicing transfer notice that identifies the same entity as both transferor and transferee provides zero chain-of-title information to the borrower and fails to satisfy the disclosure requirements of RESPA, 12 U.S.C. § 2605(b). This origination-stage defect is independent of and cumulative to the December 2024

12

servicing transfer notice violations alleged herein.

C. Evidentiary Foundation Deficiencies in PNC's Document Production

24. PNC's September 26, 2025 document production is inadmissible absent proper foundation. PNC produced a photocopy of the Note and related loan documents. These documents originated with Acopia, LLC, a separate entity. PNC cannot authenticate Acopia's records or establish the foundational requirements for their admission under the Federal Rules of Evidence.

25. Business Records Foundation (FRE 803(6)). For PNC to introduce Acopia's loan documents as business records under Federal Rule of Evidence 803(6), PNC must produce a witness with personal knowledge of Acopia's record-keeping practices at the time of the loan's origination in February 2022. PNC, as a subsequent servicer that did not begin servicing the loan until January 2025, has no such witness and no personal knowledge of Acopia's systems, procedures, or data integrity practices. PNC cannot lay the necessary foundation to admit Acopia's records through its own custodian of records.

26. Authentication (FRE 901). Federal Rule of Evidence 901(a) requires that the proponent of evidence produce sufficient evidence to support a finding that the item is what the proponent claims it to be. PNC produced a photocopy of the Note without any certification, authentication affidavit, or testimony from a person with knowledge of the document's creation or chain of custody. The document is not self-authenticating under FRE 902. PNC, which did not produce the allonge in its QWR response, has no independent foundation to authenticate an Acopia-created document it demonstrably did not possess as part of its loan boarding package. The authentication failure extends to the

13

allonge produced by Acopia as Exhibit B to its Motion to Dismiss (Doc. 17). The allonge was produced without a certification, without an authentication affidavit, and without testimony from Joseph Davidson or any person with knowledge of the document's creation, execution, or chain of custody from the February 2022 closing through its first appearance in this litigation in February 2026.

27. Best Evidence Rule (FRE 1002). Federal Rule of Evidence 1002 requires production of the original writing to prove its content. PNC produced only a photocopy of the Note. PNC has not produced the original Note, has not explained the absence of the original, and has not established any exception under FRE 1003 or 1004 that would permit admission of the copy in lieu of the original. The location and custodian of the original Note remain unknown. The same deficiency applies to the allonge. Only a copy of the allonge appeared as a litigation exhibit attached to Acopia's Motion to Dismiss. No original allonge has been produced. Under Fla. Stat. § 673.2041, an allonge must be physically affixed to the instrument to be effective. Without production of an original allonge physically affixed to the original Note, the allonge fails both the best evidence standard and the statutory affixation requirement.

28. Plaintiff's Firsthand Knowledge (FRE 602). Plaintiff has firsthand knowledge of what he signed on February 2, 2022. Plaintiff personally executed the Note and Mortgage at the offices of Greenwood Family Practice INC, located at 805 Montague St, Suite A, Greenwood, South Carolina 29649. Plaintiff signed the Note in blue ink. The execution was witnessed and notarized by Christian Snead, Practice Manager. At the time of execution, the Note bore no endorsements, stamps, or transfer markings of any kind. No

14

other person signed, stamped, or endorsed the Note in Plaintiff's presence. Plaintiff did not receive a copy of the signed Note bearing any endorsements. The complete wet-ink original closing package delivered to Plaintiff, spanning more than thirty documents, contained no endorsement on the face, verso, or signature page of the Note and no allonge anywhere in the package. Plaintiff is competent to testify under FRE 602 as to the condition of the instrument at the time he signed it. Any endorsement or transfer marking that appears on a copy of the Note that was not present at closing would constitute evidence of alteration or fabrication. The allonge produced by Acopia is dated February 2, 2022, the same date as the closing. If the allonge existed and was executed on that date, Plaintiff did not observe it, was not informed of its existence, and did not receive a copy of it. A document purportedly executed at the same closing Plaintiff attended, which the borrower did not observe and which was not produced for nearly four years, is directly impeached by Plaintiff's firsthand testimony and provides independent grounds for a backdating and fabrication challenge under FRE 602.

