UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

JED ALAN GRAHAM, M.D., Pro Se,
       Plaintiff,
v. Case No. 5:26-cv-00054-AGM-PRL
ACOPIA, LLC; PNC BANK, NATIONAL
ASSOCIATION; FEDERAL NATIONAL
MORTGAGE ASSOCIATION (FANNIE MAE);
and any and all Successor Entities,
Servicers, Assignees, or Transferees,
       Defendants.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT ACOPIA, LLC'S**

**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**PRELIMINARY MATTER — CAPTION OF THE OPERATIVE PLEADING**

Before addressing the merits, Plaintiff notes a threshold issue with the caption of Acopia's

Motion to Dismiss (Dkt. 36). Acopia's caption names "Sallie Mae, Inc." as a defendant. Sallie Mae

is not a party to the Second Amended Complaint (Dkt. 33). The SAC replaced Sallie Mae with

Federal National Mortgage Association (Fannie Mae). Acopia's own Exhibit A to Dkt. 17 identifies

Fannie Mae — not Sallie Mae — as the investor on this loan since March 2022. Plaintiff notes the

caption discrepancy so the Court's ruling reflects the operative pleading.

**ARGUMENT**

**I. COUNT I STATES A VALID DECLARATORY JUDGMENT CLAIM AGAINST
ACOPIA**

Acopia argues that Count I should be dismissed because identifying Acopia as the original lender is insufficient for declaratory relief. (Mot. at 4–5.) The motion misstates both the allegations and the governing standard — as set out below.

## A.  The Legal Standard

Under 28 U.S.C. § 2201, a court may declare the rights and legal relations of any interested party seeking such declaration. At the 12(b)(6) stage, Plaintiff need only plead factual content allowing the court to draw the reasonable inference that declaratory relief is appropriate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The declaratory judgment statute is to be liberally construed. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

## B.  Acopia Is the Original Lender; the Law Requires Specific Evidence for the Acts Acopia Claims to Have Performed; Acopia Has Produced None of It

Acopia, LLC is identified on the face of the Note as the original Lender. That is uncontested. Acopia's motion asks this Court to accept on the pleadings that Acopia lawfully sold the Note to Fannie Mae on or about March 11, 2022 (Dkt. 17 ¶ 7) and lawfully transferred servicing to PNC on December 17, 2024. Each of those acts required specific evidence the law imposed on Acopia to produce. Acopia has produced none of it.

**To sell the Note to Fannie Mae:** Fannie Mae Selling Guide § B8-3-04 and UCC Article 3 (Fla. Stat. § 673.2041) required endorsement on the face of the Note — or an allonge permanently affixed to it — executed by a named authorized officer within the post-closing pre-delivery window, authenticated by a document custodian with personal knowledge (Fed. R. Evid. 602). Acopia produced a one-page allonge: unaffixed, blank-payee, anonymous-officer, stated closing-day (outside the § B8-3-04 window), absent from PNC's 53-page QWR response, and unsupported by any Acopia declarant.

**To transfer servicing to PNC:** Fannie Mae Selling Guide § A2-7-03 and 12 U.S.C. § 2605(b) required Note-owner authorization, post-delivery servicing-transfer documentation, 15-day advance written borrower notice, and 12 C.F.R. § 1024.33(b)(4) content compliance. Acopia's purported December 17, 2024 "Notice of Servicing Transfer" is unsigned and identifies no individual signer. Acopia did not mail it until September 25, 2025 per the Pitney Bowes postage-meter imprint on the Acopia-branded envelope, enclosed with a September 19, 2025 cover letter signed "Cheryl O., Customer Service Department" which on its face admits, "As requested, we have enclosed the following document(s): RESPA." (Ex. E; Graham Decl. ¶ 13.) The Notice references sub-servicer Dovenmuehle Mortgage, Inc. ("DMI"), yet the RESPA-required Initial Escrow Account Disclosure Statement in the closing package identified Acopia itself — at 306 Northcreek Blvd., Goodlettsville, TN 37072 — as the Servicer and nowhere disclosed DMI. (Ex. D, Initial Escrow Account Disclosure Statement, Feb. 2, 2022.)

Acopia cannot answer these gaps by invoking authority for the proposition that defendants without individualized conduct should be dismissed — because the authority Acopia cites does not exist. *Lockwood v. Chase Bank USA*, No. 3:12-cv-497-J-37MCR, 2013 WL 2150067 (M.D. Fla. May 16, 2013), does not resolve on Westlaw, does not appear under a case-name search, and the asserted docket "3:12-cv-497" returns no matching case on PACER. *Fuller v. SunTrust Bank*, 744 F. App'x 685 (11th Cir. 2018), does not exist either; the only real *Fuller v. SunTrust* case is the published 2014 ERISA decision at 744 F.3d 685, which concerns 401(k) plan fiduciary duties and statutes of limitations — not pleading sufficiency in a mortgage case. Neither of Acopia's cited authorities supports dismissal because neither corresponds to an actual decision. Acopia's acts here are specific and documented: originated the loan, executed the Mortgage, produced the Dkt. 17 allonge, filed the Disclaimer of Interest, and executed the December 17, 2024 servicing

transfer — each placing Acopia at the center of the instrument-validity and servicing-transfer disputes.