29. The evidentiary deficiencies identified in paragraphs 24 through 28 above are not merely theoretical. They go to the core of PNC's and Acopia's ability to prove the validity and enforceability of the allonge and the chain of title. If Defendants cannot authenticate the documents they rely upon, including the allonge, they cannot establish the right to enforce the Note or foreclose on the Mortgage. These deficiencies should be resolved before any Defendant is permitted to assert rights against Plaintiff or the Property.

D. Servicing Transfer and PNC's Self-Impeaching Admissions

15

30. On or about December 18, 2024, PNC issued a Welcome Letter and Servicing Transfer Notice to Plaintiff stating that 'the servicing of your mortgage is being transferred' effective January 1, 2025.

31. The Servicing Transfer Notice explicitly stated: 'Nothing else about your mortgage will change.'

32. The servicing transfer from the prior servicer to PNC became effective on January 1, 2025. PNC's internal records reflect that the loan was boarded to PNC's system on January 3, 2025 (Transaction Code 142).

33. On or about December 17, 2024, Acopia issued a separate Servicing Transfer Notice identifying the transfer as from 'Dovenmuehle Mortgage, Inc., who has been subservicing your loan under a contractual agreement with Acopia, LLC' to PNC Bank, N.A., effective January 1, 2025. Upon information and belief, Plaintiff never received this notice from Acopia. Plaintiff contacted PNC by telephone in January 2025 to complain about the lack of any advance notice of the servicing transfer, providing contemporaneous evidence of non-receipt of the Acopia transferor notice.

34. On September 18, 2025, Plaintiff sent PNC a Qualified Written Request ('QWR') pursuant to 12 U.S.C. § 2605(e), requesting documentation establishing PNC's authority to enforce the Note and Mortgage, including any endorsements, assignments, and identification of the Note owner.

35. On September 26, 2025, PNC responded to Plaintiff's QWR with a 53-page document package. This response contained critical admissions and failures:

(a) PNC produced a copy of the Note but did not produce any allonge or endorsement; Acopia first produced the allonge nearly four years later as a litigation exhibit;

(b) PNC provided no assignment documentation;

(c) PNC claimed the information regarding the Note owner was 'confidential, irrelevant, and privileged';

(d) PNC used the word 'acquired' while simultaneously providing documentation showing only a 'servicing transfer' where 'nothing else will change'; and

(e) PNC's response was signed only with initials ('KJE') rather than a verified signature from an authorized representative.

36. On October 16, 2025, Plaintiff filed CFPB Complaint #251016-25043199 regarding PNC's failure to establish its authority to service the loan and identify the Note owner.

37. On December 10, 2025, CFPB closed the complaint and issued PNC's final response. PNC confirmed its servicer status but made no affirmative ownership claim, instead employing evasive language that neither confirmed nor denied ownership.

38. The Irreconcilable Contradiction. PNC's positions are mutually exclusive and internally contradictory. PNC cannot simultaneously claim 'acquisition' of the loan while documenting only a 'servicing transfer' in which 'nothing else about your mortgage will change.' These locked-in admissions establish that PNC is merely a servicer with no enforceable interest in the Note or Mortgage.

39. Fannie Mae's official Loan Lookup tool (available at fanniemae.com) identifies Fannie Mae as claiming ownership of the loan and identifies PNC Bank, N.A. as the

'Mortgage Servicer,' defined as 'The Company that collects your monthly payment.' This confirms PNC's role as a payment collector, not an owner or holder entitled to enforce.

E. RESPA Transfer Notice Violations

40. Under 12 U.S.C. § 2605(b)(2)(B), a transferee servicer must provide the borrower with written notice of a servicing transfer not less than 15 days before the effective date of the transfer.

41. Under 12 U.S.C. § 2605(b)(1), the transferor servicer must also provide the borrower with written notice of a servicing transfer not less than 15 days before the effective date. Acopia's purported notice was dated December 17, 2024, only 14 days before the January 1, 2025 effective date, one day short of the statutory minimum. Moreover, Plaintiff never received the Acopia notice, as alleged in paragraph 33 above. The transferor notice obligation under § 2605(b)(1) is independent of the transferee notice obligation under § 2605(b)(2)(B) that PNC separately violated.