**C.  The Asserted March 11, 2022 Transfer to Fannie Mae Has No Admissible Witness and No Admissible Instrument — The Chain on Which Acopia's December 2024 Servicing Transfer Depends Is Unsupported**

Acopia's Motion at Dkt. 17 asserts at ¶ 7: "Acopia sold and assigned the Promissory Note to Fannie Mae on or about March 11, 2022 (see the MERS Report)." At ¶ 9 Acopia further asserts that "Fannie Mae as the assignee of the Promissory Note, is the party at interest." Those two allegations are the keystone of every downstream defendant's position in this litigation: they purport to establish Fannie Mae's investor status and the chain Acopia → Fannie Mae → PNC on which the December 2024 servicing transfer depends. But the allegations rest on no human witness with personal knowledge and no authenticated instrument of transfer. Acopia therefore faces a squeeze from which it cannot escape on a 12(b)(6) motion.

**The witness gap.** Under Fed. R. Evid. 602, a witness may testify to a matter only if the witness has personal knowledge of it. A corporation cannot itself perceive, remember, or testify; it acts through natural persons, and those persons must be identified. No officer, employee, or agent of Acopia has ever been identified in this case as the source of the ¶ 7 assertion. The only human being associated with ¶ 7 is Acopia's counsel, Ivan J. Reich of Nason Yeager, whose signature appears on Dkt. 17. Counsel's representation is not testimony: Florida Bar Rule 4-3.7 and the federal advocate-witness doctrine reflect the principle that a lawyer's statements in briefing are argument, not evidence. A factual allegation in an unverified pleading is not evidence; it is a representation that, under Rule 11, must have a good-faith basis, but a good-faith basis is not competent proof of the asserted fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

**The instrument gap.** "MERS" is MERSCORP Holdings, Inc. — a non-party nominee that, by its own rules, "is not a mechanism for creating or transferring liens or interests in mortgage loans"; "actual transfers" are "reflected in the public land records." MERS Membership Manual § 2.8 (2025 Ed.); see MERSCORP Holdings, About MERS FAQ (MERS is "not [a] document custodian[]"). A notation of what a member reported to MERS is not a Rule 803(6) record of an "act, event, or condition" observed by MERS, and to the extent it reflects out-of-court assertions by Acopia or Fannie Mae, those assertions are hearsay within hearsay under Fed. R. Evid. 805 with no independent exception. Fed. R. Evid. 801(c). And the *mechanism* of the asserted March 11, 2022 transfer must be a UCC Article 3 negotiation — endorsement or allonge satisfying Fannie Mae Selling Guide § B8-3-04 — and Acopia's Dkt. 17 allonge fails § B8-3-04 on five independent grounds cataloged in Subsection D below.

**The squeeze.** Acopia loses on either fork. If ¶ 7 binds, Acopia sold the Note 33 months before the December 17, 2024 servicing transfer and had no remaining authority to reassign Fannie Mae's servicing contract; § A2-7-03 required Fannie Mae's documented authorization, and PNC's 53-page QWR response contains none. *Nemo dat quod non habet.* If ¶ 7 does not bind because the transfer cannot be authenticated, the Acopia → Fannie Mae → PNC chain collapses at its first link. Either way, Count I states a claim.

**D.  The Note Was Not Executed in Conformity with Fannie Mae's Endorsement Protocol, and the Allonge Itself Is Defective**

The instrument whose absence leaves Subsection C's asserted March 11, 2022 transfer without a vehicle is the same instrument addressed here: a § B8-3-04-compliant endorsement or allonge. Under UCC Article 3 as adopted at Fla. Stat. § 673.2041, an allonge is a lawful endorsement only when permanently affixed to the Note. Fannie Mae Selling Guide § B8-3-04,

*Note Endorsement*, directs that the endorsement be placed on the Note; an allonge is a fallback permitted only when the Note lacks space — and only when permanently affixed. Because Acopia contracted to deliver this loan to Fannie Mae, § B8-3-04 was the governing protocol. Acopia failed it in two distinct, independently sufficient ways.