42. PNC's Servicing Transfer Notice was dated December 18, 2024, and the transfer became effective January 1, 2025, a period of only 14 days.

43. PNC's notice was therefore one day short of the statutory requirement, constituting a violation of 12 U.S.C. § 2605(b).

## COUNT I — DECLARATORY JUDGMENT

(Against All Defendants)

44. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

18

45. An actual controversy exists between Plaintiff and Defendants regarding Defendants' rights, if any, to enforce the Note and Mortgage encumbering Plaintiff's Property.

46. PNC Bank, N.A. claims the right to collect mortgage payments from Plaintiff yet has failed to establish any legally cognizable basis for such claims. PNC has produced no authenticated endorsement, no recorded assignment, and no authenticated documentation sufficient to establish its standing. The allonge produced by Acopia in litigation is unauthenticated, was not produced in PNC's QWR response, and does not name PNC as payee.

47. The only purported transfer mechanism for the Note is an allonge produced by Acopia in litigation bearing a blank endorsement dated February 2, 2022, which was not produced in PNC's QWR response and has not been authenticated by any person with knowledge of its creation or chain of custody. A blank endorsement does not name PNC as payee and does not constitute an assignment of the Note or Mortgage to PNC.

48. No assignment of the Mortgage from MERS to PNC or any other party has been recorded in the Official Records of Sumter County, Florida.

49. PNC's own documents characterize its role as that of a servicer only, stating 'nothing else about your mortgage will change.'

50. PNC has refused to identify the alleged owner of the Note, claiming such information is 'confidential, irrelevant, and privileged.'

51. PNC's document production fails to satisfy the foundational requirements of the Federal Rules of Evidence for authentication (FRE 901), business records (FRE 803(6)), and best evidence (FRE 1002), as set forth in paragraphs 24 through 29 above. These

19

failures extend equally to the allonge produced by Acopia as Exhibit B to its Motion to Dismiss.

52. Plaintiff is entitled to a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that:

   (a) PNC Bank, N.A. has no enforceable interest in the Note or Mortgage;

   (b) PNC Bank, N.A. is not entitled to enforce the Note under Fla. Stat. § 673.3011;

   (c) PNC Bank, N.A. is not the holder of the Note and cannot establish holder status absent a valid endorsement;

   (d) PNC Bank, N.A. has no authority to collect payments or initiate foreclosure proceedings; and

   (e) Any party claiming an interest in the Note must establish its chain of title through valid, authenticated endorsements and recorded assignments.

## COUNT II — QUIET TITLE

(Against All Defendants)

53. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

54. Plaintiff is the fee simple owner of real property located at 6234 Danielson Loop, The Villages, Florida 32163, Sumter County.

55. Continuous Possession. Plaintiff has been in continuous, open, and exclusive possession of the Property since closing on February 2, 2022. Under Florida law, actual possession raises a presumption of ownership, and the burden shifts to any party

claiming a superior interest to demonstrate its entitlement through competent, authenticated documentation. Plaintiff's continuous possession strengthens his equitable position and underscores Defendants' failure to establish their claimed interests.

56. Defendants' claims to an interest in Plaintiff's Property constitute a cloud on title.

57. PNC Bank, N.A. claims an interest in the Property but has failed to establish its authority to enforce the Mortgage. The only purported transfer mechanism for the Note is an allonge produced by Acopia in litigation that was not included in PNC's QWR response and has not been authenticated, no assignment of the Mortgage to PNC has been recorded, and PNC's document production fails to satisfy the foundational requirements of the Federal Rules of Evidence.

58. Acopia, LLC originated the loan but has not demonstrated any current interest in the Note or Mortgage, and has not recorded any assignment to another party.

59. Fannie Mae may claim ownership of the loan but has not recorded any assignment reflecting its interest in the Official Records of Sumter County, Florida.