**1.  The Dkt. 17 Allonge Bears a Closing-Day Date Outside § B8-3-04's Post-Closing Window, and Both Disclosure Tiers — Closing-Package and RESPA QWR — Are Silent.** Plaintiff does not contend an allonge should have appeared in his closing package. Under § B8-3-04, endorsement is a post-closing lender function, executed between the borrower's delivery of the signed Note and the lender's delivery of the Note to Fannie Mae's document custodian. On Acopia's own timeline, that window ran from February 2, 2022 (closing — when Ronda Carroll forwarded the signed package to Acopia per her written transmittal, Exs. B, C, with signed package at Ex. D) to on or about March 11, 2022 (the sale to Fannie Mae fixed by Acopia's Dkt. 17 ¶ 7). The Dkt. 17 allonge does not bear a date within that window; it bears the closing-day date — February 2, 2022 — the one date on which Acopia did not yet possess the signed Note, had not yet sold the loan, and had no § B8-3-04 basis for executing an endorsement. Because § B8-3-04 makes allonges post-closing instruments the borrower never sees at closing, RESPA supplies the compensating mechanism: 12 U.S.C. § 2605(e)(1)(A) and (e)(2)(A) require the servicer, on a Qualified Written Request, to identify the loan's owner and to produce authenticating documentation of its transfers. That is the statutory window by which the allonge — invisible to the borrower by § B8-3-04 design — would otherwise come into view. PNC's 53-page QWR response of September 26, 2025 produced no allonge and did not identify Fannie Mae as owner. Both disclosure tiers — closing-package (by protocol) and QWR (by statute) — are silent. The inference on a 12(b)(6) record: either no properly-executed § B8-3-04 allonge was in PNC's custody when the QWR was

answered, or § 2605(e)(2)(A) was violated. Either outcome forecloses dismissal of Count I and reinforces Count III.

**2. The Allonge Produced at Dkt. 17 Is Independently Defective Under § B8-3-04.** Even assuming arguendo that an after-the-fact allonge could cure the absence of endorsement on the Note as delivered, the Dkt. 17 allonge fails § B8-3-04 on five independent grounds: (i) **permanent affixation** — the allonge is a separate, unaffixed sheet absent from the closing package, the signed return, and PNC's 53-page QWR response, first appearing seventeen months after closing at Dkt. 17; (ii) **Note cross-reference** — § B8-3-04 requires the Note to reference the attached allonge, and Form 3210 contains no such reference; (iii) **named authorized signer** — § B8-3-04 requires the endorsement to be signed by a specifically authorized officer with name and title in the format "PAY TO THE ORDER OF ___ WITHOUT RECOURSE [LENDER'S NAME] (Authorized Signature) [NAME] [TITLE]," and the allonge identifies no Acopia officer by name or title (UCC § 3-402, Fla. Stat. § 673.4021: an unauthorized agent's signature does not bind the represented party); (iv) **authentication and format** — no custodian has authenticated the allonge, and its blank payee line has not been reconciled with the § B8-3-04 format; (v) **HIDC impairment** — § B8-3-04 requires that "Fannie Mae's status as a 'holder in due course' must not be impaired," yet an allonge absent from every contemporaneous transaction document and appearing 17 months later creates precisely the notice problem (UCC § 3-302, Fla. Stat. § 673.3021) the protocol was designed to eliminate.

At the 12(b)(6) stage, the inference that the allonge was created post hoc — facially inconsistent with § B8-3-04's post-closing window and absent from PNC's 53-page QWR response — must be taken in Plaintiff's favor. *Iqbal*, 556 U.S. at 678. Native electronic metadata of the

allonge and Dovenmuehle's creation records, to be sought in discovery, will confirm when the instrument was drafted.

## E.  Investor vs. Holder vs. HIDC — The Foundational Question Declaratory Relief Exists to Answer

UCC Article 3 and Fannie Mae's Selling Guide recognize three statuses often conflated but legally distinct: **investor** (beneficial owner — the term Acopia uses in Exhibit A to Dkt. 17); **holder** (Fla. Stat. § 673.3011 — possession plus valid endorsement); and **holder in due course** (Fla. Stat. § 673.3021). When a loan is validly delivered under § B8-3-04, Fannie Mae becomes all three through a single instrument: the allonge. Every failure catalogued in Subsection D goes to whether that instrument ever conferred holder status. Acopia's filings call Fannie Mae "investor," not holder; PNC's 53-page QWR response identifies Fannie Mae as nothing at all. A contemporaneous same-circuit admission corroborates the hierarchy concern: in *Fed. Home Loan Mortg. Corp. as Tr. for the Benefit of the Freddie Mac Seasoned Loans Structured Transaction Tr. Series 2020-3 v. Lorenzo*, No. 25CA002155AX (Fla. Cir. Ct. Marion Cnty. Sept. 23, 2025) (hereinafter "*Lorenzo*"), PNC's counsel filed an Answer on October 29, 2025 expressly admitting the complaint's allegation that PNC's interest is "subordinate and inferior" to plaintiff's mortgage (*Lorenzo* Compl. ¶ 15; Answer ¶ 2) and affirmatively characterizing PNC's own lien as "a second Mortgage . . . subsequently subordinated to the Plaintiff's subject mortgage" (Answer Aff. Def. ¶ 3). That admission binds PNC under Fed. R. Evid. 801(d)(2)(B), (C), and (D), and reflects that PNC's own counsel treats GSE-above-servicer hierarchy as the operational reality.