60. Pursuant to Fla. Stat. § 65.061, Plaintiff is entitled to a judgment quieting title to the Property against Defendants' adverse claims and removing the cloud on title created by Defendants' unfounded claims of enforcement rights.

## COUNT III — VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

(Against Defendants PNC Bank, N.A. and Acopia, LLC)

21

61. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

62. Servicing Transfer Notice Timing Violations (12 U.S.C. § 2605(b)). Both the transferor and transferee servicers failed to provide the statutorily required notice. Acopia, as transferor servicer, purportedly issued a notice dated December 17, 2024, providing only 14 days before the January 1, 2025 effective date, in violation of 12 U.S.C. § 2605(b)(1), which requires not less than 15 days' notice. Plaintiff never received this notice, as alleged in paragraph 33 above. PNC, as transferee servicer, issued its notice on December 18, 2024, also providing only 14 days, in violation of 12 U.S.C. § 2605(b)(2)(B).

62A. Origination-Stage Circular Servicing Notice. As alleged in paragraph 23B above, the Notice of Servicing Transfer included in Acopia's original closing package is independently defective under 12 U.S.C. § 2605(b), identifying Acopia, LLC as both the present servicer and the new servicer with an effective date of April 1, 2022. This origination-stage RESPA violation is cumulative to the December 2024 violations and is preserved as an independent basis for liability against Acopia.

63. QWR Response Deficiencies (12 U.S.C. § 2605(e)). Plaintiff sent a Qualified Written Request on September 18, 2025. PNC's September 26, 2025 response was substantively deficient because it:

(a) Failed to produce the allonge that Acopia later produced in litigation as Exhibit B to its Motion to Dismiss (Doc. 17, filed February 20, 2026), demonstrating that the allonge was not part of PNC's loan boarding package and was not available to PNC at the time of the QWR response;

(b) Failed to provide documentation of any assignment of the Mortgage (none exists);

(c) Refused to identify the owner of the Note, claiming such information is 'confidential, irrelevant, and privileged';

(d) Provided contradictory statements regarding 'acquisition' versus 'servicing transfer'; and

(e) Failed to identify Fannie Mae as the party claiming ownership of the Note, despite this information being publicly available through Fannie Mae's own Loan Lookup tool.

64. As a result of PNC's and Acopia's RESPA violations, Plaintiff has suffered actual damages and is entitled to statutory damages under 12 U.S.C. § 2605(f), including costs and reasonable attorney's fees.

## COUNT IV — VIOLATIONS OF THE TRUTH IN LENDING ACT

(Against Defendant PNC Bank, N.A.)

65. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

66. Under 15 U.S.C. § 1641(g), when a mortgage loan is sold or otherwise transferred or assigned, the creditor that is the new owner of the debt must notify the borrower in writing of such transfer within 30 days.

67. The notice required by 15 U.S.C. § 1641(g) must identify the new creditor and provide contact information, and is a distinct obligation from the servicer transfer notice

required under RESPA.

68. PNC's December 18, 2024 notice addressed only the servicing transfer, not any transfer of ownership. No notice of ownership transfer has been provided to Plaintiff.

69. The Fannie Mae Loan Lookup tool indicates that Fannie Mae claims ownership of Plaintiff's loan. If ownership was transferred to Fannie Mae, no creditor has provided Plaintiff with the notice required by 15 U.S.C. § 1641(g). PNC's refusal to identify the Note owner, claiming the information is 'confidential, irrelevant, and privileged,' compounds the TILA violation by actively concealing the identity of the party to whom ownership was allegedly transferred.

70. PNC has refused to identify the owner of the Note, preventing Plaintiff from determining whether any ownership transfer occurred and whether proper notice was provided.

70A. TRID/APR Audit. The Discount Point Fee Disclosure in the original closing package confirms that 0.249% discount points were paid to buy the interest rate down to 3.750%. The accuracy of the corresponding APR disclosures and Loan Estimate/Closing Disclosure figures under TRID, 12 C.F.R. § 1026.19, is a secondary discovery target and is identified herein for preservation purposes.