## F.  Conclusion — The Burden-of-Proof Inversion Extends Downstream

Subsection B states the inversion as to Acopia. The same analysis applies — with the same result — to the two parties downstream. **From Fannie Mae as claimed investor and holder:**

Fannie Mae Selling Guide § B8-3-01 and Fla. Stat. § 673.3011 require delivery of the original Note with endorsement, possession, and a document-custodian of record. The record contains nothing from Fannie Mae — no appearance, no custodian declaration, no authentication of the MERS Report. **From PNC as claimed servicer:** Selling Guide § A2-7-03 and 12 U.S.C. § 2605(b) require Note-owner authorization, post-delivery servicing-transfer documentation, and compliant pre-transfer borrower notice. The record has only an unsigned December 17, 2024 Notice not mailed until September 25, 2025 (Ex. E; Graham Decl. ¶ 13) and a 53-page QWR response that does not identify Fannie Mae as owner and does not produce the allonge. The gap between what the law demands and what the record supplies — across all three parties in the asserted chain — is precisely the "substantial controversy" declaratory relief exists to resolve. *MedImmune*, 549 U.S. at 127. The motion to dismiss Count I should be denied.

## II.  COUNT II STATES A VALID QUIET TITLE CLAIM

### A.  Acopia's Count II Argument Rests on a Misreading of the Pleading

Acopia's Count II argument rests on a single premise: that Plaintiff admitted in ¶59 of the Second Amended Complaint (Dkt. 33) that Acopia has no interest in the Note or Mortgage. (Mot. at 5.) That premise does not match the pleading. ¶59 addresses Fannie Mae, not Acopia. The paragraph that does address Acopia is ¶58, and it does not say what the motion attributes to it.

¶59 states in full:

> "Fannie Mae may claim ownership of the loan but has not recorded any assignment reflecting its interest in the Official Records of Sumter County, Florida."

¶59 is the Fannie Mae paragraph. It identifies Fannie Mae, references Fannie Mae's claimed ownership, and addresses the absence of any recorded assignment by Fannie Mae. It does not mention Acopia. It does not discuss the Note, the Mortgage, or Acopia's interest in either.

The paragraph that addresses Acopia is ¶58. It states:

"Acopia, LLC originated the loan but has not demonstrated any current interest in the Note or Mortgage, and has not recorded any assignment to another party."

The distinction between "has not demonstrated any current interest" and "has no interest" is not rhetorical — it is the pleading of evidentiary insufficiency versus a concession of the ultimate question. Plaintiff alleged the former: that Acopia has produced no authenticated, admissible documentation establishing its position in the chain of title. That is a factual allegation about what the record shows, not an admission about the underlying legal state of the title. The question of what interest, if any, Acopia retains in the Note or Mortgage is precisely the question this quiet title action was filed to resolve.

## B. Even Read as Acopia Reads It, ¶58 Does Not Defeat Count II

Even taking Acopia's reading of ¶58 as generously as possible, the paragraph does not defeat the quiet title claim. A quiet title action under Fla. Stat. § 65.061 exists to resolve uncertainty about title. The claim does not require Plaintiff to allege that every defendant has a current interest — it requires Plaintiff to name the parties whose activity created the cloud or whose interest needs judicial resolution. Acopia's origination activity, its execution of the Mortgage, its production of the Allonge in litigation 17 months after closing, and its Disclaimer of Interest at Dkt. 17 — together — place Acopia squarely within that category.

Moreover, Acopia's Disclaimer of Interest (Dkt. 17) is a litigation filing. It does not appear in the Sumter County Official Records. It does not bind future purchasers, title insurers, or successors in interest. Under Fla. Stat. § 65.061, Plaintiff is entitled to a judgment that is recordable and effective against the world. Acopia's in-case disclaimer, while useful as an acknowledgment, is not that judgment. Only this Court can enter one.