70B. Discovery Rule and Equitable Tolling of TILA Statute of Limitations. To the extent Defendants contend that the one-year statute of limitations under 15 U.S.C. § 1640(e) bars Plaintiff's TILA claim, Plaintiff alleges that the limitations period is subject to equitable tolling and the federal discovery rule. The ownership transfer from Acopia to Fannie Mae was never disclosed to Plaintiff by any Defendant. Plaintiff had no

knowledge and no reasonable means of discovering the TILA violation until September 26, 2025, when PNC responded to Plaintiff's Qualified Written Request by affirmatively refusing to identify the Note owner, stating that such information was "confidential, irrelevant, and privileged." PNC's active concealment of the creditor's identity prevented Plaintiff from discovering the violation. Plaintiff independently confirmed Fannie Mae's claimed ownership through the Fannie Mae Loan Lookup tool only after PNC's refusal. Plaintiff filed the original state court complaint on December 16, 2025 — less than three months after discovering the concealment and well within one year of the discovery date. The statute of limitations under § 1640(e) did not begin to run until Plaintiff knew or had reason to know of the violation, which was no earlier than September 26, 2025. See Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 708 (11th Cir. 1998) (holding TILA subject to equitable tolling; denying tolling would create "anomalous result" where "a statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar their victims' remedy"); King v. California, 784 F.2d 910, 915 (9th Cir. 1986) (TILA limitations period suspended "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures"); Jones v. TransOhio Sav. Ass'n, 747 F.2d 1037 (6th Cir. 1984) (discovery rule applies to TILA claims). PNC's affirmative refusal to identify the Note owner — labeling statutorily required information as "confidential, irrelevant, and privileged" — constitutes active concealment beyond mere nondisclosure, satisfying the equitable tolling standard. Plaintiff's claim is timely.

25

**71. As a result of PNC's TILA violations, Plaintiff is entitled to actual damages, statutory damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1640.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jed Alan Graham, M.D. respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

**(A) A declaratory judgment pursuant to 28 U.S.C. § 2201 that PNC Bank, N.A. has no enforceable interest in the Note or Mortgage, is not entitled to collect payments from Plaintiff, and has no authority to initiate or prosecute foreclosure proceedings;**

**(B) A judgment quieting title to the Property at 6234 Danielson Loop, The Villages, Florida 32163 against all claims of Defendants and removing all clouds on title;**

**(C) Actual damages suffered by Plaintiff as a result of Defendants' violations of RESPA and TILA;**

**(D) Statutory damages as permitted under RESPA (12 U.S.C. § 2605(f)) and TILA (15 U.S.C. § 1640);**

**(E) An injunction enjoining Defendants from initiating or continuing any foreclosure proceedings against the Property until such time as a valid chain of title is established through authenticated documentation;**

**(F) Costs of suit and reasonable attorney's fees to the extent permitted by law;**

**(G) Pre-judgment and post-judgment interest as permitted by law; and**

**(H) Such other and further relief as this Court deems just and proper.**

## DEMAND FOR JURY TRIAL

26

Plaintiff demands a trial by jury on all issues so triable.

## VERIFICATION

I, Jed Alan Graham, M.D., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my personal knowledge, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Executed on _April 8_, 2026.

_____
JED ALAN GRAHAM, M.D., Pro Se
6234 Danielson Loop
The Villages, FL 32163
Phone: 864-993-1984
Email: jedgrahammd@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _April 8_, 2026, I filed the foregoing with the Clerk of Court via CM/ECF, which will send electronic notification to all counsel of record.
I further certify that a true and correct copy of the foregoing was served on the following parties by United States Mail, CERTIFIED MAIL, on the same date.
Federal National Mortgage Association ('Fannie Mae')
1100 15th Street NW
Washington, DC 20005
Lauren G. Raines, Esq.
Jessica N. Faucher, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1001 Water Street, Suite 1000
Tampa, FL 33602
Counsel for Defendant PNC Bank, N.A.
I further certify that a copy was served via U.S. Mail, CERTIFIED MAIL, upon:
Ivan J. Reich, Esq.
Nason Yeager Gerson Harris & Fumero, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Counsel for Defendant Acopia, LLC

_____
JED ALAN GRAHAM, M.D., Pro Se

27