## C. Acopia Is Not a Passive Former Lender — Its Origination Activity Created the Cloud

Acopia argues that the cases it cites support dismissal because it has no current interest. The cases cited — *A&A Wealth Mgmt. v. Secretary of HUD*, *Bank of N.Y. Mellon v. Johnson*, and *Fulton v. Wells Fargo* — each involved defendants whose connection to the chain of title was either attenuated or nonexistent. Acopia's situation is different: Acopia originated the loan and executed the Mortgage; Acopia is the only party identified as lender on the face of the Note; Acopia is identified as original lender in MERS; Acopia used a sub-servicer (Dovenmuehle Mortgage, Inc.) whose conduct produced the transfer-notice failure at the heart of Count III; and the Allonge that purports to transfer the Note out of Acopia's hands first appeared in Acopia's own litigation filing (Dkt. 17), seventeen months after closing, without authentication and absent from every contemporaneous document.

That Allonge is the instrument that clouds Plaintiff's title. Acopia produced it. A party that produces a contested, unauthenticated instrument in federal court cannot simultaneously disclaim all responsibility for resolving the cloud that instrument creates. *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013) is a First Circuit decision applying Massachusetts law and is not binding in this District. The Middle District decisions Acopia cites involved parties without origination connection to the challenged chain. None controls here.

## D. Dismissal With Prejudice Is Not Warranted

Acopia seeks dismissal with prejudice on the ground that amendment cannot cure the defect. (Mot. at 7 n.13.) Plaintiff submits there is no defect to cure — Count II is properly pled. But even if the Court disagrees, Fed. R. Civ. P. 15(a)(2) directs that leave to amend should be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Neither undue prejudice nor bad faith is present.

## E. Conclusion on Count II

Count II states a valid quiet title claim against Acopia. The motion's foundational premise — that Plaintiff admitted at ¶59 that Acopia has no interest in the Note or Mortgage — does not match the pleading. ¶59 addresses Fannie Mae. The paragraph about Acopia (¶58) alleges evidentiary insufficiency, not factual concession. Acopia's origination activity, its production of the unauthenticated Allonge, and its unrecorded litigation disclaimer place it properly before this Court in a quiet title action. The motion should be denied as to Count II.

## III. COUNT III STATES A VALID RESPA CLAIM — ACOPIA CANNOT ESTABLISH COMPLIANCE ON A MOTION TO DISMISS

Acopia's motion rests on a single premise: that it sent Plaintiff a servicing transfer notice on December 17, 2024, and that compliance is measured by the sending date. Neither the factual premise nor the legal application can be resolved on a 12(b)(6) motion. Count III is supported by documented violations of two separate RESPA obligations and adequate actual damages flowing from each.

### A. Statutory Framework

12 U.S.C. § 2605(b)(1) requires the transferor servicer to provide written notice of a servicing transfer to the borrower "not less than 15 days before the effective date of transfer." The statute defines "effective date of transfer" as "the date on which the mortgage payment of a borrower is first due to the transferee servicer." 12 U.S.C. § 2605(i)(1). Here, that date is January 1, 2025. 12 C.F.R. § 1024.33(b)(3)(i) implements the 15-day requirement. 12 C.F.R. § 1024.33(b)(4) specifies mandatory content, including name, address, and toll-free number for an employee or department of each servicer, and consecutive cease/begin payment dates. 12 U.S.C. § 2605(f)(1)(A) provides recovery of "any actual damages to the borrower as a result of the failure." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016). Actual damages must causally

flow from the violation. *Baez v. Specialized Loan Servicing, LLC*, 2017 WL 4220292, *2 (11th Cir. Sept. 22, 2017) (unpublished).

## B. Violation 1 — Failure to Provide Adequate Notice of Servicing Transfer

The transfer became effective January 1, 2025, making December 17, 2024 the last permissible notice date. Acopia contends a notice dated December 17, 2024 was sent. Plaintiff never received any notice of the transfer until September 19, 2025 — nine months after the claimed mailing date — when Acopia produced the December 17 notice as an enclosure to Plaintiff's QWR response. The cover letter transmitting the notice states explicitly: "As requested, we have enclosed the following document(s): RESPA." The phrase "as requested" is an admission: it confirms that Plaintiff had to request this document. A servicer that proactively mailed a RESPA notice in December 2024 would not produce it in response to a borrower demand nine months later. The notice itself identifies its generator not as Acopia directly, but as Dovenmuehle Mortgage, Inc., Acopia's contractual sub-servicer: "Acopia, LLC (by DMI)." No individual at Acopia is identified as having prepared, reviewed, or mailed the notice.

The sending-date defense has multiple independent evidentiary problems that cannot be resolved on a 12(b)(6) motion.

**No proof of mailing; hearsay source.** Acopia has produced no certificate of mailing, USPS tracking number, postmark, or named sender with personal knowledge. A date printed on a letter is not evidence of mailing. The December 17 date exists, if at all, only in Dovenmuehle's records. Acopia's assertion of that date relies on an out-of-court statement offered for its truth (Fed. R. Evid. 801(c)), and the business-records exception (Fed. R. Evid. 803(6)) does not rescue it because the qualified custodian with personal knowledge (Fed. R. Evid. 602) must be from the

organization that created the record, which is Dovenmuehle, a non-party. Acopia cannot adopt another company's records as its own under the exception.

**"As requested" is Acopia**'s own admission. Acopia's September 19, 2025 cover letter enclosing the notice states: "As requested, we have enclosed the following document(s): RESPA." That confirms the December 17 notice was produced in response to Plaintiff's demand in September 2025 — not sent proactively in December 2024. A servicer that genuinely mailed a RESPA notice in December 2024 does not produce it nine months later in response to a borrower demand.

**Corporate-campus logistics; cross-forum inconsistency. Acopia's Suite 360 office sits inside Kemper Lakes Business Center; outgoing mail travels through an internal collection system before reaching USPS, and missing the December 17, 2024 internal cutoff by one hour places the letter in the USPS stream on December 18. More dispositive still: Acopia's co-defendant produced the same notice with a different date. PNC's September 26, 2025 QWR response states, "A copy of our Notice of Servicing Transfer Letter dated December 18, 2024, has been enclosed for your reference," and PNC's December 10, 2025 CFPB response confirms: "On December 18, 2024, PNC sent you the enclosed Notice of Servicing Transfer." Three documents across two federal forums — Acopia says December 17; PNC's sworn QWR and CFPB responses both say December 18. December 17 triggers the foregoing evidentiary problems; December 18 is facially one day late under § 2605(b)(1). The factual inconsistency is not resolvable on a 12(b)(6) motion.**

**C. Violation 2 — Notice Content Defects Under 12 C.F.R. § 1024.33(b)(4)**

The notice fails four distinct content requirements. First, the cover letter transmitting the notice is signed only "Cheryl O., Customer Service Department" — a first name and last initial,

no last name, no title, no direct telephone number. That is not a named, identifiable employee of Acopia as § 1024.33(b)(4)(iii) requires. Second, the notice was generated by Dovenmuehle Mortgage, Inc. under a sub-servicing arrangement — "Acopia, LLC (by DMI)." While the regulation permits sub-servicers to generate notices on behalf of master servicers, the notice must still satisfy all content requirements, including adequate contact information for the responsible party. Third, the notice instructs Plaintiff to begin sending payments to PNC Bank on January 1, 2025. January 1, 2025 is New Year's Day — a federal public holiday under 5 U.S.C. § 6103. PNC Bank was not open on January 1, 2025 and could not accept, process, or credit any payment on that date; the first business day on which PNC could begin accepting payments was January 2, 2025. Under § 2605(i)(1)'s definition of "effective date of transfer" as the date on which the mortgage payment is "first due to the transferee servicer," the notice required under § 2605(b)(1) was due no later than December 18, 2024 — one day after the date printed on the notice. At minimum, a notice directing a borrower to begin payments to a closed institution on the stated start date is a notice content defect under § 1024.33(b)(4)(iv).

### D. Violation 3 — QWR Owner-Disclosure Violation (Downstream of Acopia's Notice Failure)

Violation 3 is principally directed at PNC. For completeness and causation: PNC's 53-page QWR response of September 26, 2025 did not identify Fannie Mae as the loan owner, in violation of 12 U.S.C. § 2605(e)(2)(A); PNC's response is signed only with the initials "AH," lacking foundation under Fed. R. Evid. 901(a), 602, and 803(6); and each of these failures by PNC is causally downstream of Acopia's failure to send a compliant transfer notice identifying PNC's designated QWR address, because Plaintiff was forced to use a general address he had no way of knowing was incorrect.

## E. Actual Damages Are Adequately Pleaded

Under § 2605(f)(1)(A), a borrower may recover any actual damages flowing from the violation. The Eleventh Circuit recognizes damages where the servicer's failure "prevented [plaintiff] from taking some important action." *Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1135 (11th Cir. 2014). RESPA is "a consumer protection statute, and as such the term 'actual damages' is to be construed broadly." *Porciello v. Bank of Am., N.A.*, No. 8:14-cv-1511-T-17AEP, 2015 WL 899942, at *4 (M.D. Fla. Mar. 3, 2015). Plaintiff's damages are specific and causally connected to Acopia's failure.

**QWR costs and wrong-address harm.** Plaintiff sent a Qualified Written Request to PNC by certified mail on September 18, 2025, seeking information RESPA required Acopia to disclose automatically in December 2024. Unlike *Baez*, where cited postage costs predated any violation, Plaintiff's QWR costs arose months after the violation when he was forced to seek information he was owed. Moreover, 12 C.F.R. § 1024.33(b)(4)(iii) requires a compliant transfer notice to include the designated address for error notices and information requests. The December 18 notice produced by PNC identifies that address as P.O. Box 8807, Dayton, OH 45401-8807. Because Plaintiff never received the notice, he sent the QWR to PNC's general correspondence address — P.O. Box 1820 — and PNC then invoked the address mismatch to challenge the QWR's legal validity: "Requests not received at that mailbox are not subject to the protections of the law." Acopia's failure left Plaintiff without the correct address; PNC used that absence to challenge his rights. That is the *Bates* "prevented from taking some important action" harm.

**Waiver by conduct; administrative burden; delayed protective action.** PNC received the QWR, forwarded it internally, and responded with 53 pages addressing every requested item. See *Bivens v. Bank of Am., N.A.*, 868 F.3d 915 (11th Cir. 2017) (servicer may designate a QWR

address). A servicer that designates an address, receives correspondence at a different address, responds substantively, and then invokes the address defense has waived it through conduct. Plaintiff was also forced to file CFPB complaint No. 251016-25043199 on October 16, 2025; PNC sought additional time on October 22 and did not issue its final response until December 10, 2025 — nearly two months of administrative burden directly foreseeable from Acopia's failure. Had Plaintiff received proper notice in December 2024, he would have known PNC was his new servicer, possessed the correct payment and QWR addresses, and been able to take the ordinary protective actions a borrower takes on receiving transfer notice. That *Bates*-recognized loss of protective-action capacity is the core harm RESPA's damages provision compensates. See also *Porciello*, 2015 WL 899942, at *4 (RESPA damages construed broadly).

### F. Statutory Damages and Attorney's Fees

**Statutory Damages — Narrowed as to Acopia.** Acopia correctly notes that statutory damages under 12 U.S.C. § 2605(f)(1)(B) require a pattern or practice of noncompliance. *Renfroe*, 822 F.3d at 1244. Plaintiff acknowledges that Acopia's conduct toward Plaintiff, taken in isolation, does not establish a pattern or practice. In the interest of candor and economy, Plaintiff narrows Count III as to Acopia to proceed on actual damages under § 2605(f)(1)(A) only, and does not press the statutory damages component of § 2605(f)(1)(B) against Acopia. This narrowing is without prejudice to Plaintiff's pattern-or-practice allegations as to PNC, which are supported by the cross-forum inconsistencies documented above.

**Attorney's Fees.** Plaintiff acknowledges that pro se litigants may not recover attorney's fees under statutory fee-shifting provisions. *Kay v. Ehrler*, 499 U.S. 432, 437–38 (1991). The attorney's fees demand as against Acopia is withdrawn. This concession does not affect the actual-damages claim under § 2605(f)(1)(A) or any other relief sought in Count III.

### G. Conclusion on Count III

Acopia's motion to dismiss Count III should be denied. Two documented RESPA violations are adequately pleaded. The sending-date defense cannot be resolved on a 12(b)(6) motion: Acopia's own "as requested" cover letter, the absence of any proof of mailing, the Dovenmuehle-hearsay problem, the corporate-campus timing, the January 1 federal holiday issue, and PNC's own production of December 18 in two federal forums each independently defeats it. Plaintiff's actual damages are causally connected, post-date the violation, and are pleaded with specific factual basis. *See Porciello*, 2015 WL 899942, at *4.

## IV.  PLAINTIFF'S CONDITIONAL OFFER TO NARROW CLAIMS AGAINST ACOPIA

Plaintiff is a retired consumer who makes his monthly mortgage payments and has no interest in prolonging litigation against Acopia for its own sake. Plaintiff's core interest is clear: he wants the chain of title to his home resolved, and he wants the instrument (the Allonge) that purports to affect that title to be authenticated and documented as a matter of record. If Acopia can provide what the Fannie Mae Selling Guide § B8-3-04 required it to document in the ordinary course, the dispute between Plaintiff and Acopia can be narrowed — perhaps eliminated — without further motion practice. In the interest of judicial economy, conservation of party resources, and good faith, Plaintiff respectfully makes the following conditional offer on the record.

### A. Plaintiff's Offer

Plaintiff will file a Notice of Voluntary Dismissal Without Prejudice as to Acopia under Fed. R. Civ. P. 41(a)(1)(A)(i), on all three counts, upon Acopia's production — as a condition precedent — of: **(1)** complete chain of custody of the original Note (Loan No. 104021117122,

Form 3210 1/01) from execution on February 2, 2022 to present; **(2)** complete chain of custody of the Dkt. 17 allonge — drafter, signer, drafting/execution dates, manner of affixation, subsequent custodians, and transmission chain to Dovenmuehle, Fannie Mae, and PNC; **(3)** the native electronic file of the allonge with complete metadata; **(4)** a custodian declaration (28 U.S.C. § 1746) authenticating the allonge under Fed. R. Evid. 803(6) and 901(a), identifying the named authorized Acopia officer and scope of authority; **(5)** documentation establishing compliance with each requirement of § B8-3-04 at delivery (permanent affixation, Note cross-reference, identifying detail, named officer, required format, HIDC preservation); **(6)** the Dkt. 17 Disclaimer of Interest in recordable form for the Sumter County Official Records so it binds future purchasers, title insurers, and successors; and **(7)** documentation establishing Fannie Mae's legal status (investor, holder under § 673.3011, or HIDC under § 673.3021) together with the instrument(s) conferring that status and identification of who has physical custody of the original Note.

## B. Effect of the Offer; Scope

If Acopia produces items (1)-(7) in a form satisfying ordinary evidentiary standards, Plaintiff will promptly file the corresponding Rule 41(a)(1)(A)(i) notice; the production itself accomplishes the core purpose of the claims against Acopia. A partial or declined response withdraws the offer and leaves the claims as pleaded. This offer does not moot the pending motion — the Court must still rule unless and until Plaintiff files the notice of dismissal. Nothing here affects Plaintiff's claims against PNC or Fannie Mae; the RESPA pattern-of-conduct allegations are principally PNC's.

## CONCLUSION

Count I should not be dismissed: none of the three parties in the asserted chain — Acopia, Fannie Mae, PNC — has produced what the controlling framework (§ B8-3-04, § B8-3-01, § A2-

7-03, UCC Art. 3, 12 U.S.C. § 2605) requires, and the gap between what the law demands and what the record contains is the substantial controversy declaratory relief exists to resolve. Count II should not be dismissed: ¶ 59 addresses Fannie Mae, not Acopia; ¶ 58 alleges evidentiary insufficiency, not concession. Count III should not be dismissed: Acopia's "as requested" cover letter of September 19, 2025; PNC's QWR and CFPB responses both stating December 18 across two federal forums; and the January 1 federal-holiday issue together raise factual disputes outside Rule 12(b)(6). Plaintiff's § IV conditional offer — a Fed. R. Civ. P. 41(a)(1)(A)(i) voluntary dismissal upon Acopia's production of seven listed authenticating items — remains open.

**WHEREFORE,**

Plaintiff Jed Alan Graham, M.D., Pro Se, respectfully requests that this Court: (1) deny Acopia's Motion to Dismiss (Dkt. 36) in its entirety; (2) accept on the record Plaintiff's Conditional Offer set forth in Section IV; and (3) grant such further relief as the Court deems just and proper.

Respectfully submitted,

Jed Alan Graham, M.D.
Pro Se Plaintiff
6234 Danielson Loop, The Villages, FL 32163
Tel: 864-993-1984; Email: jedgrahammd@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 24th, 2026, I delivered the foregoing to the Clerk (M.D. Fla., Ocala Division) by FedEx overnight and served true and correct copies as follows: on counsel for all Defendants by electronic mail pursuant to Fed. R. Civ. P. 5(b)(2)(E), with formal service also to occur via the Court's CM/ECF system upon docketing:

Ivan J. Reich, Esq., Nason Yeager Gerson Harris & Fumero, P.A., 3001 PGA Blvd., Suite 305, Palm Beach Gardens, FL 33410 — by electronic mail to ireich@nasonyeager.com — Counsel for Defendant Acopia, LLC.

Lauren G. Raines, Esq. / Jessica N. Faucher, Esq., Bradley Arant Boult Cummings LLP, 1001 Water Street, Suite 1000, Tampa, FL 33602-5468 — by electronic mail to lraines@bradley.com and jfaucher@bradley.com — Counsel for Defendants PNC Bank, N.A. and Federal National Mortgage Association.

Jed Alan Graham, M.D., Pro Se



Align top of FedEx® shipping label here.

ORIGIN ID:SFBA  (407) 312-7709
JED GRAHAM
JED GRAHAM
3005 W LAKE MARY BLVD
STE 111
LAKE MARY, FL 32746
UNITED STATES US

SHIP DATE: 24APR26
ACTWGT: 2.90 LB
CAD: 264965153/FAPI2208

BILL SENDER

TO  **CLERK OF COURT US DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA, OCALA D**
**207 NW 2ND ST RM 337**

**OCALA FL 34475**

(864) 993-1984
IHO! PKG ID: 41758          REF: JED GRAHAM
PO:                              DEPT:

**FedEx**
Express

**E**

MON – 27 APR 12:00P
**PRIORITY OVERNIGHT**

TRK#
0201  **8710 3651 6487**

**PAP 20**

Please recycle. See how we are connecting the world in responsible and resourceful ways at **fedex.com/sustainability.** Recycling options may vary by location.

**Scan to learn how we can help make Earth a priority together.**

x 13-1/4 in
33.66 cm