UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

JED ALAN GRAHAM, M.D., Pro Se,
     Plaintiff,
v. Case No. 5:26-cv-00054-AGM-PRL
ACOPIA, LLC; PNC BANK, NATIONAL
ASSOCIATION; FEDERAL NATIONAL
MORTGAGE ASSOCIATION (FANNIE MAE);
and any and all Successor Entities,
Servicers, Assignees, or Transferees,
     Defendants.
_____/

## DECLARATION OF JED ALAN GRAHAM, M.D.

## IN SUPPORT OF PLAINTIFF'S OPPOSITION TO

## DEFENDANT ACOPIA, LLC'S MOTION TO DISMISS (DKT. 36)

I, Jed Alan Graham, M.D., declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the Plaintiff in the above-captioned action. I am a retired physician and a resident of Sumter County, Florida. I am over the age of 18, competent to testify, and make this declaration based on my personal knowledge of the matters stated. If called as a witness, I could and would testify competently to the facts set forth herein.

2. I make this declaration to authenticate four (4) contemporaneous documents concerning the February 2, 2022 closing of the mortgage loan that is the subject of this litigation: Acopia, LLC, Loan No. 104021117122, securing the property at 6234 Danielson Loop, The Villages, Florida 32163, Sumter County (the "Loan").

**A. Identification of the Closing Agent and the February 2, 2022 Transmittal**

3. The closing agent for the Loan was Peninsula Land & Title Services, LLC, located in Leesburg, Florida. The individual who acted as closing agent on behalf of Peninsula Land & Title was Ronda Carroll. I communicated with Ms. Carroll by email in connection with the closing.

4. On February 2, 2022 at 11:42 AM Eastern Standard Time, Ms. Carroll emailed me a complete preview of the closing package as a single PDF attachment titled "Graham Closing Documents.pdf." The email's transmittal text directed me, in relevant part: "Please email pages 4-41 back to me as I need to email them today to Acopia for their review." A true and correct copy of that transmittal email is attached hereto as Exhibit B.

5. The closing package attached to Ms. Carroll's February 2, 2022 11:42 AM email consisted of 98 pages and was transmitted to me unsigned (an electronic preview of the documents I was to sign). A true and correct copy of that 98-page unsigned closing package, as received by me from Ms. Carroll on February 2, 2022 at 11:42 AM, is attached hereto as Exhibit A.

**B. The Note and the Absence of Endorsement or Allonge in the Prepared Package**

6. The Fannie Mae Uniform Instrument Fixed Rate Note (Form 3210 1/01) (the "Note") is located at pages 14 and 15 of Exhibit A. The Note is a two-page instrument. Page 2 of the Note ends with the Borrower's signature line and the Lender-identification block identifying Acopia, LLC as the Lender. The document that immediately follows the Note at page 16 of Exhibit A is Page 1 of 10 of the Mortgage (Form 3010 1/01 Florida — Single Family). No other page of the closing package is interposed between the Note and the Mortgage.

7. There is no endorsement printed, stamped, or handwritten on the face of either page of the Note as it appears in Exhibit A. There is no allonge attached to, immediately following, or anywhere within the 98 pages of Exhibit A. I have examined the entirety of Exhibit A and can confirm that no document bearing the words "allonge," "pay to the order of," "without recourse,"

or any endorsement language appears anywhere in the package Ms. Carroll sent to me on February 2, 2022 at 11:42 AM.

**C. The Signed Return to Peninsula Land & Title That Afternoon**

8. On the afternoon of February 2, 2022, I signed the closing package on the pages designated for borrower signature. At 2:12 PM Eastern Standard Time that same day, I emailed the signed closing package back to Ms. Carroll at Peninsula Land & Title. My transmittal text read: "See attached documents signed and scanned. Put the originals UPS per pre-labeled form." A true and correct copy of that outgoing email is attached hereto as Exhibit C. The forwarded email within Exhibit C references an attached file labeled "2-2-21 Dr. Graham.pdf"; that filename reflects a typographical error by the third-party sender (Christian Snead) and does not alter the transaction date. The PDF metadata of the signed closing package attached as Exhibit D (Creator: PFU ScanSnap Manager; CreationDate: February 2, 2022) and the email date-stamps on Exhibits B and C (February 2, 2022, 11:42 AM EST and 2:12 PM EST, respectively) each independently confirm the transaction occurred on February 2, 2022.

9. The signed closing package that I emailed to Ms. Carroll at 2:12 PM on February 2, 2022, and the scanned pages of which I separately UPS'd to Peninsula Land & Title per the pre-labeled return form included in the closing package, consisted of 96 pages. A true and correct copy of that 96-page signed closing package as transmitted to Peninsula Land & Title on February 2, 2022 is attached hereto as Exhibit D. The Note appears at pages 12 and 13 of Exhibit D and bears my ink signature on page 13.

10. There is no endorsement on the face of either page of the Note as it appears in Exhibit D. There is no allonge attached to, immediately following, or anywhere within the 96 pages of Exhibit D. I have examined the entirety of Exhibit D and can confirm that no document bearing

the words "allonge," "pay to the order of," "without recourse," or any endorsement language appears anywhere in the signed package I transmitted on February 2, 2022.

**D. Consistent Absence of the Allonge from All Subsequent Productions Through September 2025**

11. I did not see the allonge that Acopia later produced as an exhibit to its filing at Dkt. 17 in this case at any point during the February 2, 2022 closing. The allonge was not included in the prepared package (Exhibit A); it was not included in the signed package I returned to Peninsula Land & Title (Exhibit D); it was not referenced on the face of the Note; and it did not appear in PNC Bank's 53-page Qualified Written Request response dated September 26, 2025.

12. The first time I ever saw the allonge now appearing as an exhibit to Dkt. 17 was upon Acopia's filing of Dkt. 17 in this litigation, approximately seventeen (17) months after the February 2, 2022 closing.

**E. The Purported December 17, 2024 Notice of Servicing Transfer Was Not Delivered Until September 25, 2025**

13. The document attached hereto as Exhibit E at pages 2–3 is a form "Notice of Servicing Transfer" bearing the printed date December 17, 2024 and a corporate closing reading only "Acopia, LLC." The document is unsigned; it identifies no individual signer, name, or title. I did not receive that Notice on or about December 17, 2024; I did not receive it at any time before the January 1, 2025 effective date stated within it; and I did not receive it at any time thereafter until late September 2025. The Notice was mailed to me in an Acopia-branded window envelope bearing a Pitney Bowes postage-meter imprint dated September 25, 2025, presorted first class, with postage of $0.64 prepaid and an origin ZIP of 60047 (Lake Zurich, Illinois — Acopia's "Mortgage Servicing" address at 1 Corporate Drive, Suite 360). Enclosed within that envelope were (a) a transmittal cover letter dated September 19, 2025, signed "Cheryl O., Customer Service

Department" (no last name, no title), which on its face states, "As requested, we have enclosed the following document(s): RESPA," and (b) the two-page December 17, 2024 Notice of Servicing Transfer. A true and correct color photograph of the Acopia mailing envelope as I received it is Exhibit E at page 4; true and correct copies of the September 19, 2025 cover letter and the December 17, 2024 Notice are Exhibit E at pages 1–3. I have retained the original mailing envelope and will make it available for the Court's inspection if needed.

## F. Authentication

14. Exhibits A, B, C, D, and E are true and correct copies of the documents described above. Each was received by me or sent by me in the ordinary course on February 2, 2022, and each has been continuously maintained in my personal files since that date. The PDF files attached as exhibits are direct copies of the electronic records I received from and transmitted to Ronda Carroll of Peninsula Land & Title Services, LLC on February 2, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of April, 2026, at The Villages, Sumter County, Florida.

JED ALAN GRAHAM, M.D.

Pro Se Plaintiff

## INDEX OF EXHIBITS TO DECLARATION OF JED ALAN GRAHAM, M.D.

**Exhibit A — Unsigned Closing Package (98 pp.)**

PDF file titled "Graham_Closing_Documents_no_sig.pdf." Complete preview of the closing package received by Declarant from Ronda Carroll of Peninsula Land & Title Services, LLC at 11:42 AM EST on February 2, 2022. The Fannie Mae Uniform Instrument Fixed Rate Note (Form 3210 1/01) appears at pages 14-15; no endorsement or allonge appears anywhere in the 98-page document.

**Exhibit B — Ronda Carroll Transmittal Email (Feb. 2, 2022, 11:42 AM EST)**

PDF file titled "Fw_Closing_documents_6234_Danielson_Loop.pdf." Email from Ronda Carroll, Peninsula Land & Title Services, LLC, to Declarant transmitting Exhibit A. Text states: "Please email pages 4-41 back to me as I need to email them today to Acopia for their review."

**Exhibit C — Declarant's Signed-Return Email (Feb. 2, 2022, 2:12 PM EST)**

PDF file titled "Graham Closing Doc with signatures 2-02-22.pdf." Outgoing email from Declarant to Ronda Carroll at 2:12 PM EST on February 2, 2022, transmitting the signed closing package and directing the title company to "Put the originals UPS per pre-labeled form."

**Exhibit D — Signed Closing Package (96 pp.)**

PDF file titled "Graham_Signed_Closing_Package_as_sent_to_title_company_2-02-2022.pdf." The signed 96-page closing package transmitted by Declarant to Peninsula Land & Title Services, LLC on February 2, 2022. The signed Note appears at pages 12-13 bearing Declarant's ink signature; no endorsement or allonge appears anywhere in the 96-page document.

**Exhibit E — Acopia September 2025 Mailing (4 pp.)**

(a) Acopia transmittal cover letter dated September 19, 2025, signed "Cheryl O., Customer Service Department" (Ex. E p. 1); (b) two-page "Notice of Servicing Transfer" bearing the printed date December 17, 2024 and closing only "Acopia, LLC" — unsigned, no individual signer identified (Ex. E pp. 2–3); and (c) color photograph of the Acopia-branded mailing envelope bearing a Pitney Bowes postage-meter imprint dated September 25, 2025, origin ZIP

60047 (Lake Zurich, IL) (Ex. E p. 4). Original envelope retained by Declarant and available for Court inspection.

Graham v. PNC Bank, N.A., et al.
Case No. 5:26-cv-00054-AGM-PRL  (M.D. Fla., Ocala Div.)
Plaintiff's Opposition to Acopia, LLC's Motion to Dismiss SAC (Dkt. 36)

# EXHIBIT A

*Unsigned Closing Package*

Filed by Jed Alan Graham, M.D., Plaintiff pro se — April 24, 2026



February 2, 2022

Re: Purchase from the Villages

File No. V20143

Dear Jed and Michele,

We are enclosing documents in regards to the above captioned closing, to be executed by you and returned to our office. We are enclosing a UPS return label to ship the completed documents back to office. **PLEASE BE SURE TO SIGN EXACTLY AS IT IS TYPED.** The Note, Mortgage and Second Home Rider will require your initials at the bottom of each page. **PLEASE SIGN WITH BLUE INK, PER ACOPIA'S REQUEST.**

Please email pages 4-41 back to me once they are signed and notarized. They need to be emailed to Acopia today.

Some documents need to be signed in the presence of a Notary Public. **The Notary may change the City and State to reflect the State and City you are signing.**

We received 2 wires on 1/18/2022 for a grand total of $445,000.00

Please wire or enclose a Cashier's Check made payable to Peninsula Land and Title in the amount of

$ 12,592.75.

Should you have any questions, please do not hesitate to call me at 352-259-5003.

Yours truly,

Ronda Carroll

Closing Agent



## WIRING INSTRUCTIONS

Receiving Bank:

**CITIZENS FIRST BANK**
1050 Lake Sumter Landing
The Villages, FL 32162
Phone: (352) 753-9515
Toll Free: 1-800-707-1893

Routing or ABA #:        063114001

Further Credit To:

**PENINSULA LAND & TITLE, LLC**
950 Lakeshore Drive
Suite 200
The Villages, FL 32162
(352) 753-4690

Account #        1010009007

For Benefit of:        Buyer's Name and Property Address
or File Number is Required

Buyer Instructions        **Please note, we DO NOT accept ACH Transfers

Lake Sumter Landing™ · Spanish Springs™ · Brownwood®

950 Lake Shore Drive, Suite 200
The Villages, FL 32162
352-753-4690 | www.PLTitle.com

# PLEASE DO NOT CHANGE OR ALTER DOCUMENTS IN ANY WAY

# DOING THIS MAY DELAY YOUR CLOSING

PLEASE CALL YOUR CLOSING AGENT IF YOU HAVE ANY QUESTIONS

# NOTARY PUBLIC COMPLIANCE INFORMATION

This information is required to be completed by the Notary Public/Witnessing Official who is notarizing your closing documents. Please return this information with your closing documents.

Notary's Name (please print):

_____

Notary's Mailing Address:

_____

County of Notary's Residence:

_____

Notary's Daytime Phone Number:

_____

Notary's Expiration Date:

_____

(SEAL)

0508                    Notary Public Compliance Information                    1

# FIRST PAYMENT LETTER

Acopia, LLC

LOAN NO.: 104021117122
DATE: February 2, 2022
BORROWER(S):   Jed Alan Graham

ADDRESS: 123 Edinborough Circle, Greenwood, SC 29649

We are pleased to have you as a mortgage loan customer. The following is a breakdown of your initial monthly payment:

| | |
|---|---|
| Principal and Interest | $ 1,489.08 |
| Estimated Taxes | $ 886.94 |
| Hazard Insurance | $ 108.42 |
| Flood Insurance | $ |
| Mortgage Insurance | $ |
| City Property Tax | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **TOTAL MONTHLY PAYMENT** | $ 2,484.44 |

Your first regular payment is due  **April 1, 2022.**

Partial Payments:
☒ Your lender may accept partial payments you make and apply such payments to your loan.
☐ Your lender may hold partial payments in a separate account until you pay the remainder of the payment, and then apply the full periodic payment to your loan.
☐ Your lender will not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

The outstanding principal balance at the time of this letter is  **$321,536.00.**

The current interest rate is  **3.750 %.**

Your loan  **DOES NOT**   have a prepayment penalty.

**Housing Counselor Information:** If you would like counseling or assistance, you can contact the following:

• U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

For additional information regarding your loan please contact:  **Acopia, LLC**

at  **615-859-5537.**

We hereby acknowledge receiving a copy of this letter.

We are aware that the total monthly payment may be subject to change each year due to increases or decreases in annual taxes and/or insurance premiums and when applicable, adjustments in accordance with the adjustable rate mortgage provisions of the Note.

| | |
|---|---|
| JED ALAN GRAHAM | DATE |



# Closing Disclosure

This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| Date Issued | 2/2/2022 | Borrower | Jed Alan Graham | Loan Term | 30 years |
| Closing Date | 2/2/2022 | | 123 Edinborough Circle | Purpose | Purchase |
| Disbursement Date | 2/3/2022 | | Greenwood, SC 29649 | Product | Fixed Rate |
| Settlement Agent | Peninsula Land and Title | Seller | The Villages Land Company LLC | | |
| File # | V20143 | | 3619 Kiessel Road | Loan Type | ☒ Conventional ☐ FHA |
| Property | 6234 Danielson Loop | | The Villages, FL 32163 | | ☐ VA ☐ _____ |
| | The Villages, FL 32163 | Lender | Acopia, LLC | Loan ID # | 104021117122 |
| Sale Price | $946,531 | | | MIC # | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| Loan Amount | $321,536 | NO |
| Interest Rate | 3.75 % | NO |
| Monthly Principal & Interest  See Projected Payments below for your Estimated Total Monthly Payment | $1,489.08 | NO |
| | | Does the loan have these features? |
| Prepayment Penalty | | NO |
| Balloon Payment | | NO |

## Projected Payments

| Payment Calculation | | Years 1-30 |
|---|---|---|
| Principal & Interest | | $1,489.08 |
| Mortgage Insurance | + | 0 |
| Estimated Escrow  Amount can increase over time | + | 995.36 |
| **Estimated Total Monthly Payment** | | **$2,484.44** |

| Estimated Taxes, Insurance & Assessments  Amount can increase over time  See page 4 for details | $1,159.36  Monthly | **This estimate includes** | **In escrow?** |
|---|---|---|---|
| | | ☒ Property Taxes | YES |
| | | ☒ Homeowner's Insurance | YES |
| | | ☒ Other: CDD | NO |
| | | See Escrow Account on page 4 for details. You must pay for other property costs separately. | |

## Costs at Closing

| Closing Costs | $14,110.44 | Includes $6,137.42 in Loan Costs + $8,098.02 in Other Costs - $125.00 in Lender Credits. See page 2 for details. |
|---|---|---|
| Cash to Close | $457,592.75 | Includes Closing Costs. See Calculating Cash to Close on page 3 for details. |

 

## Closing Cost Details

| Loan Costs | | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|---|
| | | At Closing | Before Closing | At Closing | Before Closing | |
| **A. Origination Charges** | | **$2,490.62** | | | | |
| 01 0.249 % of Loan Amount (Points) | | $800.62 | | | | |
| 02 Origination Fee | | $495.00 | | | | |
| 03 Processing Fees | | $400.00 | | | | |
| 04 Underwriting Fees | | $795.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **B. Services Borrower Did Not Shop For** | | **$705.50** | | | | |
| 01 Appraisal Fee | to Clarity AMC | | $675.00 | | | |
| 02 Credit Report | to Acopia, LLC fbo CIC Credit | $30.50 | | | | |
| 03 | | | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| 09 | | | | | | |
| 10 | | | | | | |
| **C. Services Borrower Did Shop For** | | **$2,941.30** | | | | |
| 01 Land Survey | to Clymer Farner Barley, Inc. | $370.00 | | | | |
| 02 Title - Lender's Title Insurance | to Old Republic National Title / Peninsula | $1,901.30 | | | | |
| 03 Title - Settlement Fee | to Peninsula Land & Title | $610.00 | | $156.00 | | |
| 04 Title - Title Search | to Peninsula Land & Title | $60.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$6,137.42** | | | | |
| Loan Costs Subtotals (A + B + C) | | $5,462.42 | $675.00 | | | |

| Other Costs | | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$1,897.67** | | | | |
| 01 Recording Fees | Deed: $10.00   Mortgage: $129.00 | $129.00 | | $10.00 | | |
| 02 State Tax/Stamps | to Sumter County Clerk of the Circuit | $1,125.60 | | $6,626.20 | | |
| 03 Transfer Taxes | to Sumter County Clerk of the Circuit | $643.07 | | | | |
| **F. Prepaids** | | **$2,159.78** | | | | |
| 01 Homeowner's Insurance Premium (12 mo.) to ASI | | $1,301.00 | | | | |
| 02 Mortgage Insurance Premium (  mo.) | | | | | | |
| 03 Prepaid Interest ($33.03 per day from 2/3/22 to 3/1/22) | | $858.78 | | | | |
| 04 Property Taxes (  mo.) | | | | | | |
| 05 | | | | | | |
| **G. Initial Escrow Payment at Closing** | | **$3,675.76** | | | | |
| 01 Homeowner's Insurance $108.42 per month for 3 mo. | | $325.26 | | | | |
| 02 Mortgage Insurance   per month for   mo. | | | | | | |
| 03 Property Taxes $886.94 per month for 5 mo. | | $4,434.70 | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 Aggregate Adjustment | | -$1,084.20 | | | | |
| **H. Other** | | **$364.81** | | | | |
| 01 Association Dues | to CSU | $158.14 | | | | |
| 02 Utility Fee | to Sumter County Board of County | $206.67 | | | | |
| 03 Utility Fee | to The Villages Land Company LLC | | | $510.00 | | |
| 04 Utility Fee | to SEWWCA | | | $1,264.00 | | |
| 05 Utility Fee | to SSU | | | $4,569.00 | | |
| 06 Utility Fee | to Seco | | | $765.00 | | |
| 07 Utility Fee | to The Villages Land Company LLC | | | $1,260.00 | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$8,098.02** | | | | |
| Other Costs Subtotals (E + F + G + H) | | $8,098.02 | | | | |

| | | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|---|
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$14,110.44** | | | | |
| Closing Costs Subtotals (D + I) | | $13,560.44 | $675.00 | $15,160.20 | | |
| Lender Credits (Includes $125.00 credit for increase in Closing Costs above legal limit) | | -$125.00 | | | | |

CLOSING DISCLOSURE · GTRIDCDWS_S 0617
02/02/2022 08:02 AM PST

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $25,068.00 | $14,110.44 | **YES** · See Total Loan Costs (D) and Total Other Costs (I). · Increase exceeds legal limits by $125.00. See Lender Credits on page 2 for credit of excess amount. |
| Closing Costs Paid Before Closing | $0 | -$675.00 | **YES** · You paid these Closing Costs before closing. |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | **NO** |
| Down Payment/Funds from Borrower | $600,000.00 | $624,995.00 | **YES** · You increased this payment. See details in Section K. |
| Deposit | -$184,308.00 | -$184,308.00 | **NO** |
| Funds for Borrower | $0 | $0 | **NO** |
| Seller Credits | -$6,451.00 | $0 | **YES** · See Seller-Paid column on page 2 and Seller Credits in Section L. |
| Adjustments and Other Credits | $0 | $3,470.31 | **YES** · See details in Section K and Section L. |
| **Cash to Close** | **$434,309.00** | **$457,592.75** | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

### BORROWER'S TRANSACTION

| K. Due from Borrower at Closing | $963,699.27 |
|---|---|
| 01 Sale Price of Property | $946,531.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | $13,435.44 |
| 04 Principal Reduction | |
| Adjustments | |
| 05 Change Order #1 Fee | $500.00 |
| 06 Change Order #2 Fee | $625.00 |
| 07 | |
| Adjustments for Items Paid by Seller in Advance | |
| 08 City/Town Taxes to | |
| 09 County Taxes to | |
| 10 Assessments 02/02/22 to 09/30/22 | $1,682.83 |
| 11 Change Order #3 Fee | $925.00 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

| L. Paid Already by or on Behalf of Borrower at Closing | $506,106.52 |
|---|---|
| 01 Deposit | $184,308.00 |
| 02 Loan Amount | $321,536.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Lender Cure for 801/802 | |
| 05 Seller Credit | |
| Other Credits | |
| 06 | |
| 07 | |
| Adjustments | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| Adjustments for Items Unpaid by Seller | |
| 12 City/Town Taxes to | |
| 13 County Taxes 01/01/22 to 02/02/22 | $262.52 |
| 14 Assessments to | |
| 15 | |
| 16 | |
| 17 | |

### SELLER'S TRANSACTION

| M. Due to Seller at Closing | $948,213.83 |
|---|---|
| 01 Sale Price of Property | $946,531.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| Adjustments for Items Paid by Seller in Advance | |
| 09 City/Town Taxes to | |
| 10 County Taxes to | |
| 11 Assessments 02/02/22 to 09/30/22 | $1,682.83 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | $202,028.47 |
|---|---|
| 01 Excess Deposit | $184,308.00 |
| 02 Closing Costs Paid at Closing (J) | $15,160.20 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| * 09 City-County Permit/Impact Fees to The Villages | $1,978.63 |
| * 10 Law Enforcement to The Villages Land Company | $319.12 |
| 11 | |
| 12 | |
| 13 | |
| Adjustments for Items Unpaid by Seller | |
| 14 City/Town Taxes to | |
| 15 County Taxes 01/01/22 to 02/02/22 | $262.52 |
| 16 Assessments to | |
| 17 | |
| 18 | |
| 19 | |

### CALCULATION

| | |
|---|---|
| Total Due from Borrower at Closing (K) | $963,699.27 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | -$506,106.52 |
| **Cash to Close ☒ From ☐ To Borrower** | **$457,592.75** |

### CALCULATION

| | |
|---|---|
| Total Due to Seller at Closing (M) | $948,213.83 |
| Total Due from Seller at Closing (N) | -$202,028.47 |
| **Cash ☐ From ☒ To Seller** | **$746,185.36** |

* See attached page for additional information

CLOSING DISCLOSURE · GTRIDCDWS_S 0617
02/02/2022 08:02 AM PST

  

## Additional Information About This Loan

**Loan Disclosures**

### Assumption

If you sell or transfer this property to another person, your lender

☐ will allow, under certain conditions, this person to assume this loan on the original terms.

☒ will not allow assumption of this loan on the original terms.

### Demand Feature

Your loan

☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

☒ does not have a demand feature.

### Late Payment

If your payment is more than *15* days late, your lender will charge a late fee of *5% of the principal and interest overdue.*

### Negative Amortization (Increase in Loan Amount)

Under your loan terms, you

☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☒ do not have a negative amortization feature.

### Partial Payments

Your lender

☒ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

☐ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest

You are granting a security interest in
*6234 Danielson Loop, The Villages, FL 32163*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

*For now,* your loan

☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | $10,948.96 | Estimated total amount over year 1 for your escrowed property costs: *Property Taxes, Homeowner's Insurance* |
| Non-Escrowed Property Costs over Year 1 | $1,804.00 | Estimated total amount over year 1 for your non-escrowed property costs: *HOA Dues* <br><br> You may have other property costs. |
| Initial Escrow Payment | $3,675.76 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $995.36 | The amount included in your total monthly payment. |

☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

### In the future,

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

 

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $543,067.42 |
| **Finance Charge.** The dollar amount the loan will cost you. | $218,494.62 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $317,576.60 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 3.851 % |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 66.989 % |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at
**www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
- [X] state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
- [ ] state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | Acopia Home Loans | | | Properties of the Villages Inc. | Peninsula Land and Title |
| **Address** | 10570 S. US Highway One, Suite #102 Port St Lucie, FL 34952 | | | 2757 Glen Hollow Way The Villages, FL 32162 | 950 Lakeshore Drive The Villags, FL 32162 |
| **NMLS ID** | 4664 | | | | |
| **FL License ID** | MLD1224 | | | CQ1002909 | CC150486 |
| **Contact** | James M Cannata | | | Katie Crane | Ronda Carroll |
| **Contact NMLS ID** | 328552 | | | | |
| **Contact FL License ID** | LO8495 | | | SL3467424 | |
| **Email** | jcannata@ acopiahomeloans.com | | | Katie.Crane@TheVillages. com | Ronda.Carroll@pltitle. com |
| **Phone** | 772-236-3007 | | | 352-446-2317 | 352-753-4690 |

 

# Addendum to Closing Disclosure

*This form is a continued statement of final loan terms and closing costs.*

## Summary Of Transactions    Additional Details from your transactions.

### SELLER'S TRANSACTION

| N. | Due from Seller at Closing | |
|---|---|---|
| N09 | City-County Permit/Impact Fees to The Villages Land Company LLC | $1,978.63 |
| N10 | Law Enforcement to The Villages Land Company LLC | $319.12 |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_____    _____
Jed Alan Graham                        DATE

_____    _____
Michele Graham                         DATE



# Closing Disclosure Addendum B - Customary Recitals

Closing File Number:    V20143                                      Closing Date:    February 2, 2022

**TAX RE-PRORATION AGREEMENT:** If the most recent property tax bill issued does not cover through the closing date, then the tax prorations set forth on the settlement statement are based upon an estimate. The basis of proration as set forth on the settlement statement is hereby accepted by the parties to this transaction. It is hereby understood and agreed that the actual taxes, if different, will be adjusted between the parties upon demand. Closing Agent is not liable or responsible for adjustment or re-proration of taxes. Closing Agent is not responsible or liable for additional taxes, other charges or tax refunds, if any, and shall not be liable should any of the parties to this transaction fail or refuse to re-prorate the taxes.

**NOTE:    Real Estate Taxes are due in November. Seller(s) hereby agree that if they receive the tax bill they will forward to the Buyers. If you are the Buyer(s) and do not receive a tax bill by November 15, please call one of the following numbers:**

        **For Lake County property, call 352-343-9622**
        **For Marion County property, call 352-368-8200**
        **For Sumter County property, call 352-569-6740**

**AGREEMENT TO COOPERATE:** If requested by Lender (if any), Closing Agent, Title Agent or Title Underwriter, the parties agree to fully cooperate and adjust for clerical errors, including the execution or re-execution of any reasonable documentation and/or the remittance of any additional sums.

**HOMEOWNER'S/CONDOMINIUM ASSOCIATIONS:** The Buyer(s) acknowledge(s) the existence of any homeowner's and/or condominium association(s) and is aware that monthly, quarterly or annual maintenance assessments may be due to said association(s). Said association(s) may also have the authority to regulate and enforce community covenants and restrictions. The Buyer hereby acknowledges receipt of a copy of any association estoppel letters for the subject transaction.

**MISCELLANEOUS:** Closing Agent does not make any representations or warranties nor assumes any liability with respect to the physical condition of the property, or any repairs to the property. Buyer has been advised and encouraged to secure hazard insurance coverage prior to completion of closing. If a survey was prepared for the subject transaction, then the Buyer hereby acknowledges receipt of a copy thereof. The buyer has reviewed said survey and accepts title subject to the matters set forth thereon. Buyer has received and reviewed the proposed deed and is satisfied with and approves the manner which title is being held. The parties hereto acknowledge that the fees paid to Peninsula Land & Title are for the closing of the transaction and issuing the title insurance policy. The parties further acknowledge that should they desire legal representation with regard to the matter, they should seek independent counsel and hereby agree to hold harmless Peninsula Land & Title as well as its staff, from any and all liability as a result of the above referenced transaction.

**DISBURSEMENT AUTHORIZATION, ETC.:** Closing Agent does not adjust or assume liability for charges for water, rents, gas, electricity, taxes on personal property, garbage taxes or fees, license fees or taxes, service/maintenance contracts (pest control, appliance maintenance, pool care, lawn care, alarm systems, etc.), association assessments or dues, or estoppel information furnished by mortgagees or others. The settlement statement has been reviewed and approved and Closing Agent is irrevocably authorized and directed to complete the closing of the transaction and make disbursement in accordance therewith. In the event of mortgage assumption, if Seller has received a credit for the escrow account balance, then Seller hereby assigns all right, title and interest in said account to Buyer. Seller, Buyer, and Borrower are used for singular or plural, as the context so requires or admits. This Agreement is being provided as an inducement for Closing Agent to serve as the closing agent and for Title Agent and Title Underwriter to issue title insurance on the subject transaction.

PAGE B-1 - LOAN ID: 104021117122
DoubleTime®

# Closing Disclosure Addendum B - Customary Recitals

Closing File Number:   V20143                                    Closing Date:   February 2, 2022

The undersigned hereby certifies that they have carefully reviewed the Closing Disclosure or other settlement statement form and they approve and agree to the payment of all fees, costs, expenses and disbursement as reflected on the Closing Disclosure or other settlement statement form to be paid on their behalf. We further certify that we have received a copy of the Closing Disclosure or other settlement statement.

## Borrower(s)

_____                    _____
Jed Alan Graham                                                    Michele Graham

## Seller(s)

The Villages Land Company LLC, a Florida limited liability company

By: _____
       Martin L. Dzuro, Manager

## Settlement Agent

I have reviewed the Closing Disclosure, the settlement statement, the lender's closing instructions and any and all other forms relative to the escrow funds, including any disclosure of the Florida title insurance premiums being paid, and I agree to disburse the escrow funds in accordance with the terms of this transaction and Florida law.

Peninsula Land & Title

By: _____                    Date: _____

LOAN #: 104021117122
MIN: 1006646-1000146150-9

# NOTE

February 2, 2022
[Date]

The Villages,
[City]

Florida
[State]

6234 Danielson Loop, The Villages, FL 32163
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $321,536.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Acopia, LLC, a Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.750 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**   day of each month beginning on **April 1, 2022.**      I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2052,**        I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **306 Northcreek Blvd, Suite 100**
**Goodlettsville, TN 37072**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$1,489.08.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %**     of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Initials: _____

FLORIDA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3210 1/01
ICE Mortgage Technology, Inc.                            Page 1 of 2

F3200FLN   0221
F3200FLN (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JED ALAN GRAHAM

Lender: Acopia, LLC
NMLS ID: 4664
Loan Originator: James M Cannata
NMLS ID: 328552

[Sign Original Only]

Initials: _____

FLORIDA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3210 1/01
ICE Mortgage Technology, Inc.                                    Page 2 of 2                    F3200FLN  0221
                                                                                               F3200FLN (CLS)
                                                                                               02/01/2022 02:00 PM PST

When recorded, return to:
Acopia, LLC
Attn: Final Document Department
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

This document was prepared by:
Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072
615-859-5537

Title Order No.: 40028-01

LOAN #: 104021117122

—————————————— [Space Above This Line for Recording Data] ——————————————

## MORTGAGE

MIN 1006646-1000146150-9

MERS PHONE #: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated **February 2, 2022,**         together with all Riders to this document.
(B) "Borrower" is   JED ALAN GRAHAM AND MICHELE GRAHAM, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   Acopia, LLC.

Lender is  a Corporation,                                                                                          organized and existing
under the laws of   Tennessee.
Lender's address is 306 Northcreek Blvd, Suite 100, Goodlettsville, TN 37072

(E) "Note" means the promissory note signed by Borrower and dated **February 2, 2022.**         The Note states that Borrower owes Lender   THREE HUNDRED TWENTY ONE THOUSAND FIVE HUNDRED THIRTY SIX AND NO/100*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$321,536.00**         )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2052.**

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                     Page 1 of 10

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☒ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ V.A. Rider
☐ 1-4 Family Rider     ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County        of   **Sumter**
[Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: K01D029

which currently has the address of   **6234 Danielson Loop, The Villages,**

[Street] [City]

**Florida 32163**        ("Property Address"):
     [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                Page 2 of 10

Initials: _____
FLEDEED 1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.                             Page 3 of 10

Initials: _____

FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                         Page 4 of 10

Initials: _____

FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                         Page 5 of 10

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.                                  Page 6 of 10

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.                                      Page 7 of 10

Initials: _____

FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                Page 8 of 10

Initials: _____
FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JED ALAN GRAHAM                                    DATE
123 Edinborough Circle
Greenwood, SC 29649

_____ (Seal)
MICHELE GRAHAM                                     DATE

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.                    Page 9 of 10

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

Witnesses:
Signed, sealed and delivered in the presence of:

_____

_____
Printed Name

_____

_____
Printed Name

State of FLORIDA                                                                County of SUMTER

The foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM AND MICHELE GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

_____
Signature

_____
Printed Name

_____
Title or Rank

_____
Serial Number (if any)

Lender: Acopia, LLC
NMLS ID: 4664
Loan Originator: James M Cannata
NMLS ID: 328552

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                    Page 10 of 10                    
Initials: _____
FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



# Exhibit A

Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

Parcel Identification Number: K01D029

LOAN #: 104021117122
MIN: 1006646-1000146150-9

## SECOND HOME RIDER

THIS SECOND HOME RIDER is made this **2nd**     day of **February, 2022**     and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to **Acopia, LLC, a Corporation**

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at: **6234 Danielson Loop, The Villages, FL 32163.**

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

6. **Occupancy.** Borrower will occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property, including short-term rentals, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property. Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Second Home Rider, unless Lender otherwise agrees in writing, which consent shall not be unreasonably with-held, or unless extenuating circumstances exist which are beyond Borrower's control.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, mislead-ing, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)
**JED ALAN GRAHAM**                                                    DATE

_____ (Seal)
**MICHELE GRAHAM**                                                    DATE

MULTISTATE SECOND HOME RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01 (rev. 4/19)                                    Initials: _____
ICE Mortgage Technology, Inc.                          F3890RDU  0519
                                                       F3890RLU (CLS)
                                                       02/01/2022 02:00 PM PST

To be completed by the Lender:
Lender Loan No./Universal Loan Identifier 549300L1DBFIJZI8LA4010402111712223     Agency Case No. _____

# Uniform Residential Loan Application

Verify and complete the information on this application. If you are applying for this loan with others, each additional Borrower must provide information as directed by your Lender.

## Section 1: Borrower Information. This section asks about your personal information and your income from employment and other sources, such as retirement, that you want considered to qualify for this loan.

### 1a. Personal Information

| | |
|---|---|
| Name *(First, Middle, Last, Suffix)*<br>Jed Alan Graham | Social Security Number 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<br>*(or Individual Taxpayer Identification Number)* |
| Alternate Names – *List any names by which you are known or any names under which credit was previously received (First, Middle, Last, Suffix)* | Date of Birth *(mm/dd/yyyy)* 11/18/1956    Citizenship<br>⦿ U.S. Citizen<br>○ Permanent Resident Alien<br>○ Non-Permanent Resident Alien |

Type of Credit
⦿ I am applying for individual credit.
○ I am applying for joint credit. Total Number of Borrowers: _____

  Each Borrower intends to apply for joint credit. *Your initials:* _____

List Name(s) of Other Borrower(s) Applying for this Loan
*(First, Middle, Last, Suffix) - Use a separator between names*

| Marital Status<br>⦿ Married<br>○ Separated<br>○ Unmarried<br>*(Single, Divorced, Widowed, Civil Union, Domestic Partnership, Registered Reciprocal Beneficiary Relationship)* | Dependents *(not listed by another Borrower)*<br>Number 0<br>Ages _____ | Contact Information<br>Home Phone 864-993-1984<br>Cell Phone 864-993-1984<br>Work Phone _____ Ext. _____<br>Email jedgraham@rocketmail.com |
|---|---|---|

Current Address

Street 123 Edinborough Circle    Apartment #9
City Greenwood    State SC    ZIP 29649    Country _____
How Long at Current Address? 0 Years 1 Months    Housing ○ No primary housing expense ○ Own ⦿ Rent ($ 2,045 /month)

If at Current Address for LESS than 2 years, list Former Address    ☐ *Does not apply*
Street 104 Windjammer    Building _____
City Greenwood    State SC    ZIP 29649    Country _____
How Long at Former Address? 9 Years 0 Months    Housing ○ No primary housing expense ⦿ Own ○ Rent ($ _____ /month)

Mailing Address – *if different from Current Address*    ☒ *Does not apply*
Street _____    Unit # _____
City _____ State _____ ZIP _____ Country _____

### 1b. Current Employment/Self Employment and Income    ☐ *Does not apply*

| | | Gross Monthly Income | |
|---|---|---|---|
| Employer or Business Name P Jones Enterprises INC   Phone 864-223-6621<br>Street 4500 E Sam Houston Parkway   Building S<br>City Pasadena   State TX   ZIP 77505   Country _____ | | Base | $14,025.63 /month |
| | | Overtime | _____ /month |
| Position or Title Physician | Check if this statement applies: | Bonus | _____ /month |
| Start Date 11 / 11 / 2015 *(mm/dd/yyyy)* | ☐ I am employed by a family member, | Commission | _____ /month |
| How long in this line of work? 17 Years 5 Months | property seller, real estate agent, or other party to the transaction. | Military Entitlements | _____ /month |
| ☒ Check if you are the Business Owner or Self-Employed   ○ I have an ownership share of less than 25%.<br>⦿ I have an ownership share of 25% or more. | Monthly Income (or Loss)<br>$14,025.63 | Other | _____ /month |
| | | TOTAL | $14,026.00 /month |

Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

1 of 9



GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

**1c. IF APPLICABLE, Complete Information for Additional Employment/Self Employment and Income**  ☐ *Does not apply*

Employer or Business Name _Greenwood Family Practice_  Phone _864-223-6621_

Street _805 Montague Ave A_  Unit # _____

City _Greenwood_  State _SC_  ZIP _29649_  Country _US_

Position or Title _Physician_

Start Date _06_ / _06_ / _2003_  (mm/dd/yyyy)

How long in this line of work? __20__ Years ____ Months

Check if this statement applies:
☐ I am employed by a family member, property seller, real estate agent, or other party to the transaction.

☒ Check if you are the Business Owner or Self-Employed
○ I have an ownership share of less than 25%.
◉ I have an ownership share of 25% or more.

Monthly Income (or Loss) $2,001.58

| Gross Monthly Income | |
|---|---|
| Base | $2,001.58 /month |
| Overtime | /month |
| Bonus | /month |
| Commission | /month |
| Military Entitlements | /month |
| Other | /month |
| TOTAL | $2,002.00 /month |

**1d. IF APPLICABLE, Complete Information for Previous Employment/Self Employment and Income**  ☒ *Does not apply*

**1e. Income from Other Sources**  ☒ *Does not apply*

# Section 2: Financial Information — Assets and Liabilities.
This section asks about things you own that are worth money and that you want considered to qualify for this loan. It then asks about your liabilities (or debts) that you pay each month, such as credit cards, alimony, or other expenses.

**2a. Assets - Bank Accounts, Retirement, and Other Accounts You Have**

Include all accounts below. Under Account Type, choose from the types listed here:

- Checking
- Savings
- Money Market
- Certificate of Deposit
- Mutual Fund
- Stocks
- Stock Options
- Bonds
- Retirement *(e.g., 401k, IRA)*
- Bridge Loan Proceeds
- Individual Development Account
- Trust Account
- Cash Value of Life Insurance *(used for the transaction)*

| Account Type – use list above | Financial Institution | Account Number | Cash or Market Value |
|---|---|---|---|
| Checking Account | Wells Fargo | 3273682413 | $62,129.69 |
| Checking Account | TD Ameritrade | 236990847 | $100,000.00 |
| Checking Account | TD Ameritrade | 865353145 | $17,110.20 |
| | | | |
| | | | |
| | | Provide TOTAL Amount Here | $179,239.89 |

**2b. Other Assets and Credits You Have**  ☐ *Does not apply*

Include all other assets and credits below. Under Asset or Credit Type, choose from the types listed here:

**Assets**
- Proceeds from Real Estate Property to be sold on or before closing
- Proceeds from Sale of Non-Real Estate Asset
- Secured Borrowed Funds
- Unsecured Borrowed Funds
- Other

**Credits**
- Earnest Money
- Employer Assistance
- Lot Equity
- Relocation Funds
- Rent Credit
- Sweat Equity
- Trade Equity

| Asset or Credit Type – use list above | Cash or Market Value |
|---|---|
| Other - Other Liquid Asset | $330,741.35 |
| Pending Net Sale Proceeds From Real Estate Assets | $60,000.00 |
| | |
| | |
| Provide TOTAL Amount Here | $390,741.35 |

Borrower Name: _Jed Alan Graham_
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

2 of 9

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

## 2c. Liabilities - Credit Cards, Other Debts, and Leases that You Owe     ☐ *Does not apply*

List all liabilities below (except real estate) and include deferred payments. Under Account Type, choose from the types listed here:
- Revolving *(e.g., credit cards)*  · Installment *(e.g., car, student, personal loans)*  · Open 30-Day *(balance paid monthly)*  · Lease *(not real estate)*  · Other

| Account Type – use list above | Company Name | Account Number | Unpaid Balance | To be paid off at or before closing | Monthly Payment |
|---|---|---|---|---|---|
| Installment | NELNET LOANS | 500000032380599 | $68,898.00 | ☐ | $846.00 |
| Installment | MB FIN SVCS | 5001438820001 | $37,831.00 | ☐ | $853.00 |
| Installment | NELNET LOANS | 500000032380699 | $24,111.00 | ☐ | $500.00 |
| Installment | SUNTRUST BANK | 4300000431518596 | $13,326.00 | ☐ | $603.00 |
| Revolving | SYNCB/NTWK | 650172****** | $1,711.00 | ☐ | $92.00 |
| Collections Judgments And Liens | JPMCB CARD | 438857****** | $292.00 | ☐ | $0.00 |

## 2d. Other Liabilities and Expenses     ☒ *Does not apply*

# Section 3: Financial Information — Real Estate. This section asks you to list all properties you currently own and what you owe on them. ☐ *I do not own any real estate*

## 3a. Property You Own     If you are refinancing, list the property you are refinancing FIRST.

Address  Street 618 and 620 Grier St                                                                      Condo 618 and 620

City Greenwood                                    State SC          ZIP 29649          Country _____

| Property Value | Status: Sold, Pending Sale, or Retained | Intended Occupancy: Investment, Primary Residence, Second Home, Other | Monthly Insurance, Taxes, Association Dues, etc. if not included in Monthly Mortgage Payment | For 2-4 Unit Primary or Investment Property | |
|---|---|---|---|---|---|
| | | | | Monthly Rental Income | For LENDER to calculate: Net Monthly Rental Income |
| $70,000.00 | Pending Sale | Investment | | $ | $ |

Mortgage Loans on this Property     ☒ *Does not apply*

## 3b. IF APPLICABLE, Complete Information for Additional Property     ☒ *Does not apply*

## 3c. IF APPLICABLE, Complete Information for Additional Property     ☒ *Does not apply*

# Section 4: Loan and Property Information. This section asks about the loan's purpose and the property you want to purchase or refinance.

## 4a. Loan and Property Information

Loan Amount $ 321,536.00          Loan Purpose  ⦿Purchase   ◯Refinance   ◯Other *(specify)* _____

Property Address  Street 6234 Danielson Loop                                                     Unit # _____

City The Villages                                    State FL     ZIP 32163     County Sumter

Number of Units 1          Property Value $ 960,000.00

Occupancy     ◯Primary Residence   ⦿Second Home   ◯Investment Property     FHA Secondary Residence ☐

1. Mixed-Use Property. If you will occupy the property, will you set aside space within the property to operate your own business? *(e.g., daycare facility, medical office, beauty/barber shop)*     ⦿NO  ◯YES

2. Manufactured Home. Is the property a manufactured home? *(e.g., a factory built dwelling built on a permanent chassis)*     ⦿NO  ◯YES

## 4b. Other New Mortgage Loans on the Property You are Buying or Refinancing     ☒ *Does not apply*

## 4c. Rental Income on the Property You Want to Purchase     For Purchase Only   ☒ *Does not apply*

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

3 of 9



GURLA20_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

**4d. Gifts or Grants You Have Been Given or Will Receive for this Loan**    ☒ *Does not apply*

Include all gifts and grants below. Under Source, choose from the sources listed here:
- Community Nonprofit
- Employer
- Federal Agency
- Local Agency
- Relative
- Religious Nonprofit
- State Agency
- Unmarried Partner
- Lender
- Other

## Section 5: Declarations. This section asks you specific questions about the property, your funding, and your past financial history.

**5a. About this Property and Your Money for this Loan**

| | |
|---|---|
| A. Will you occupy the property as your primary residence? | ◉ NO ○ YES |
| If YES, have you had an ownership interest in another property in the last three years? | ○ NO ○ YES |
| If YES, complete (1) and (2) below: | |
| (1) What type of property did you own: primary residence (PR), FHA secondary residence (SR), second home (SH), or investment property (IP)? | ———— |
| (2) How did you hold title to the property: by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | ———— |
| B. If this is a Purchase Transaction: Do you have a family relationship or business affiliation with the seller of the property? | ◉ NO ○ YES |
| C. Are you borrowing any money for this real estate transaction (*e.g., money for your closing costs or down payment*) or obtaining any money from another party, such as the seller or realtor, that you have not disclosed on this loan application? | ◉ NO ○ YES |
| If YES, what is the amount of this money? | $ ———— |
| D. 1. Have you or will you be applying for a mortgage loan on another property (not the property securing this loan) on or before closing this transaction that is not disclosed on this loan application? | ◉ NO ○ YES |
| 2. Have you or will you be applying for any new credit (*e.g., installment loan, credit card, etc.*) on or before closing this loan that is not disclosed on this application? | ◉ NO ○ YES |
| E. Will this property be subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid through your property taxes (*e.g., the Property Assessed Clean Energy Program*)? | ◉ NO ○ YES |

**5b. About Your Finances**

| | |
|---|---|
| F. Are you a co-signer or guarantor on any debt or loan that is not disclosed on this application? | ◉ NO ○ YES |
| G. Are there any outstanding judgments against you? | ◉ NO ○ YES |
| H. Are you currently delinquent or in default on a Federal debt? | ◉ NO ○ YES |
| I. Are you a party to a lawsuit in which you potentially have any personal financial liability? | ◉ NO ○ YES |
| J. Have you conveyed title to any property in lieu of foreclosure in the past 7 years? | ◉ NO ○ YES |
| K. Within the past 7 years, have you completed a pre-foreclosure sale or short sale, whereby the property was sold to a third party and the Lender agreed to accept less than the outstanding mortgage balance due? | ◉ NO ○ YES |
| L. Have you had property foreclosed upon in the last 7 years? | ◉ NO ○ YES |
| M. Have you declared bankruptcy within the past 7 years? | ◉ NO ○ YES |
| If YES, identify the type(s) of bankruptcy: ☐ Chapter 7 ☐ Chapter 11 ☐ Chapter 12 ☐ Chapter 13 | |

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

4 of 9



GURLA20_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

# Section 6: Acknowledgements and Agreements. This section tells you about your legal obligations when you sign this application.

## Acknowledgments and Agreements

Definitions:
- "Lender" includes the Lender's agents, service providers, and any of their successors and assigns.
- "Other Loan Participants" includes (i) any actual or potential owners of a loan resulting from this application (the "Loan"), (ii) acquirers of any beneficial or other interest in the Loan, (iii) any mortgage insurer, (iv) any guarantor, (v) any servicer of the Loan, and (vi) any of these parties' service providers, successors or assigns.

I agree to, acknowledge, and represent the following:

(1) The Complete Information for this Application
- The information I have provided in this application is true, accurate, and complete as of the date I signed this application.
- If the information I submitted changes or I have new information before closing of the Loan, I must change and supplement this application, including providing any updated/supplemented real estate sales contract.
- For purchase transactions: The terms and conditions of any real estate sales contract signed by me in connection with this application are true, accurate, and complete to the best of my knowledge and belief. I have not entered into any other agreement, written or oral, in connection with this real estate transaction.
- The Lender and Other Loan Participants may rely on the information contained in the application before and after closing of the Loan.
- Any intentional or negligent misrepresentation of information may result in the imposition of:
  - (a) civil liability on me, including monetary damages, if a person suffers any loss because the person relied on any misrepresentation that I have made on this application, and/or
  - (b) criminal penalties on me including, but not limited to, fine or imprisonment or both under the provisions of Federal law (18 U.S.C. §§ 1001 *et seq.*).

(2) The Property's Security
The Loan I have applied for in this application will be secured by a mortgage or deed of trust which provides the Lender a security interest in the property described in this application.

(3) The Property's Appraisal, Value, and Condition
- Any appraisal or value of the property obtained by the Lender is for use by the Lender and Other Loan Participants.
- The Lender and Other Loan Participants have not made any representation or warranty, express or implied, to me about the property, its condition, or its value.

(4) Electronic Records and Signatures
- The Lender and Other Loan Participants may keep any paper record and/or electronic record of this application, whether or not the Loan is approved.

- If this application is created as (or converted into) an "electronic application", I consent to the use of "electronic records" and "electronic signatures" as the terms are defined in and governed by applicable Federal and/or state electronic transactions laws.
- I intend to sign and have signed this application either using my:
  - (a) electronic signature; or
  - (b) a written signature and agree that if a paper version of this application is converted into an electronic application, the application will be an electronic record, and the representation of my written signature on this application will be my binding electronic signature.
- I agree that the application, if delivered or transmitted to the Lender or Other Loan Participants as an electronic record with my electronic signature, will be as effective and enforceable as a paper application signed by me in writing.

(5) Delinquency
- The Lender and Other Loan Participants may report information about my account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report and will likely affect my credit score.
- If I have trouble making my payments I understand that I may contact a HUD-approved housing counseling organization for advice about actions I can take to meet my mortgage obligations.

(6) Authorization for Use and Sharing of Information
By signing below, in addition to the representations and agreements made above, I expressly authorize the Lender and Other Loan Participants to obtain, use, and share with each other (i) the loan application and related loan information and documentation, (ii) a consumer credit report on me, and (iii) my tax return information, as necessary to perform the actions listed below, for so long as they have an interest in my loan or its servicing:
  - (a) process and underwrite my loan;
  - (b) verify any data contained in my consumer credit report, my loan application and other information supporting my loan application;
  - (c) inform credit and investment decisions by the Lender and Other Loan Participants;
  - (d) perform audit, quality control, and legal compliance analysis and reviews;
  - (e) perform analysis and modeling for risk assessments;
  - (f) monitor the account for this loan for potential delinquencies and determine any assistance that may be available to me; and
  - (g) other actions permissible under applicable law.

Borrower Signature _____     Date *(mm/dd/yyyy)* _____
Jed Alan Graham

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

5 of 9

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

## Section 7: Military Service. This section asks questions about your (or your deceased spouse's) military service.

### Military Service of Borrower

Military Service – Did you (or your deceased spouse) ever serve, or are you currently serving, in the United States Armed Forces? ⊙ NO ○ YES
*If YES, check all that apply:* ☐ Currently serving on active duty with projected expiration date of service/tour ____ / ____ / _____ (mm/dd/yyyy)
☐ Currently retired, discharged, or separated from service
☐ Only period of service was as a non-activated member of the Reserve or National Guard
☐ Surviving spouse

## Section 8: Demographic Information. This section asks about your ethnicity, sex, and race.

### Demographic Information of Borrower

The purpose of collecting this information is to help ensure that all applicants are treated fairly and that the housing needs of communities and neighborhoods are being fulfilled. For residential mortgage lending, Federal law requires that we ask applicants for their demographic information (ethnicity, sex, and race) in order to monitor our compliance with equal credit opportunity, fair housing, and home mortgage disclosure laws. You are not required to provide this information, but are encouraged to do so. You may select one or more designations for "Ethnicity" and one or more designations for "Race." The law provides that we may not discriminate on the basis of this information, or on whether you choose to provide it. However, if you choose not to provide the information and you have made this application in person, Federal regulations require us to note your ethnicity, sex, and race on the basis of visual observation or surname. The law also provides that we may not discriminate on the basis of age or marital status information you provide in this application. If you do not wish to provide some or all of this information, please check below.

**Ethnicity:** *Check one or more*

☐ Hispanic or Latino
  ☐ Mexican ☐ Puerto Rican ☐ Cuban
  ☐ Other Hispanic or Latino – *Print origin:* _____

  *For example: Argentinean, Colombian, Dominican, Nicaraguan, Salvadoran, Spaniard, and so on.*
☒ Not Hispanic or Latino
☐ I do not wish to provide this information

Sex
☐ Female
☒ Male
☐ I do not wish to provide this information

**Race:** *Check one or more*

☐ American Indian or Alaska Native – *Print name of enrolled or principal tribe:* _____
☐ Asian
  ☐ Asian Indian ☐ Chinese ☐ Filipino
  ☐ Japanese ☐ Korean ☐ Vietnamese
  ☐ Other Asian – *Print race:* _____
  *For example: Hmong, Laotian, Thai, Pakistani, Cambodian, and so on.*
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
  ☐ Native Hawaiian ☐ Guamanian or Chamorro ☐ Samoan
  ☐ Other Pacific Islander – *Print race:* _____

  *For example: Fijian, Tongan, and so on.*
☒ White
☐ I do not wish to provide this information

---

**To Be Completed by Financial Institution *(for application taken in person):***

Was the ethnicity of the Borrower collected on the basis of visual observation or surname?   ⊙ NO ○ YES
Was the sex of the Borrower collected on the basis of visual observation or surname?   ⊙ NO ○ YES
Was the race of the Borrower collected on the basis of visual observation or surname?   ⊙ NO ○ YES

**The Demographic Information was provided through:**

○ Face-to-Face Interview (*includes Electronic Media w/ Video Component*)   ○ Telephone Interview   ○ Fax or Mail   ⊙ Email or Internet

---

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

6 of 9

GURLA20_S 0718
GURLA20S   (CLS)
02/02/2022 08:02 AM PST

## Section 9: Loan Originator Information. To be completed by your Loan Originator.

**Loan Originator Information**

Loan Originator Organization Name Acopia Home Loans

Address 10570 S. US Highway One, Suite #102, Port St Lucie, FL 34952

Loan Originator Organization NMLSR ID# 4664        State License ID# MLD1224

Loan Originator Name James M Cannata

Loan Originator NMLSR ID# 328552        State License ID# LO8495

Email jcannata@acopiahomeloans.com        Phone 772-236-3007

Signature _____        Date (mm/dd/yyyy) _____

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

7 of 9

GURLA20_S 0718
GURLA20S   (CLS)
02/02/2022 08:02 AM PST

**To be completed by the Lender:**

Lender Loan No./Universal Loan Identifier 549300L1DBFIJZI8LA4010402111712223          Agency Case No. _____

# Uniform Residential Loan Application — Lender Loan Information
This section is completed by your Lender.

## L1. Property and Loan Information

**Community Property State**
☐ At least one borrower lives in a community property state.
☐ The property is in a community property state.

**Transaction Detail**
☐ Conversion of Contract for Deed or Land Contract
☐ Renovation
☐ Construction-Conversion/Construction-to-Permanent
  ○ Single-Closing  ○ Two-Closing
Construction/Improvement Costs $ _____
Lot Acquired Date ____ / ____ / _____ (mm/dd/yyyy)
Original Cost of Lot $ _____

**Refinance Type**
○ No Cash Out
○ Limited Cash Out
○ Cash Out

**Refinance Program**
○ Full Documentation
○ Interest Rate Reduction
○ Streamlined without Appraisal
○ Other _____

**Energy Improvement**
☐ Mortgage loan will finance energy-related improvements.
☐ Property is currently subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid for through property taxes (e.g., the Property Assessed Clean Energy program).

Project Type   ☐ Condominium   ☐ Cooperative   ☐ Planned Unit Development (PUD)   ☒ Property is not located in a project

## L2. Title Information

**Title to the Property Will be Held in What Name(s):**
Jed Alan Graham and Michele Graham

**For Refinance: Title to the Property is Currently Held in What Name(s):**
_____

**Estate Will be Held in**
⦿ Fee Simple
○ Leasehold Expiration Date ____ / ____ / _____ (mm/dd/yyyy)

**Manner in Which Title Will be Held**
○ Sole Ownership      ○ Joint Tenancy with Right of Survivorship
○ Life Estate         ○ Tenancy by the Entirety
○ Tenancy in Common   ⦿ Other

**Trust Information**
○ Title Will be Held by an *Inter Vivos (Living)* Trust
○ Title Will be Held by a Land Trust

**Indian Country Land Tenure**
○ Fee Simple On a Reservation
○ Individual Trust Land *(Allotted/Restricted)*
○ Tribal Trust Land On a Reservation
○ Tribal Trust Land Off Reservation
○ Alaska Native Corporation Land

## L3. Mortgage Loan Information

**Mortgage Type Applied For**
⦿ Conventional   ○ USDA-RD
○ FHA   ○ VA   ○ Other: _____

**Terms of Loan**
Note Rate 3.750 %
Loan Term 360 (months)

**Mortgage Lien Type**
⦿ First Lien
○ Subordinate Lien

**Amortization Type**
⦿ Fixed Rate   ○ Other *(explain)*: _____
○ Adjustable Rate
  If Adjustable Rate:
  Initial Period Prior to First Adjustment _____ (months)
  Subsequent Adjustment Period _____ (months)

**Loan Features**
☐ Balloon / Balloon Term _____ (months)
☐ Interest Only / Interest Only Term _____ (months)
☐ Negative Amortization
☐ Prepayment Penalty / Prepayment Penalty Term _____ (months)
☐ Temporary Interest Rate Buydown / Initial Buydown Rate _____ %
☐ Other *(explain)*: _____

**Proposed Monthly Payment for Property**

| | |
|---|---|
| First Mortgage *(P & I)* | $ 1,489.08 |
| Subordinate Lien(s) *(P & I)* | $ _____ |
| Homeowner's Insurance | $ 108.42 |
| Supplemental Property Insurance | $ _____ |
| Property Taxes | $ 886.94 |
| Mortgage Insurance | $ _____ |
| Association/Project Dues *(Condo, Co-Op, PUD)* | $ 164.00 |
| Other | $ _____ |
| Total | $ 2,648.44 |

Borrower Name(s): Jed Alan Graham
Uniform Residential Loan Application — Lender Loan Information
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

8 of 9

GURLA20_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

## L4. Qualifying the Borrower – Minimum Required Funds or Cash Back

### DUE FROM BORROWER(S)

| | |
|---|---|
| A. Sales Contract Price | $ 946,531.00 |
| B. Improvements, Renovations, and Repairs | $ |
| C. Land *(if acquired separately)* | $ |
| D. For Refinance: Balance of Mortgage Loans on the Property to be paid off in the Transaction *(See Table 3a. Property You Own)* | $ |
| E. Credit Cards and Other Debts Paid Off *(See Table 2c. Liabilities — Credit Cards, Other Debts, and Leases that You Owe)* | $ |
| F. Borrower Closing Costs *(including Prepaid and Initial Escrow Payments)* | $ 19,396.02 |
| G. Discount Points | $ 800.62 |
| H. TOTAL DUE FROM BORROWER(s) *(Total of A thru G)* | $ 966,727.64 |

### TOTAL MORTGAGE LOANS

| | |
|---|---|
| I. Loan Amount<br>Loan Amount Excluding Financed Mortgage Insurance *(or Mortgage Insurance Equivalent)* $ 321,536.00<br>Financed Mortgage Insurance *(or Mortgage Insurance Equivalent)* Amount $ | $ 321,536.00 |
| J. Other New Mortgage Loans on the Property the Borrower(s) is Buying or Refinancing *(See Table 4b. Other New Mortgage Loans on the Property You are Buying or Refinancing)* | $ |
| K. TOTAL MORTGAGE LOANS *(Total of I and J)* | $ 321,536.00 |

### TOTAL CREDITS

| | |
|---|---|
| L. Seller Credits *(Enter the amount of Borrower(s) costs paid by the property seller)* | $ 6,636.20 |
| M. Other Credits *(Enter the sum of all other credits — Borrower Paid Fees, Earnest Money, Employer Assisted Housing, Lease Purchase Fund, Lot Equity, Relocation Funds, Sweat Equity, Trade Equity, Other)* | $ 180,837.69 |
| N. TOTAL CREDITS *(Total of L and M)* | $ 187,473.89 |

### CALCULATION

| | |
|---|---|
| TOTAL DUE FROM BORROWER(s) *(Line H)* | $ 966,727.64 |
| LESS TOTAL MORTGAGE LOANS *(Line K)* AND TOTAL CREDITS *(Line N)* | - $ 509,009.89 |
| Cash From/To the Borrower *(Line H minus Line K and Line N)*<br>NOTE: This amount does not include reserves or other funds that may be required by the Lender to be verified. | $ 457,717.75 |

Borrower Name(s): Jed Alan Graham
Uniform Residential Loan Application — Lender Loan Information
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

9 of 9



GURLA20_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

## INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

| | |
|---|---|
| Loan Number: 104021117122 | Date: February 2, 2022 |
| Loan Amount: $321,536.00 | First Payment Date: April 1, 2022 |
| Borrower Name(s):<br>Jed Alan Graham | Servicer Name and Address:<br>Acopia, LLC<br>306 Northcreek Blvd, Suite 100<br>Goodlettsville, TN 37072 |
| | Servicer Telephone: 615-859-5537<br>Toll-Free Number: 888-859-5537 |
| Property Address: 6234 Danielson Loop, The Villages, FL 32163 | |

THIS IS AN ESTIMATE OF ACTIVITY IN YOUR ESCROW ACCOUNT DURING THE COMING YEAR BASED ON PAYMENTS ANTICIPATED TO BE MADE FROM YOUR ACCOUNT.

| Month<br>(or Period) | Payments to<br>Escrow Account | Payments from<br>Escrow Account | Description | Escrow Account<br>Balance |
|---|---|---|---|---|
| Initial Deposit: | | | | $    3,675.76 |
| 04/22 | 995.36 | | | 4,671.12 |
| 05/22 | 995.36 | | | 5,666.48 |
| 06/22 | 995.36 | | | 6,661.84 |
| 07/22 | 995.36 | | | 7,657.20 |
| 08/22 | 995.36 | | | 8,652.56 |
| 09/22 | 995.36 | | | 9,647.92 |
| 10/22 | 995.36 | | | 10,643.28 |
| 11/22 | 995.36 | | | 11,638.64 |
| 12/22 | 995.36 | 10,643.28 | Prop. Taxes | 1,990.72 |
| 01/23 | 995.36 | | | 2,986.08 |
| 02/23 | 995.36 | 1,301.04 | Haz Ins. | 2,680.40 |
| 03/23 | 995.36 | | | 3,675.76 |

(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.)

Cushion selected by servicer: $ _____ 1,990.72

Total disbursements: $ _____ 11,944.32

YOUR MONTHLY MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE $2,484.44, OF WHICH $1,489.08 WILL BE FOR PRINCIPAL AND INTEREST AND $995.36 WILL GO INTO YOUR ESCROW ACCOUNT.

SEE "SIGNATURE ADDENDUM" ATTACHED HERETO, AND MADE A PART HEREOF.



LOAN #: 104021117122

# SIGNATURE ADDENDUM

JED ALAN GRAHAM                                                                              DATE



GSGN  1103
GRS4 (CLS)
02/02/2022 08:02 AM PST

LOAN #: 104021117122

| | MORTGAGE ACCOUNT NO.<br>104021117122 | PAYMENT DUE DATE<br>05/01/2022<br>AMOUNT DUE<br>$2,484.44 | IF NOT RECEIVED BY<br>05/16/2022<br>a late fee of **$74.45**<br>will be charged. |
|---|---|---|---|
| DATE _____<br>CHECK _____<br>CASH _____<br>AMT. _____ | Jed Alan Graham<br><br>Acopia, LLC<br>306 Northcreek Blvd, Suite 100<br>Goodlettsville, TN 37072 | | USE FOR ADDL. AMOUNTS |

| PRINCIPAL | |
|---|---|
| OTHER | |
| ESCROW | |
| TOTAL | |

PROPERTY ADDRESS:
6234 Danielson Loop, The Villages, FL 32163

COUPON MUST ACCOMPANY PAYMENT

| | MORTGAGE ACCOUNT NO.<br>104021117122 | PAYMENT DUE DATE<br>04/01/2022<br>AMOUNT DUE<br>$2,484.44 | IF NOT RECEIVED BY<br>04/16/2022<br>a late fee of **$74.45**<br>will be charged. |
|---|---|---|---|
| DATE _____<br>CHECK _____<br>CASH _____<br>AMT. _____ | Jed Alan Graham<br><br>Acopia, LLC<br>306 Northcreek Blvd, Suite 100<br>Goodlettsville, TN 37072 | | USE FOR ADDL. AMOUNTS |

| PRINCIPAL | |
|---|---|
| OTHER | |
| ESCROW | |
| TOTAL | |

PROPERTY ADDRESS:
6234 Danielson Loop, The Villages, FL 32163

COUPON MUST ACCOMPANY PAYMENT



LOAN #: 104021117122

# USA PATRIOT ACT INFORMATION FORM
## Customer Identification Verification

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies every customer. When applying for a loan, applicants will be asked for their name, address, date of birth, and other information that will allow lenders to identify them. Applicants may also be asked to show their driver's license or other identifying documents.

**THE FOLLOWING CUSTOMER INFORMATION MUST BE OBTAINED TO BE IN COMPLIANCE WITH THE USA PATRIOT ACT. THIS INFORMATION MUST BE RETAINED FOR FIVE YEARS AFTER THE ACCOUNT IS CLOSED.**

Borrower Name:  Jed Alan Graham

Date of Birth:  November 18, 1956

Residential Address:  123 Edinborough Circle
Greenwood, SC 29649

Tax Identification Number (SSN):  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

COMPLETE A SEPARATE FORM FOR <u>EACH</u> BORROWER.

FORMS OF IDENTIFICATION: Only One form of Verification is Required.

| First Document List - | Country/State of Origin | ID Number | Issuance Date | Expiration Date |
|---|---|---|---|---|
| ☐ State Issued Driver License | | | | |
| ☐ State Issued ID Card | | | | |
| ☐ Military ID Card | | | | |
| ☐ Passport | | | | |
| ☐ US Alien Registration Card | | | | |
| ☐ Canadian Driver License | | | | |

| Second Document List - | Name of Issuer on Form | ID Number | Issuance Date | Expiration Date |
|---|---|---|---|---|
| ☐ Social Security Card | U.S. Govt | | | |
| ☐ Government Issued Visa | | | | |
| ☐ Non-US/Canadian Driver License | | | | |
| ☐ Most Recent Signed Tax Returns[1] | ☐ Fed  ☐ State | TIN: | | |
| ☐ Property Tax Bill | | APN: | | |
| ☐ Voter Registration Card | | | | |
| ☐ Organizational Membership Card | | | | |
| ☐ Bank/Investment/Loan Statements[1] | | | | |
| ☐ Paycheck stub with name[1] | | | | |
| ☐ Most Recent W-2[1] | | | | |
| ☐ Home/car/renter insurance papers | | | | |
| ☐ Recent utility bill | | | | |

[1] Do not verify identity with documents that illustrate income and/or assets if the documentation type for this loan precludes collection of such documentation.

Comments: _____
_____
_____

I certify that I have personally viewed and accurately recorded the information from the documents identified above, and have reasonably confirmed the identity of the Borrower.

_____    _____    _____
Signature                Printed Name/Title            Date

ICE Mortgage Technology, Inc.

G3PATRIO  0911
G3PATRIO (CLS)
02/01/2022 02:00 PM PST



# ACKNOWLEDGMENT

The parties hereto acknowledge that the fees paid to Peninsula Land & Title are for the closing of the transaction and issuing the title insurance policy. The parties further acknowledge that should they desire legal representation with regard to the matter, they should seek independent counsel and hereby agree to hold harmless Peninsula Land & Title as well as its staff, from any and all liability as a result of the above referenced transaction.

February 2, 2022

Buyer(s):

_____          _____
Jed Alan Graham                                    Michele Graham

DoubleTime®

## BUYERS GAP AFFIDAVIT

STATE OF
COUNTY OF

BEFORE ME, the undersigned authority, personally appeared, Jed Alan Graham and Michele Graham, who, after being by me first duly sworn, depose(s) and say(s):

1)      That the Affiant(s) is/are buying this date, the following-described property and has/have knowledge of the matters contained herein:

Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

2)      That there are no matters pending against Affiant(s) that could give rise to a lien that would attach to the property between December 13, 2021 and the date of recording of the Deed following this closing.

3)      That Affiant(s) has/have not and will not execute any instrument(s), that would or could adversely affect the title to the property prior to the recording of the Deed.

FURTHER AFFIANT(S) SAYETH NOT.

_____
Jed Alan Graham

_____
Michele Graham

State of
County of

The foregoing instrument was acknowledged before me by means of [    ] physical presence or [_] online notarization, this _____ day of February, 2022 by Jed A. Graham and Michele Graham, who [_] are personally known or [    ] have produced a driver's license as identification.

[Notary Seal]

_____
Notary Public

Printed Name: _____

My Commission Expires: _____

DoubleTime®

## NOTICE TO PURCHASER-MORTGAGOR

Buyer name(s):  Jed Alan Graham and Michele Graham, husband and wife

Property Addrs:  6234 Danielson Loop, The Villages, FL 32163-5941

Lender name:  Acopia LLC

Pursuant to Section 627.798, Florida Statutes, notice is hereby given by Peninsula Land & Title, to the undersigned purchaser-mortgagor that a MORTGAGEE Title Insurance Policy is to be issued to YOUR MORTGAGEE LENDER, and that such policy DOES NOT provide title protection to YOU as the owner of the real estate you are purchasing.

The undersigned has read the above notice and understands that such mortgagee title insurance policy to be issued to the mortgagee lender does not provide title insurance protection to the undersigned as owner.

Dated this February 2, 2022

PLEASE CHECK ONE AND SIGN:

__X____  We do not wish to purchase an Owner's title insurance policy.

_____  We would like to purchase an Owner's title insurance policy at an additional cost of $3,465.00. We are enclosing a personal check, payable to Peninsula Land & Title, for this policy. We understand this rate is good at the present time only, as a simultaneous issue with the Mortgagee policy described above.

_____(Seal)          _____(Seal)
Jed Alan Graham -Borrower                          Michele Graham -Borrower

V20143

## Florida Insurance Premium Disclosure & Settlement Agent Certification

**Agency File#:**    V20143

**Closing Date:  February 2, 2022**

You are being given this form and certification to explain differences between Federal and Florida law. Federal law requires the costs of the policies to be calculated using the full premium for the lender policy. Florida law allows the premium for the lender's policy to be calculated using a lower rate when purchased along with an owner's policy.

If both an owner's policy and a lender's policy are being purchased, the title insurance premiums on this form might differ from the premiums on the Closing Disclosure. The owner's policy premium listed on the Closing Disclosure will probably be lower than on this form, and the lender policy premium will probably be higher.

The chart below lists the amounts disclosed by the lender and the premium for the policies being purchased. These amounts include the charges for endorsements to the policies:

|     |                         | Closing Disclosure Amount | | Florida Premium | |
| --- | ----------------------- | ---------- | ---------- | ---------- | ---------- |
|     |                         | Buyer      | Seller     | Buyer      | Seller     |
| (a) | Lender's Policy:        | $1,901.30  | $0.00      | $1,683.00  |            |
| (b) | Lender's Endorsements:  | $0.00      | $0.00      | $218.30    |            |
| (c) | Lender's Policy Total:  | $1,901.30  | $0.00      | $1,901.30  |            |
| (d) | Owner's Policy:         | $0.00      | $0.00      | $0.00      |            |
| (e) | Owner's Endorsements:   | $0.00      | $0.00      | $0.00      |            |
| (f) | Owner's Policy Total:   | $0.00      | $0.00      | $0.00      |            |
|     | Total All Policies ( c + f ): | $1,901.30 | | $1,901.30 | |

The total dollar amount for the policies as disclosed on this form should be equal to the total premium calculated using the Florida Insurance Code. The Florida Premium amounts listed above will be used to disburse the funds from the title agency's escrow account to Old Republic National Title Insurance Company and Peninsula Land & Title.

The undersigned hereby certify that they have carefully reviewed the Closing Disclosure or other settlement statement form and they approve and agree to the payment of all fees, costs, expenses and disbursement as reflected on the Closing Disclosure or other settlement statement form to be paid on their behalf. We further certify that we have received a copy of the Closing Disclosure or other settlement statement.

_____Date_____
Jed Alan Graham

_____Date_____
Michele Graham

---

### Settlement Agent Certification

I have reviewed the Closing Disclosure, the settlement statement, the lender's closing instructions and any and all other forms relative to the escrow funds, including any disclosure of the Florida title insurance premiums being paid, and I agree to disburse the escrow funds in accordance with the terms of this transaction and Florida law.

| _____ | _____ |
| Settlement Agent Signature | Date Signed |
| _____ | _____ |
| Settlement Agent Name | Florida License Number |
| **Peninsula Land & Title** | **W334505** |
| Title Agency Holding Funds | Florida License Number |

LOAN #: 104021117122

# AFFIDAVIT OF OCCUPANCY

STATE OF   FLORIDA        }
COUNTY OF  Sumter        } SS.
6234 Danielson Loop
The Villages, FL 32163

Before me, the undersigned authority duly authorized to take acknowledgments and administer oaths personally appeared:  **Jed Alan Graham**

("Affiants") who, upon being duly sworn, depose and say as follows:

1.    Affiants hereby certify that, upon taking title to the real property described above, their occupancy status will be as follows:

[  ]   1.1    **Primary Residence:** At least one borrower will occupy, establish, and use the Property identified above as my/our principal residence within 60 days after the execution of the Security Instrument and shall continue to occupy the Property as my/our principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing.

[ x ]   1.2    **Second Home:** At least one borrower will occupy the property as a second home (vacation, etc) while maintaining a principal residence elsewhere.

[  ]   1.3    **Investment Property:** Not owner occupied. Purchased as an investment to be held or rented.

[  ]   1.4    **REFINANCES ONLY**
I/We the undersigned certify that the property referenced above is NOT currently listed for sale or under contract to be listed for sale.

      **I/We the undersigned acquired the property on**

2.    Affiants acknowledge that this Affidavit of Occupancy is given as a material inducement to cause:
**Acopia, LLC**

to make a mortgage loan to Affiants and that any false statements, misrepresentations or material omissions shall constitute a breach of the Affiant's obligation to:
**Acopia, LLC**

and that all the provisions of the mortgage indenture concerning default on the Promissory Note will thereupon be in full force and effect.

3.    Affiants further acknowledge that they have read and understand the following:
**18 United States Code Section 1014:**
"Whoever knowingly makes any false statement or report,...for the purpose of influencing in any way the action of...any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, any Federal home loan bank, the Federal Housing Finance Board, the Federal Deposit Insurance Corporation, the Farm Credit System Insurance Corporation, or the National Credit Union Administration Board,...upon any application,...or loan,...shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both."

4.    The agreements and covenants contained herein shall survive the closing of the mortgage loan transaction.

_____          _____
JED ALAN GRAHAM                                    DATE

LOAN #: 104021117122

State of FLORIDA

County of SUMTER

The foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

_____
Signature

_____
Printed Name

_____
Title or Rank

_____
Serial Number (if any)

ICE Mortgage Technology, Inc.                    Page 2 of 2                    GAOC  1017
                                                                               GAOC (CLS)
                                                                     02/01/2022 02:00 PM PST

## AMORTIZATION SCHEDULE

Loan No.:    104021117122
Borrower(s):  Jed Alan Graham

Lender:    Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,536.00
Term:  30 years
Interest Rate:  3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 1 | 04/01/2022 | $1,489.08 | $484.28 | $1,004.80 | $321,051.72 | $0.00 | |
| 2 | 05/01/2022 | $1,489.08 | $485.79 | $1,003.29 | $320,565.93 | $0.00 | |
| 3 | 06/01/2022 | $1,489.08 | $487.31 | $1,001.77 | $320,078.62 | $0.00 | |
| 4 | 07/01/2022 | $1,489.08 | $488.83 | $1,000.25 | $319,589.79 | $0.00 | |
| 5 | 08/01/2022 | $1,489.08 | $490.36 | $998.72 | $319,099.43 | $0.00 | |
| 6 | 09/01/2022 | $1,489.08 | $491.89 | $997.19 | $318,607.54 | $0.00 | |
| 7 | 10/01/2022 | $1,489.08 | $493.43 | $995.65 | $318,114.11 | $0.00 | |
| 8 | 11/01/2022 | $1,489.08 | $494.97 | $994.11 | $317,619.14 | $0.00 | |
| 9 | 12/01/2022 | $1,489.08 | $496.52 | $992.56 | $317,122.62 | $0.00 | |
| 10 | 01/01/2023 | $1,489.08 | $498.07 | $991.01 | $316,624.55 | $0.00 | |
| 11 | 02/01/2023 | $1,489.08 | $499.63 | $989.45 | $316,124.92 | $0.00 | |
| 12 | 03/01/2023 | $1,489.08 | $501.19 | $987.89 | $315,623.73 | $0.00 | |
| 13 | 04/01/2023 | $1,489.08 | $502.76 | $986.32 | $315,120.97 | $0.00 | |
| 14 | 05/01/2023 | $1,489.08 | $504.33 | $984.75 | $314,616.64 | $0.00 | |
| 15 | 06/01/2023 | $1,489.08 | $505.90 | $983.18 | $314,110.74 | $0.00 | |
| 16 | 07/01/2023 | $1,489.08 | $507.48 | $981.60 | $313,603.26 | $0.00 | |
| 17 | 08/01/2023 | $1,489.08 | $509.07 | $980.01 | $313,094.19 | $0.00 | |
| 18 | 09/01/2023 | $1,489.08 | $510.66 | $978.42 | $312,583.53 | $0.00 | |
| 19 | 10/01/2023 | $1,489.08 | $512.26 | $976.82 | $312,071.27 | $0.00 | |
| 20 | 11/01/2023 | $1,489.08 | $513.86 | $975.22 | $311,557.41 | $0.00 | |
| 21 | 12/01/2023 | $1,489.08 | $515.46 | $973.62 | $311,041.95 | $0.00 | |
| 22 | 01/01/2024 | $1,489.08 | $517.07 | $972.01 | $310,524.88 | $0.00 | |
| 23 | 02/01/2024 | $1,489.08 | $518.69 | $970.39 | $310,006.19 | $0.00 | |
| 24 | 03/01/2024 | $1,489.08 | $520.31 | $968.77 | $309,485.88 | $0.00 | |
| 25 | 04/01/2024 | $1,489.08 | $521.94 | $967.14 | $308,963.94 | $0.00 | |
| 26 | 05/01/2024 | $1,489.08 | $523.57 | $965.51 | $308,440.37 | $0.00 | |
| 27 | 06/01/2024 | $1,489.08 | $525.20 | $963.88 | $307,915.17 | $0.00 | |
| 28 | 07/01/2024 | $1,489.08 | $526.85 | $962.23 | $307,388.32 | $0.00 | |
| 29 | 08/01/2024 | $1,489.08 | $528.49 | $960.59 | $306,859.83 | $0.00 | |
| 30 | 09/01/2024 | $1,489.08 | $530.14 | $958.94 | $306,329.69 | $0.00 | |
| 31 | 10/01/2024 | $1,489.08 | $531.80 | $957.28 | $305,797.89 | $0.00 | |
| 32 | 11/01/2024 | $1,489.08 | $533.46 | $955.62 | $305,264.43 | $0.00 | |
| 33 | 12/01/2024 | $1,489.08 | $535.13 | $953.95 | $304,729.30 | $0.00 | |
| 34 | 01/01/2025 | $1,489.08 | $536.80 | $952.28 | $304,192.50 | $0.00 | |
| 35 | 02/01/2025 | $1,489.08 | $538.48 | $950.60 | $303,654.02 | $0.00 | |
| 36 | 03/01/2025 | $1,489.08 | $540.16 | $948.92 | $303,113.86 | $0.00 | |
| 37 | 04/01/2025 | $1,489.08 | $541.85 | $947.23 | $302,572.01 | $0.00 | |
| 38 | 05/01/2025 | $1,489.08 | $543.54 | $945.54 | $302,028.47 | $0.00 | |
| 39 | 06/01/2025 | $1,489.08 | $545.24 | $943.84 | $301,483.23 | $0.00 | |
| 40 | 07/01/2025 | $1,489.08 | $546.94 | $942.14 | $300,936.29 | $0.00 | |
| 41 | 08/01/2025 | $1,489.08 | $548.65 | $940.43 | $300,387.64 | $0.00 | |
| 42 | 09/01/2025 | $1,489.08 | $550.37 | $938.71 | $299,837.27 | $0.00 | |
| 43 | 10/01/2025 | $1,489.08 | $552.09 | $936.99 | $299,285.18 | $0.00 | |
| 44 | 11/01/2025 | $1,489.08 | $553.81 | $935.27 | $298,731.37 | $0.00 | |
| 45 | 12/01/2025 | $1,489.08 | $555.54 | $933.54 | $298,175.83 | $0.00 | |
| 46 | 01/01/2026 | $1,489.08 | $557.28 | $931.80 | $297,618.55 | $0.00 | |
| 47 | 02/01/2026 | $1,489.08 | $559.02 | $930.06 | $297,059.53 | $0.00 | |
| 48 | 03/01/2026 | $1,489.08 | $560.77 | $928.31 | $296,498.76 | $0.00 | |
| 49 | 04/01/2026 | $1,489.08 | $562.52 | $926.56 | $295,936.24 | $0.00 | |
| 50 | 05/01/2026 | $1,489.08 | $564.28 | $924.80 | $295,371.96 | $0.00 | |
| 51 | 06/01/2026 | $1,489.08 | $566.04 | $923.04 | $294,805.92 | $0.00 | |
| 52 | 07/01/2026 | $1,489.08 | $567.81 | $921.27 | $294,238.11 | $0.00 | |
| 53 | 08/01/2026 | $1,489.08 | $569.59 | $919.49 | $293,668.52 | $0.00 | |
| 54 | 09/01/2026 | $1,489.08 | $571.37 | $917.71 | $293,097.15 | $0.00 | |
| 55 | 10/01/2026 | $1,489.08 | $573.15 | $915.93 | $292,524.00 | $0.00 | |
| 56 | 11/01/2026 | $1,489.08 | $574.94 | $914.14 | $291,949.06 | $0.00 | |
| 57 | 12/01/2026 | $1,489.08 | $576.74 | $912.34 | $291,372.32 | $0.00 | |

# AMORTIZATION SCHEDULE

Loan No.: 104021117122
Borrower(s): Jed Alan Graham

Lender: Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,536.00
Term: 30 years
Interest Rate: 3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 58 | 01/01/2027 | $1,489.08 | $578.54 | $910.54 | $290,793.78 | $0.00 | |
| 59 | 02/01/2027 | $1,489.08 | $580.35 | $908.73 | $290,213.43 | $0.00 | |
| 60 | 03/01/2027 | $1,489.08 | $582.16 | $906.92 | $289,631.27 | $0.00 | |
| 61 | 04/01/2027 | $1,489.08 | $583.98 | $905.10 | $289,047.29 | $0.00 | |
| 62 | 05/01/2027 | $1,489.08 | $585.81 | $903.27 | $288,461.48 | $0.00 | |
| 63 | 06/01/2027 | $1,489.08 | $587.64 | $901.44 | $287,873.84 | $0.00 | |
| 64 | 07/01/2027 | $1,489.08 | $589.47 | $899.61 | $287,284.37 | $0.00 | |
| 65 | 08/01/2027 | $1,489.08 | $591.32 | $897.76 | $286,693.05 | $0.00 | |
| 66 | 09/01/2027 | $1,489.08 | $593.16 | $895.92 | $286,099.89 | $0.00 | |
| 67 | 10/01/2027 | $1,489.08 | $595.02 | $894.06 | $285,504.87 | $0.00 | |
| 68 | 11/01/2027 | $1,489.08 | $596.88 | $892.20 | $284,907.99 | $0.00 | |
| 69 | 12/01/2027 | $1,489.08 | $598.74 | $890.34 | $284,309.25 | $0.00 | |
| 70 | 01/01/2028 | $1,489.08 | $600.61 | $888.47 | $283,708.64 | $0.00 | |
| 71 | 02/01/2028 | $1,489.08 | $602.49 | $886.59 | $283,106.15 | $0.00 | |
| 72 | 03/01/2028 | $1,489.08 | $604.37 | $884.71 | $282,501.78 | $0.00 | |
| 73 | 04/01/2028 | $1,489.08 | $606.26 | $882.82 | $281,895.52 | $0.00 | |
| 74 | 05/01/2028 | $1,489.08 | $608.16 | $880.92 | $281,287.36 | $0.00 | |
| 75 | 06/01/2028 | $1,489.08 | $610.06 | $879.02 | $280,677.30 | $0.00 | |
| 76 | 07/01/2028 | $1,489.08 | $611.96 | $877.12 | $280,065.34 | $0.00 | |
| 77 | 08/01/2028 | $1,489.08 | $613.88 | $875.20 | $279,451.46 | $0.00 | |
| 78 | 09/01/2028 | $1,489.08 | $615.79 | $873.29 | $278,835.67 | $0.00 | |
| 79 | 10/01/2028 | $1,489.08 | $617.72 | $871.36 | $278,217.95 | $0.00 | |
| 80 | 11/01/2028 | $1,489.08 | $619.65 | $869.43 | $277,598.30 | $0.00 | |
| 81 | 12/01/2028 | $1,489.08 | $621.59 | $867.49 | $276,976.71 | $0.00 | |
| 82 | 01/01/2029 | $1,489.08 | $623.53 | $865.55 | $276,353.18 | $0.00 | |
| 83 | 02/01/2029 | $1,489.08 | $625.48 | $863.60 | $275,727.70 | $0.00 | |
| 84 | 03/01/2029 | $1,489.08 | $627.43 | $861.65 | $275,100.27 | $0.00 | |
| 85 | 04/01/2029 | $1,489.08 | $629.39 | $859.69 | $274,470.88 | $0.00 | |
| 86 | 05/01/2029 | $1,489.08 | $631.36 | $857.72 | $273,839.52 | $0.00 | |
| 87 | 06/01/2029 | $1,489.08 | $633.33 | $855.75 | $273,206.19 | $0.00 | |
| 88 | 07/01/2029 | $1,489.08 | $635.31 | $853.77 | $272,570.88 | $0.00 | |
| 89 | 08/01/2029 | $1,489.08 | $637.30 | $851.78 | $271,933.58 | $0.00 | |
| 90 | 09/01/2029 | $1,489.08 | $639.29 | $849.79 | $271,294.29 | $0.00 | |
| 91 | 10/01/2029 | $1,489.08 | $641.29 | $847.79 | $270,653.00 | $0.00 | |
| 92 | 11/01/2029 | $1,489.08 | $643.29 | $845.79 | $270,009.71 | $0.00 | |
| 93 | 12/01/2029 | $1,489.08 | $645.30 | $843.78 | $269,364.41 | $0.00 | |
| 94 | 01/01/2030 | $1,489.08 | $647.32 | $841.76 | $268,717.09 | $0.00 | |
| 95 | 02/01/2030 | $1,489.08 | $649.34 | $839.74 | $268,067.75 | $0.00 | |
| 96 | 03/01/2030 | $1,489.08 | $651.37 | $837.71 | $267,416.38 | $0.00 | |
| 97 | 04/01/2030 | $1,489.08 | $653.40 | $835.68 | $266,762.98 | $0.00 | |
| 98 | 05/01/2030 | $1,489.08 | $655.45 | $833.63 | $266,107.53 | $0.00 | |
| 99 | 06/01/2030 | $1,489.08 | $657.49 | $831.59 | $265,450.04 | $0.00 | |
| 100 | 07/01/2030 | $1,489.08 | $659.55 | $829.53 | $264,790.49 | $0.00 | |
| 101 | 08/01/2030 | $1,489.08 | $661.61 | $827.47 | $264,128.88 | $0.00 | |
| 102 | 09/01/2030 | $1,489.08 | $663.68 | $825.40 | $263,465.20 | $0.00 | |
| 103 | 10/01/2030 | $1,489.08 | $665.75 | $823.33 | $262,799.45 | $0.00 | |
| 104 | 11/01/2030 | $1,489.08 | $667.83 | $821.25 | $262,131.62 | $0.00 | |
| 105 | 12/01/2030 | $1,489.08 | $669.92 | $819.16 | $261,461.70 | $0.00 | |
| 106 | 01/01/2031 | $1,489.08 | $672.01 | $817.07 | $260,789.69 | $0.00 | |
| 107 | 02/01/2031 | $1,489.08 | $674.11 | $814.97 | $260,115.58 | $0.00 | |
| 108 | 03/01/2031 | $1,489.08 | $676.22 | $812.86 | $259,439.36 | $0.00 | |
| 109 | 04/01/2031 | $1,489.08 | $678.33 | $810.75 | $258,761.03 | $0.00 | |
| 110 | 05/01/2031 | $1,489.08 | $680.45 | $808.63 | $258,080.58 | $0.00 | |
| 111 | 06/01/2031 | $1,489.08 | $682.58 | $806.50 | $257,398.00 | $0.00 | |
| 112 | 07/01/2031 | $1,489.08 | $684.71 | $804.37 | $256,713.29 | $0.00 | |
| 113 | 08/01/2031 | $1,489.08 | $686.85 | $802.23 | $256,026.44 | $0.00 | |
| 114 | 09/01/2031 | $1,489.08 | $689.00 | $800.08 | $255,337.44 | $0.00 | |

## AMORTIZATION SCHEDULE

Loan No.:    104021117122
Borrower(s):  Jed Alan Graham

Lender:    Acopia, LLC

Date:  02/02/2022
Loan Amount:  $321,536.00
Term:  30 years
Interest Rate:  3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 115 | 10/01/2031 | $1,489.08 | $691.15 | $797.93 | $254,646.29 | $0.00 | |
| 116 | 11/01/2031 | $1,489.08 | $693.31 | $795.77 | $253,952.98 | $0.00 | |
| 117 | 12/01/2031 | $1,489.08 | $695.48 | $793.60 | $253,257.50 | $0.00 | |
| 118 | 01/01/2032 | $1,489.08 | $697.65 | $791.43 | $252,559.85 | $0.00 | |
| 119 | 02/01/2032 | $1,489.08 | $699.83 | $789.25 | $251,860.02 | $0.00 | |
| 120 | 03/01/2032 | $1,489.08 | $702.02 | $787.06 | $251,158.00 | $0.00 | |
| 121 | 04/01/2032 | $1,489.08 | $704.21 | $784.87 | $250,453.79 | $0.00 | |
| 122 | 05/01/2032 | $1,489.08 | $706.41 | $782.67 | $249,747.38 | $0.00 | |
| 123 | 06/01/2032 | $1,489.08 | $708.62 | $780.46 | $249,038.76 | $0.00 | |
| 124 | 07/01/2032 | $1,489.08 | $710.83 | $778.25 | $248,327.93 | $0.00 | |
| 125 | 08/01/2032 | $1,489.08 | $713.06 | $776.02 | $247,614.87 | $0.00 | |
| 126 | 09/01/2032 | $1,489.08 | $715.28 | $773.80 | $246,899.59 | $0.00 | |
| 127 | 10/01/2032 | $1,489.08 | $717.52 | $771.56 | $246,182.07 | $0.00 | |
| 128 | 11/01/2032 | $1,489.08 | $719.76 | $769.32 | $245,462.31 | $0.00 | |
| 129 | 12/01/2032 | $1,489.08 | $722.01 | $767.07 | $244,740.30 | $0.00 | |
| 130 | 01/01/2033 | $1,489.08 | $724.27 | $764.81 | $244,016.03 | $0.00 | |
| 131 | 02/01/2033 | $1,489.08 | $726.53 | $762.55 | $243,289.50 | $0.00 | |
| 132 | 03/01/2033 | $1,489.08 | $728.80 | $760.28 | $242,560.70 | $0.00 | |
| 133 | 04/01/2033 | $1,489.08 | $731.08 | $758.00 | $241,829.62 | $0.00 | |
| 134 | 05/01/2033 | $1,489.08 | $733.36 | $755.72 | $241,096.26 | $0.00 | |
| 135 | 06/01/2033 | $1,489.08 | $735.65 | $753.43 | $240,360.61 | $0.00 | |
| 136 | 07/01/2033 | $1,489.08 | $737.95 | $751.13 | $239,622.66 | $0.00 | |
| 137 | 08/01/2033 | $1,489.08 | $740.26 | $748.82 | $238,882.40 | $0.00 | |
| 138 | 09/01/2033 | $1,489.08 | $742.57 | $746.51 | $238,139.83 | $0.00 | |
| 139 | 10/01/2033 | $1,489.08 | $744.89 | $744.19 | $237,394.94 | $0.00 | |
| 140 | 11/01/2033 | $1,489.08 | $747.22 | $741.86 | $236,647.72 | $0.00 | |
| 141 | 12/01/2033 | $1,489.08 | $749.56 | $739.52 | $235,898.16 | $0.00 | |
| 142 | 01/01/2034 | $1,489.08 | $751.90 | $737.18 | $235,146.26 | $0.00 | |
| 143 | 02/01/2034 | $1,489.08 | $754.25 | $734.83 | $234,392.01 | $0.00 | |
| 144 | 03/01/2034 | $1,489.08 | $756.60 | $732.48 | $233,635.41 | $0.00 | |
| 145 | 04/01/2034 | $1,489.08 | $758.97 | $730.11 | $232,876.44 | $0.00 | |
| 146 | 05/01/2034 | $1,489.08 | $761.34 | $727.74 | $232,115.10 | $0.00 | |
| 147 | 06/01/2034 | $1,489.08 | $763.72 | $725.36 | $231,351.38 | $0.00 | |
| 148 | 07/01/2034 | $1,489.08 | $766.11 | $722.97 | $230,585.27 | $0.00 | |
| 149 | 08/01/2034 | $1,489.08 | $768.50 | $720.58 | $229,816.77 | $0.00 | |
| 150 | 09/01/2034 | $1,489.08 | $770.90 | $718.18 | $229,045.87 | $0.00 | |
| 151 | 10/01/2034 | $1,489.08 | $773.31 | $715.77 | $228,272.56 | $0.00 | |
| 152 | 11/01/2034 | $1,489.08 | $775.73 | $713.35 | $227,496.83 | $0.00 | |
| 153 | 12/01/2034 | $1,489.08 | $778.15 | $710.93 | $226,718.68 | $0.00 | |
| 154 | 01/01/2035 | $1,489.08 | $780.58 | $708.50 | $225,938.10 | $0.00 | |
| 155 | 02/01/2035 | $1,489.08 | $783.02 | $706.06 | $225,155.08 | $0.00 | |
| 156 | 03/01/2035 | $1,489.08 | $785.47 | $703.61 | $224,369.61 | $0.00 | |
| 157 | 04/01/2035 | $1,489.08 | $787.92 | $701.16 | $223,581.69 | $0.00 | |
| 158 | 05/01/2035 | $1,489.08 | $790.39 | $698.69 | $222,791.30 | $0.00 | |
| 159 | 06/01/2035 | $1,489.08 | $792.86 | $696.22 | $221,998.44 | $0.00 | |
| 160 | 07/01/2035 | $1,489.08 | $795.33 | $693.75 | $221,203.11 | $0.00 | |
| 161 | 08/01/2035 | $1,489.08 | $797.82 | $691.26 | $220,405.29 | $0.00 | |
| 162 | 09/01/2035 | $1,489.08 | $800.31 | $688.77 | $219,604.98 | $0.00 | |
| 163 | 10/01/2035 | $1,489.08 | $802.81 | $686.27 | $218,802.17 | $0.00 | |
| 164 | 11/01/2035 | $1,489.08 | $805.32 | $683.76 | $217,996.85 | $0.00 | |
| 165 | 12/01/2035 | $1,489.08 | $807.84 | $681.24 | $217,189.01 | $0.00 | |
| 166 | 01/01/2036 | $1,489.08 | $810.36 | $678.72 | $216,378.65 | $0.00 | |
| 167 | 02/01/2036 | $1,489.08 | $812.90 | $676.18 | $215,565.75 | $0.00 | |
| 168 | 03/01/2036 | $1,489.08 | $815.44 | $673.64 | $214,750.31 | $0.00 | |
| 169 | 04/01/2036 | $1,489.08 | $817.99 | $671.09 | $213,932.32 | $0.00 | |
| 170 | 05/01/2036 | $1,489.08 | $820.54 | $668.54 | $213,111.78 | $0.00 | |
| 171 | 06/01/2036 | $1,489.08 | $823.11 | $665.97 | $212,288.67 | $0.00 | |

## AMORTIZATION SCHEDULE

Loan No.: 104021117122
Borrower(s): Jed Alan Graham

Lender: Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,536.00
Term: 30 years
Interest Rate: 3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 172 | 07/01/2036 | $1,489.08 | $825.68 | $663.40 | $211,462.99 | $0.00 | |
| 173 | 08/01/2036 | $1,489.08 | $828.26 | $660.82 | $210,634.73 | $0.00 | |
| 174 | 09/01/2036 | $1,489.08 | $830.85 | $658.23 | $209,803.88 | $0.00 | |
| 175 | 10/01/2036 | $1,489.08 | $833.44 | $655.64 | $208,970.44 | $0.00 | |
| 176 | 11/01/2036 | $1,489.08 | $836.05 | $653.03 | $208,134.39 | $0.00 | |
| 177 | 12/01/2036 | $1,489.08 | $838.66 | $650.42 | $207,295.73 | $0.00 | |
| 178 | 01/01/2037 | $1,489.08 | $841.28 | $647.80 | $206,454.45 | $0.00 | |
| 179 | 02/01/2037 | $1,489.08 | $843.91 | $645.17 | $205,610.54 | $0.00 | |
| 180 | 03/01/2037 | $1,489.08 | $846.55 | $642.53 | $204,763.99 | $0.00 | |
| 181 | 04/01/2037 | $1,489.08 | $849.19 | $639.89 | $203,914.80 | $0.00 | |
| 182 | 05/01/2037 | $1,489.08 | $851.85 | $637.23 | $203,062.95 | $0.00 | |
| 183 | 06/01/2037 | $1,489.08 | $854.51 | $634.57 | $202,208.44 | $0.00 | |
| 184 | 07/01/2037 | $1,489.08 | $857.18 | $631.90 | $201,351.26 | $0.00 | |
| 185 | 08/01/2037 | $1,489.08 | $859.86 | $629.22 | $200,491.40 | $0.00 | |
| 186 | 09/01/2037 | $1,489.08 | $862.54 | $626.54 | $199,628.86 | $0.00 | |
| 187 | 10/01/2037 | $1,489.08 | $865.24 | $623.84 | $198,763.62 | $0.00 | |
| 188 | 11/01/2037 | $1,489.08 | $867.94 | $621.14 | $197,895.68 | $0.00 | |
| 189 | 12/01/2037 | $1,489.08 | $870.66 | $618.42 | $197,025.02 | $0.00 | |
| 190 | 01/01/2038 | $1,489.08 | $873.38 | $615.70 | $196,151.64 | $0.00 | |
| 191 | 02/01/2038 | $1,489.08 | $876.11 | $612.97 | $195,275.53 | $0.00 | |
| 192 | 03/01/2038 | $1,489.08 | $878.84 | $610.24 | $194,396.69 | $0.00 | |
| 193 | 04/01/2038 | $1,489.08 | $881.59 | $607.49 | $193,515.10 | $0.00 | |
| 194 | 05/01/2038 | $1,489.08 | $884.35 | $604.73 | $192,630.75 | $0.00 | |
| 195 | 06/01/2038 | $1,489.08 | $887.11 | $601.97 | $191,743.64 | $0.00 | |
| 196 | 07/01/2038 | $1,489.08 | $889.88 | $599.20 | $190,853.76 | $0.00 | |
| 197 | 08/01/2038 | $1,489.08 | $892.66 | $596.42 | $189,961.10 | $0.00 | |
| 198 | 09/01/2038 | $1,489.08 | $895.45 | $593.63 | $189,065.65 | $0.00 | |
| 199 | 10/01/2038 | $1,489.08 | $898.25 | $590.83 | $188,167.40 | $0.00 | |
| 200 | 11/01/2038 | $1,489.08 | $901.06 | $588.02 | $187,266.34 | $0.00 | |
| 201 | 12/01/2038 | $1,489.08 | $903.87 | $585.21 | $186,362.47 | $0.00 | |
| 202 | 01/01/2039 | $1,489.08 | $906.70 | $582.38 | $185,455.77 | $0.00 | |
| 203 | 02/01/2039 | $1,489.08 | $909.53 | $579.55 | $184,546.24 | $0.00 | |
| 204 | 03/01/2039 | $1,489.08 | $912.37 | $576.71 | $183,633.87 | $0.00 | |
| 205 | 04/01/2039 | $1,489.08 | $915.22 | $573.86 | $182,718.65 | $0.00 | |
| 206 | 05/01/2039 | $1,489.08 | $918.08 | $571.00 | $181,800.57 | $0.00 | |
| 207 | 06/01/2039 | $1,489.08 | $920.95 | $568.13 | $180,879.62 | $0.00 | |
| 208 | 07/01/2039 | $1,489.08 | $923.83 | $565.25 | $179,955.79 | $0.00 | |
| 209 | 08/01/2039 | $1,489.08 | $926.72 | $562.36 | $179,029.07 | $0.00 | |
| 210 | 09/01/2039 | $1,489.08 | $929.61 | $559.47 | $178,099.46 | $0.00 | |
| 211 | 10/01/2039 | $1,489.08 | $932.52 | $556.56 | $177,166.94 | $0.00 | |
| 212 | 11/01/2039 | $1,489.08 | $935.43 | $553.65 | $176,231.51 | $0.00 | |
| 213 | 12/01/2039 | $1,489.08 | $938.36 | $550.72 | $175,293.15 | $0.00 | |
| 214 | 01/01/2040 | $1,489.08 | $941.29 | $547.79 | $174,351.86 | $0.00 | |
| 215 | 02/01/2040 | $1,489.08 | $944.23 | $544.85 | $173,407.63 | $0.00 | |
| 216 | 03/01/2040 | $1,489.08 | $947.18 | $541.90 | $172,460.45 | $0.00 | |
| 217 | 04/01/2040 | $1,489.08 | $950.14 | $538.94 | $171,510.31 | $0.00 | |
| 218 | 05/01/2040 | $1,489.08 | $953.11 | $535.97 | $170,557.20 | $0.00 | |
| 219 | 06/01/2040 | $1,489.08 | $956.09 | $532.99 | $169,601.11 | $0.00 | |
| 220 | 07/01/2040 | $1,489.08 | $959.08 | $530.00 | $168,642.03 | $0.00 | |
| 221 | 08/01/2040 | $1,489.08 | $962.07 | $527.01 | $167,679.96 | $0.00 | |
| 222 | 09/01/2040 | $1,489.08 | $965.08 | $524.00 | $166,714.88 | $0.00 | |
| 223 | 10/01/2040 | $1,489.08 | $968.10 | $520.98 | $165,746.78 | $0.00 | |
| 224 | 11/01/2040 | $1,489.08 | $971.12 | $517.96 | $164,775.66 | $0.00 | |
| 225 | 12/01/2040 | $1,489.08 | $974.16 | $514.92 | $163,801.50 | $0.00 | |
| 226 | 01/01/2041 | $1,489.08 | $977.20 | $511.88 | $162,824.30 | $0.00 | |
| 227 | 02/01/2041 | $1,489.08 | $980.25 | $508.83 | $161,844.05 | $0.00 | |
| 228 | 03/01/2041 | $1,489.08 | $983.32 | $505.76 | $160,860.73 | $0.00 | |

# AMORTIZATION SCHEDULE

Loan No.:   104021117122
Borrower(s):  Jed Alan Graham

Lender:    Acopia, LLC

Date:  02/02/2022
Loan Amount:  $321,536.00
Term:  30 years
Interest Rate:  3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 229 | 04/01/2041 | $1,489.08 | $986.39 | $502.69 | $159,874.34 | $0.00 | |
| 230 | 05/01/2041 | $1,489.08 | $989.47 | $499.61 | $158,884.87 | $0.00 | |
| 231 | 06/01/2041 | $1,489.08 | $992.56 | $496.52 | $157,892.31 | $0.00 | |
| 232 | 07/01/2041 | $1,489.08 | $995.67 | $493.41 | $156,896.64 | $0.00 | |
| 233 | 08/01/2041 | $1,489.08 | $998.78 | $490.30 | $155,897.86 | $0.00 | |
| 234 | 09/01/2041 | $1,489.08 | $1,001.90 | $487.18 | $154,895.96 | $0.00 | |
| 235 | 10/01/2041 | $1,489.08 | $1,005.03 | $484.05 | $153,890.93 | $0.00 | |
| 236 | 11/01/2041 | $1,489.08 | $1,008.17 | $480.91 | $152,882.76 | $0.00 | |
| 237 | 12/01/2041 | $1,489.08 | $1,011.32 | $477.76 | $151,871.44 | $0.00 | |
| 238 | 01/01/2042 | $1,489.08 | $1,014.48 | $474.60 | $150,856.96 | $0.00 | |
| 239 | 02/01/2042 | $1,489.08 | $1,017.65 | $471.43 | $149,839.31 | $0.00 | |
| 240 | 03/01/2042 | $1,489.08 | $1,020.83 | $468.25 | $148,818.48 | $0.00 | |
| 241 | 04/01/2042 | $1,489.08 | $1,024.02 | $465.06 | $147,794.46 | $0.00 | |
| 242 | 05/01/2042 | $1,489.08 | $1,027.22 | $461.86 | $146,767.24 | $0.00 | |
| 243 | 06/01/2042 | $1,489.08 | $1,030.43 | $458.65 | $145,736.81 | $0.00 | |
| 244 | 07/01/2042 | $1,489.08 | $1,033.65 | $455.43 | $144,703.16 | $0.00 | |
| 245 | 08/01/2042 | $1,489.08 | $1,036.88 | $452.20 | $143,666.28 | $0.00 | |
| 246 | 09/01/2042 | $1,489.08 | $1,040.12 | $448.96 | $142,626.16 | $0.00 | |
| 247 | 10/01/2042 | $1,489.08 | $1,043.37 | $445.71 | $141,582.79 | $0.00 | |
| 248 | 11/01/2042 | $1,489.08 | $1,046.63 | $442.45 | $140,536.16 | $0.00 | |
| 249 | 12/01/2042 | $1,489.08 | $1,049.90 | $439.18 | $139,486.26 | $0.00 | |
| 250 | 01/01/2043 | $1,489.08 | $1,053.19 | $435.89 | $138,433.07 | $0.00 | |
| 251 | 02/01/2043 | $1,489.08 | $1,056.48 | $432.60 | $137,376.59 | $0.00 | |
| 252 | 03/01/2043 | $1,489.08 | $1,059.78 | $429.30 | $136,316.81 | $0.00 | |
| 253 | 04/01/2043 | $1,489.08 | $1,063.09 | $425.99 | $135,253.72 | $0.00 | |
| 254 | 05/01/2043 | $1,489.08 | $1,066.41 | $422.67 | $134,187.31 | $0.00 | |
| 255 | 06/01/2043 | $1,489.08 | $1,069.74 | $419.34 | $133,117.57 | $0.00 | |
| 256 | 07/01/2043 | $1,489.08 | $1,073.09 | $415.99 | $132,044.48 | $0.00 | |
| 257 | 08/01/2043 | $1,489.08 | $1,076.44 | $412.64 | $130,968.04 | $0.00 | |
| 258 | 09/01/2043 | $1,489.08 | $1,079.80 | $409.28 | $129,888.24 | $0.00 | |
| 259 | 10/01/2043 | $1,489.08 | $1,083.18 | $405.90 | $128,805.06 | $0.00 | |
| 260 | 11/01/2043 | $1,489.08 | $1,086.56 | $402.52 | $127,718.50 | $0.00 | |
| 261 | 12/01/2043 | $1,489.08 | $1,089.96 | $399.12 | $126,628.54 | $0.00 | |
| 262 | 01/01/2044 | $1,489.08 | $1,093.37 | $395.71 | $125,535.17 | $0.00 | |
| 263 | 02/01/2044 | $1,489.08 | $1,096.78 | $392.30 | $124,438.39 | $0.00 | |
| 264 | 03/01/2044 | $1,489.08 | $1,100.21 | $388.87 | $123,338.18 | $0.00 | |
| 265 | 04/01/2044 | $1,489.08 | $1,103.65 | $385.43 | $122,234.53 | $0.00 | |
| 266 | 05/01/2044 | $1,489.08 | $1,107.10 | $381.98 | $121,127.43 | $0.00 | |
| 267 | 06/01/2044 | $1,489.08 | $1,110.56 | $378.52 | $120,016.87 | $0.00 | |
| 268 | 07/01/2044 | $1,489.08 | $1,114.03 | $375.05 | $118,902.84 | $0.00 | |
| 269 | 08/01/2044 | $1,489.08 | $1,117.51 | $371.57 | $117,785.33 | $0.00 | |
| 270 | 09/01/2044 | $1,489.08 | $1,121.00 | $368.08 | $116,664.33 | $0.00 | |
| 271 | 10/01/2044 | $1,489.08 | $1,124.50 | $364.58 | $115,539.83 | $0.00 | |
| 272 | 11/01/2044 | $1,489.08 | $1,128.02 | $361.06 | $114,411.81 | $0.00 | |
| 273 | 12/01/2044 | $1,489.08 | $1,131.54 | $357.54 | $113,280.27 | $0.00 | |
| 274 | 01/01/2045 | $1,489.08 | $1,135.08 | $354.00 | $112,145.19 | $0.00 | |
| 275 | 02/01/2045 | $1,489.08 | $1,138.63 | $350.45 | $111,006.56 | $0.00 | |
| 276 | 03/01/2045 | $1,489.08 | $1,142.18 | $346.90 | $109,864.38 | $0.00 | |
| 277 | 04/01/2045 | $1,489.08 | $1,145.75 | $343.33 | $108,718.63 | $0.00 | |
| 278 | 05/01/2045 | $1,489.08 | $1,149.33 | $339.75 | $107,569.30 | $0.00 | |
| 279 | 06/01/2045 | $1,489.08 | $1,152.93 | $336.15 | $106,416.37 | $0.00 | |
| 280 | 07/01/2045 | $1,489.08 | $1,156.53 | $332.55 | $105,259.84 | $0.00 | |
| 281 | 08/01/2045 | $1,489.08 | $1,160.14 | $328.94 | $104,099.70 | $0.00 | |
| 282 | 09/01/2045 | $1,489.08 | $1,163.77 | $325.31 | $102,935.93 | $0.00 | |
| 283 | 10/01/2045 | $1,489.08 | $1,167.41 | $321.67 | $101,768.52 | $0.00 | |
| 284 | 11/01/2045 | $1,489.08 | $1,171.05 | $318.03 | $100,597.47 | $0.00 | |
| 285 | 12/01/2045 | $1,489.08 | $1,174.71 | $314.37 | $99,422.76 | $0.00 | |

## AMORTIZATION SCHEDULE

Loan No.: 104021117122
Borrower(s): Jed Alan Graham

Lender:    Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,536.00
Term: 30 years
Interest Rate: 3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 286 | 01/01/2046 | $1,489.08 | $1,178.38 | $310.70 | $98,244.38 | $0.00 | |
| 287 | 02/01/2046 | $1,489.08 | $1,182.07 | $307.01 | $97,062.31 | $0.00 | |
| 288 | 03/01/2046 | $1,489.08 | $1,185.76 | $303.32 | $95,876.55 | $0.00 | |
| 289 | 04/01/2046 | $1,489.08 | $1,189.47 | $299.61 | $94,687.08 | $0.00 | |
| 290 | 05/01/2046 | $1,489.08 | $1,193.18 | $295.90 | $93,493.90 | $0.00 | |
| 291 | 06/01/2046 | $1,489.08 | $1,196.91 | $292.17 | $92,296.99 | $0.00 | |
| 292 | 07/01/2046 | $1,489.08 | $1,200.65 | $288.43 | $91,096.34 | $0.00 | |
| 293 | 08/01/2046 | $1,489.08 | $1,204.40 | $284.68 | $89,891.94 | $0.00 | |
| 294 | 09/01/2046 | $1,489.08 | $1,208.17 | $280.91 | $88,683.77 | $0.00 | |
| 295 | 10/01/2046 | $1,489.08 | $1,211.94 | $277.14 | $87,471.83 | $0.00 | |
| 296 | 11/01/2046 | $1,489.08 | $1,215.73 | $273.35 | $86,256.10 | $0.00 | |
| 297 | 12/01/2046 | $1,489.08 | $1,219.53 | $269.55 | $85,036.57 | $0.00 | |
| 298 | 01/01/2047 | $1,489.08 | $1,223.34 | $265.74 | $83,813.23 | $0.00 | |
| 299 | 02/01/2047 | $1,489.08 | $1,227.16 | $261.92 | $82,586.07 | $0.00 | |
| 300 | 03/01/2047 | $1,489.08 | $1,231.00 | $258.08 | $81,355.07 | $0.00 | |
| 301 | 04/01/2047 | $1,489.08 | $1,234.85 | $254.23 | $80,120.22 | $0.00 | |
| 302 | 05/01/2047 | $1,489.08 | $1,238.70 | $250.38 | $78,881.52 | $0.00 | |
| 303 | 06/01/2047 | $1,489.08 | $1,242.58 | $246.50 | $77,638.94 | $0.00 | |
| 304 | 07/01/2047 | $1,489.08 | $1,246.46 | $242.62 | $76,392.48 | $0.00 | |
| 305 | 08/01/2047 | $1,489.08 | $1,250.35 | $238.73 | $75,142.13 | $0.00 | |
| 306 | 09/01/2047 | $1,489.08 | $1,254.26 | $234.82 | $73,887.87 | $0.00 | |
| 307 | 10/01/2047 | $1,489.08 | $1,258.18 | $230.90 | $72,629.69 | $0.00 | |
| 308 | 11/01/2047 | $1,489.08 | $1,262.11 | $226.97 | $71,367.58 | $0.00 | |
| 309 | 12/01/2047 | $1,489.08 | $1,266.06 | $223.02 | $70,101.52 | $0.00 | |
| 310 | 01/01/2048 | $1,489.08 | $1,270.01 | $219.07 | $68,831.51 | $0.00 | |
| 311 | 02/01/2048 | $1,489.08 | $1,273.98 | $215.10 | $67,557.53 | $0.00 | |
| 312 | 03/01/2048 | $1,489.08 | $1,277.96 | $211.12 | $66,279.57 | $0.00 | |
| 313 | 04/01/2048 | $1,489.08 | $1,281.96 | $207.12 | $64,997.61 | $0.00 | |
| 314 | 05/01/2048 | $1,489.08 | $1,285.96 | $203.12 | $63,711.65 | $0.00 | |
| 315 | 06/01/2048 | $1,489.08 | $1,289.98 | $199.10 | $62,421.67 | $0.00 | |
| 316 | 07/01/2048 | $1,489.08 | $1,294.01 | $195.07 | $61,127.66 | $0.00 | |
| 317 | 08/01/2048 | $1,489.08 | $1,298.06 | $191.02 | $59,829.60 | $0.00 | |
| 318 | 09/01/2048 | $1,489.08 | $1,302.11 | $186.97 | $58,527.49 | $0.00 | |
| 319 | 10/01/2048 | $1,489.08 | $1,306.18 | $182.90 | $57,221.31 | $0.00 | |
| 320 | 11/01/2048 | $1,489.08 | $1,310.26 | $178.82 | $55,911.05 | $0.00 | |
| 321 | 12/01/2048 | $1,489.08 | $1,314.36 | $174.72 | $54,596.69 | $0.00 | |
| 322 | 01/01/2049 | $1,489.08 | $1,318.47 | $170.61 | $53,278.22 | $0.00 | |
| 323 | 02/01/2049 | $1,489.08 | $1,322.59 | $166.49 | $51,955.63 | $0.00 | |
| 324 | 03/01/2049 | $1,489.08 | $1,326.72 | $162.36 | $50,628.91 | $0.00 | |
| 325 | 04/01/2049 | $1,489.08 | $1,330.86 | $158.22 | $49,298.05 | $0.00 | |
| 326 | 05/01/2049 | $1,489.08 | $1,335.02 | $154.06 | $47,963.03 | $0.00 | |
| 327 | 06/01/2049 | $1,489.08 | $1,339.20 | $149.88 | $46,623.83 | $0.00 | |
| 328 | 07/01/2049 | $1,489.08 | $1,343.38 | $145.70 | $45,280.45 | $0.00 | |
| 329 | 08/01/2049 | $1,489.08 | $1,347.58 | $141.50 | $43,932.87 | $0.00 | |
| 330 | 09/01/2049 | $1,489.08 | $1,351.79 | $137.29 | $42,581.08 | $0.00 | |
| 331 | 10/01/2049 | $1,489.08 | $1,356.01 | $133.07 | $41,225.07 | $0.00 | |
| 332 | 11/01/2049 | $1,489.08 | $1,360.25 | $128.83 | $39,864.82 | $0.00 | |
| 333 | 12/01/2049 | $1,489.08 | $1,364.50 | $124.58 | $38,500.32 | $0.00 | |
| 334 | 01/01/2050 | $1,489.08 | $1,368.77 | $120.31 | $37,131.55 | $0.00 | |
| 335 | 02/01/2050 | $1,489.08 | $1,373.04 | $116.04 | $35,758.51 | $0.00 | |
| 336 | 03/01/2050 | $1,489.08 | $1,377.33 | $111.75 | $34,381.18 | $0.00 | |
| 337 | 04/01/2050 | $1,489.08 | $1,381.64 | $107.44 | $32,999.54 | $0.00 | |
| 338 | 05/01/2050 | $1,489.08 | $1,385.96 | $103.12 | $31,613.58 | $0.00 | |
| 339 | 06/01/2050 | $1,489.08 | $1,390.29 | $98.79 | $30,223.29 | $0.00 | |
| 340 | 07/01/2050 | $1,489.08 | $1,394.63 | $94.45 | $28,828.66 | $0.00 | |
| 341 | 08/01/2050 | $1,489.08 | $1,398.99 | $90.09 | $27,429.67 | $0.00 | |
| 342 | 09/01/2050 | $1,489.08 | $1,403.36 | $85.72 | $26,026.31 | $0.00 | |

## AMORTIZATION SCHEDULE

Loan No.:   104021117122
Borrower(s):  Jed Alan Graham

Lender:    Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,536.00
Term: 30 years
Interest Rate: 3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|--------|-----------|----------------|-------------------|------------------|----------------|----------|-----------------|
| 343 | 10/01/2050 | $1,489.08 | $1,407.75 | $81.33 | $24,618.56 | $0.00 | |
| 344 | 11/01/2050 | $1,489.08 | $1,412.15 | $76.93 | $23,206.41 | $0.00 | |
| 345 | 12/01/2050 | $1,489.08 | $1,416.56 | $72.52 | $21,789.85 | $0.00 | |
| 346 | 01/01/2051 | $1,489.08 | $1,420.99 | $68.09 | $20,368.86 | $0.00 | |
| 347 | 02/01/2051 | $1,489.08 | $1,425.43 | $63.65 | $18,943.43 | $0.00 | |
| 348 | 03/01/2051 | $1,489.08 | $1,429.88 | $59.20 | $17,513.55 | $0.00 | |
| 349 | 04/01/2051 | $1,489.08 | $1,434.35 | $54.73 | $16,079.20 | $0.00 | |
| 350 | 05/01/2051 | $1,489.08 | $1,438.83 | $50.25 | $14,640.37 | $0.00 | |
| 351 | 06/01/2051 | $1,489.08 | $1,443.33 | $45.75 | $13,197.04 | $0.00 | |
| 352 | 07/01/2051 | $1,489.08 | $1,447.84 | $41.24 | $11,749.20 | $0.00 | |
| 353 | 08/01/2051 | $1,489.08 | $1,452.36 | $36.72 | $10,296.84 | $0.00 | |
| 354 | 09/01/2051 | $1,489.08 | $1,456.90 | $32.18 | $8,839.94 | $0.00 | |
| 355 | 10/01/2051 | $1,489.08 | $1,461.46 | $27.62 | $7,378.48 | $0.00 | |
| 356 | 11/01/2051 | $1,489.08 | $1,466.02 | $23.06 | $5,912.46 | $0.00 | |
| 357 | 12/01/2051 | $1,489.08 | $1,470.60 | $18.48 | $4,441.86 | $0.00 | |
| 358 | 01/01/2052 | $1,489.08 | $1,475.20 | $13.88 | $2,966.66 | $0.00 | |
| 359 | 02/01/2052 | $1,489.08 | $1,479.81 | $9.27 | $1,486.85 | $0.00 | |
| 360 | 03/01/2052 | $1,491.50 | $1,486.85 | $4.65 | $0.00 | $0.00 | |

_____

JED ALAN GRAHAM                                                                      DATE

THIS AMORTIZATION SCHEDULE IS BASED ON THE TERMS SET FORTH ABOVE AND ASSUMES THAT PAYMENTS ARE MADE AS SCHEDULED AND THAT NO PREPAYMENTS OCCUR PRIOR TO THE MATURITY DATE OF THE LOAN. IT IS PROVIDED AS AN EXAMPLE ONLY. IF IT IS FOR AN ADJUSTABLE RATE MORTGAGE LOAN, IT ASSUMES HYPOTHETICAL INTEREST RATE AND PAYMENT CHANGES THAT MAY DIFFER FROM ACTUAL CHANGES. PMI PAYMENT MAY BE DISCONTINUED PRIOR TO REACHING THE PMI CANCELLATION DATE IF PREMIUMS WERE PAID AT THE TIME OF LOAN CLOSING.

LOAN #: 104021117122

Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

## HAZARD INSURANCE ENDORSEMENT LETTER

POLICY NUMBER:

AGENT'S NAME AND ADDRESS:
Elizabeth Bowman
ASI
PO Box 33018
St Petersburg, FL 33733
PHONE: 352-751-6622

INSURED'S NAME:    Jed Alan Graham

PROPERTY ADDRESS:    6234 Danielson Loop, The Villages, FL 32163

Please make the changes requested below:

_____ x _____    Correct Mortgagee Clause to read:
Acopia, LLC, Its Successors And/Or Assigns
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072
LOAN #: 104021117122

_____    Change Property address to:

_____    Change Insured's Name to:

_____    The amount of coverage is not sufficient. Please increase coverage to: _____

_____    Other:

Please send the endorsement(s) directly to:
Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072
LOAN #: 104021117122

ICE Mortgage Technology, Inc.

GLOV 0309
GLOV (CLS)
02/01/2022 02:00 PM PST

# NOTICE OF FURNISHING NEGATIVE INFORMATION

Borrower:  Jed Alan Graham

Date:  **February 2, 2022**

Loan Number:  **104021117122**

Property Address:  **6234 Danielson Loop**
                              **The Villages, FL 32163**

Lender:  **Acopia, LLC**

In accordance with the implementation of the Fair and Accurate Credit Transactions Act of 2003, we are required to provide you the following statement as prescribed by Section 217:

**WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.**

| | |
|---|---|
| JED ALAN GRAHAM | DATE |

69 FR 33281, 12 CFR Part 1022 Model Notice B-1
ICE Mortgage Technology, Inc.

GFACT  1212
GFACT (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

## QUALITY CONTROL RELEASE
## AND AUTHORIZATION TO RE-VERIFY

We, the undersigned borrowers, understand that our mortgage application may be selected by the Lender and/or its Assigns or its Agents for a Quality Control Review. This review is designed to produce and maintain quality service for our borrowers and to comply with agency and investor guidelines. The quality control review will involve verification of all credit information (including employment history, income, bank accounts, and credit references) as well as the property valuation.

We agree to cooperate with the Lender and/or its Assigns or its Agents to the extent necessary to accomplish this review. It is understood that the information may be verified with third parties such as our employers, depository institutions or a credit reporting agency.

We therefore have signed below authorizing the release of employment and/or financial information to assist in the Quality Control review process.

JED ALAN GRAHAM                                                                    DATE

MICHELE GRAHAM                                                                    DATE

ICE Mortgage Technology, Inc.

GQCR  0695
GQCR (CLS)
02/01/2022 02:00 PM PST

# SIGNATURE/NAME AFFIDAVIT

RE:

| LOAN NUMBER | PROPERTY ADDRESS |
|---|---|
| 104021117122 | 6234 Danielson Loop, The Villages, FL 32163 |

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared, __Jed Alan Graham__

who, after being by me first duly sworn, upon oath does depose and say:

THAT, __Jed Alan Graham__
as the name is signed on the note and/or security instrument is one and the same person as;
Jed A Graham, Jed Graham, Alan Graham Jed, Jed Alan, Alan Graham Jed, Jed A Graahm, Jed Grahm, Ted Graham, Jed Granham,

as the name appears in various loan documents.

JED ALAN GRAHAM                                                                 DATE

State of: **FLORIDA**

County of: **SUMTER**

Sworn to (or affirmed) and subscribed before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

My Commission expires: _____    _____

(Seal)                                                                 (Notary Public)

ICE Mortgage Technology, Inc.

GSNA  0120
GSNA (CLS)
02/01/2022 02:00 PM PST



# SIGNATURE/NAME AFFIDAVIT

RE:

| LOAN NUMBER | PROPERTY ADDRESS |
|---|---|
| 104021117122 | 6234 Danielson Loop, The Villages, FL 32163 |

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared, __Michele Graham__

who, after being by me first duly sworn, upon oath does depose and say:

THAT, __Michele Graham__
as the name is signed on the note and/or security instrument is one and the same person as;

as the name appears in various loan documents.

MICHELE GRAHAM                                                                                                                    DATE

State of: FLORIDA

County of: SUMTER

Sworn to (or affirmed) and subscribed before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by MICHELE GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

My Commission expires: _____      _____

(Seal)                                                                                      (Notary Public)

ICE Mortgage Technology, Inc.

GSNA  0120
GSNA (CLS)
02/01/2022 02:00 PM PST



# FLORIDA TITLE INSURANCE NOTICE

Borrower(s):    Jed Alan Graham
("we," "us" or "our")

Date:    February 2, 2022

Lender:    Acopia, LLC

Loan Number:    104021117122

Property Address:    6234 Danielson Loop, The Villages, FL 32163.

Title Insurance Co.:    Old Republic National Title Insurance Company

## NOTICE TO PURCHASER-MORTGAGOR

Pursuant to Section 627.798, Florida Statutes, notice is hereby given by the title insurance company shown above to me, undersigned purchaser-mortgagor, that a mortgagee title insurance policy is to be issued to your mortgagee lender, and that such policy does not provide title insurance protection to you as the owner of the real estate you are purchasing.

I have read the above notice and understand that such mortgagee title insurance policy to be issued to the mortgagee lender does not provide title insurance protection to me as owner.

JED ALAN GRAHAM                                                    DATE

Fla. Admin. Code 4-186.002
ICE Mortgage Technology, Inc.

FLTIN 1202
FLTIN (CLS)
02/01/2022 02:00 PM PST



# HAZARD INSURANCE AUTHORIZATION, REQUIREMENTS AND DISCLOSURE

Borrower(s):  Jed Alan Graham

Date: 02/02/2022

Loan Number: 104021117122

Property Address: 6234 Danielson Loop, The Villages, FL 32163

Lender:  Acopia, LLC, a Corporation

Listed below are your Lender's policies and procedures and minimum requirements for Hazard Insurance which must be provided covering the subject property unless otherwise provided by applicable state law:

1. Coverage must equal the lesser of the following:

   • 100% of the insurable value of the improvements, as established by the property insurer, or

   • the unpaid principal balance of the mortgage, as long as it equals the minimum amount—80% of the insurable value of the improvements—required to compensate for damage or loss on a replacement cost basis. If it does not, then coverage that does provide the minimum required amount must be obtained.

2. The insurance company providing coverage must have a(n)   **"A"**   rating or better in the latest edition of "Best's Insurance Guide," must be licensed in the State in which the property described above is located, and must be licensed to transact the lines of insurance required in the transaction.

3. Policy shall provide at least "Broad Form" coverage on properties of one to four units, and at least "Vandalism & Malicious Mischief" on properties with over four units, with no deviation. Homeowners policies must provide coverage equal to "HO 2" form.

4. The maximum deductible must not exceed **5.000 % of the face amount of the insurance policy.**

5. Policy must provide coverage for a term of at least **One (1) Year(s).**    Premiums may be paid on an annual installment basis only if the policy provides that the Lender will be notified in writing of cancellation 30 days prior to expiration of coverage, for any cause. Binders are not acceptable, unless otherwise mandated by state law.

6. If any existing policy is provided which will expire within **Six (6) Month(s)**    from the date of the recording of this loan, said policy must be renewed for the required term as noted in #5 above.

7. All forms and endorsements pertaining to the Lender's requirements must appear on the "Declaration Page" of the policy.

8. New policies must be accompanied by a signed "Broker of Record Authorization" if borrower(s) have changed Insurance Agents.

9. Verification of renewal of insurance policies must be in the Lender's office at least thirty days prior to the expiration date of the existing policy. If this requirement is not met, the LENDER OR ITS SUCCESSORS OR ASSIGNS MAY AT THEIR OPTION, BUT WITHOUT OBLIGATION TO DO SO, PROVIDE COVERAGE TO REPLACE ANY EXPIRING POLICIES WHICH HAVE NOT BEEN PROPERLY RENEWED. The premium for such coverage will be remitted promptly by the undersigned, or Lender may charge borrower's account for the cost thereof.

10. The policy must include a standard "mortgagee loss payee clause" (Lenders Loss Payable Endorsement form 438 BFU or equivalent) in favor of:
    **Acopia, LLC, Its Successors And/Or Assigns**
    **306 Northcreek Blvd, Suite 100**
    **Goodlettsville, TN 37072**

11. Property address and insureds' names must be designated on the policy as on the ALTA Title Policy.

12. The Lender's loan number must appear on the policy and any subsequent endorsements.

13. Effective date of new policies, endorsements, and/or assignments shall be as of, or prior to, the date of recording this loan.

ICE Mortgage Technology, Inc.                    Page 1 of 2                    GHZ2 0915
                                                                               GHZ2 (CLS)
                                                                               02/01/2022 02:00 PM PST



LOAN #: 104021117122

14. If the security property is a condominium, the master insurance policy must contain a minimum of **$1,000,000.00** coverage for "Directors & Officers" liability as well as "walls-in" coverage policy (commonly known as HO-6 policy). The policy must include replacement of improvements and betterment coverage to cover any improvements that you may have made to the unit. A copy of the master policy must be submitted to the Lender prior to funding.

AN ACCEPTABLE POLICY, WITH ENDORSEMENTS AND/OR ASSIGNMENTS, MUST BE FORWARDED TO AND RECEIVED BY LENDER BEFORE THIS LOAN CAN BE FUNDED: OTHERWISE, LENDER MAY BE FORCED TO PLACE INTERIM COVERAGE ON THE PROPERTY AT AN ADDITIONAL COST TO THE BORROWER(S).

Each of the undersigned acknowledges that he or she has read and understands the foregoing provisions and insurance requirements. This authorization will remain irrevocable for the undersigned as owner(s) of the subject property, and for any assignees, for as long as this loan remains on subject property.

JED ALAN GRAHAM        DATE



LOAN #: 104021117122

## FLOOD HAZARD DETERMINATION

Date: February 2, 2022

Borrower(s) Name(s):  Jed Alan Graham

Property Address:  6234 Danielson Loop, The Villages, FL 32163

Pursuant to federal regulations, the Lender has evaluated whether or not the improved real property or mobile home (the "Property") which will secure your loan is located in an area designated by the Federal Emergency Management Agency ("FEMA") as a "Special Flood Hazard Area." The Lender has determined that according to FEMA the Property is NOT located in a designated Special Flood Hazard Area. Therefore, flood insurance will NOT be required by the Lender as a condition of closing this loan transaction.

The National Flood Insurance Reform Act of 1994 provides that if the loan servicer at any time during the term of the loan determines that the Property is in a Special Flood Hazard Area the loan servicer must notify the borrower that flood insurance must be obtained. In these cases, the borrower has 45 days to respond and provide evidence of acceptable insurance to the loan servicer; if no response is made by the borrower, the loan servicer can force-place flood insurance after 45 days from the date of notification.

The undersigned Borrower(s) agree that flood insurance will be purchased if the Property is located in a Special Flood Hazard Area, and if flood insurance is available in the community. The undersigned Borrower(s) further agree that if the Property at any time is determined to be in a Special Flood Hazard Area, and if insurance is available, Borrower(s) will obtain and pay for such insurance in an amount as required by the Lender or loan servicer.

JED ALAN GRAHAM _____    DATE

ICE Mortgage Technology, Inc.

GFLD2  0303
GFLD2 (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

Acopia, LLC

# EQUAL CREDIT OPPORTUNITY ACT NOTICE

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); or because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is:

**Federal Trade Commission**
**Consumer Response Center**
**Washington, DC 20580**
**877-382-4357**

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered in determining your creditworthiness.

| JED ALAN GRAHAM | DATE |
| --- | --- |

ICE Mortgage Technology, Inc.

GNTC  0221
GNTC (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

| Form **W-9**<br>(Rev. October 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification**<br>▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | Give Form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Jed Alan Graham

**2** Business name/disregarded entity name, if different from above

See Specific Instructions on page 2.    Print or type.

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

[X] Individual/sole proprietor or single-member LLC    [ ] C Corporation    [ ] S Corporation    [ ] Partnership    [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C = C corporation, S = S corporation, P = Partnership) ▶ _____

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

[ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

123 Edinborough Circle

**6** City, state, and ZIP code

Greenwood, SC 29649

Requester's name and address (optional)

Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

**7** List account number(s) here (optional)

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

Note: If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

4 7 2 – 6 8 – 3 7 9 0

or

Employer identification number

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| Sign<br>Here | Signature of<br>U.S. person ▶ | Date ▶ |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting*, later, for further information.

Note: If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

- An individual who is a U.S. citizen or U.S. resident alien;
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;
- An estate (other than a foreign estate); or
- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

ICE Mortgage Technology, Inc.                    Cat. No. 10231X                    Form **W-9** (Rev. 10-2018)
GW9C (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

Form W-9 (Rev. 10-2018)

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See Exempt payee code, later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see Special rules for partnerships, earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See Exemption from FATCA reporting code, later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation

that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; do not leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note:** ITIN applicant: Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, C corporation, or S corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

### Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

### Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n)... | THEN check the box for... |
|---|---|
| • Corporation | Corporation |
| • Individual<br>• Sole proprietorship, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |

Form W-9 (Rev. 10-2018)

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1 – An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2 – The United States or any of its agencies or instrumentalities

3 – A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4 – A foreign government or any of its political subdivisions, agencies, or instrumentalities

5 – A corporation

6 – A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7 – A futures commission merchant registered with the Commodity Futures Trading Commission

8 – A real estate investment trust

9 – An entity registered at all times during the tax year under the Investment Company Act of 1940

10 – A common trust fund operated by a bank under section 584(a)

11 – A financial institution

12 – A middleman known in the investment community as a nominee or custodian

13 – A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for... | THEN the payment is exempt for... |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000¹ | Generally, exempt payees 1 through 5² |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

¹ See Form 1099-MISC, Miscellaneous Income, and its instructions.

² However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A – An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B – The United States or any of its agencies or instrumentalities

C – A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D – A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E – A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F – A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G – A real estate investment trust

H – A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I – A common trust fund as defined in section 584(a)

J – A bank as defined in section 581

K – A broker

L – A trust exempt from tax under section 664 or described in section 4947(a)(1)

M – A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note:** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note:** See *What Name and Number To Give the Requester*, later, for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.SSA.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/Businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. Go to *www.irs.gov/Forms* to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to *www.irs.gov/OrderForms* to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code*, earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have



Form W-9 (Rev. 10-2018)

previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 7. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity[4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |

| For this type of account: | Give name and EIN of: |
|---|---|
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

* List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships*, earlier.

* Note: The grantor also must provide a Form W-9 to trustee of trust.

Note: If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records From Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:
- Protect your SSN,
- Ensure your employer is protecting your SSN, and
- Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at spam@uce.gov or report them at *www.ftc.gov/complaint*. You can contact the FTC at *www.ftc.gov/idtheft* or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see *www.identityTheft.gov* and Pub. 5027.

Visit *www.irs.gov/IdentityTheft* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

## COMPLIANCE AGREEMENT

Borrower(s):  Jed Alan Graham

Date: **February 2, 2022**

Loan Number: **104021117122**

Property Address: **6234 Danielson Loop**
**The Villages, FL 32163**

Lender:  **Acopia, LLC**

The undersigned borrower(s), for and in consideration of Lender disbursing loan proceeds for the purchase or refinancing of, or construction of improvements on the aforementioned property, agree(s), if requested by the Lender or someone acting on behalf of said Lender, to fully cooperate in adjusting for clerical errors, on any or all loan closing documentation deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to, an investor, Fannie Mae (FNMA), Government National Mortgage Association (GNMA), Freddie Mac (FHLMC), Department of Housing and Urban Development, Department of Veterans Affairs or any municipal bonding authority.

The undersigned borrower(s) do hereby so agree and covenant as aforesaid in order to assure that the loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to said loan.

Dated effective this _____ day of _____, _____.

_____
JED ALAN GRAHAM                                                                                        DATE

_____
MICHELE GRAHAM                                                                                        DATE

State of FLORIDA                                                                         County of SUMTER

The foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM AND MICHELE GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

_____
Signature

_____
Printed Name

_____
Title or Rank

_____
Serial Number (if any)

ICE Mortgage Technology, Inc.

GCOM 1115
GCOM (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

## BORROWER'S CERTIFICATION & AUTHORIZATION

### Certification

The undersigned certify the following:

1. I/We have applied for a mortgage loan from **Acopia, LLC**

("Lender").

In applying for the loan, I/we completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that Lender reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the Financial Institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### Authorization to Release Information

To Whom It May Concern:

1. I/We have applied for a mortgage loan from Lender. As part of the application process, Lender and the mortgage guaranty insurer (if any) may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to Lender and to any investor to whom Lender may sell my mortgage, and to the mortgage guaranty insurer (if any), any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. Lender or any investor that purchases the mortgage or the mortgage guaranty insurer (if any) may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to Lender, the investor that purchased the mortgage, or the mortgage guaranty insurer (if any) is appreciated.

6. Mortgage guaranty insurer (if any):

### VA, FHA and USDA Loans

This is notice to you as required by the Right to Financial Privacy Act of 1978 that:

| | |
|---|---|
| N/A | Department of Veterans Affairs (VA) |
| N/A | Department of Housing and Urban Development |
| N/A | Department of Agriculture (USDA) |

has a right of access to financial records held by a financial institution in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to the agency indicated above without further notice or authorization, but will not be disclosed or released to another Government Agency or Department without your consent except as required or permitted by law. You are authorizing such disclosure for a period of time not in excess of three months. Prior to the time that your financial records are disclosed, you may revoke this authorization at any time; however, your refusal to provide the information may cause your application to be delayed or rejected. If you believe that your financial records have been disclosed improperly, you may have legal rights under the Right to Financial Privacy Act of 1978 [12 USCS Sections 3401 et seq.].

JED ALAN GRAHAM                                                      DATE

ICE Mortgage Technology, Inc.

GBCT  0719
GBCT (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

## Florida Radon Gas Disclosure Statement

**RADON GAS:**
Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

By executing below, I acknowledge and understand the above statement.

_____    _____
JED ALAN GRAHAM                                                     DATE

ICE Mortgage Technology, Inc.

FLRGDISC   0802
FLRGDISC (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

## NOTICE OF SERVICING TRANSFER

Borrower Name & Address:
**Jed Alan Graham**

**6234 Danielson Loop**
**The Villages, FL 32163**

The servicing of your mortgage loan is being transferred, effective **April 1, 2022.**                    This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

**Acopia, LLC**

is now collecting your payments.

**Acopia, LLC**

will stop accepting payments received from you after **April 1, 2022.**

**Acopia, LLC**

will collect your payments going forward. Your new servicer will start accepting payments received from you on **April 1, 2022.**
**Send all payments due on or after April 1, 2022**                    to **Acopia, LLC**

**at this address:**
**306 Northcreek Blvd, Suite 100**
**Goodlettsville, TN 37072**

If you have any questions for either your present servicer, **Acopia, LLC**

or your new servicer **Acopia, LLC,**

about your mortgage loan or this transfer, please contact them using the information below:

Current Servicer:
**Acopia, LLC**
**their Servicing Department**
**888-859-5537**
**306 Northcreek Blvd, Suite 100**
**Goodlettsville, TN 37072**

New Servicer:
**Acopia, LLC**
**their Servicing Department**
**888-859-5537**
**306 Northcreek Blvd, Suite 100**
**Goodlettsville, TN 37072**

LOAN #: 104021117122

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Acopia, LLC
[NAME OF PRESENT SERVICER]

February 2, 2022
Date

and

Acopia, LLC
[NAME OF NEW SERVICER]

February 2, 2022
Date

JED ALAN GRAHAM                                                                    DATE

# HOEPA/HMDA REQUIRED INFORMATION

Due to the amendments to Reg Z relating to higher priced mortgages for transactions secured by the consumer's principal residence, and HMDA requirements for rate spread reporting on all occupancy types, this form must be completed on all loans.

Please complete the below, and submit with the closed loan file for funding:

Borrower's Last Name:  Graham

Property Address:  6234 Danielson Loop, The Villages, FL 32163

Loan Number:  104021117122

1.  Application Date (as defined by RESPA and each Correspondent's policies and procedures) _____
    January 3, 2022

2.  Last date you (Correspondent) locked the loan with the borrower  January 18, 2022

3.  If the loan is an ARM, list the initial index rate  N/A

    Note: The dates and rate information required above is not based on when the file was registered, delivered or locked with **Acopia, LLC.**

This information is based on the same dates used to run testing and report data to HMDA.

Please refer to http://www.ffiec.gov/ratespread/default.aspx to access the FFIEC Rate Spread Calculator.

**IMPORTANT REMINDERS:** If the loan is secured by the consumer's principal dwelling and is a higher priced mortgage as defined in the amendments to Reg Z, all requirements have been met including, but not limited to the following: Repayment Ability; Income and Asset verification; and for transactions with application dates on or after April 1, 2010, an escrow account has been established (excluding co-ops).

The information contained in this form is not to be construed as legal advice, and is not meant to be used as a summary of the laws. If you have any questions related to this or any other law, you are strongly encouraged to contact your Legal and Compliance Counsel for further guidance.

ICE Mortgage Technology, Inc.

L00000HHR  1212
L00000HHR (CLS)
02/01/2022 02:00 PM PST



Form **SSA-89** (12-2020)
Discontinue Prior Editions
Social Security Administration

OMB No. 0960-0760

## Authorization for the Social Security Administration (SSA) To Release Social Security Number (SSN) Verification

| Printed Name: Jed Alan Graham | Date of Birth: November 18, 1956 | Social Security Number: 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 |
|---|---|---|

Reason for authorizing consent: (Please select one)

☒ To apply for a mortgage    ☐ To apply for a loan    ☐ To meet a licensing requirement
☐ To open a bank account    ☐ To open a retirement account    ☐ Other
☐ To apply for a credit card    ☐ To apply for a job

With the following company ("the Company"):

Company Name: **Acopia Home Loans**

Company Address: **850 NW Federal Hwy., Suite #233, Stuart, FL 34994**

The name and address of the Company's Agent (if applicable):

Agent's Name: **CoreLogic**

Agent's Address: **10277 Scripps Ranch Blvd, San Diego, CA 92131**

I authorize the Social Security Administration to verify my name and SSN to the Company and/or the Company's Agent, if applicable, for the purpose I identified. I am the individual to whom the Social Security number was issued or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult. I declare and affirm under the penalty of perjury that the information contained herein is true and correct. I acknowledge that if I make any representation that I know is false to obtain information from Social Security records, I could be found guilty of a misdemeanor and fined up to $5,000.

**This consent is valid only for one-time use. This consent is valid only for 90 days from the date signed, unless indicated otherwise by the individual named above. If you wish to change this timeframe, fill in the following:**

**This consent is valid for _90_ days from the date signed. _____ (Please initial.)**

| Signature: | Date Signed: |
|---|---|

Relationship (if not the individual to whom the SSN was issued):

### Privacy Act Statement Collection and Use of Personal Information

Sections 205(a) and 1106 of the Social Security Act, as amended, allow us to collect this information. Furnishing us this information is voluntary. However, failing to provide all or part of the information may prevent us from releasing information to a designated company or company's agent. We will use the information to verify your name and Social Security number (SSN). In addition, we may share this information in accordance with the Privacy Act and other Federal laws. For example, where authorized, we may use and disclose this information in computer matching programs, in which our records are compared with other records to establish or verify a person's eligibility for Federal benefit programs and for repayment of incorrect or delinquent debts under these programs. A list of routine uses is available in our Privacy Act System of Records Notice (SORN) 60-0058, entitled Master Files of SSN Holders and SSN Applications. Additional information and a full listing of all our SORNs are available on our website at www.socialsecurity.gov/foia/bluebook.

**Paperwork Reduction Act Statement** - This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 3 minutes to complete the form. You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. *Send to this address only comments relating to our time estimate, not the completed form.*

···················································· TEAR OFF ····················································

### NOTICE TO NUMBER HOLDER

The Company and/or its Agent have entered into an agreement with SSA that, among other things, includes restrictions on the further use and disclosure of SSA's verification of your SSN. To view a copy of the entire model agreement, visit http://www.ssa.gov/cbsv/docs/SampleUserAgreement.pdf.

LOAN #: 104021117122

# DISCOUNT POINT FEE DISCLOSURE

Borrower Name(s): **Jed Alan Graham**                    Lender: **Acopia, LLC**

Print Date: **February 2, 2022**

Property Address:    **6234 Danielson Loop
The Villages, FL 32163**

This disclosure explains the effect of your election to pay a fee, commonly known as a discount point(s), which is a percentage of the loan amount and impacts the interest rate on the loan. The comparison below demonstrates the impact that payment of discount points(s) will have on the interest rate for this loan.

|  | Starting Adjusted Interest Rate |  | Bought Down or Actual Rate |
|---|---|---|---|
| Interest Rate | 0.000 % | Interest Rate | 3.750 % |
| Discount Points to Obtain Starting Adjusted Rate | 0.000 % | Discount Points Paid to Obtain the Bought Down Rate | 0.249 % |

There are a total of **0.249 %**       discount point(s) on this loan, which may be paid by the borrower, seller, lender and/or third party. You are paying  **0.249 %**        of the  **0.249 %**         discount points.

Your interest rate and discount point(s) may be subject to adjustment based on the risk factors of your mortgage application and credit profile. The interest rates and discount point(s) listed above may change prior to loan closing. In addition, if you have not locked in your interest rate, the rates and discount points reflected may change prior to closing the loan.

*Exhibit 10   Last updated: April 2015*
ICE Mortgage Technology, Inc.

I0743DPF  1019
I0743DPF (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

## HOLD HARMLESS STATEMENT

RE:  6234 Danielson Loop
The Villages, FL 32163

We, the undersigned, hereby state that we have personally inspected the property located at the above captioned address, and are satisfied with the "as is" condition of the property.

We, further agree to hold (Lender), its successors and/or assigns harmless from any and all liability with respect to the condition of the property, including but not limited to plumbing, heating, electrical, structural soundness, well and septic system if applicable.

Caution: Applicant is cautioned that Lender's appraisal of the property is made solely to determine the value of the property for mortgage purposes (not sales purposes) and does not include a detailed inspection or certification as to the structural soundness of the property or of its plumbing, heating and electrical systems, therefore, Applicant should not rely on Lender for a determination of the sales value or conditions of the property.

Dated this              day of

_____            _____
JED ALAN GRAHAM                                                         DATE

ICE Mortgage Technology, Inc.

I0000HHS  0712
I0000HHS (CLS)
02/01/2022 02:00 PM PST



# BORROWER CONSENT TO THE USE OF TAX RETURN INFORMATION

Borrower(s): **Jed Alan Graham AND Michele Graham**       Date: **February 2, 2022**

Loan Number: **104021117122**

Property Address: **6234 Danielson Loop**
**The Villages, FL 32163**

Lender: **Acopia, LLC**

I/We, **Jed Alan Graham AND Michele Graham**

understand, acknowledge, and agree that the Lender and Other Loan Participants can obtain, use and share tax return information for purposes of (i) providing an offer; (ii) originating, maintaining, managing, monitoring, servicing, selling, insuring, and securitizing a loan; (iii) marketing; or (iv) as otherwise permitted by applicable laws, including state and federal privacy and data security laws.

The Lender includes the Lender's affiliates, agents, service providers and any of aforementioned parties' successors and assigns. The Other Loan Participants includes any actual or potential owners of a loan resulting from your loan application, or acquirers of any beneficial or other interest in the loan, any mortgage insurer, guarantor, any servicers or service providers for these parties and any of aforementioned parties' successors and assigns.

## ACKNOWLEDGEMENT

By signing below, you hereby acknowledge reading and understanding all of the information disclosed above, and receiving a copy of this disclosure on the date indicated below.

| | |
|---|---|
| JED ALAN GRAHAM | DATE |

| | |
|---|---|
| MICHELE GRAHAM | DATE |

©2019 The Mortgage Industry Standards Maintenance Organization. All rights reserved.
ICE Mortgage Technology, Inc.

L00000BCTAXRI  0520
GBCTAXRIJ (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

| Form **4506-C**<br>(September 2020) | Department of the Treasury – Internal Revenue Service<br>**IVES Request for Transcript of Tax Return** | OMB Number<br>1545-1872 |
|---|---|---|

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506-C, visit www.irs.gov and search IVES.

**1a.** Name shown on tax return *(if a joint return, enter the name shown first)*
Jed Alan Graham

**1b.** First social security number on tax return, individual taxpayer identification number, or employer identification number *(see instructions)*
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

**2a.** If a joint return, enter spouse's name shown on tax return.

**2b.** Second social security number or individual taxpayer identification number if joint tax return

**3.** Current name, address (including apt., room, or suite no.), city, state, and ZIP code *(see instructions)*
Jed Alan Graham
123 Edinborough Circle, Greenwood, SC 29649

**4.** Previous address shown on the last return filed if different from line 3 *(see instructions)*
1400 McKinney Unit 2305, Houston, TX 77010

**5a.** IVES participant name, address, and SOR mailbox ID
Acopia, LLC ISAOA/ATIMA
306 Northcreek Blvd Suite 100
Goodlettsville, TN 37072
615-859-5537

**5b.** Customer file number *(if applicable) (see instructions)*

**Caution:** This tax transcript is being sent to the third party entered on Line 5a. Ensure that lines 5 through 8 are completed before signing. *(see instructions)*

**6.** Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request **1040, W2**

**a.** Return Transcript, which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years  ☒

**b.** Account Transcript, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns  ☒

**c.** Record of Account, which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years  ☒

**7.** Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2016, filed in 2017, will likely not be available from the IRS until 2018. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213  ☒

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**8.** Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format *(see instructions)*

| 12/31/2020 | 12/31/2019 | | |
|---|---|---|---|

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-C on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☒ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-C. See instructions.

| | Signature *(see instructions)* | | Date | | Phone number of taxpayer on line 1a or 2a |
|---|---|---|---|---|---|
| | Print/Type name<br>Jed Alan Graham | | | | |
| **Sign Here** | Title *(if line 1a above is a corporation, partnership, estate, or trust)* | | | | |
| | Spouse's signature | | | | Date |
| | Print/Type name | | | | |

Catalog Number 72627P    www.irs.gov    Form **4506-C** (9-2020)
For Privacy Act and Paperwork Reduction Act Notice, see page 2.

LOAN #: 104021117122

## Instructions for Form 4506-C, IVES Request for Transcript of Tax Return

Section references are to the Internal Revenue Code unless otherwise noted.

### Future Developments

For the latest information about Form 4506-C and its instructions, go to *www.irs.gov* and search IVES. Information about any recent developments affecting Form 4506-C (such as legislation enacted after we released it) will be posted on that page.

**What's New.** Form 4506-C was created to be utilized by authorized IVES participants to order tax transcripts with the consent of the taxpayer.

### General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506-C to request tax return information through an authorized IVES participant. You will designate an IVES participant to receive the information on line 5a.

**Note:** If you are unsure of which type of transcript you need, check with the party requesting your tax information.

**Where to file.** The IVES participant will fax Form 4506-C with the approved IVES cover sheet to their assigned Service Center.

### Chart for ordering transcripts

| If your assigned Service Center is: | Fax the requests with the approved coversheet to: |
|---|---|
| Austin Submission Processing Center | Austin IVES Team<br>844-249-6238 |
| Fresno Submission Processing Center | Fresno IVES Team<br>844-249-6239 |
| Kansas City Submission Processing Center | Kansas City IVES Team<br>844-249-8128 |
| Ogden Submission Processing Center | Ogden IVES Team<br>844-249-8129 |

### Specific Instructions

**Line 1b.** Enter the social security number (SSN) or individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B,Change of Address or Responsible Party — Business, with Form 4506-C.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number cannot contain an SSN, ITIN or EIN. Completion of this line is not required.

**Note.** If you use an SSN, name or combination of both, we will not input the information and the customer file number will reflect a generic entry of "9999999999" on the transcript.

**Line 8.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 transcript.

**Signature and date.** Form 4506-C must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-C within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, *including lines 5a through 8,* are completed before signing

 You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed if unchecked.

**Individuals.** Transcripts listed on on line 6 may be furnished to either spouse if jointly filed. Only one signature is required. Sign Form 4506-C exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-C can be signed by:

(1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-C but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-C can be signed by any person who was a member of the partnership during any part of the tax period requested on line 8.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-C for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to sign Form 4506-C.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-C will vary depending on individual circumstances. The estimated average time is:

Learning about the law or the form ...... 10 min.
Preparing the form ............................... 12 min.
Copying, assembling, and sending the form to the IRS ................................ 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-C simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see Where to file on this page.

LOAN #: 104021117122

| Form **4506-C** (September 2020) | Department of the Treasury – Internal Revenue Service<br>**IVES Request for Transcript of Tax Return** | OMB Number<br>1545-1872 |
|---|---|---|

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506-C, visit *www.irs.gov* and search IVES.

**1a.** Name shown on tax return *(if a joint return, enter the name shown first)*

Zaplutus Enterprises, LLC

**1b.** First social security number on tax return, individual taxpayer identification number, or employer identification number *(see instructions)*

74-3078638

**2a.** If a joint return, enter spouse's name shown on tax return.

**2b.** Second social security number or individual taxpayer identification number if joint tax return

**3.** Current name, address (including apt., room, or suite no.), city, state, and ZIP code *(see instructions)*

Jed Alan Graham
123 Edinborough Circle, Greenwood, SC 29649

**4.** Previous address shown on the last return filed if different from line 3 *(see instructions)*

1400 McKinney St., Unit 908, Houston, TX 77010

**5a.** IVES participant name, address, and SOR mailbox ID

Acopia, LLC  ISAOA  ATIMA
306 Northcreek Boulevard, Suite 100
Goodlettsville, TN 37072

**5b.** Customer file number *(if applicable) (see instructions)*

**Caution:** This tax transcript is being sent to the third party entered on Line 5a. Ensure that lines 5 through 8 are completed before signing. *(see instructions)*

**6.** Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request  **1065**

   **a.** Return Transcript, which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years  ☒

   **b.** Account Transcript, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns  ☒

   **c.** Record of Account, which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years  ☒

**7.** Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2016, filed in 2017, will likely not be available from the IRS until 2018. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213  ☒

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**8.** Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format *(see instructions)*

| 12/31/2020 | 12/31/2019 | 12/31/2018 | | |
|---|---|---|---|---|

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-C on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☒ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-C. See instructions.

| | Signature *(see instructions)* | Date | Phone number of taxpayer on line 1a or 2a<br>864-993-1984 |
|---|---|---|---|
| | Print/Type name | | |
| **Sign Here** | Title *(if line 1a above is a corporation, partnership, estate, or trust)* | | |
| | Spouse's signature | | Date |
| | Print/Type name | | |

Catalog Number 72627P
For Privacy Act and Paperwork Reduction Act Notice, see page 2.

www.irs.gov

Form **4506-C** (9-2020)

LOAN #: 104021117122

## Instructions for Form 4506-C, IVES Request for Transcript of Tax Return

Section references are to the Internal Revenue Code unless otherwise noted.

### Future Developments

For the latest information about Form 4506-C and its instructions, go to *www.irs.gov* and search IVES. Information about any recent developments affecting Form 4506-C (such as legislation enacted after we released it) will be posted on that page.

**What's New.** Form 4506-C was created to be utilized by authorized IVES participants to order tax transcripts with the consent of the taxpayer.

### General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506-C to request tax return information through an authorized IVES participant. You will designate an IVES participant to receive the information on line 5a.

**Note:** If you are unsure of which type of transcript you need, check with the party requesting your tax information.

**Where to file.** The IVES participant will fax Form 4506-C with the approved IVES cover sheet to their assigned Service Center.

### Chart for ordering transcripts

| If your assigned Service Center is: | Fax the requests with the approved coversheet to: |
|---|---|
| Austin Submission Processing Center | Austin IVES Team 844-249-6238 |
| Fresno Submission Processing Center | Fresno IVES Team 844-249-6239 |
| Kansas City Submission Processing Center | Kansas City IVES Team 844-249-8128 |
| Ogden Submission Processing Center | Ogden IVES Team 844-249-8129 |

### Specific Instructions

**Line 1b.** Enter the social security number (SSN) or individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B,Change of Address or Responsible Party — Business, with Form 4506-C.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number cannot contain an SSN, ITIN or EIN. Completion of this line is not required.

**Note.** If you use an SSN, name or combination of both, we will not input the information and the customer file number will reflect a generic entry of "9999999999" on the transcript.

**Line 8.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 transcript.

**Signature and date.** Form 4506-C must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-C within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, *including lines 5a through 8*, are completed before signing

 You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed if unchecked.

**Individuals.** Transcripts listed on on line 6 may be furnished to either spouse if jointly filed. Only one signature is required. Sign Form 4506-C exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-C can be signed by:

(1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-C but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-C can be signed by any person who was a member of the partnership during any part of the tax period requested on line 8.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-C for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to sign Form 4506-C.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-C will vary depending on individual circumstances. The estimated average time is:

Learning about the law or the form ...... 10 min.
Preparing the form ............................... 12 min.
Copying, assembling, and sending the form to the IRS ............................... 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-C simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see Where to file on this page.

LOAN #: 104021117122

| Form **4506-C** (September 2020) | Department of the Treasury – Internal Revenue Service<br>**IVES Request for Transcript of Tax Return** | OMB Number<br>1545-1872 |

► Do not sign this form unless all applicable lines have been completed.
► Request may be rejected if the form is incomplete or illegible.
► For more information about Form 4506-C, visit www.irs.gov and search IVES.

**1a.** Name shown on tax return (if a joint return, enter the name shown first)

P Jones Enterprises Inc

**1b.** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions)

47-2683790

**2a.** If a joint return, enter spouse's name shown on tax return.

**2b.** Second social security number or individual taxpayer identification number if joint tax return

**3.** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

Jed Alan Graham
123 Edinborough Circle, Greenwood, SC 29649

**4.** Previous address shown on the last return filed if different from line 3 (see instructions)

1400 McKinney St 908, Houston, TX 77010

**5a.** IVES participant name, address, and SOR mailbox ID

Acopia, LLC  ISAOA ATIMA
306 Northcreek Boulevard, Suite 100
Goodlettsvlle, TN 37072

**5b.** Customer file number (if applicable) (see instructions)

Caution: This tax transcript is being sent to the third party entered on Line 5a. Ensure that lines 5 through 8 are completed before signing. (see instructions)

**6.** Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request 1120

   **a.** Return Transcript, which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years    [X]

   **b.** Account Transcript, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns    [X]

   **c.** Record of Account, which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years    [X]

**7.** Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2016, filed in 2017, will likely not be available from the IRS until 2018. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213    [X]

Caution: If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**8.** Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions)

| 12/31/2020 | 12/31/2019 | 12/31/2018 | | |

Caution: Do not sign this form unless all applicable lines have been completed.

Signature of taxpayer(s). I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-C on behalf of the taxpayer. Note: This form must be received by IRS within 120 days of the signature date.

[X]   Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-C. See instructions.

| | | | |
|---|---|---|---|
| **Sign Here** | Signature (see instructions) | Date | Phone number of taxpayer on line 1a or 2a<br>864-993-1984 |
| | Print/Type name | | |
| | Title (if line 1e above is a corporation, partnership, estate, or trust) | | |
| | Spouse's signature | | Date |
| | Print/Type name | | |

Catalog Number 72627P
For Privacy Act and Paperwork Reduction Act Notice, see page 2.

www.irs.gov

Form **4506-C** (9-2020)

LOAN #: 104021117122

## Instructions for Form 4506-C, IVES Request for Transcript of Tax Return

Section references are to the Internal Revenue Code unless otherwise noted.

### Future Developments

For the latest information about Form 4506-C and its instructions, go to *www.irs.gov* and search IVES. Information about any recent developments affecting Form 4506-C (such as legislation enacted after we released it) will be posted on that page.

**What's New.** Form 4506-C was created to be utilized by authorized IVES participants to order tax transcripts with the consent of the taxpayer.

### General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506-C to request tax return information through an authorized IVES participant. You will designate an IVES participant to receive the information on line 5a.

**Note:** If you are unsure of which type of transcript you need, check with the party requesting your tax information.

**Where to file.** The IVES participant will fax Form 4506-C with the approved IVES cover sheet to their assigned Service Center.

### Chart for ordering transcripts

| If your assigned Service Center is: | Fax the requests with the approved coversheet to: |
|---|---|
| Austin Submission Processing Center | Austin IVES Team 844-249-6238 |
| Fresno Submission Processing Center | Fresno IVES Team 844-249-6239 |
| Kansas City Submission Processing Center | Kansas City IVES Team 844-249-8128 |
| Ogden Submission Processing Center | Ogden IVES Team 844-249-8129 |

### Specific Instructions

**Line 1b.** Enter the social security number (SSN) or individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B, Change of Address or Responsible Party — Business, with Form 4506-C.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number cannot contain an SSN, ITIN or EIN. Completion of this line is not required.

**Note.** If you use an SSN, name or combination of both, we will not input the information and the customer file number will reflect a generic entry of "9999999999" on the transcript.

**Line 8.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 transcript.

**Signature and date.** Form 4506-C must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-C within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, *including lines 5a through 8,* are completed before signing

 You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed if unchecked.

**Individuals.** Transcripts listed on on line 6 may be furnished to either spouse if jointly filed. Only one signature is required. Sign Form 4506-C exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-C can be signed by:

(1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-C but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-C can be signed by any person who was a member of the partnership during any part of the tax period requested on line 8.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-C for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to sign Form 4506-C.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-C will vary depending on individual circumstances. The estimated average time is:

Learning about the law or the form ...... 10 min.
Preparing the form ................................ 12 min.
Copying, assembling, and sending
the form to the IRS ................................ 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-C simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see Where to file on this page.

## Notice of Change Circumstances Reasons Closing Disclosure

Date of Change: **February 1, 2022**                    Loan Number: **104021117122**

Borrower(s): **Jed Alan Graham**

Property Address: **6234 Danielson Loop**
**The Villages, FL 32163**

Lender: **Acopia Home Loans**

Previously, in connection with your loan application, you were provided Loan Estimate(s) and Closing Disclosure(s) that contained your loan costs and loan terms for the mortgage loan sought. For one or more of the following reasons indicated below, we are providing you with a revised Closing Disclosure:

☐ Change Circumstance affecting Settlement Charges;

☐ Change Circumstance affecting Eligibility. A changed circumstance affecting your creditworthiness or the value of the security for the loan changes, the loan costs or the loan terms;

☐ Revisions Requested by the Consumer. You requested changes to the mortgage loan sought that changes the loan costs or the loan terms;

☒ Interest Rate Dependent Charges;

☐ Rate Lock Expired;

☐ Other:

Changed Circumstance Description(s):
**Borrower Locked Loan or requested a change in lock**

Comments:
**Lock extended at no cost**

Should you have questions regarding your revised Closing Disclosure or the Closing Date, please call James M Cannata, Lender Representative at 772-236-3007.

ICE Mortgage Technology, Inc.

GTRIDCDNCCR_S   1119
GTRIDCDNCCRS (POD)
02/01/2022 02:01 PM PST



2312ZP 09/14/2021 9:37 AM

**PARTNER# 1**

Schedule K-1
(Form 1065)
Department of the Treasury
Internal Revenue Service

**2020**

For calendar year 2020, or tax year

beginning _____ ending _____

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

| Final K-1 | Amended K-1 | OMB No. 1545-0123 |

651119

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |

### Part I  Information About the Partnership

A Partnership's employer identification number
74-3078638

B Partnership's name, address, city, state, and ZIP code
ZAPLUTUS ENTERPRISES, LLC

1400 MCKINNEY ST. UNIT 908
HOUSTON          TX 77010

C IRS Center where partnership filed return ▶
E-FILE

D ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

E Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instructions.)
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

F Name, address, city, state, and ZIP code for partner entered in E. See instructions.
JED GRAHAM

1400 MCKINNEY UNIT 2305
HOUSTON          TX 77010-4023

G ☐ General partner or LLC member-manager  ☒ Limited partner or other LLC member
H1 ☒ Domestic partner  ☐ Foreign partner
H2 ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____
Name _____

I1 What type of entity is this partner?  INDIVIDUAL

I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000000 % | 50.000000 % |
| Loss | 50.000000 % | 50.000000 % |
| Capital | 50.000000 % | 50.000000 % |

Check if decrease is due to sale or exchange of partnership interest .......... ☐

K Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse ..... $ | | $ |
| Qualified nonrecourse financing $ | | $ |
| Recourse ........ $ | | $ |

☐ Check this box if Item K includes liability amounts from lower tier partnerships.

L  Partner's Capital Account Analysis

Beginning capital account ............... $ _____
Capital contributed during the year ....... $ _____
Current year net income (loss) .......... $ _____
Other increase (decrease) (attach explanation) ......... $ _____
Withdrawals & distributions .......... $ ( _____ )
Ending capital account ................ $ _____

M Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No  If "Yes," attach statement. See instructions.

N  Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ................. $ _____
Ending .................... $ _____

| 1 | Ordinary business income (loss) | | 15 | Credits |
|---|---|---|---|---|
| 2 * | Net rental real estate income (loss)  2,049 | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4a | Guaranteed payments for services | | | |
| 4b | Guaranteed payments for capital | | | |
| 4c | Total guaranteed payments | | | |
| 5 | Interest income | | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | 17 | Alternative minimum tax (AMT) items |
| 6c | Dividend equivalents | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 9a | Net long-term capital gain (loss) | | | |
| 9b | Collectibles (28%) gain (loss) | | | |
| 9c | Unrecaptured section 1250 gain | | | |
| 10 | Net section 1231 gain (loss) | | 19 | Distributions |
| 11 | Other income (loss) | | | |
| 12 | Section 179 deduction | | 20 | Other Information |
| 13 | Other deductions | | | |
| 14 | Self-employment earnings (loss) | | | |

| 21 | ☐ More than one activity for at-risk purposes* |
| 22 | ☐ More than one activity for passive activity purposes* |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions
DAA

Schedule K-1 (Form 1065) 2020

| Form **1120-S** | | **U.S. Income Tax Return for an S Corporation** | | | | OMB No. 1545-0123 |
|---|---|---|---|---|---|---|

Department of the Treasury
Internal Revenue Service

▶ Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
▶ Go to *www.irs.gov/Form1120S* for instructions and the latest information.

**2020**

For calendar year 2020 or tax year beginning Jan 01 2020, ending Dec 31 2020

| **A** S election effective date | | **Name** P JONES ENTERPRISES INC | | | **D** Employer identification number 81-0691372 |
|---|---|---|---|---|---|
| 11/11/2015 | TYPE OR PRINT | Number, street, and room or suite no. If a P.O. box, see instructions. 1400 MCKNNEY ST 908 | | | **E** Date incorporated 11/11/2015 |
| **B** Business activity code number (see instructions) 621111 | | City or town HOUSTON | State TX | ZIP code 77010- | **F** Total assets (see instructions) |
| **C** Check if Sch. M-3 attached ☐ | | Foreign country name | Foreign province/state/county | Foreign postal code | $ 194,684 |

**G** Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No If "Yes," attach Form 2553 if not already filed

**H** Check if: **(1)** ☐ Final return **(2)** ☐ Name change **(3)** ☒ Address change **(4)** ☐ Amended return **(5)** ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year . . . . . . . . . . . . . ▶ 1

**J** Check if corporation: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

**Income**

| | | | |
|---|---|---|---|
| 1a | Gross receipts or sales | 1a 619,547 | |
| b | Returns and allowances | 1b | |
| c | Balance. Subtract line 1b from line 1a | 1c | 619,547 |
| 2 | Cost of goods sold (attach Form 1125-A) | 2 | |
| 3 | Gross profit. Subtract line 2 from line 1c | 3 | 619,547 |
| 4 | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | 4 | |
| 5 | Other income (loss) (see instructions—attach statement) | 5 | |
| 6 | Total income (loss). Add lines 3 through 5 ▶ | 6 | 619,547 |

**Deductions (see instructions for limitations)**

| | | | |
|---|---|---|---|
| 7 | Compensation of officers (see instructions — attach Form 1125-E) | 7 | 180,000 |
| 8 | Salaries and wages (less employment credits) | 8 | 168,013 |
| 9 | Repairs and maintenance | 9 | 7,316 |
| 10 | Bad debts | 10 | |
| 11 | Rents | 11 | 68,913 |
| 12 | Taxes and licenses | 12 | 387 |
| 13 | Interest (see instructions) | 13 | 10,000 |
| 14 | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 14 | 18,000 |
| 15 | Depletion (Do not deduct oil and gas depletion.) | 15 | |
| 16 | Advertising | 16 | 17,150 |
| 17 | Pension, profit-sharing, etc., plans | 17 | |
| 18 | Employee benefit programs | 18 | |
| 19 | Other deductions (attach statement) | 19 | 161,268 |
| 20 | Total deductions. Add lines 7 through 19 ▶ | 20 | 631,047 |
| 21 | Ordinary business income (loss). Subtract line 20 from line 6 | 21 | -11,500 |

**Tax and Payments**

| | | | |
|---|---|---|---|
| 22a | Excess net passive income or LIFO recapture tax (see instructions) | 22a | |
| b | Tax from Schedule D (Form 1120-S) | 22b | |
| c | Add lines 22a and 22b (see instructions for additional taxes) | 22c | |
| 23a | 2020 estimated tax payments and 2019 overpayment credited to 2020 | 23a | |
| b | Tax deposited with Form 7004 | 23b | |
| c | Credit for federal tax paid on fuels (attach Form 4136) | 23c | |
| d | Reserved for future use | 23d | |
| e | Add lines 23a through 23d | 23e | |
| 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | 24 | |
| 25 | Amount owed. If line 23e is smaller than the total of lines 22c and 24, enter amount owed | 25 | |
| 26 | Overpayment. If line 23e is larger than the total of lines 22c and 24, enter amount overpaid | 26 | |
| 27 | Enter amount from line 26: Credited to 2021 estimated tax ▶ Refunded ▶ | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of officer        Date        Title

May the IRS discuss this return with the preparer shown below? See instructions. ☐ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ | | | Firm's EIN ▶ | |
| Firm's address ▶ | | | Phone no. | |
| City | | State | ZIP code | |

For Paperwork Reduction Act Notice, see separate instructions.

BCA

Form **1120-S** (2020)

5593GR 09/14/2021 1:41 PM

Form 1040 (2020)    JED & MICHELE GRAHAM    \*\*\*-\*\*-3790    Page 2

| | | | | |
|---|---|---|---|---|
| 16 | Tax (see instructions). Check if any from Form(s): 1 ☐ 8814   2 ☐ 4972   3 ☐ | | 16 | 26,983 |
| 17 | Amount from Schedule 2, line 3 | | 17 | |
| 18 | Add lines 16 and 17 | | 18 | 26,983 |
| 19 | Child tax credit or credit for other dependents | | 19 | |
| 20 | Amount from Schedule 3, line 7 | | 20 | |
| 21 | Add lines 19 and 20 | | 21 | |
| 22 | Subtract line 21 from line 18. If zero or less, enter -0- | | 22 | 26,983 |
| 23 | Other taxes, including self-employment tax, from Schedule 2, line 10 | | 23 | |
| 24 | Add lines 22 and 23. This is your **total tax** ▶ | | 24 | 26,983 |
| 25 | Federal income tax withheld from: | | | |
| a | Form(s) W-2 | 25a | 23,208 | |
| b | Form(s) 1099 | 25b | | |
| c | Other forms (see instructions) | 25c | | |
| d | Add lines 25a through 25c | | 25d | 23,208 |

- If you have a qualifying child, attach Sch. EIC.
- If you have nontaxable combat pay, see instructions.

| | | | | |
|---|---|---|---|---|
| 26 | 2020 estimated tax payments and amount applied from 2019 return. | | 26 | |
| 27 | Earned income credit (EIC) | 27 | | |
| 28 | Additional child tax credit. Attach Schedule 8812 | 28 | | |
| 29 | American opportunity credit from Form 8863, line 8 | 29 | | |
| 30 | Recovery rebate credit. See instructions | 30 | 614 | |
| 31 | Amount from Schedule 3, line 13 | 31 | | |
| 32 | Add lines 27 through 31. These are your **total other payments and refundable credits** ▶ | | 32 | 614 |
| 33 | Add lines 25d, 26, and 32. These are your **total payments** ▶ | | 33 | 23,822 |

**Refund**

Direct deposit?
See Instructions

| | | | | |
|---|---|---|---|---|
| 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you **overpaid** | | 34 | |
| 35a | Amount of line 34 you want **refunded to you.** If Form 8888 is attached, check here ▶ ☐ | | 35a | |
| ▶b | Routing number [ ]   ▶c Type: ☐ Checking  ☐ Savings | | | |
| ▶d | Account number [ ] | | | |
| 36 | Amount of line 34 you want **applied to your 2021 estimated tax** ▶ | 36 | | |

**Amount You Owe**

For details on how to pay, see instructions.

| | | | | |
|---|---|---|---|---|
| 37 | Subtract line 33 from line 24. This is the **amount you owe now** ▶ | | 37 | 3,161 |
| | **Note:** Schedule H and Schedule SE filers, line 37 may not represent all of the taxes you owe for 2020. See Schedule 3, line 12e, and its instructions for details. | | | |
| 38 | Estimated tax penalty (see instructions) ▶ | 38 | | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS? See instructions ▶ ☒ Yes. Complete below.   ☐ No

Designee's name ▶ JOSEPH T. CIEGLO, CPA    Phone no. ▶ 601-469-1414    Personal identification number (PIN) ▶ 78232

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See Instructions.
Keep a copy for your records.

Your signature | Date | Your occupation PHYSICIAN | If the IRS sent you an Identity Protection PIN, enter it here (see inst.)

Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation RETIRED | If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.)

Phone no. | Email address

**Paid Preparer Use Only**

| Preparer's name | Preparer's signature | Date | PTIN | Check if: |
|---|---|---|---|---|
| JOSEPH T. CIEGLO, CPA | JOSEPH T. CIEGLO, CPA | 09/14/21 | \*\*\*\*\*\*\*\*\* | ☐ Self-employed |

Firm's name ▶ CHANCE GAY & CIEGLO PLLC    Phone no. 601-469-1414
Firm's address ▶ 514B AIRPORT RD
FOREST    MS    39074    Firm's EIN ▶ 83-0974051

Go to www.irs.gov/Form1040 for instructions and the latest information.    Form **1040** (2020)

10/15    INT    39    FTP    79    TOT    3,279

DAA

2312ZP 09/14/2021 9:52 AM

| Form **1065** | | U.S. Return of Partnership Income | | OMB No. 1545-0123 |
|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | For calendar year 2020, or tax year beginning ............ , ending .................... ▶ Go to www.irs.gov/Form1065 for instructions and the latest information. | | **2020** |

| A  Principal business activity | | Name of partnership | D  Employer identification number |
|---|---|---|---|
| RENTAL REAL | | ZAPLUTUS ENTERPRISES, LLC | 74-3078638 |
| B  Principal product or service | Type or Print | Number, street, and room or suite no. If a P.O. box, see instructions. | E  Date business started |
| RENTAL HOUSE | | 1400 MCKINNEY ST. UNIT 908 | |
| C  Business code number | | City or town, state or province, country, and ZIP or foreign postal code | F  Total assets (see instructions) |
| 621111 | | HOUSTON           TX 77010 | $ |

G  Check applicable boxes: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☒ Address change  (5) ☐ Amended return
H  Check accounting method: (1) ☒ Cash  (2) ☐ Accrual  (3) ☐ Other (specify) ▶ .............................................
I  Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ ........................... 2
J  Check if Schedules C and M-3 are attached ........................................................................ ▶ ☐
K  Check if partnership: (1) ☐ Aggregated activities for section 465 at-risk purposes (2) ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales | 1a | |
| | b | Returns and allowances | 1b | |
| | c | Balance. Subtract line 1b from line 1a | 1c | |
| | 2 | Cost of goods sold (attach Form 1125-A) | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | 3 | |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | 4 | |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | 6 | |
| | 7 | Other income (loss) (attach statement) | 7 | |
| | 8 | **Total income (loss).** Combine lines 3 through 7 | 8 | |
| **Deductions (see instructions for limitations)** | 9 | Salaries and wages (other than to partners) (less employment credits) | 9 | |
| | 10 | Guaranteed payments to partners | 10 | |
| | 11 | Repairs and maintenance | 11 | |
| | 12 | Bad debts | 12 | |
| | 13 | Rent | 13 | |
| | 14 | Taxes and licenses | 14 | |
| | 15 | Interest (see instructions) | 15 | |
| | 16a | Depreciation (if required, attach Form 4562) | 16a | 963 |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | 963 | 16c | 0 |
| | 17 | Depletion (**Do not deduct oil and gas depletion.**) | 17 | |
| | 18 | Retirement plans, etc. | 18 | |
| | 19 | Employee benefit programs | 19 | |
| | 20 | Other deductions (attach statement) | 20 | |
| | 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | 21 | 0 |
| | 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 | 22 | |
| **Tax and Payment** | 23 | Interest due under the look-back method—completed long-term contracts (attach Form 8697) | 23 | |
| | 24 | Interest due under the look-back method—income forecast method (attach Form 8866) | 24 | |
| | 25 | BBA AAR imputed underpayment (see instructions) | 25 | |
| | 26 | Other taxes (see instructions) | 26 | |
| | 27 | Total balance due. Add lines 23 through 26 | 27 | |
| | 28 | Payment (see instructions) | 28 | |
| | 29 | Amount owed. If line 28 is smaller than line 27, enter amount owed | 29 | |
| | 30 | Overpayment. If line 28 is larger than line 27, enter overpayment | 30 | |

**Client Copy** *(watermark)*

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge. | May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No |
|---|---|---|
| | ▶ _____ Signature of partner or limited liability company member | ▶ _____ Date | |

| Paid Preparer Use Only | Print/Type preparer's name JOSEPH T. CIEGLO, CPA | Preparer's signature JOSEPH T. CIEGLO, CPA | Date 09/14/21 | Check ☐ if self-employed | PTIN ********* |
|---|---|---|---|---|---|
| | Firm's name ▶ CHANCE GAY & CIEGLO PLLC | | | Firm's EIN ▶ 83-0974051 | |
| | Firm's address ▶ 514B AIRPORT RD FOREST, MS                39074 | | | Phone no. 601-469-1414 | |

For Paperwork Reduction Act Notice, see separate instructions.                    Form **1065** (2020)

DAA

# NEW HOME SALES

## BORROWERS MAILING ADDRESS AFTER CLOSING

**BUYERS:**  Jed Alan Graham and Michele Graham

**SUBJECT PROPERTY:**     Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

**Property Address:**     6234 Danielson Loop, The Villages, FL 32163-5941

**BUYERS:**

_____ WILL _____WILL NOT OCCUPY PROPERTY

MAILING ADDRESS : _____

_____

Phone Number: _____

Cell Number: _____

DoubleTime®

## PROPERTY TAX ACKNOWLEDGMENT

**CLOSING DATE:**   February 2, 2022

**SELLER(S):**   The Villages Land Company LLC, a Florida limited liability company

**BUYER(S):**   Jed Alan Graham and Michele Graham, husband and wife

**PROPERTY:**   Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

The undersigned hereby acknowledges that, if they purchased a newly constructed home where construction was completed after the first of the year, the current year's tax bill will likely be based solely on the value of the unimproved land. This is based on the fact that the Property Appraiser determines the value of the property on January 1st of each year. The year following the current year and each year thereafter, the tax bill will be based on the value of the land AND the home constructed thereon, which will cause the tax bill to be higher than that of the current year.

However, if you are closing after the first of the year but the home was deemed by the Property Appraiser as ready for occupancy prior to January 1st, then it is possible your tax bill for the current year could be based on the value of the land TOGETHER with the newly constructed home.

BUYER(S):


_____
Jed Alan Graham

_____
Michele Graham



**2-10 HOME BUYERS WARRANTY.**

RETURN TO: 2-10 HOME BUYERS WARRANTY
email: 210HBW@2-10.com | phone: 800.488.8844
P.O.Box441525 | Aurora, CO80044-1525

# BUILDER/SELLER APPLICATION FOR ENROLLMENT
## This document is not your New Home Warranty

Your builder/seller is applying to enroll in the 2-10 HBW New Home Warranty Program the home whose address is listed below. The builder/ seller is responsible to complete all enrollment requirements, and if not completed, no coverage by the builder/seller's warranty insurer will be provided. If the buyer has not received the Certificate of Warranty Coverage within 30 days after closing, the warranty was not issued and THE BUYER SHOULD CONTACT THE BUILDER/SELLER.

**1.** Buyer(s): *As recorded on deed.* JED A. AND MICHELE GRAHAM

Buyer(s) Email: _____   Buyer(s) Phone: _____

Building Dept: _____   Lot/Block: S71V-29   Subdivision: THE VILLAGES

Address of Home: 6234 DANIELSON LOOP     THE VILLAGES              FL     32163-5941
                 ADDRESS                                    CITY      STATE      ZIP

Alternate Mailing Address: _____
                           ADDRESS                         CITY      STATE      ZIP

**2.** Builder/Seller Name: The Villages Land Company, LLC     2-10 HBW Builder No: 8805-8007

**3.** Effective Date of Warranty: *Provide dates for each.*

Date of Closing: 02/02/2022     Date of First Occupancy by anyone: _____

Specify Date Certificate of Occupancy Issued: _____

Coverage: Both the builder/seller and buyer(s) must check and/or initial which of the following coverage(s) apply to the home being enrolled.

☒ A. _____ 2-10 Product: 1-Year Workmanship / 2-Year Systems / 10-Year Structural Coverage

☐ B. _____ 10-Year Product: 10-Year Structural Coverage

☐ C. _____ 2-10 Manufactured Product

**4.** Type of Home:   ☒ Single Family Detached     ☐ Single Family - Duplex, Townhome, Condo

**5.** Type of Construction:   ☒ Site Built   ☐ Modular   ☐ Manufactured

**6.** FHA/VA Financing:   ☐ Yes  ☒ No

**7.** Rate Formula

| 637,648 | ÷ 1,000 = | 637.65 | X | .500 | = | 318.82 |
|---|---|---|---|---|---|---|
| Final Sales Price of the Home | | Builder Rate | | | | Warranty Fee |

**ONLY COMPLETE IF LAND IS NOT INCLUDED IN THE FINAL SALES PRICE OF THE HOME**

| Multiply the Final Sales Price of Home x 1.25 | Multiply the Warranty Fee x 1.25 |
|---|---|
| | 398.53 |
| Warranty Limit | Warranty Fee |

## HOME BUYER'S ACKNOWLEDGEMENT AND CONSENT

Buyer(s) agree that any and all claims or disputes between him (them) and the builder/seller (including any person you contend is responsible for a defect in your home) arising from or relating to any warranty claim filed by the homeowner, shall be submitted to binding arbitration pursuant to the Federal Arbitration Act (9 U.S.C. §§1-16). By signing below, buyer acknowledges reading the 2-10 HBW Warranty Booklet, and CONSENTS TO THE TERMS OF THAT DOCUMENT INCLUDING THE BINDING ARBITRATION PROVISION contained therein. I/We acknowledge that filing a claim form is an election to pursue the warranty as my/our exclusive remedy. Buyer(s) accepts the 2-10 HBW warranty and in return, waives the builder/seller implied warranty of habitability, merchantability or fitness to the extent allowed by law.

Buyer(s) Signature: _____   Date: _____

Buyer(s) Signature: _____   Date: _____

BUILDER/SELLER'S AUTHORIZED SIGNATURE: _____

Print Name (Builder): Ryan McCabe

**OFFICE USE ONLY**
Warranty #: _____

2-10 Home Buyers Warranty | HBW_302_08_2019



New Construction Division

## SUBTERRANEAN TERMITE TREATMENT CERTIFICATE BUILDER GUARANTEE

Builder                                Cichielo                                    Acct # 8552820

Treated Property Subdivision Villages                                            Lot #   S71V-29

Street Address                         6234 Danielson Loop

City, State, Zip                       The Villages Of Citrus Grove , FL 32163

Treatment Information    Oct 25, 2021      Boracare 1:1 23%
                         Treatment Date    Material Used

This will confirm that the above referenced property was treated for subterranean termites on the treatment date indicated. MASSEY SERVICES, INC. does hereby guarantee that the material used in the treatment, its concentration rate, method and application comply in every respect with current regulations and the termiticide label as approved by E.P.A. and the State of Florida.

BY: _____
        Authorized Agent of MASSEY SERVICES, INC.

## NOTICE TO OWNER

### SUBTERRANEAN TERMITE PROTECTION
### GUARANTEE REGISTRATION ACKNOWLEDGEMENT

Your builder selected MASSEY SERVICES, INC. to provide the subterranean termite protection on your property. This protection provides you with retreatment and repair coverage at no cost to you for one year from the closing date (which must be provided below). In addition, as a new owner, Florida Law, Chapter 482.227 F.S. and 5E-14.105.3 provides that you shall have the option of extending this guarantee annually after the first year for no less than four (4) additional years, provided the previous year's renewal has been paid. (For protection coverage on FHA/VA Mortgages, refer to HUD Form NPCA 99A & 99B). If you have any questions relating to this coverage, please call our Customer Care Department at 888-262-7739.

I acknowledge my understanding of the options available to me under the Florida Statues as outlined above, and by my signature below, I authorize MASSEY SERVICES, INC. to transfer the Subterranean Termite Protection Registration, currently in my builder's name, to:

Name (please print)   Jed A. + michele Graham

Mailing Address (if different from treated property) _____

City, State, Zip _____

Home Phone (    ) _____    Business Phone (    ) _____

Mobile Phone (    ) _____    Email Address _____

Signature _____    Closing Date   2-2-2022

Financing (check one)  ✓ Conventional   ___ FHA/VA   ___ Other _____

*Massey Services ... Expect More ... and Get It!*



## Community Development Districts
## Finance

Welcome to The Villages. The Village Center Community Development Districts (The District) welcomes your comments, questions or suggestions via e-mail at utilities@districtgov.org.

**WATER UTILITY SERVICE REQUEST FORM (Please print legibly)**

Name(s) on Deed: ___Jed Alan Graham and Michele Graham_____

The Villages Service Address: ___6234 Danielson Loop, The Villages, FL, 32163_____

Customer Mailing Address for Billing: _____

_____

| Address | City, State | Zip |

Contact Phone #1:_____Contact Phone #2_____

Email address:_____ Please e-mail me my statements: ☐

**Water Service:** The Village Center Community Development Districts provides the billing for 5 separate water utilities in the Villages: Village Center Service Area, Little Sumter Service Area, North Sumter County Utility Dependent District, Central Sumter Utility and South Sumter Utility. Each utility has a rate schedule of base and tiered charges for consumption. Meters are read each month and bills are distributed based upon the meter reading cycle of the property. Payment is due within 20 days. A 5% late payment penalty is accessed on balances remaining after the due date of the bill. (South Sumter Utility's penalty is $5.00.)

The District shall be responsible for maintenance of the meter and delivery system upstream of the meter and the customer shall be responsible for maintenance of the delivery system and fixtures on the outlet side of the meter. Customers are responsible to pay for charges associated for all water that passes through the meter.

**Combined Billing:** As a convenience to customers the District has combined the billing of the deed covenant charges. Depending on which unit your home is located in, your bill may contain charges for water, sewer, irrigation, trash collection and/or the monthly amenity fee.

**Customer Billing Address:** To insure that your bill reaches you in a timely manner please make sure that the Finance Customer Service Office has your correct and current mailing or e-mail address. It is the customer's responsibility to keep this information current. You can e-mail address changes to utilities@districtgov.org or call us at 352-750-0000.

**(Please Turn Over)**

**Utility Fee Schedules:** Please visit www.districtgov.org. Click Departments — Click Utilities, and then select your utility company.

**Attention Seasonal Customers:** Please be advised that as part of the deed covenants water, sewer, irrigation base charges and amenities and sanitation services are charged year round.

**Scheduling Service Requests:** We do not schedule appointments for service requests. Please provide at least two business days' notice for routine service requests. More complex requests (such as installing or removing meters and/or upgrading services) are scheduled and require more notice. Please ensure that all water faucets, inside and outside the location, are shut off when the service is turned on.

**Termination of Water Service:** Only occurs due to non-payment. Disconnection of water services results in a minimum reconnection fee of $57.00 and payment in full of any past due balances. Meters are locked at disconnection of service and any tampering with the lock or meter will result in a fine to the owner of the property.

**Payment Options:** The District accepts cash, check, money order, on-line check debit and credit cards, (Visa, American Express, Master Card and Discover) for payment. (Debit and credit cards and on-line check are processed by a third party and are charged a convenience fee.) Please choose your appropriate utility service name to insure proper crediting of your account. You may also sign up for auto draft from a checking or savings account, at no charge, by completing the back portion of your payment stub or an ACH Draft form.

**Water Conservation:** The District is committed to comply with the Water Management District Consumptive Use Permit and promotes and adheres to Water Management Conservation Orders. It is the owner's responsibility to monitor home and irrigation system settings to avoid high usage.

**First Bill:** Your first bill should arrive within 30-45 days of activating service. District Emergency numbers, as well as other convenience information is listed on the reverse side of the bill. The District website www.districtgov.org is also an excellent information resource.

Our Customer Service staff is committed to providing the best possible service to every customer all of the time. Please feel free to contact us by phone 352-750-0000 or via e-mail, Utilities@districtgov.org.

In accordance with the District Rule, my signature below indicates that I have received and understand the obligations as documented on the Customer Application.

HOMEOWNER'S NAME (Please Print) ___Jed Alan Graham and Michele Graham_____

HOMEOWNER'S SIGNATURE _____

DATE: _____

| OFFICE USE: RECEIVED BY_____DATE RECEIVED_____ |
|---|
| UNIT_____ LOT_____ ACCOUNT # ASSIGNED_____ |

District Office: 984 Old Mill Run, The Villages, FL 32162-1675 FAX: 352-674-1999

Email: utilities@districtgov.org

| Office Use Only: | |
|---|---|
| Name: | Graham |
| Unit/Lot: | 71v.29 |
| Close Date: | 2-2-2022 |
| Date Ck. Rec'v. | |

# HOUSE KEYS & GATE PASSES - LAND COMPANY

Since you are closing by mail please select one of the following choices regarding your house keys and gate passes. Garage door openers will remain at the house.

## PLEASE SELECT ONLY ONE OPTION:

**OPTION 1: _____**
Please keep all keys and gate passes at the Community Resource Department until my arrival. See note in box below for locations and hours.
- I will contact the Closing Department (352-643-7191) prior to my arrival to schedule a walk-through at my home with the builder.

**OPTION 2: _____**
Please send me all house keys and gate passes via FedEx.
- I understand I will be charged $30.00 for this service and a signature will be required upon receipt.
- Please send a $30.00 personal check made payable to The Villages Land Company, LLC
- Mailbox keys will be available at the Community Resource Department upon arrival
- Address to send keys (Please Print): _____
  _____
- Phone Number: _____
- Is this address a Residential address? YES _____   NO _____

**OPTION 3: _____**
I am authorizing the following person to pick up a key **OR** all keys and gate passes for me after closing.
- Photo IDs and remaining keys/passes will be processed at the Community Resource Department upon my arrival. **See note in box below for locations and hours.**
- I will contact the Closing Department (352-643-7191) prior to my arrival to schedule a walk-through at my home with the builder.

AUTHORIZED PERSON'S NAME: _____
(PLEASE PRINT NAME)

Please check one:  To Pick up **One** Key Only: _____
To Pick up **All** Keys & Gate Passes: _____

| COMMUNITY RESOURCE DEPT. LOCATION | HOURS OF OPERATION: |
|---|---|
| - Brownwood: 2705 West Torch Lake Drive (zip:32163)<br><br>800-346-4556 or 352-753-2270 | Mon-Sat: 8:00 a.m. to 5:00 p.m.<br>Sunday:  9:00 a.m. to 5:00 p.m.<br>(Excluding Holidays)<br>NOTE: <u>If you will be arriving after hours</u> you must notify The Villages Community Resource Department during normal business hours to arrange for access to your keys. |

Signature: _____   Date: _____

Signature: _____   Date: _____

If we have questions, what phone number can we use to reach you? _____

REV 9/30/2021



Prepared by and return to:
Richard P. Newman/rc
**Peninsula Land & Title**
950 Lakeshore Drive Suite 200
The Villages, FL 32162
352-259-5017
File No.: V20143

_____[Space Above This Line For Recording Data]_____

# Warranty Deed

This Warranty Deed made this **2nd** day of **February, 2022** between **The Villages Land Company, LLC, a Florida limited liability company** whose post office address is 3619 Kiessel Road, The Villages, FL 32163 grantor, and **Jed Alan Graham and Michele Graham, husband and wife** whose post office address is 6234 Danielson Loop, The Villages, FL 32163-5941 grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

WITNESSETH, that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in **Sumter County Florida** to-wit:

PARCEL ID #: K01D029

Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

The initial monthly assessment to be paid by grantee for services to be performed by grantor is, pursuant to the terms of the applicable Declaration of Restrictions, hereby set at $164.00.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD, the same in fee simple forever.

AND the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except easements, restrictions and reservations of record, if any, but this instrument shall not operate to reimpose the same, special assessments not yet due and payable and taxes for the current year.

IN WITNESS WHEREOF, grantor has caused this instrument to be executed the day and year first above written.

_____
Witness Name:_____

_____
Witness Name:_____

The Villages Land Company, LLC, a Florida limited liability company

By: TVL Company, LLC, a Florida limited liability company, its Manager

By:_____
    Martin L. Dzuro, its Manager

State of Florida
County of Sumter

The foregoing instrument was acknowledged before me by means of __X__ physical presence or _____ online notarization this 2nd day of February, 2022, by Martin L. Dzuro, Manager of and on behalf of TVL Company, LLC, a Florida limited liability company, the Manager of The Villages Land Company, LLC, a Florida limited liability company. He [X] is personally known to me.

[Notary Seal]

_____
Notary Public
Printed Name:_____
My Commission Expires:_____

LOAN #: 104021117122
Rev. 1/11

| **FACTS** | **WHAT DOES** Acopia Home Loans **DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• **Social Security number**  and **Employment information**<br>• **Credit history**  and **Income**<br>• **Assets**  and<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share **Customers**  personal information to run their everyday business. In the section below, we list the reasons financial companies can share their **Customers**  personal information; the reasons **Acopia Home Loans** chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Acopia Home Loans share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes —** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We Don't Share |
| **For our affiliates' everyday business purposes —** information about your transactions and experiences | No | We Don't Share |
| **For our affiliates' everyday business purposes —** information about your creditworthiness | No | We Don't Share |
| **For nonaffiliates to market to you** | No | No |

| **Questions?** | Call **888-859-5537** | or go to **www.myacopia.com; www.acopiahomeloans.com** |
|---|---|---|

ICE Mortgage Technology, Inc.
Privacy Policy - No Affiliate No Opt Out

Page 1 of 2

GPRIVNANOPO_S  0919
GPRIVOPOUTS (POD)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

**Page 2**

## Who we are

| Who is providing this notice? | Acopia Home Loans |
| --- | --- |

## What we do

| How does Acopia Home Loans protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| --- | --- |
| How does Acopia Home Loans collect my personal information? | We collect your personal information, for example, when you<br><br>• Apply for a loan                                or<br>• Give us your contact information       or<br>• Give us your employment history      or<br>• Give us your income information       or<br>•<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br><br>• sharing for affiliates' everyday business purposes — information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |

## Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *Acopia Home Loans has no affiliates.* |
| --- | --- |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *Acopia Home Loans does not share with nonaffiliates so they can market to you.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• *Acopia Home Loans does not jointly market.* |

ICE Mortgage Technology, Inc.
Privacy Policy - No Affiliate No Opt Out

Page 2 of 2

GPRIVNANOPO_S  0919
GPRIVOPOUTS (POD)
02/01/2022 02:00 PM PST



# EXHIBIT B

## Ronda Carroll Transmittal Email

*2 pp.*

Email from Ronda Carroll (Peninsula Land & Title Services, LLC) to Plaintiff transmitting closing package

*February 2, 2022, 11:42 a.m. EST*



From: **Jed Graham** jedgraham@rocketmail.com
Subject: Fw: Closing documents 6234 Danielson Loop, The Villages, FL 32163
Date: February 3, 2022 at 1:09 PM
To: Jennifer Dr Jed Graham christian@gwdpc.com

Re House papers
--------------------------------------------------------------------------------Confidentiality Notice: This email may contain confidential information or information covered under the Privacy Act, 5 USC 552(a), and/or the Health Insurance Portability and Accountability Act (PL 104-191) and its various implementing regulations and must be protected in accordance with those provisions. It contains information that is legally privileged, confidential or otherwise protected from use or disclosure. This e-mail message, including any attachments, is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you. --------------------------------------------------------------------------------

----- Forwarded Message -----
**From:** Ronda Carroll <ronda.carroll@pltitle.com>
**To:** Jed Graham <jedgraham@rocketmail.com>
**Sent:** Wednesday, February 2, 2022, 11:42:36 AM EST
**Subject:** Closing documents 6234 Danielson Loop, The Villages, FL 32163

Hello Jed and Michele,

Attached please find the closing documents for the new home and a UPS return label.

All of the documents need to be completed today 2/2/2022.  Please email pages 4-41 back to me as I need to email them today to Acopia for their review.

On the Warranty deed, please review the first paragraph and make sure your names and the mailing address are correct.  Please place your initials to the left of the first paragraph.

If you have any questions, please let me know.



**Ronda Carroll/Closing Agent**

Brownwood Closing Location : 2705 West Torch Lake Drive, The Villages, FL 32163

Address : 2665 West Torch Lake Drive, The Villages, Florida 32163

Direct: 352-259-5003 Fax 352-259-5099

Ronda.Carroll@PLTitle.com | www.PLTitle.com

**PLEASE KNOW THAT FRAUDULENT ACTIVITY INVOLVING ELECTRONIC COMMUNICATIONS HAS BECOME MORE PREVALENT. IF YOU ARE WIRING FUNDS FOR CLOSING MAKE NOTE THAT OUR ESCROW ACCOUNT IS WITH CITIZENS FIRST BANK IN THE VILLAGES. IF YOU RECEIVE ANY WIRING INSTRUCTIONS TO SEND YOUR WIRE TO ANY OTHER BANK OR NAMING MORE THAN ONE BANK, IT COULD BE THE RESULT OF FRAUD. IN THAT EVENT OR IF YOU HAVE ANY QUESTIONS OR CONCERNS REGARDING ANY ELECTRONIC COMMUNICATIONS THAT YOU RECEIVE PLEASE DON'T HESITATE TO CONTACT US BY TELEPHONE.**

---

"NOTE: This e-mail is from Peninsula Land & Title ("Peninsula"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing customer of Peninsula, do not construe anything in this e-mail to make you a customer unless it contains a specific statement to that effect."

**Graham Closing Documents.pdf**

# EXHIBIT C

## Plaintiff's Signed-Return Email

*1 p.*

Email from Plaintiff to Peninsula Land & Title Services, LLC returning signed
closing documents

*February 2, 2022, 2:12 p.m. EST*

From: **Jed Graham** jedgraham@rocketmail.com
Subject: Fw: house
Date: February 2, 2022 at 2:12 PM
To: Ronda Carroll ronda.carroll@pltitle.com

See attached documents signed and scanned. Put the originals UPS per pre-labeled form.
Jed Graham MD.

----------------------------------------------------------------------------------Confidentiality Notice: This email may contain confidential information or information covered under the Privacy Act, 5 USC 552(a), and/or the Health Insurance Portability and Accountability Act (PL 104-191) and its various implementing regulations and must be protected in accordance with those provisions. It contains information that is legally privileged, confidential or otherwise protected from use or disclosure. This e-mail message, including any attachments, is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you. -----------------------------------------------------------------------------------

----- Forwarded Message -----
**From:** Christian Snead <chsnead1984@gmail.com>
**To:** "jedgraham@rocketmail.com" <jedgraham@rocketmail.com>
**Sent:** Wednesday, February 2, 2022, 02:05:43 PM EST
**Subject:** house

2-2-21 Dr. Graham.pdf

# EXHIBIT D

## Signed Closing Package as Returned

*96 pp. (signed Note with Plaintiff's ink signature appears at pp. 12–13)*

Transmitted by Plaintiff to Peninsula Land & Title Services, LLC

*February 2, 2022*

PLEASE DO NOT CHANGE OR ALTER DOCUMENTS IN ANY WAY

DOING THIS MAY DELAY YOUR CLOSING

PLEASE CALL YOUR CLOSING AGENT IF YOU HAVE ANY QUESTIONS

# NOTARY PUBLIC COMPLIANCE INFORMATION

This information is required to be completed by the Notary Public/Witnessing Official who is notarizing your closing documents. Please return this information with your closing documents.

Notary's Name (please print):

Christian Snead

Notary's Mailing Address:

794 Trinity church rd. Laurens SC 29360

County of Notary's Residence:

Laurens

Notary's Daytime Phone Number:

864 . 553 . 4958

Notary's Expiration Date:

6/07/2029

(SEAL)

0508                Notary Public Compliance Information                1

## FIRST PAYMENT LETTER

Acopia, LLC

LOAN NO.: 104021117122
DATE: February 2, 2022
BORROWER(S):   Jed Alan Graham

ADDRESS:  123 Edinborough Circle, Greenwood, SC 29649

We are pleased to have you as a mortgage loan customer. The following is a breakdown of your initial monthly payment:

| | |
|---|---|
| Principal and Interest | $ 1,489.08 |
| Estimated Taxes | $ 886.94 |
| Hazard Insurance | $ 108.42 |
| Flood Insurance | $ |
| Mortgage Insurance | $ |
| City Property Tax | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **TOTAL MONTHLY PAYMENT** | $ 2,484.44 |

Your first regular payment is due  April 1, 2022.

Partial Payments:
☒ Your lender may accept partial payments you make and apply such payments to your loan.
☐ Your lender may hold partial payments in a separate account until you pay the remainder of the payment, and then apply the full periodic payment to your loan.
☐ Your lender will not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

The outstanding principal balance at the time of this letter is  $321,536.00.

The current interest rate is  3.750 %.

Your loan  DOES NOT    have a prepayment penalty.

Housing Counselor Information: If you would like counseling or assistance, you can contact the following:

•   U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

For additional information regarding your loan please contact:  Acopia, LLC

at 615-859-5537.

We hereby acknowledge receiving a copy of this letter.

We are aware that the total monthly payment may be subject to change each year due to increases or decreases in annual taxes and/or insurance premiums and when applicable, adjustments in accordance with the adjustable rate mortgage provisions of the Note.

_____          2/2/22_____
JED ALAN GRAHAM                                           DATE



# Closing Disclosure

This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.

### Closing Information
| | |
|---|---|
| Date Issued | 2/2/2022 |
| Closing Date | 2/2/2022 |
| Disbursement Date | 2/3/2022 |
| Settlement Agent | Peninsula Land and Title |
| File # | V20143 |
| Property | 6234 Danielson Loop The Villages, FL 32163 |
| Sale Price | $946,531 |

### Transaction Information
| | |
|---|---|
| Borrower | Jed Alan Graham 123 Edinborough Circle Greenwood, SC 29649 |
| Seller | The Villages Land Company LLC 3619 Kiessel Road The Villages, FL 32163 |
| Lender | Acopia, LLC |

### Loan Information
| | |
|---|---|
| Loan Term | 30 years |
| Purpose | Purchase |
| Product | Fixed Rate |
| Loan Type | ☒ Conventional ☐ FHA ☐ VA ☐ _____ |
| Loan ID # | 104021117122 |
| MIC # | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| Loan Amount | $321,536 | NO |
| Interest Rate | 3.75 % | NO |
| Monthly Principal & Interest See Projected Payments below for your Estimated Total Monthly Payment | $1,489.08 | NO |

| | | Does the loan have these features? |
|---|---|---|
| Prepayment Penalty | | NO |
| Balloon Payment | | NO |

## Projected Payments

| Payment Calculation | | Years 1-30 |
|---|---|---|
| Principal & Interest | | $1,489.08 |
| Mortgage Insurance | + | 0 |
| Estimated Escrow Amount can increase over time | + | 995.36 |
| **Estimated Total Monthly Payment** | | **$2,484.44** |

| Estimated Taxes, Insurance & Assessments Amount can increase over time See page 4 for details | $1,159.36 Monthly | This estimate includes | In escrow? |
|---|---|---|---|
| | | ☒ Property Taxes | YES |
| | | ☒ Homeowner's Insurance | YES |
| | | ☒ Other: CDD | NO |
| | | See Escrow Account on page 4 for details. You must pay for other property costs separately. | |

## Costs at Closing

| | | |
|---|---|---|
| Closing Costs | $14,110.44 | Includes $6,137.42 in Loan Costs + $8,098.02 in Other Costs - $125.00 in Lender Credits. See page 2 for details. |
| Cash to Close | $457,592.75 | Includes Closing Costs. See Calculating Cash to Close on page 3 for details. |

## Closing Cost Details

| Loan Costs | | Borrower-Paid At Closing | Borrower-Paid Before Closing | Seller-Paid At Closing | Seller-Paid Before Closing | Paid by Others |
|---|---|---|---|---|---|---|
| **A. Origination Charges** | | **$2,490.62** | | | | |
| 01 0.249 % of Loan Amount (Points) | | $800.62 | | | | |
| 02 Origination Fee | | $495.00 | | | | |
| 03 Processing Fees | | $400.00 | | | | |
| 04 Underwriting Fees | | $795.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **B. Services Borrower Did Not Shop For** | | **$705.50** | | | | |
| 01 Appraisal Fee | to Clarity AMC | | $675.00 | | | |
| 02 Credit Report | to Acopia, LLC fbo CIC Credit | $30.50 | | | | |
| 03 | | | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| 09 | | | | | | |
| 10 | | | | | | |
| **C. Services Borrower Did Shop For** | | **$2,941.30** | | | | |
| 01 Land Survey | to Clymer Farner Barley, Inc. | $370.00 | | | | |
| 02 Title - Lender's Title Insurance | to Old Republic National Title / Peninsula | $1,901.30 | | | | |
| 03 Title - Settlement Fee | to Peninsula Land & Title | $610.00 | | $156.00 | | |
| 04 Title - Title Search | to Peninsula Land & Title | $60.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$6,137.42** | | | | |
| Loan Costs Subtotals (A + B + C) | | $5,462.42 | $675.00 | | | |

## Other Costs

| Other Costs | | Borrower-Paid At Closing | Borrower-Paid Before Closing | Seller-Paid At Closing | Seller-Paid Before Closing | Paid by Others |
|---|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$1,897.67** | | | | |
| 01 Recording Fees | Deed: $10.00    Mortgage: $129.00 | $129.00 | | $10.00 | | |
| 02 State Tax/Stamps | to Sumter County Clerk of the Circuit | $1,125.60 | | $6,626.20 | | |
| 03 Transfer Taxes | to Sumter County Clerk of the Circuit | $643.07 | | | | |
| **F. Prepaids** | | **$2,159.78** | | | | |
| 01 Homeowner's Insurance Premium (12 mo.) to ASI | | $1,301.00 | | | | |
| 02 Mortgage Insurance Premium ( mo.) | | | | | | |
| 03 Prepaid Interest ( $33.03 per day from 2/3/22 to 3/1/22 ) | | $858.78 | | | | |
| 04 Property Taxes ( mo.) | | | | | | |
| 05 | | | | | | |
| **G. Initial Escrow Payment at Closing** | | **$3,675.76** | | | | |
| 01 Homeowner's Insurance | $108.42 per month for 3 mo. | $325.26 | | | | |
| 02 Mortgage Insurance | per month for  mo. | | | | | |
| 03 Property Taxes | $886.94 per month for 5 mo. | $4,434.70 | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 Aggregate Adjustment | | -$1,084.20 | | | | |
| **H. Other** | | **$364.81** | | | | |
| 01 Association Dues | to CSU | $158.14 | | | | |
| 02 Utility Fee | to Sumter County Board of County | $206.67 | | | | |
| 03 Utility Fee | to The Villages Land Company LLC | | | $510.00 | | |
| 04 Utility Fee | to SEWWCA | | | $1,264.00 | | |
| 05 Utility Fee | to SSU | | | $4,569.00 | | |
| 06 Utility Fee | to Seco | | | $765.00 | | |
| 07 Utility Fee | to The Villages Land Company LLC | | | $1,260.00 | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$8,098.02** | | | | |
| Other Costs Subtotals (E + F + G + H) | | $8,098.02 | | | | |

| J. TOTAL CLOSING COSTS (Borrower-Paid) | | $14,110.44 | | | | |
|---|---|---|---|---|---|---|
| Closing Costs Subtotals (D + I) | | $13,560.44 | $675.00 | $15,160.20 | | |
| Lender Credits (includes $125.00 credit for increase in Closing Costs above legal limit) | | -$125.00 | | | | |

  

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $25,068.00 | $14,110.44 | YES · See Total Loan Costs (D) and Total Other Costs (I). · Increase exceeds legal limits by $125.00. See Lender Credits on page 2 for credit of excess amount. |
| Closing Costs Paid Before Closing | $0 | -$675.00 | YES · You paid these Closing Costs before closing. |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | NO |
| Down Payment/Funds from Borrower | $600,000.00 | $624,995.00 | YES · You increased this payment. See details in Section K. |
| Deposit | -$184,308.00 | -$184,308.00 | NO |
| Funds for Borrower | $0 | $0 | NO |
| Seller Credits | -$6,451.00 | $0 | YES · See Seller-Paid column on page 2 and Seller Credits in Section L. |
| Adjustments and Other Credits | $0 | $3,470.31 | YES · See details in Section K and Section L. |
| **Cash to Close** | **$434,309.00** | **$457,592.75** | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

### BORROWER'S TRANSACTION

| K. Due from Borrower at Closing | $963,699.27 |
|---|---|
| 01  Sale Price of Property | $946,531.00 |
| 02  Sale Price of Any Personal Property Included in Sale | |
| 03  Closing Costs Paid at Closing (J) | $13,435.44 |
| 04  Principal Reduction | |
| **Adjustments** | |
| 05  Change Order #1 Fee | $500.00 |
| 06  Change Order #2 Fee | $625.00 |
| 07 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 08  City/Town Taxes          to | |
| 09  County Taxes          to | |
| 10  Assessments      02/02/22 to 09/30/22 | $1,682.83 |
| 11  Change Order #3 Fee | $925.00 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

| L. Paid Already by or on Behalf of Borrower at Closing | $506,106.52 |
|---|---|
| 01  Deposit | $184,308.00 |
| 02  Loan Amount | $321,536.00 |
| 03  Existing Loan(s) Assumed or Taken Subject to | |
| 04  Lender Cure for 801/802 | |
| 05  Seller Credit | |
| **Other Credits** | |
| 06 | |
| 07 | |
| **Adjustments** | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| **Adjustments for Items Unpaid by Seller** | |
| 12  City/Town Taxes          to | |
| 13  County Taxes      01/01/22 to 02/02/22 | $262.52 |
| 14  Assessments          to | |
| 15 | |
| 16 | |
| 17 | |

| CALCULATION | |
|---|---|
| Total Due from Borrower at Closing (K) | $963,699.27 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | -$506,106.52 |
| Cash to Close  ☒ From  ☐ To Borrower | $457,592.75 |

### SELLER'S TRANSACTION

| M. Due to Seller at Closing | $948,213.83 |
|---|---|
| 01  Sale Price of Property | $946,531.00 |
| 02  Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 09  City/Town Taxes          to | |
| 10  County Taxes          to | |
| 11  Assessments      02/02/22  to 09/30/22 | $1,682.83 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | $202,028.47 |
|---|---|
| 01  Excess Deposit | $184,308.00 |
| 02  Closing Costs Paid at Closing (J) | $15,160.20 |
| 03  Existing Loan(s) Assumed or Taken Subject to | |
| 04  Payoff of First Mortgage Loan | |
| 05  Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08  Seller Credit | |
| * 09  City-County Permit/Impact Fees to The Villages | $1,978.63 |
| * 10  Law Enforcement to The Villages Land Company | $319.12 |
| 11 | |
| 12 | |
| 13 | |
| **Adjustments for Items Unpaid by Seller** | |
| 14  City/Town Taxes          to | |
| 15  County Taxes      01/01/22 to 02/02/22 | $262.52 |
| 16  Assessments          to | |
| 17 | |
| 18 | |
| 19 | |

| CALCULATION | |
|---|---|
| Total Due to Seller at Closing (M) | $948,213.83 |
| Total Due from Seller at Closing (N) | -$202,028.47 |
| Cash  ☐ From  ☒ To Seller | $746,185.36 |

* See attached page for additional information

CLOSING DISCLOSURE · GTRIDCDWS_S 0617
02/02/2022 08:02 AM PST



## Additional Information About This Loan

### Loan Disclosures

#### Assumption
If you sell or transfer this property to another person, your lender
- ☐ will allow, under certain conditions, this person to assume this loan on the original terms.
- ☒ will not allow assumption of this loan on the original terms.

#### Demand Feature
Your loan
- ☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.
- ☒ does not have a demand feature.

#### Late Payment
If your payment is more than 15 days late, your lender will charge a late fee of *5% of the principal and interest overdue.*

#### Negative Amortization (Increase in Loan Amount)
Under your loan terms, you
- ☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
- ☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
- ☒ do not have a negative amortization feature.

#### Partial Payments
Your lender
- ☒ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.
- ☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.
- ☐ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

#### Security Interest
You are granting a security interest in
*6234 Danielson Loop, The Villages, FL 32163*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

#### Escrow Account
*For now,* your loan
- ☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | $10,948.96 | Estimated total amount over year 1 for your escrowed property costs: *Property Taxes, Homeowner's Insurance* |
| Non-Escrowed Property Costs over Year 1 | $1,804.00 | Estimated total amount over year 1 for your non-escrowed property costs: *HOA Dues*  You may have other property costs. |
| Initial Escrow Payment | $3,675.76 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $995.36 | The amount included in your total monthly payment. |

- ☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

*In the future,*
Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.



## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $543,067.42 |
| **Finance Charge.** The dollar amount the loan will cost you. | $218,494.62 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $317,576.60 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 3.851 % |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 66.989 % |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | Acopia Home Loans | | | Properties of the Villages Inc. | Peninsula Land and Title |
| **Address** | 10570 S. US Highway One, Suite #102 Port St Lucie, FL 34952 | | | 2757 Glen Hollow Way The Villages, FL 32162 | 950 Lakeshore Drive The Villags, FL 32162 |
| **NMLS ID** | 4664 | | | | |
| **FL License ID** | MLD1224 | | | CQ1002909 | CC150486 |
| **Contact** | James M Cannata | | | Katie Crane | Ronda Carroll |
| **Contact NMLS ID** | 328552 | | | | |
| **Contact FL License ID** | LO8495 | | | SL3467424 | |
| **Email** | jcannata@acopiahomeloans.com | | | Katie.Crane@TheVillages.com | Ronda.Carroll@pltitle.com |
| **Phone** | 772-236-3007 | | | 352-446-2317 | 352-753-4690 |

 

## Addendum to Closing Disclosure

*This form is a continued statement of final loan terms and closing costs.*

**Summary Of Transactions**    Additional Details from your transactions.

**SELLER'S TRANSACTION**

| N. | Due from Seller at Closing | |
|---|---|---|
| N09 | City-County Permit/Impact Fees to The Villages Land Company LLC | $1,978.63 |
| N10 | Law Enforcement to The Villages Land Company LLC | $319.12 |

**Confirm Receipt**

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_____    2/2/22
Jed Alan Graham                         DATE

_____    2/2/22
Michele Graham                          DATE

# Closing Disclosure Addendum B - Customary Recitals

**Closing File Number:**   V20143

**Closing Date:**   February 2, 2022

**TAX RE-PRORATION AGREEMENT:** If the most recent property tax bill issued does not cover through the closing date, then the tax prorations set forth on the settlement statement are based upon an estimate. The basis of proration as set forth on the settlement statement is hereby accepted by the parties to this transaction. It is hereby understood and agreed that the actual taxes, if different, will be adjusted between the parties upon demand. Closing Agent is not liable or responsible for adjustment or re-proration of taxes. Closing Agent is not responsible or liable for additional taxes, other charges or tax refunds, if any, and shall not be liable should any of the parties to this transaction fail or refuse to re-prorate the taxes.

**NOTE:** Real Estate Taxes are due in November. Seller(s) hereby agree that if they receive the tax bill they will forward to the Buyers. If you are the Buyer(s) and do not receive a tax bill by November 15, please call one of the following numbers:

   For Lake County property, call 352-343-9622
   For Marion County property, call 352-368-8200
   For Sumter County property, call 352-569-6740

**AGREEMENT TO COOPERATE:** If requested by Lender (if any), Closing Agent, Title Agent or Title Underwriter, the parties agree to fully cooperate and adjust for clerical errors, including the execution or re-execution of any reasonable documentation and/or the remittance of any additional sums.

**HOMEOWNER'S/CONDOMINIUM ASSOCIATIONS:** The Buyer(s) acknowledge(s) the existence of any homeowner's and/or condominium association(s) and is aware that monthly, quarterly or annual maintenance assessments may be due to said association(s). Said association(s) may also have the authority to regulate and enforce community covenants and restrictions. The Buyer hereby acknowledges receipt of a copy of any association estoppel letters for the subject transaction.

**MISCELLANEOUS:** Closing Agent does not make any representations or warranties nor assumes any liability with respect to the physical condition of the property, or any repairs to the property. Buyer has been advised and encouraged to secure hazard insurance coverage prior to completion of closing. If a survey was prepared for the subject transaction, then the Buyer hereby acknowledges receipt of a copy thereof. The buyer has reviewed said survey and accepts title subject to the matters set forth thereon. Buyer has received and reviewed the proposed deed and is satisfied with and approves the manner which title is being held. The parties hereto acknowledge that the fees paid to Peninsula Land & Title are for the closing of the transaction and issuing the title insurance policy. The parties further acknowledge that should they desire legal representation with regard to the matter, they should seek independent counsel and hereby agree to hold harmless Peninsula Land & Title as well as its staff, from any and all liability as a result of the above referenced transaction.

**DISBURSEMENT AUTHORIZATION, ETC.:** Closing Agent does not adjust or assume liability for charges for water, rents, gas, electricity, taxes on personal property, garbage taxes or fees, license fees or taxes, service/maintenance contracts (pest control, appliance maintenance, pool care, lawn care, alarm systems, etc.), association assessments or dues, or estoppel information furnished by mortgagees or others. The settlement statement has been reviewed and approved and Closing Agent is irrevocably authorized and directed to complete the closing of the transaction and make disbursement in accordance therewith. In the event of mortgage assumption, if Seller has received a credit for the escrow account balance, then Seller hereby assigns all right, title and interest in said account to Buyer. Seller, Buyer, and Borrower are used for singular or plural, as the context so requires or admits. This Agreement is being provided as an inducement for Closing Agent to serve as the closing agent and for Title Agent and Title Underwriter to issue title insurance on the subject transaction.

## Closing Disclosure Addendum B - Customary Recitals

Closing File Number:    V20143    .                          Closing Date:    February 2, 2022

The undersigned hereby certifies that they have carefully reviewed the Closing Disclosure or other settlement statement form and they approve and agree to the payment of all fees, costs, expenses and disbursement as reflected on the Closing Disclosure or other settlement statement form to be paid on their behalf. We further certify that we have received a copy of the Closing Disclosure or other settlement statement.

Borrower(s)

_____                    _____
Jed Alan Graham                                    Michele Graham

### Seller(s)

The Villages Land Company LLC, a Florida limited liability company

By: _____
      Martin L. Dzuro, Manager

### Settlement Agent

I have reviewed the Closing Disclosure, the settlement statement, the lender's closing instructions and any and all other forms relative to the escrow funds, including any disclosure of the Florida title insurance premiums being paid, and I agree to disburse the escrow funds in accordance with the terms of this transaction and Florida law.

Peninsula Land & Title

By: _____                Date: _____

LOAN #: 104021117122
MIN: 1006646-1000146150-9

## NOTE

February 2, 2022                    The Villages.                    Florida
[Date]                              [City]                           [State]

6234 Danielson Loop, The Villages, FL 32163
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $321,536.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   Acopia, LLC, a Corporation.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  3.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st    day of each month beginning on  April 1, 2022.       I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  March 1, 2052,        I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,489.08.

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 %    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Initials: _____

FLORIDA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3210 1/01
ICE Mortgage Technology, Inc.                    Page 1 of 2                    F3200FLN  0221
F3200FLN (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JED ALAN GRAHAM

Lender: Acopia, LLC
NMLS ID: 4664
Loan Originator: James M Cannata
NMLS ID: 328552

[Sign Original Only]

Initials: _____

FLORIDA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3210 1/01
ICE Mortgage Technology, Inc.                                Page 2 of 2

F3200FLN   0221
F3200FLN (CLS)
02/01/2022 02:00 PM PST

When recorded, return to:
Acopia, LLC
Attn: Final Document Department
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

This document was prepared by:
Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072
615-859-5537

Title Order No.: 40028-01

LOAN #: 104021117122

——————————————————————— [Space Above This Line for Recording Data] ———————————————————————

## MORTGAGE

| MIN 1006646-1000146150-9 |
| --- |

MERS PHONE #: 1-888-679-6377

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated February 2, 2022,        together with all Riders to this document.
(B) "Borrower" is   JED ALAN GRAHAM AND MICHELE GRAHAM, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   Acopia, LLC.

Lender is   a Corporation,                                                                    organized and existing
under the laws of   Tennessee.
Lender's address is 306 Northcreek Blvd, Suite 100, Goodlettsville, TN 37072

(E) "Note" means the promissory note signed by Borrower and dated February 2, 2022.        The Note states that Borrower owes Lender   THREE HUNDRED TWENTY ONE THOUSAND FIVE HUNDRED THIRTY SIX AND NO/100*
********************************************************** Dollars (U.S. $321,536.00          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 1, 2052.

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                        Page 1 of 10

Initials: _____

FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider         ☐ Condominium Rider            ☒ Second Home Rider
☐ Balloon Rider                 ☐ Planned Unit Development Rider  ☐ V.A. Rider
☐ 1-4 Family Rider              ☐ Biweekly Payment Rider
☒ Other(s) [specify]    *Primary Home*

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "**Escrow Items**" means those items that are described in Section 3.
(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the
County                     of  Sumter
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: K01D029

which currently has the address of   6234 Danielson Loop, The Villages,

[Street] [City]

Florida  32163            ("Property Address"):
         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                    Page 2 of 10

Initials: _____

FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                    Page 3 of 10

Initials: _____

FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                      Page 4 of 10

Initials: _____

FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.

Page 5 of 10

Initials: _____

FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                  Page 6 of 10

Initials: _____

FLEDEED 1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.                              Page 7 of 10

Initials: _____
FLEDEED   1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010 1/01
ICE Mortgage Technology, Inc.    Page 8 of 10

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand. lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____    _____ (Seal)
JED ALAN GRAHAM                                          DATE
123 Edinborough Circle
Greenwood, SC 29649

_____    _____ (Seal)
MICHELE GRAHAM                                           DATE

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                        Page 9 of 10

Initials: _____
FLEDEED 1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

Witnesses:
Signed, sealed and delivered in the presence of:

_Jed Alan Graham_ (signature)

Jed Alan Graham
Printed Name

_Michele Graham_ (signature)

Michele GRAHAM
Printed Name

State of ~~FLORIDA~~ South Carolina

Greenwood
County of ~~SUMTER~~

The foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM AND MICHELE GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

_Christian Snead_ (signature)
Signature

Christian Snead
Printed Name

Notary Public
Title or Rank

_____
Serial Number (if any)

Lender: Acopia, LLC
NMLS ID: 4664
Loan Originator: James M Cannata
NMLS ID: 328552

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010 1/01
ICE Mortgage Technology, Inc.                    Page 10 of 10

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
02/01/2022 02:00 PM PST

# Exhibit A

Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

Parcel Identification Number: K01D029



File Number: V20143

DoubleTime®

LOAN #: 104021117122
MIN: 1006646-1000146150-9

## SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 2nd day of February, 2022 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to **Acopia, LLC, a Corporation**

(the "Lender")

of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at: 6234 Danielson Loop, The Villages, FL 32163.

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower will occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property, including short-term rentals, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property. Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Second Home Rider, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

JED ALAN GRAHAM    2/2/22 (Seal) DATE

MICHELE GRAHAM    2/2/02 (Seal) DATE

MULTISTATE SECOND HOME RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01 (rev. 4/19)
ICE Mortgage Technology, Inc.

Initials:
F3890RDU 0519
F3890RLU (CLS)
02/01/2022 02.00 PM PST

To be completed by the Lender
Lender Loan No./Universal Loan Identifier 549300ETDBFIJZI8LA40104021117I2223    Agency Case No.

# Uniform Residential Loan Application

Verify and complete the information on this application. If you are applying for this loan with others, each additional Borrower must provide information as directed by your Lender.

## Section 1: Borrower Information. This section asks about your personal information and your income from employment and other sources, such as retirement, that you want considered to qualify for this loan.

### 1a. Personal Information

**Name** *(First, Middle, Last, Suffix)*
Jed Alan Graham

**Alternate Names** – *List any names by which you are known or any names under which credit was previously received (First, Middle, Last, Suffix)*

**Social Security Number** 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
*(or Individual Taxpayer Identification Number)*

| Date of Birth *(mm/dd/yyyy)* | Citizenship |
|---|---|
| 11/18/1956 | ⦿ U.S. Citizen <br> ○ Permanent Resident Alien <br> ○ Non-Permanent Resident Alien |

**Type of Credit**
⦿ I am applying for individual credit.
○ I am applying for joint credit. Total Number of Borrowers: _____

Each Borrower intends to apply for joint credit. Your initials: _____

**List Name(s) of Other Borrower(s) Applying for this Loan**
*(First, Middle, Last, Suffix) - Use a separator between names*

**Marital Status**
⦿ Married
○ Separated
○ Unmarried

*(Single, Divorced, Widowed, Civil Union, Domestic Partnership, Registered Reciprocal Beneficiary Relationship)*

**Dependents** *(not listed by another Borrower)*
Number 0
Ages

**Contact Information**
Home Phone  864-993-1984
Cell Phone  864-993-1984
Work Phone  _____ Ext. _____
Email jedgraham@rocketmail.com

**Current Address**

Street 123 Edinborough Circle    Apartment #9
City Greenwood    State SC    ZIP 29649    Country _____
How Long at Current Address? 0 Years 1 Months    Housing ○ No primary housing expense  ○ Own  ⦿ Rent ($ 2,045 /month)

If at Current Address for LESS than 2 years, list Former Address    ☐ Does not apply
Street 104 Windjammer    Building _____
City Greenwood    State SC    ZIP 29649    Country _____
How Long at Former Address? 9 Years 0 Months    Housing ○ No primary housing expense  ⦿ Own  ○ Rent ($ _____ /month)

Mailing Address – *if different from Current Address*    ☒ Does not apply
Street _____    Unit # _____
City _____ State _____ ZIP _____ Country _____

### 1b. Current Employment/Self Employment and Income    ☐ Does not apply

Employer or Business Name P Jones Enterprises INC    Phone 864-223-6621
Street 4500 E Sam Houston Parkway    Building S
City Pasadena    State TX    ZIP 77505    Country _____

Position or Title Physician
Start Date 11 / 11 / 2015 *(mm/dd/yyyy)*
How long in this line of work? 17 Years 5 Months

☒ Check if you are the Business Owner or Self-Employed
○ I have an ownership share of less than 25%.
⦿ I have an ownership share of 25% or more.

Check if this statement applies:
☐ I am employed by a family member, property seller, real estate agent, or other party to the transaction.

Monthly Income (or Loss)
$14,025.63

| Gross Monthly Income | |
|---|---|
| Base | $14,025.63 /month |
| Overtime | _____ /month |
| Bonus | _____ /month |
| Commission | _____ /month |
| Military Entitlements | _____ /month |
| Other | _____ /month |
| TOTAL | $14,026.00 /month |

Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

1 of 9

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

## 1c. IF APPLICABLE, Complete Information for Additional Employment/Self Employment and Income   ☐ Does not apply

Employer or Business Name Greenwood Family Practice      Phone 864-223-6621

Street 805 Montague Ave A      Unit # _____

City Greenwood      State SC   ZIP 29649      Country US

Position or Title Physician

Start Date 06 / 06 / 2003   (mm/dd/yyyy)

How long in this line of work? 20 Years ____ Months

Check if this statement applies:
☐ I am employed by a family member, property seller, real estate agent, or other party to the transaction.

☒ Check if you are the Business Owner or Self-Employed
   ○ I have an ownership share of less than 25%.
   ◉ I have an ownership share of 25% or more.
   Monthly Income (or Loss)
   $2,001.58

| Gross Monthly Income | |
|---|---|
| Base | $2,001.58 /month |
| Overtime | /month |
| Bonus | /month |
| Commission | /month |
| Military Entitlements | /month |
| Other | /month |
| TOTAL | $2,002.00 /month |

## 1d. IF APPLICABLE, Complete Information for Previous Employment/Self Employment and Income   ☒ Does not apply

## 1e. Income from Other Sources   ☒ Does not apply

# Section 2: Financial Information — Assets and Liabilities. This section asks about things you own that are worth money and that you want considered to qualify for this loan. It then asks about your liabilities (or debts) that you pay each month, such as credit cards, alimony, or other expenses.

## 2a. Assets - Bank Accounts, Retirement, and Other Accounts You Have

Include all accounts below. Under Account Type, choose from the types listed here:

- Checking
- Savings
- Money Market
- Certificate of Deposit
- Mutual Fund
- Stocks
- Stock Options
- Bonds
- Retirement (e.g., 401k, IRA)
- Bridge Loan Proceeds
- Individual Development Account
- Trust Account
- Cash Value of Life Insurance (used for the transaction)

| Account Type – use list above | Financial Institution | Account Number | Cash or Market Value |
|---|---|---|---|
| Checking Account | Wells Fargo | 3273682413 | $62,129.69 |
| Checking Account | TD Ameritrade | 236990847 | $100,000.00 |
| Checking Account | TD Ameritrade | 865353145 | $17,110.20 |
| | | | |
| | | | |
| | | Provide TOTAL Amount Here | $179,239.89 |

## 2b. Other Assets and Credits You Have   ☐ Does not apply

Include all other assets and credits below. Under Asset or Credit Type, choose from the types listed here:

Assets
- Proceeds from Real Estate Property to be sold on or before closing
- Proceeds from Sale of Non-Real Estate Asset
- Secured Borrowed Funds
- Unsecured Borrowed Funds
- Other

Credits
- Earnest Money
- Employer Assistance
- Lot Equity
- Relocation Funds
- Rent Credit
- Sweat Equity
- Trade Equity

| Asset or Credit Type – use list above | Cash or Market Value |
|---|---|
| Other - Other Liquid Asset | $330,741.35 |
| Pending Net Sale Proceeds From Real Estate Assets | $60,000.00 |
| | |
| | |
| Provide TOTAL Amount Here | $390,741.35 |

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

2 of 9

GURLA20_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

## 2c. Liabilities - Credit Cards, Other Debts, and Leases that You Owe    ☐ Does not apply

List all liabilities below (except real estate) and include deferred payments. Under Account Type, choose from the types listed here:
· Revolving (e.g., credit cards)   · Installment (e.g., car, student, personal loans)   · Open 30-Day (balance paid monthly)   · Lease (not real estate)   · Other

| Account Type – use list above | Company Name | Account Number | Unpaid Balance | To be paid off at or before closing | Monthly Payment |
|---|---|---|---|---|---|
| Installment | NELNET LOANS | 500000032380599 | $68,898.00 | ☐ | $846.00 |
| Installment | MB FIN SVCS | 5001438820001 | $37,831.00 | ☐ | $853.00 |
| Installment | NELNET LOANS | 500000032380699 | $24,111.00 | ☐ | $500.00 |
| Installment | SUNTRUST BANK | 4300000431518596 | $13,326.00 | ☐ | $603.00 |
| Revolving | SYNCB/NTWK | 650172****** | $1,711.00 | ☐ | $92.00 |
| Collections Judgments And Liens | JPMCB CARD | 438857****** | $292.00 | ☐ | $0.00 |

## 2d. Other Liabilities and Expenses    ☒ Does not apply

# Section 3: Financial Information — Real Estate. This section asks you to list all properties you currently own and what you owe on them.    ☐ I do not own any real estate

## 3a. Property You Own    If you are refinancing, list the property you are refinancing FIRST.

Address  Street 618 and 620 Grier St                                                                 Condo 618 and 620

City Greenwood                                          State SC      ZIP 29649      Country

| Property Value | Status: Sold, Pending Sale, or Retained | Intended Occupancy: Investment, Primary Residence, Second Home, Other | Monthly Insurance, Taxes, Association Dues, etc. if not included in Monthly Mortgage Payment | For 2-4 Unit Primary or Investment Property | |
|---|---|---|---|---|---|
| | | | | Monthly Rental Income | For LENDER to calculate: Net Monthly Rental Income |
| $70,000.00 | Pending Sale | Investment | | $ | $ |

Mortgage Loans on this Property    ☒ Does not apply

## 3b. IF APPLICABLE, Complete Information for Additional Property    ☒ Does not apply

## 3c. IF APPLICABLE, Complete Information for Additional Property    ☒ Does not apply

# Section 4: Loan and Property Information. This section asks about the loan's purpose and the property you want to purchase or refinance.

## 4a. Loan and Property Information

Loan Amount $ 321,536.00                    Loan Purpose  ⦿Purchase  ○Refinance  ○Other (specify) _____

Property Address  Street 6234 Danielson Loop                                                      Unit # _____

City The Villages                          State FL      ZIP 32163      County Sumter

Number of Units 1              Property Value $ 960,000.00

Occupancy  ○Primary Residence   ⦿Second Home   ○Investment Property    FHA Secondary Residence ☐

1. Mixed-Use Property. If you will occupy the property, will you set aside space within the property to operate your own business? (e.g., daycare facility, medical office, beauty/barber shop)    ⦿NO  ○YES

2. Manufactured Home. Is the property a manufactured home? (e.g., a factory built dwelling built on a permanent chassis)    ⦿NO  ○YES

## 4b. Other New Mortgage Loans on the Property You are Buying or Refinancing    ☒ Does not apply

## 4c. Rental Income on the Property You Want to Purchase    For Purchase Only    ☒ Does not apply

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application              3 of 9
Freddie Mac Form 65 - Fannie Mae Form 1003
Effective 1/2021



GURLA20_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

## Section 6: Acknowledgements and Agreements. This section tells you about your legal obligations when you sign this application.

### Acknowledgments and Agreements

Definitions:
- "Lender" includes the Lender's agents, service providers, and any of their successors and assigns.
- "Other Loan Participants" includes (i) any actual or potential owners of a loan resulting from this application (the "Loan"), (ii) acquirers of any beneficial or other interest in the Loan, (iii) any mortgage insurer, (iv) any guarantor, (v) any servicer of the Loan, and (vi) any of these parties' service providers, successors or assigns.

I agree to, acknowledge, and represent the following:

(1) The Complete Information for this Application
- The information I have provided in this application is true, accurate, and complete as of the date I signed this application.
- If the information I submitted changes or I have new information before closing of the Loan, I must change and supplement this application, including providing any updated/supplemented real estate sales contract.
- For purchase transactions: The terms and conditions of any real estate sales contract signed by me in connection with this application are true, accurate, and complete to the best of my knowledge and belief. I have not entered into any other agreement, written or oral, in connection with this real estate transaction.
- The Lender and Other Loan Participants may rely on the information contained in the application before and after closing of the Loan.
- Any intentional or negligent misrepresentation of information may result in the imposition of:
  - (a) civil liability on me, including monetary damages, if a person suffers any loss because the person relied on any misrepresentation that I have made on this application, and/or
  - (b) criminal penalties on me including, but not limited to, fine or imprisonment or both under the provisions of Federal law (18 U.S.C. §§ 1001 et seq.).

(2) The Property's Security
The Loan I have applied for in this application will be secured by a mortgage or deed of trust which provides the Lender a security interest in the property described in this application.

(3) The Property's Appraisal, Value, and Condition
- Any appraisal or value of the property obtained by the Lender is for use by the Lender and Other Loan Participants.
- The Lender and Other Loan Participants have not made any representation or warranty, express or implied, to me about the property, its condition, or its value.

(4) Electronic Records and Signatures
- The Lender and Other Loan Participants may keep any paper record and/or electronic record of this application, whether or not the Loan is approved.

- If this application is created as (or converted into) an "electronic application", I consent to the use of "electronic records" and "electronic signatures" as the terms are defined in and governed by applicable Federal and/or state electronic transactions laws.
- I intend to sign and have signed this application either using my:
  - (a) electronic signature; or
  - (b) a written signature and agree that if a paper version of this application is converted into an electronic application, the application will be an electronic record, and the representation of my written signature on this application will be my binding electronic signature.
- I agree that the application, if delivered or transmitted to the Lender or Other Loan Participants as an electronic record with my electronic signature, will be as effective and enforceable as a paper application signed by me in writing.

(5) Delinquency
- The Lender and Other Loan Participants may report information about my account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report and will likely affect my credit score.
- If I have trouble making my payments I understand that I may contact a HUD-approved housing counseling organization for advice about actions I can take to meet my mortgage obligations.

(6) Authorization for Use and Sharing of Information
By signing below, in addition to the representations and agreements made above, I expressly authorize the Lender and Other Loan Participants to obtain, use, and share with each other (i) the loan application and related loan information and documentation, (ii) a consumer credit report on me, and (iii) my tax return information, as necessary to perform the actions listed below, for so long as they have an interest in my loan or its servicing:
  - (a) process and underwrite my loan;
  - (b) verify any data contained in my consumer credit report, my loan application and other information supporting my loan application;
  - (c) inform credit and investment decisions by the Lender and Other Loan Participants;
  - (d) perform audit, quality control, and legal compliance analysis and reviews;
  - (e) perform analysis and modeling for risk assessments;
  - (f) monitor the account for this loan for potential delinquencies and determine any assistance that may be available to me; and
  - (g) other actions permissible under applicable law.

Borrower Signature _____   Date (mm/dd/yyyy) 2/2/22
Jed Alan Graham

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

5 of 9

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

### 4d. Gifts or Grants You Have Been Given or Will Receive for this Loan     ☒ Does not apply

Include all gifts and grants below. Under Source, choose from the sources listed here:
- Community Nonprofit
- Employer
- Federal Agency
- Local Agency
- Relative
- Religious Nonprofit
- State Agency
- Unmarried Partner
- Lender
- Other

## Section 5: Declarations. This section asks you specific questions about the property, your funding, and your past financial history.

### 5a. About this Property and Your Money for this Loan

| | |
|---|---|
| A. Will you occupy the property as your primary residence? | ⦿ NO  ○ YES |
| If YES, have you had an ownership interest in another property in the last three years? | ○ NO  ○ YES |
| If YES, complete (1) and (2) below: | |
| (1) What type of property did you own: primary residence (PR), FHA secondary residence (SR), second home (SH), or investment property (IP)? | _____ |
| (2) How did you hold title to the property: by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | _____ |
| B. If this is a Purchase Transaction: Do you have a family relationship or business affiliation with the seller of the property? | ⦿ NO  ○ YES |
| C. Are you borrowing any money for this real estate transaction (e.g., money for your closing costs or down payment) or obtaining any money from another party, such as the seller or realtor, that you have not disclosed on this loan application? | ⦿ NO  ○ YES |
| If YES, what is the amount of this money? | $ _____ |
| D. 1. Have you or will you be applying for a mortgage loan on another property (not the property securing this loan) on or before closing this transaction that is not disclosed on this loan application? | ⦿ NO  ○ YES |
| 2. Have you or will you be applying for any new credit (e.g., installment loan, credit card, etc.) on or before closing this loan that is not disclosed on this application? | ⦿ NO  ○ YES |
| E. Will this property be subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid through your property taxes (e.g., the Property Assessed Clean Energy Program)? | ⦿ NO  ○ YES |

### 5b. About Your Finances

| | |
|---|---|
| F. Are you a co-signer or guarantor on any debt or loan that is not disclosed on this application? | ⦿ NO  ○ YES |
| G. Are there any outstanding judgments against you? | ⦿ NO  ○ YES |
| H. Are you currently delinquent or in default on a Federal debt? | ⦿ NO  ○ YES |
| I. Are you a party to a lawsuit in which you potentially have any personal financial liability? | ⦿ NO  ○ YES |
| J. Have you conveyed title to any property in lieu of foreclosure in the past 7 years? | ⦿ NO  ○ YES |
| K. Within the past 7 years, have you completed a pre-foreclosure sale or short sale, whereby the property was sold to a third party and the Lender agreed to accept less than the outstanding mortgage balance due? | ⦿ NO  ○ YES |
| L. Have you had property foreclosed upon in the last 7 years? | ⦿ NO  ○ YES |
| M. Have you declared bankruptcy within the past 7 years? If YES, identify the type(s) of bankruptcy: ☐ Chapter 7  ☐ Chapter 11  ☐ Chapter 12  ☐ Chapter 13 | ⦿ NO  ○ YES |

Borrower Name: Jad Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

4 of 9

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

## Section 7: Military Service. This section asks questions about your (or your deceased spouse's) military service.

### Military Service of Borrower

Military Service – Did you (or your deceased spouse) ever serve, or are you currently serving, in the United States Armed Forces? ⊙ NO ○ YES
If YES, check all that apply: ☐ Currently serving on active duty with projected expiration date of service/tour ____ / ____ / _____ (mm/dd/yyyy)
☐ Currently retired, discharged, or separated from service
☐ Only period of service was as a non-activated member of the Reserve or National Guard
☐ Surviving spouse

## Section 8: Demographic Information. This section asks about your ethnicity, sex, and race.

### Demographic Information of Borrower

The purpose of collecting this information is to help ensure that all applicants are treated fairly and that the housing needs of communities and neighborhoods are being fulfilled. For residential mortgage lending, Federal law requires that we ask applicants for their demographic information (ethnicity, sex, and race) in order to monitor our compliance with equal credit opportunity, fair housing, and home mortgage disclosure laws. You are not required to provide this information, but are encouraged to do so. You may select one or more designations for "Ethnicity" and one or more designations for "Race." The law provides that we may not discriminate on the basis of this information, or on whether you choose to provide it. However, if you choose not to provide the information and you have made this application in person, Federal regulations require us to note your ethnicity, sex, and race on the basis of visual observation or surname. The law also provides that we may not discriminate on the basis of age or marital status information you provide in this application. If you do not wish to provide some or all of this information, please check below.

**Ethnicity: Check one or more**

☐ Hispanic or Latino
    ☐ Mexican ☐ Puerto Rican ☐ Cuban
    ☐ Other Hispanic or Latino – *Print origin:*

    *For example: Argentinean, Colombian, Dominican, Nicaraguan, Salvadoran, Spaniard, and so on.*
☒ Not Hispanic or Latino
☐ I do not wish to provide this information

**Sex**
☐ Female
☒ Male
☐ I do not wish to provide this information

**Race: Check one or more**

☐ American Indian or Alaska Native – *Print name of enrolled or principal tribe:* _____
☐ Asian
    ☐ Asian Indian ☐ Chinese ☐ Filipino
    ☐ Japanese ☐ Korean ☐ Vietnamese
    ☐ Other Asian – *Print race:* _____
    *For example: Hmong, Laotian, Thai, Pakistani, Cambodian, and so on.*
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
    ☐ Native Hawaiian ☐ Guamanian or Chamorro ☐ Samoan
    ☐ Other Pacific Islander – *Print race:* _____

    *For example: Fijian, Tongan, and so on.*
☒ White
☐ I do not wish to provide this information

### To Be Completed by Financial Institution (for application taken in person)

Was the ethnicity of the Borrower collected on the basis of visual observation or surname?    ⊙ NO ○ YES
Was the sex of the Borrower collected on the basis of visual observation or surname?    ⊙ NO ○ YES
Was the race of the Borrower collected on the basis of visual observation or surname?    ⊙ NO ○ YES

### The Demographic Information was provided through:

○ Face-to-Face Interview (*Includes Electronic Media w/ Video Component*)    ○ Telephone Interview    ○ Fax or Mail    ⊙ Email or Internet

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

6 of 9

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

## Section 9: Loan Originator Information. To be completed by your Loan Originator.

### Loan Originator Information

Loan Originator Organization Name Acopia Home Loans

Address 10570 S. US Highway One, Suite #102, Port St Lucie, FL 34952

Loan Originator Organization NMLSR ID# 4664 _____ State License ID# MLD1224

Loan Originator Name James M Cannata

Loan Originator NMLSR ID# 328552 _____ State License ID# LO8495

Email jcannata@acopiahomeloans.com _____ Phone 772-236-3007

Signature _____ Date (mm/dd/yyyy) 02/02/22

Borrower Name: Jed Alan Graham
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

7 of 9

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

To be completed by the Lender:
Lender Loan No./Universal Loan Identifier: 549300L1DBFIJZI8LA4010402111712223        Agency Case No.

# Uniform Residential Loan Application — Lender Loan Information
This section is completed by your Lender.

## L1. Property and Loan Information

**Community Property State**
☐ At least one borrower lives in a community property state.
☐ The property is in a community property state.

**Transaction Detail**
☐ Conversion of Contract for Deed or Land Contract
☐ Renovation
☐ Construction-Conversion/Construction-to-Permanent
  ○ Single-Closing  ○ Two-Closing
Construction/Improvement Costs $ _____
Lot Acquired Date ____ / ____ / _____ (mm/dd/yyyy)
Original Cost of Lot $

**Refinance Type**
○ No Cash Out
○ Limited Cash Out
○ Cash Out

**Refinance Program**
○ Full Documentation
○ Interest Rate Reduction
○ Streamlined without Appraisal
○ Other _____

**Energy Improvement**
☐ Mortgage loan will finance energy-related improvements.
☐ Property is currently subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid for through property taxes (e.g., the Property Assessed Clean Energy program).

**Project Type**  ☐ Condominium  ☐ Cooperative  ☐ Planned Unit Development (PUD)  ☒ Property is not located in a project

## L2. Title Information

**Title to the Property Will be Held in What Name(s):**
Jed Alan Graham and Michele Graham

**For Refinance: Title to the Property is Currently Held in What Name(s):**

**Estate Will be Held In**
◉ Fee Simple
○ Leasehold Expiration Date ____ / ____ / _____ (mm/dd/yyyy)

**Manner in Which Title Will be Held**
○ Sole Ownership       ○ Joint Tenancy with Right of Survivorship
○ Life Estate          ○ Tenancy by the Entirety
○ Tenancy in Common    ◉ Other

**Trust Information**
○ Title Will be Held by an *Inter Vivos (Living)* Trust
○ Title Will be Held by a Land Trust

**Indian Country Land Tenure**
○ Fee Simple On a Reservation
○ Individual Trust Land *(Allotted/Restricted)*
○ Tribal Trust Land On a Reservation
○ Tribal Trust Land Off Reservation
○ Alaska Native Corporation Land

## L3. Mortgage Loan Information

**Mortgage Type Applied For**
◉ Conventional    ○ USDA-RD
○ FHA   ○ VA   ○ Other: _____

**Terms of Loan**
Note Rate 3.750 %
Loan Term 360 (months)

**Mortgage Lien Type**
◉ First Lien
○ Subordinate Lien

**Amortization Type**
◉ Fixed Rate    ○ Other (explain): _____
○ Adjustable Rate
  If Adjustable Rate:
  Initial Period Prior to First Adjustment _____ (months)
  Subsequent Adjustment Period _____ (months)

**Loan Features**
☐ Balloon / Balloon Term _____ (months)
☐ Interest Only / Interest Only Term _____ (months)
☐ Negative Amortization
☐ Prepayment Penalty / Prepayment Penalty Term _____ (months)
☐ Temporary Interest Rate Buydown / Initial Buydown Rate _____ %
☐ Other (explain): _____

**Proposed Monthly Payment for Property**

| | |
|---|---|
| First Mortgage (P & I) | $ 1,489.08 |
| Subordinate Lien(s) (P & I) | $ |
| Homeowner's Insurance | $ 108.42 |
| Supplemental Property Insurance | $ |
| Property Taxes | $ 886.94 |
| Mortgage Insurance | $ |
| Association/Project Dues (Condo, Co-Op, PUD) | $ 164.00 |
| Other | $ |
| Total | $ 2,648.44 |

Borrower Name(s): Jed Alan Graham
Uniform Residential Loan Application — Lender Loan Information
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

8 of 9

GURLA20_S 0718
GURLA20S  (CLS)
02/02/2022 08:02 AM PST

## L4. Qualifying the Borrower – Minimum Required Funds or Cash Back

### DUE FROM BORROWER(S)

| | |
|---|---|
| A. Sales Contract Price | $ 946,531.00 |
| B. Improvements, Renovations, and Repairs | $ |
| C. Land *(if acquired separately)* | $ |
| D. For Refinance: Balance of Mortgage Loans on the Property to be paid off in the Transaction *(See Table 3a. Property You Own)* | $ |
| E. Credit Cards and Other Debts Paid Off *(See Table 2c. Liabilities — Credit Cards, Other Debts, and Leases that You Owe)* | $ |
| F. Borrower Closing Costs *(including Prepaid and Initial Escrow Payments)* | $ 19,396.02 |
| G. Discount Points | $ 800.62 |
| H. TOTAL DUE FROM BORROWER(s) *(Total of A thru G)* | $ 966,727.64 |

### TOTAL MORTGAGE LOANS

| | |
|---|---|
| I. Loan Amount<br>Loan Amount Excluding Financed Mortgage Insurance *(or Mortgage Insurance Equivalent)* $ 321,536.00<br>Financed Mortgage Insurance *(or Mortgage Insurance Equivalent)* Amount $ | $ 321,536.00 |
| J. Other New Mortgage Loans on the Property the Borrower(s) is Buying or Refinancing *(See Table 4b. Other New Mortgage Loans on the Property You are Buying or Refinancing)* | $ |
| K. TOTAL MORTGAGE LOANS *(Total of I and J)* | $ 321,536.00 |

### TOTAL CREDITS

| | |
|---|---|
| L. Seller Credits *(Enter the amount of Borrower(s) costs paid by the property seller)* | $ 6,636.20 |
| M. Other Credits *(Enter the sum of all other credits — Borrower Paid Fees, Earnest Money, Employer Assisted Housing, Lease Purchase Fund, Lot Equity, Relocation Funds, Sweat Equity, Trade Equity, Other)* | $ 180,837.69 |
| N. TOTAL CREDITS *(Total of L and M)* | $ 187,473.89 |

### CALCULATION

| | |
|---|---|
| TOTAL DUE FROM BORROWER(s) *(Line H)* | $ 966,727.64 |
| LESS TOTAL MORTGAGE LOANS *(Line K)* AND TOTAL CREDITS *(Line N)* | - $ 509,009.89 |
| Cash From/To the Borrower *(Line H minus Line K and Line N)*<br>NOTE: This amount does not include reserves or other funds that may be required by the Lender to be verified. | $ 457,717.75 |

Borrower Name(s): Jed Alan Graham
Uniform Residential Loan Application — Lender Loan Information          9 of 9
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

GURLA20_S 0718
GURLA20S (CLS)
02/02/2022 08:02 AM PST

LOAN #: 104021117122

# SIGNATURE ADDENDUM

_____  02/02/22  _____
JED ALAN GRAHAM                                                      DATE



## INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

| Loan Number: 104021117122 | Date: February 2, 2022 |
|---|---|
| Loan Amount: $321,536.00 | First Payment Date: April 1, 2022 |
| Borrower Name(s):<br>Jed Alan Graham | Servicer Name and Address:<br>Acopia, LLC<br>306 Northcreek Blvd, Suite 100<br>Goodlettsville, TN 37072 |
| | Servicer Telephone: 615-859-5537<br>Toll-Free Number: 888-859-5537 |
| Property Address: 6234 Danielson Loop, The Villages, FL 32163 | |

THIS IS AN ESTIMATE OF ACTIVITY IN YOUR ESCROW ACCOUNT DURING THE COMING YEAR BASED ON PAYMENTS ANTICIPATED TO BE MADE FROM YOUR ACCOUNT.

| Month (or Period) | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| Initial Deposit: | | | | $ 3,675.76 |
| 04/22 | 995.36 | | | 4,671.12 |
| 05/22 | 995.36 | | | 5,666.48 |
| 06/22 | 995.36 | | | 6,661.84 |
| 07/22 | 995.36 | | | 7,657.20 |
| 08/22 | 995.36 | | | 8,652.56 |
| 09/22 | 995.36 | | | 9,647.92 |
| 10/22 | 995.36 | | | 10,643.28 |
| 11/22 | 995.36 | | | 11,638.64 |
| 12/22 | 995.36 | 10,643.28 | Prop. Taxes | 1,990.72 |
| 01/23 | 995.36 | | | 2,986.08 |
| 02/23 | 995.36 | 1,301.04 | Haz Ins. | 2,680.40 |
| 03/23 | 995.36 | | | 3,675.76 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.)

Cushion selected by servicer: $ 1,990.72

Total disbursements: $ 11,944.32

YOUR MONTHLY MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE $2,484.44, OF WHICH $1,489.08 WILL BE FOR PRINCIPAL AND INTEREST AND $995.36 WILL GO INTO YOUR ESCROW ACCOUNT.

SEE "SIGNATURE ADDENDUM" ATTACHED HERETO, AND MADE A PART HEREOF.



LOAN #: 104021117122

## USA PATRIOT ACT INFORMATION FORM
Customer Identification Verification

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies every customer. When applying for a loan, applicants will be asked for their name, address, date of birth, and other information that will allow lenders to identify them. Applicants may also be asked to show their driver's license or other identifying documents.

THE FOLLOWING CUSTOMER INFORMATION MUST BE OBTAINED TO BE IN COMPLIANCE WITH THE USA PATRIOT ACT. THIS INFORMATION MUST BE RETAINED FOR FIVE YEARS AFTER THE ACCOUNT IS CLOSED.

Borrower Name: Jed Alan Graham

Date of Birth: November 18, 1956

Residential Address: 123 Edinborough Circle
Greenwood, SC 29649

Tax Identification Number (SSN): 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

COMPLETE A SEPARATE FORM FOR EACH BORROWER.

FORMS OF IDENTIFICATION: Only One form of Verification is Required.

| First Document List - | Country/State of Origin | ID Number | Issuance Date | Expiration Date |
|---|---|---|---|---|
| ☐ State Issued Driver License | | | | |
| ☐ State Issued ID Card | | | | |
| ☐ Military ID Card | | | | |
| ☐ Passport | | | | |
| ☐ US Alien Registration Card | | | | |
| ☐ Canadian Driver License | | | | |

| Second Document List - | Name of Issuer on Form | ID Number | Issuance Date | Expiration Date |
|---|---|---|---|---|
| ☐ Social Security Card | U.S. Govt | | | |
| ☐ Government Issued Visa | | | | |
| ☐ Non-US/Canadian Driver License | | | | |
| ☐ Most Recent Signed Tax Returns[1] | ☐ Fed ☐ State | TIN: | | |
| ☐ Property Tax Bill | | APN: | | |
| ☐ Voter Registration Card | | | | |
| ☐ Organizational Membership Card | | | | |
| ☐ Bank/Investment/Loan Statements[1] | | | | |
| ☐ Paycheck stub with name[1] | | | | |
| ☐ Most Recent W-2[1] | | | | |
| ☐ Home/car/renter insurance papers | | | | |
| ☐ Recent utility bill | | | | |

[1] Do not verify identity with documents that illustrate income and/or assets if the documentation type for this loan precludes collection of such documentation.

Comments: _____
_____
_____

I certify that I have personally viewed and accurately recorded the information from the documents identified above, and have reasonably confirmed the identity of the Borrower.

_____     Jed Alan Graham          02/02/22
Signature                    Printed Name/Title        Date

ICE Mortgage Technology, Inc.

G3PATRIO  0911
G3PATRIO (CLS)
02/01/2022 02:00 PM PST



LOAN #: 104021117122

| | | |
|---|---|---|
| MORTGAGE ACCOUNT NO.<br>104021117122 | PAYMENT DUE DATE<br>05/01/2022<br>AMOUNT DUE<br>$2,484.44 | IF NOT RECEIVED BY<br>05/16/2022<br>a late fee of $74.45<br>will be charged. |

DATE
CHECK
CASH
AMT.

Jed Alan Graham

Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

USE FOR ADDL. AMOUNTS

| | |
|---|---|
| PRINCIPAL | |
| OTHER | |
| ESCROW | |
| TOTAL | |

PROPERTY ADDRESS:
6234 Danielson Loop, The Villages, FL 32163

COUPON MUST ACCOMPANY PAYMENT

| | | |
|---|---|---|
| MORTGAGE ACCOUNT NO.<br>104021117122 | PAYMENT DUE DATE<br>04/01/2022<br>AMOUNT DUE<br>$2,484.44 | IF NOT RECEIVED BY<br>04/16/2022<br>a late fee of $74.45<br>will be charged. |

DATE
CHECK
CASH
AMT.

Jed Alan Graham

Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

USE FOR ADDL. AMOUNTS

| | |
|---|---|
| PRINCIPAL | |
| OTHER | |
| ESCROW | |
| TOTAL | |

PROPERTY ADDRESS:
6234 Danielson Loop, The Villages, FL 32163

COUPON MUST ACCOMPANY PAYMENT

BUYERS GAP AFFIDAVIT

STATE OF
COUNTY OF

BEFORE ME, the undersigned authority, personally appeared, Jed Alan Graham and Michele Graham, who, after being by me first duly sworn, depose(s) and say(s):

1)      That the Affiant(s) is/are buying this date, the following-described property and has/have knowledge of the matters contained herein:

Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

2)      That there are no matters pending against Affiant(s) that could give rise to a lien that would attach to the property between December 13, 2021 and the date of recording of the Deed following this closing.

3)      That Affiant(s) has/have not and will not execute any instrument(s), that would or could adversely affect the title to the property prior to the recording of the Deed.

FURTHER AFFIANT(S) SAYETH NOT.

_____
Jed Alan Graham

_____
Michele Graham

State of South Carolina
County of Greenwood County

The foregoing instrument was acknowledged before me by means of [✓] physical presence or [ ] online notarization, this ___2nd___ day of February, 2022 by Jed A. Graham and Michele Graham, who [✓] are personally known or [ ] have produced a driver's license as identification.

[Notary Seal]

_____
Notary Public

Printed Name: ___Christian Snead___

My Commission Expires: ___6/07/2029___

DoubleTime®

## ACKNOWLEDGMENT

The parties hereto acknowledge that the fees paid to Peninsula Land & Title are for the closing of the transaction and issuing the title insurance policy. The parties further acknowledge that should they desire legal representation with regard to the matter, they should seek independent counsel and hereby agree to hold harmless Peninsula Land & Title as well as its staff, from any and all liability as a result of the above referenced transaction.

February 2, 2022

Buyer(s):

_____
Jed Alan Graham

_____
Michele Graham

DoubleTime®

## Florida Insurance Premium Disclosure & Settlement Agent Certification

Agency File#:    V20143                                    Closing Date:    February 2, 2022

You are being given this form and certification to explain differences between Federal and Florida law. Federal law requires the costs of the policies to be calculated using the full premium for the lender policy. Florida law allows the premium for the lender's policy to be calculated using a lower rate when purchased along with an owner's policy.

If both an owner's policy and a lender's policy are being purchased, the title insurance premiums on this form might differ from the premiums on the Closing Disclosure. The owner's policy premium listed on the Closing Disclosure will probably be lower than on this form, and the lender policy premium will probably be higher.

The chart below lists the amounts disclosed by the lender and the premium for the policies being purchased. These amounts include the charges for endorsements to the policies:

|     |                          | Closing Disclosure Amount | | Florida Premium | |
|     |                          | Buyer | Seller | Buyer | Seller |
| --- | ------------------------ | --------- | -------- | ----------- | ------ |
| (a) | Lender's Policy:         | $1,901.30 | $0.00 | $1,683.00 | |
| (b) | Lender's Endorsements:   | $0.00     | $0.00 | $218.30   | |
| (c) | Lender's Policy Total:   | $1,901.30 | $0.00 | $1,901.30 | |
| (d) | Owner's Policy:          | $0.00     | $0.00 | $0.00     | |
| (e) | Owner's Endorsements:    | $0.00     | $0.00 | $0.00     | |
| (f) | Owner's Policy Total:    | $0.00     | $0.00 | $0.00     | |
|     | Total All Policies ( c + f ): | $1,901.30 | | $1,901.30 | |

The total dollar amount for the policies as disclosed on this form should be equal to the total premium calculated using the Florida Insurance Code. The Florida Premium amounts listed above will be used to disburse the funds from the title agency's escrow account to Old Republic National Title Insurance Company and Peninsula Land & Title.

The undersigned hereby certify that they have carefully reviewed the Closing Disclosure or other settlement statement form and they approve and agree to the payment of all fees, costs, expenses and disbursement as reflected on the Closing Disclosure or other settlement statement form to be paid on their behalf. We further certify that we have received a copy of the Closing Disclosure or other settlement statement.

Jed Alan Graham                Date 02/02/22              Michele Graham                 Date 2/2/22

### Settlement Agent Certification

I have reviewed the Closing Disclosure, the settlement statement, the lender's closing instructions and any and all other forms relative to the escrow funds, including any disclosure of the Florida title insurance premiums being paid, and I agree to disburse the escrow funds in accordance with the terms of this transaction and Florida law.

| Settlement Agent Signature | Date Signed |
| --- | --- |
| Settlement Agent Name<br>Peninsula Land & Title<br>Title Agency Holding Funds | Florida License Number<br>W334505<br>Florida License Number |

## NOTICE TO PURCHASER-MORTGAGOR

Buyer name(s):  Jed Alan Graham and Michele Graham, husband and wife

Property Addrs:  6234 Danielson Loop, The Villages, FL 32163-5941

Lender name:  Acopia LLC

Pursuant to Section 627.798, Florida Statutes, notice is hereby given by Peninsula Land & Title, to the undersigned purchaser-mortgagor that a MORTGAGEE Title Insurance Policy is to be issued to YOUR MORTGAGEE LENDER, and that such policy DOES NOT provide title protection to YOU as the owner of the real estate you are purchasing.

The undersigned has read the above notice and understands that such mortgagee title insurance policy to be issued to the mortgagee lender does not provide title insurance protection to the undersigned as owner.

Dated this February 2, 2022

PLEASE CHECK ONE AND SIGN:

__X____ We do not wish to purchase an Owner's title insurance policy.

_____ We would like to purchase an Owner's title insurance policy at an additional cost of $3,465.00. We are enclosing a personal check, payable to Peninsula Land & Title, for this policy. We understand this rate is good at the present time only, as a simultaneous issue with the Mortgagee policy described above.

_____ (Seal)       _____ (Seal)
Jed Alan Graham -Borrower              Michele Graham -Borrower

V20143

LOAN #: 104021117122

## AFFIDAVIT OF OCCUPANCY

STATE OF FLORIDA
COUNTY OF Sumter
6234 Danielson Loop
The Villages, FL 32163

}
} SS.

Before me, the undersigned authority duly authorized to take acknowledgments and administer oaths personally appeared: Jed Alan Graham

("Affiants") who, upon being duly sworn, depose and say as follows:

1. Affiants hereby certify that, upon taking title to the real property described above, their occupancy status will be as follows:

1.1 **Primary Residence:** At least one borrower will occupy, establish, and use the Property identified above as my/our principal residence within 60 days after the execution of the Security Instrument and shall continue to occupy the Property as my/our principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing.

1.2 **Second Home:** At least one borrower will occupy the property as a second home (vacation, etc) while maintaining a principal residence elsewhere.

[ ] 1.3 **Investment Property:** Not owner occupied. Purchased as an investment to be held or rented.

[ ] 1.4 **REFINANCES ONLY**
I/We the undersigned certify that the property referenced above is NOT currently listed for sale or under contract to be listed for sale.

I/We the undersigned acquired the property on

2. Affiants acknowledge that this Affidavit of Occupancy is given as a material inducement to cause:
Acopia, LLC

to make a mortgage loan to Affiants and that any false statements, misrepresentations or material omissions shall constitute a breach of the Affiant's obligation to:
Acopia, LLC

and that all the provisions of the mortgage indenture concerning default on the Promissory Note will thereupon be in full force and effect.

3. Affiants further acknowledge that they have read and understand the following:
**18 United States Code Section 1014:**
"Whoever knowingly makes any false statement or report,...for the purpose of influencing in any way the action of...any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, any Federal home loan bank, the Federal Housing Finance Board, the Federal Deposit Insurance Corporation, the Farm Credit System Insurance Corporation, or the National Credit Union Administration Board,...upon any application,...or loan,...shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both."

4. The agreements and covenants contained herein shall survive the closing of the mortgage loan transaction.

_____    07/02/22
JED ALAN GRAHAM                              DATE

ICE Mortgage Technology, Inc.                    Page 1 of 2                    GAOC  1017
                                                                               GAOC (CLS)
                                                                               02/01/2022 02:00 PM PST

LOAN #: 104021117122

State of ~~FLORIDA~~ *South Carolina*                                    *Greenwood County*
                                                                        County of ~~SUMTER~~

The foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

*Christian Snead*

Christian Snead
Notary Public

_____
Signature

_____
Printed Name

_____
Title or Rank

_____
Serial Number (if any)

ICE Mortgage Technology, Inc.                    Page 2 of 2                    GAOC   1017
                                                                               GAOC (CLS)
                                                                               02/01/2022 02:00 PM PST

## AMORTIZATION SCHEDULE

Loan No.: 104021117122
Borrower(s):  Jed Alan Graham

Lender:      Acopia, LLC

Date:  02/02/2022
Loan Amount: $321,536.00
Term:  30 years
Interest Rate:  3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 1 | 04/01/2022 | $1,489.08 | $484.28 | $1,004.80 | $321,051.72 | $0.00 | |
| 2 | 05/01/2022 | $1,489.08 | $485.79 | $1,003.29 | $320,565.93 | $0.00 | |
| 3 | 06/01/2022 | $1,489.08 | $487.31 | $1,001.77 | $320,078.62 | $0.00 | |
| 4 | 07/01/2022 | $1,489.08 | $488.83 | $1,000.25 | $319,589.79 | $0.00 | |
| 5 | 08/01/2022 | $1,489.08 | $490.36 | $998.72 | $319,099.43 | $0.00 | |
| 6 | 09/01/2022 | $1,489.08 | $491.89 | $997.19 | $318,607.54 | $0.00 | |
| 7 | 10/01/2022 | $1,489.08 | $493.43 | $995.65 | $318,114.11 | $0.00 | |
| 8 | 11/01/2022 | $1,489.08 | $494.97 | $994.11 | $317,619.14 | $0.00 | |
| 9 | 12/01/2022 | $1,489.08 | $496.52 | $992.56 | $317,122.62 | $0.00 | |
| 10 | 01/01/2023 | $1,489.08 | $498.07 | $991.01 | $316,624.55 | $0.00 | |
| 11 | 02/01/2023 | $1,489.08 | $499.63 | $989.45 | $316,124.92 | $0.00 | |
| 12 | 03/01/2023 | $1,489.08 | $501.19 | $987.89 | $315,623.73 | $0.00 | |
| 13 | 04/01/2023 | $1,489.08 | $502.76 | $986.32 | $315,120.97 | $0.00 | |
| 14 | 05/01/2023 | $1,489.08 | $504.33 | $984.75 | $314,616.64 | $0.00 | |
| 15 | 06/01/2023 | $1,489.08 | $505.90 | $983.18 | $314,110.74 | $0.00 | |
| 16 | 07/01/2023 | $1,489.08 | $507.48 | $981.60 | $313,603.26 | $0.00 | |
| 17 | 08/01/2023 | $1,489.08 | $509.07 | $980.01 | $313,094.19 | $0.00 | |
| 18 | 09/01/2023 | $1,489.08 | $510.66 | $978.42 | $312,583.53 | $0.00 | |
| 19 | 10/01/2023 | $1,489.08 | $512.26 | $976.82 | $312,071.27 | $0.00 | |
| 20 | 11/01/2023 | $1,489.08 | $513.86 | $975.22 | $311,557.41 | $0.00 | |
| 21 | 12/01/2023 | $1,489.08 | $515.46 | $973.62 | $311,041.95 | $0.00 | |
| 22 | 01/01/2024 | $1,489.08 | $517.07 | $972.01 | $310,524.88 | $0.00 | |
| 23 | 02/01/2024 | $1,489.08 | $518.69 | $970.39 | $310,006.19 | $0.00 | |
| 24 | 03/01/2024 | $1,489.08 | $520.31 | $968.77 | $309,485.88 | $0.00 | |
| 25 | 04/01/2024 | $1,489.08 | $521.94 | $967.14 | $308,963.94 | $0.00 | |
| 26 | 05/01/2024 | $1,489.08 | $523.57 | $965.51 | $308,440.37 | $0.00 | |
| 27 | 06/01/2024 | $1,489.08 | $525.20 | $963.88 | $307,915.17 | $0.00 | |
| 28 | 07/01/2024 | $1,489.08 | $526.85 | $962.23 | $307,388.32 | $0.00 | |
| 29 | 08/01/2024 | $1,489.08 | $528.49 | $960.59 | $306,859.83 | $0.00 | |
| 30 | 09/01/2024 | $1,489.08 | $530.14 | $958.94 | $306,329.69 | $0.00 | |
| 31 | 10/01/2024 | $1,489.08 | $531.80 | $957.28 | $305,797.89 | $0.00 | |
| 32 | 11/01/2024 | $1,489.08 | $533.46 | $955.62 | $305,264.43 | $0.00 | |
| 33 | 12/01/2024 | $1,489.08 | $535.13 | $953.95 | $304,729.30 | $0.00 | |
| 34 | 01/01/2025 | $1,489.08 | $536.80 | $952.28 | $304,192.50 | $0.00 | |
| 35 | 02/01/2025 | $1,489.08 | $538.48 | $950.60 | $303,654.02 | $0.00 | |
| 36 | 03/01/2025 | $1,489.08 | $540.16 | $948.92 | $303,113.86 | $0.00 | |
| 37 | 04/01/2025 | $1,489.08 | $541.85 | $947.23 | $302,572.01 | $0.00 | |
| 38 | 05/01/2025 | $1,489.08 | $543.54 | $945.54 | $302,028.47 | $0.00 | |
| 39 | 06/01/2025 | $1,489.08 | $545.24 | $943.84 | $301,483.23 | $0.00 | |
| 40 | 07/01/2025 | $1,489.08 | $546.94 | $942.14 | $300,936.29 | $0.00 | |
| 41 | 08/01/2025 | $1,489.08 | $548.65 | $940.43 | $300,387.64 | $0.00 | |
| 42 | 09/01/2025 | $1,489.08 | $550.37 | $938.71 | $299,837.27 | $0.00 | |
| 43 | 10/01/2025 | $1,489.08 | $552.09 | $936.99 | $299,285.18 | $0.00 | |
| 44 | 11/01/2025 | $1,489.08 | $553.81 | $935.27 | $298,731.37 | $0.00 | |
| 45 | 12/01/2025 | $1,489.08 | $555.54 | $933.54 | $298,175.83 | $0.00 | |
| 46 | 01/01/2026 | $1,489.08 | $557.28 | $931.80 | $297,618.55 | $0.00 | |
| 47 | 02/01/2026 | $1,489.08 | $559.02 | $930.06 | $297,059.53 | $0.00 | |
| 48 | 03/01/2026 | $1,489.08 | $560.77 | $928.31 | $296,498.76 | $0.00 | |
| 49 | 04/01/2026 | $1,489.08 | $562.52 | $926.56 | $295,936.24 | $0.00 | |
| 50 | 05/01/2026 | $1,489.08 | $564.28 | $924.80 | $295,371.96 | $0.00 | |
| 51 | 06/01/2026 | $1,489.08 | $566.04 | $923.04 | $294,805.92 | $0.00 | |
| 52 | 07/01/2026 | $1,489.08 | $567.81 | $921.27 | $294,238.11 | $0.00 | |
| 53 | 08/01/2026 | $1,489.08 | $569.59 | $919.49 | $293,668.52 | $0.00 | |
| 54 | 09/01/2026 | $1,489.08 | $571.37 | $917.71 | $293,097.15 | $0.00 | |
| 55 | 10/01/2026 | $1,489.08 | $573.15 | $915.93 | $292,524.00 | $0.00 | |
| 56 | 11/01/2026 | $1,489.08 | $574.94 | $914.14 | $291,949.06 | $0.00 | |
| 57 | 12/01/2026 | $1,489.08 | $576.74 | $912.34 | $291,372.32 | $0.00 | |

## AMORTIZATION SCHEDULE

Loan No.: 104021117122
Borrower(s): Jed Alan Graham

Lender: Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,536.00
Term: 30 years
Interest Rate: 3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 58 | 01/01/2027 | $1,489.08 | $578.54 | $910.54 | $290,793.78 | $0.00 | |
| 59 | 02/01/2027 | $1,489.08 | $580.35 | $908.73 | $290,213.43 | $0.00 | |
| 60 | 03/01/2027 | $1,489.08 | $582.16 | $906.92 | $289,631.27 | $0.00 | |
| 61 | 04/01/2027 | $1,489.08 | $583.98 | $905.10 | $289,047.29 | $0.00 | |
| 62 | 05/01/2027 | $1,489.08 | $585.81 | $903.27 | $288,461.48 | $0.00 | |
| 63 | 06/01/2027 | $1,489.08 | $587.64 | $901.44 | $287,873.84 | $0.00 | |
| 64 | 07/01/2027 | $1,489.08 | $589.47 | $899.61 | $287,284.37 | $0.00 | |
| 65 | 08/01/2027 | $1,489.08 | $591.32 | $897.76 | $286,693.05 | $0.00 | |
| 66 | 09/01/2027 | $1,489.08 | $593.16 | $895.92 | $286,099.89 | $0.00 | |
| 67 | 10/01/2027 | $1,489.08 | $595.02 | $894.06 | $285,504.87 | $0.00 | |
| 68 | 11/01/2027 | $1,489.08 | $596.88 | $892.20 | $284,907.99 | $0.00 | |
| 69 | 12/01/2027 | $1,489.08 | $598.74 | $890.34 | $284,309.25 | $0.00 | |
| 70 | 01/01/2028 | $1,489.08 | $600.61 | $888.47 | $283,708.64 | $0.00 | |
| 71 | 02/01/2028 | $1,489.08 | $602.49 | $886.59 | $283,106.15 | $0.00 | |
| 72 | 03/01/2028 | $1,489.08 | $604.37 | $884.71 | $282,501.78 | $0.00 | |
| 73 | 04/01/2028 | $1,489.08 | $606.26 | $882.82 | $281,895.52 | $0.00 | |
| 74 | 05/01/2028 | $1,489.08 | $608.16 | $880.92 | $281,287.36 | $0.00 | |
| 75 | 06/01/2028 | $1,489.08 | $610.06 | $879.02 | $280,677.30 | $0.00 | |
| 76 | 07/01/2028 | $1,489.08 | $611.96 | $877.12 | $280,065.34 | $0.00 | |
| 77 | 08/01/2028 | $1,489.08 | $613.88 | $875.20 | $279,451.46 | $0.00 | |
| 78 | 09/01/2028 | $1,489.08 | $615.79 | $873.29 | $278,835.67 | $0.00 | |
| 79 | 10/01/2028 | $1,489.08 | $617.72 | $871.36 | $278,217.95 | $0.00 | |
| 80 | 11/01/2028 | $1,489.08 | $619.65 | $869.43 | $277,598.30 | $0.00 | |
| 81 | 12/01/2028 | $1,489.08 | $621.59 | $867.49 | $276,976.71 | $0.00 | |
| 82 | 01/01/2029 | $1,489.08 | $623.53 | $865.55 | $276,353.18 | $0.00 | |
| 83 | 02/01/2029 | $1,489.08 | $625.48 | $863.60 | $275,727.70 | $0.00 | |
| 84 | 03/01/2029 | $1,489.08 | $627.43 | $861.65 | $275,100.27 | $0.00 | |
| 85 | 04/01/2029 | $1,489.08 | $629.39 | $859.69 | $274,470.88 | $0.00 | |
| 86 | 05/01/2029 | $1,489.08 | $631.36 | $857.72 | $273,839.52 | $0.00 | |
| 87 | 06/01/2029 | $1,489.08 | $633.33 | $855.75 | $273,206.19 | $0.00 | |
| 88 | 07/01/2029 | $1,489.08 | $635.31 | $853.77 | $272,570.88 | $0.00 | |
| 89 | 08/01/2029 | $1,489.08 | $637.30 | $851.78 | $271,933.58 | $0.00 | |
| 90 | 09/01/2029 | $1,489.08 | $639.29 | $849.79 | $271,294.29 | $0.00 | |
| 91 | 10/01/2029 | $1,489.08 | $641.29 | $847.79 | $270,653.00 | $0.00 | |
| 92 | 11/01/2029 | $1,489.08 | $643.29 | $845.79 | $270,009.71 | $0.00 | |
| 93 | 12/01/2029 | $1,489.08 | $645.30 | $843.78 | $269,364.41 | $0.00 | |
| 94 | 01/01/2030 | $1,489.08 | $647.32 | $841.76 | $268,717.09 | $0.00 | |
| 95 | 02/01/2030 | $1,489.08 | $649.34 | $839.74 | $268,067.75 | $0.00 | |
| 96 | 03/01/2030 | $1,489.08 | $651.37 | $837.71 | $267,416.38 | $0.00 | |
| 97 | 04/01/2030 | $1,489.08 | $653.40 | $835.68 | $266,762.98 | $0.00 | |
| 98 | 05/01/2030 | $1,489.08 | $655.45 | $833.63 | $266,107.53 | $0.00 | |
| 99 | 06/01/2030 | $1,489.08 | $657.49 | $831.59 | $265,450.04 | $0.00 | |
| 100 | 07/01/2030 | $1,489.08 | $659.55 | $829.53 | $264,790.49 | $0.00 | |
| 101 | 08/01/2030 | $1,489.08 | $661.61 | $827.47 | $264,128.88 | $0.00 | |
| 102 | 09/01/2030 | $1,489.08 | $663.68 | $825.40 | $263,465.20 | $0.00 | |
| 103 | 10/01/2030 | $1,489.08 | $666.75 | $823.33 | $262,799.45 | $0.00 | |
| 104 | 11/01/2030 | $1,489.08 | $667.83 | $821.25 | $262,131.62 | $0.00 | |
| 105 | 12/01/2030 | $1,489.08 | $669.92 | $819.16 | $261,461.70 | $0.00 | |
| 106 | 01/01/2031 | $1,489.08 | $672.01 | $817.07 | $260,789.69 | $0.00 | |
| 107 | 02/01/2031 | $1,489.08 | $674.11 | $814.97 | $260,115.58 | $0.00 | |
| 108 | 03/01/2031 | $1,489.08 | $676.22 | $812.86 | $259,439.36 | $0.00 | |
| 109 | 04/01/2031 | $1,489.08 | $678.33 | $810.75 | $258,761.03 | $0.00 | |
| 110 | 05/01/2031 | $1,489.08 | $680.45 | $808.63 | $258,080.58 | $0.00 | |
| 111 | 06/01/2031 | $1,489.08 | $682.58 | $806.50 | $257,398.00 | $0.00 | |
| 112 | 07/01/2031 | $1,489.08 | $684.71 | $804.37 | $256,713.29 | $0.00 | |
| 113 | 08/01/2031 | $1,489.08 | $686.85 | $802.23 | $256,026.44 | $0.00 | |
| 114 | 09/01/2031 | $1,489.08 | $689.00 | $800.08 | $255,337.44 | $0.00 | |

## AMORTIZATION SCHEDULE

Loan No.:     104021117122
Borrower(s):  Jed Alan Graham

Lender:       Acopia, LLC

Date:  02/02/2022
Loan Amount: $321,536.00
Term:  30 years
Interest Rate:  3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 115 | 10/01/2031 | $1,489.08 | $691.15 | $797.93 | $254,646.29 | $0.00 | |
| 116 | 11/01/2031 | $1,489.08 | $693.31 | $795.77 | $253,952.98 | $0.00 | |
| 117 | 12/01/2031 | $1,489.08 | $695.48 | $793.60 | $253,257.50 | $0.00 | |
| 118 | 01/01/2032 | $1,489.08 | $697.65 | $791.43 | $252,559.85 | $0.00 | |
| 119 | 02/01/2032 | $1,489.08 | $699.83 | $789.25 | $251,860.02 | $0.00 | |
| 120 | 03/01/2032 | $1,489.08 | $702.02 | $787.06 | $251,158.00 | $0.00 | |
| 121 | 04/01/2032 | $1,489.08 | $704.21 | $784.87 | $250,453.79 | $0.00 | |
| 122 | 05/01/2032 | $1,489.08 | $706.41 | $782.67 | $249,747.38 | $0.00 | |
| 123 | 06/01/2032 | $1,489.08 | $708.62 | $780.46 | $249,038.76 | $0.00 | |
| 124 | 07/01/2032 | $1,489.08 | $710.83 | $778.25 | $248,327.93 | $0.00 | |
| 125 | 08/01/2032 | $1,489.08 | $713.06 | $776.02 | $247,614.87 | $0.00 | |
| 126 | 09/01/2032 | $1,489.08 | $715.28 | $773.80 | $246,899.59 | $0.00 | |
| 127 | 10/01/2032 | $1,489.08 | $717.52 | $771.56 | $246,182.07 | $0.00 | |
| 128 | 11/01/2032 | $1,489.08 | $719.76 | $769.32 | $245,462.31 | $0.00 | |
| 129 | 12/01/2032 | $1,489.08 | $722.01 | $767.07 | $244,740.30 | $0.00 | |
| 130 | 01/01/2033 | $1,489.08 | $724.27 | $764.81 | $244,016.03 | $0.00 | |
| 131 | 02/01/2033 | $1,489.08 | $726.53 | $762.55 | $243,289.50 | $0.00 | |
| 132 | 03/01/2033 | $1,489.08 | $728.80 | $760.28 | $242,560.70 | $0.00 | |
| 133 | 04/01/2033 | $1,489.08 | $731.08 | $758.00 | $241,829.62 | $0.00 | |
| 134 | 05/01/2033 | $1,489.08 | $733.36 | $755.72 | $241,096.26 | $0.00 | |
| 135 | 06/01/2033 | $1,489.08 | $735.65 | $753.43 | $240,360.61 | $0.00 | |
| 136 | 07/01/2033 | $1,489.08 | $737.95 | $751.13 | $239,622.66 | $0.00 | |
| 137 | 08/01/2033 | $1,489.08 | $740.26 | $748.82 | $238,882.40 | $0.00 | |
| 138 | 09/01/2033 | $1,489.08 | $742.57 | $746.51 | $238,139.83 | $0.00 | |
| 139 | 10/01/2033 | $1,489.08 | $744.89 | $744.19 | $237,394.94 | $0.00 | |
| 140 | 11/01/2033 | $1,489.08 | $747.22 | $741.86 | $236,647.72 | $0.00 | |
| 141 | 12/01/2033 | $1,489.08 | $749.56 | $739.52 | $235,898.16 | $0.00 | |
| 142 | 01/01/2034 | $1,489.08 | $751.90 | $737.18 | $235,146.26 | $0.00 | |
| 143 | 02/01/2034 | $1,489.08 | $754.25 | $734.83 | $234,392.01 | $0.00 | |
| 144 | 03/01/2034 | $1,489.08 | $756.60 | $732.48 | $233,635.41 | $0.00 | |
| 145 | 04/01/2034 | $1,489.08 | $758.97 | $730.11 | $232,876.44 | $0.00 | |
| 146 | 05/01/2034 | $1,489.08 | $761.34 | $727.74 | $232,115.10 | $0.00 | |
| 147 | 06/01/2034 | $1,489.08 | $763.72 | $725.36 | $231,351.38 | $0.00 | |
| 148 | 07/01/2034 | $1,489.08 | $766.11 | $722.97 | $230,585.27 | $0.00 | |
| 149 | 08/01/2034 | $1,489.08 | $768.50 | $720.58 | $229,816.77 | $0.00 | |
| 150 | 09/01/2034 | $1,489.08 | $770.90 | $718.18 | $229,045.87 | $0.00 | |
| 151 | 10/01/2034 | $1,489.08 | $773.31 | $715.77 | $228,272.56 | $0.00 | |
| 152 | 11/01/2034 | $1,489.08 | $775.73 | $713.35 | $227,496.83 | $0.00 | |
| 153 | 12/01/2034 | $1,489.08 | $778.15 | $710.93 | $226,718.68 | $0.00 | |
| 154 | 01/01/2035 | $1,489.08 | $780.58 | $708.50 | $225,938.10 | $0.00 | |
| 155 | 02/01/2035 | $1,489.08 | $783.02 | $706.06 | $225,155.08 | $0.00 | |
| 156 | 03/01/2035 | $1,489.08 | $785.47 | $703.61 | $224,369.61 | $0.00 | |
| 157 | 04/01/2035 | $1,489.08 | $787.92 | $701.16 | $223,581.69 | $0.00 | |
| 158 | 05/01/2035 | $1,489.08 | $790.39 | $698.69 | $222,791.30 | $0.00 | |
| 159 | 06/01/2035 | $1,489.08 | $792.86 | $696.22 | $221,998.44 | $0.00 | |
| 160 | 07/01/2035 | $1,489.08 | $795.33 | $693.75 | $221,203.11 | $0.00 | |
| 161 | 08/01/2035 | $1,489.08 | $797.82 | $691.26 | $220,405.29 | $0.00 | |
| 162 | 09/01/2035 | $1,489.08 | $800.31 | $688.77 | $219,604.98 | $0.00 | |
| 163 | 10/01/2035 | $1,489.08 | $802.81 | $686.27 | $218,802.17 | $0.00 | |
| 164 | 11/01/2035 | $1,489.08 | $805.32 | $683.76 | $217,996.85 | $0.00 | |
| 165 | 12/01/2035 | $1,489.08 | $807.84 | $681.24 | $217,189.01 | $0.00 | |
| 166 | 01/01/2036 | $1,489.08 | $810.36 | $678.72 | $216,378.65 | $0.00 | |
| 167 | 02/01/2036 | $1,489.08 | $812.90 | $676.18 | $215,565.75 | $0.00 | |
| 168 | 03/01/2036 | $1,489.08 | $815.44 | $673.64 | $214,750.31 | $0.00 | |
| 169 | 04/01/2036 | $1,489.08 | $817.99 | $671.09 | $213,932.32 | $0.00 | |
| 170 | 05/01/2036 | $1,489.08 | $820.54 | $668.54 | $213,111.78 | $0.00 | |
| 171 | 06/01/2036 | $1,489.08 | $823.11 | $665.97 | $212,288.67 | $0.00 | |

GAMS   1017
GAMS (CLS)
02/01/2022 02:00 PM PST

## AMORTIZATION SCHEDULE

Loan No.: 104021117122
Borrower(s): Jed Alan Graham

Lender: Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,636.00
Term: 30 years
Interest Rate: 3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 172 | 07/01/2036 | $1,489.08 | $825.68 | $663.40 | $211,462.99 | $0.00 | |
| 173 | 08/01/2036 | $1,489.08 | $828.26 | $660.82 | $210,634.73 | $0.00 | |
| 174 | 09/01/2036 | $1,489.08 | $830.85 | $658.23 | $209,803.88 | $0.00 | |
| 175 | 10/01/2036 | $1,489.08 | $833.44 | $655.64 | $208,970.44 | $0.00 | |
| 176 | 11/01/2036 | $1,489.08 | $836.05 | $653.03 | $208,134.39 | $0.00 | |
| 177 | 12/01/2036 | $1,489.08 | $838.66 | $650.42 | $207,295.73 | $0.00 | |
| 178 | 01/01/2037 | $1,489.08 | $841.28 | $647.80 | $206,454.45 | $0.00 | |
| 179 | 02/01/2037 | $1,489.08 | $843.91 | $645.17 | $205,610.54 | $0.00 | |
| 180 | 03/01/2037 | $1,489.08 | $846.55 | $642.53 | $204,763.99 | $0.00 | |
| 181 | 04/01/2037 | $1,489.08 | $849.19 | $639.89 | $203,914.80 | $0.00 | |
| 182 | 05/01/2037 | $1,489.08 | $851.85 | $637.23 | $203,062.95 | $0.00 | |
| 183 | 06/01/2037 | $1,489.08 | $854.51 | $634.57 | $202,208.44 | $0.00 | |
| 184 | 07/01/2037 | $1,489.08 | $857.18 | $631.90 | $201,351.26 | $0.00 | |
| 185 | 08/01/2037 | $1,489.08 | $859.86 | $629.22 | $200,491.40 | $0.00 | |
| 186 | 09/01/2037 | $1,489.08 | $862.54 | $626.54 | $199,628.86 | $0.00 | |
| 187 | 10/01/2037 | $1,489.08 | $865.24 | $623.84 | $198,763.62 | $0.00 | |
| 188 | 11/01/2037 | $1,489.08 | $867.94 | $621.14 | $197,895.68 | $0.00 | |
| 189 | 12/01/2037 | $1,489.08 | $870.66 | $618.42 | $197,025.02 | $0.00 | |
| 190 | 01/01/2038 | $1,489.08 | $873.38 | $615.70 | $196,151.64 | $0.00 | |
| 191 | 02/01/2038 | $1,489.08 | $876.11 | $612.97 | $195,275.53 | $0.00 | |
| 192 | 03/01/2038 | $1,489.08 | $878.84 | $610.24 | $194,396.69 | $0.00 | |
| 193 | 04/01/2038 | $1,489.08 | $881.59 | $607.49 | $193,515.10 | $0.00 | |
| 194 | 05/01/2038 | $1,489.08 | $884.35 | $604.73 | $192,630.75 | $0.00 | |
| 195 | 06/01/2038 | $1,489.08 | $887.11 | $601.97 | $191,743.64 | $0.00 | |
| 196 | 07/01/2038 | $1,489.08 | $889.88 | $599.20 | $190,853.76 | $0.00 | |
| 197 | 08/01/2038 | $1,489.08 | $892.66 | $596.42 | $189,961.10 | $0.00 | |
| 198 | 09/01/2038 | $1,489.08 | $895.45 | $593.63 | $189,065.65 | $0.00 | |
| 199 | 10/01/2038 | $1,489.08 | $898.25 | $590.83 | $188,167.40 | $0.00 | |
| 200 | 11/01/2038 | $1,489.08 | $901.06 | $588.02 | $187,266.34 | $0.00 | |
| 201 | 12/01/2038 | $1,489.08 | $903.87 | $585.21 | $186,362.47 | $0.00 | |
| 202 | 01/01/2039 | $1,489.08 | $906.70 | $582.38 | $185,455.77 | $0.00 | |
| 203 | 02/01/2039 | $1,489.08 | $909.53 | $579.55 | $184,546.24 | $0.00 | |
| 204 | 03/01/2039 | $1,489.08 | $912.37 | $576.71 | $183,633.87 | $0.00 | |
| 205 | 04/01/2039 | $1,489.08 | $915.22 | $573.86 | $182,718.65 | $0.00 | |
| 206 | 05/01/2039 | $1,489.08 | $918.08 | $571.00 | $181,800.57 | $0.00 | |
| 207 | 06/01/2039 | $1,489.08 | $920.95 | $568.13 | $180,879.62 | $0.00 | |
| 208 | 07/01/2039 | $1,489.08 | $923.83 | $565.25 | $179,955.79 | $0.00 | |
| 209 | 08/01/2039 | $1,489.08 | $926.72 | $562.36 | $179,029.07 | $0.00 | |
| 210 | 09/01/2039 | $1,489.08 | $929.61 | $559.47 | $178,099.46 | $0.00 | |
| 211 | 10/01/2039 | $1,489.08 | $932.52 | $556.56 | $177,166.94 | $0.00 | |
| 212 | 11/01/2039 | $1,489.08 | $935.43 | $553.65 | $176,231.51 | $0.00 | |
| 213 | 12/01/2039 | $1,489.08 | $938.36 | $550.72 | $175,293.15 | $0.00 | |
| 214 | 01/01/2040 | $1,489.08 | $941.29 | $547.79 | $174,351.86 | $0.00 | |
| 215 | 02/01/2040 | $1,489.08 | $944.23 | $544.85 | $173,407.63 | $0.00 | |
| 216 | 03/01/2040 | $1,489.08 | $947.18 | $541.90 | $172,460.45 | $0.00 | |
| 217 | 04/01/2040 | $1,489.08 | $950.14 | $538.94 | $171,510.31 | $0.00 | |
| 218 | 05/01/2040 | $1,489.08 | $953.11 | $535.97 | $170,557.20 | $0.00 | |
| 219 | 06/01/2040 | $1,489.08 | $956.09 | $532.99 | $169,601.11 | $0.00 | |
| 220 | 07/01/2040 | $1,489.08 | $959.08 | $530.00 | $168,642.03 | $0.00 | |
| 221 | 08/01/2040 | $1,489.08 | $962.07 | $527.01 | $167,679.96 | $0.00 | |
| 222 | 09/01/2040 | $1,489.08 | $965.08 | $524.00 | $166,714.88 | $0.00 | |
| 223 | 10/01/2040 | $1,489.08 | $968.10 | $520.98 | $165,746.78 | $0.00 | |
| 224 | 11/01/2040 | $1,489.08 | $971.12 | $517.96 | $164,775.66 | $0.00 | |
| 225 | 12/01/2040 | $1,489.08 | $974.16 | $514.92 | $163,801.50 | $0.00 | |
| 226 | 01/01/2041 | $1,489.08 | $977.20 | $511.88 | $162,824.30 | $0.00 | |
| 227 | 02/01/2041 | $1,489.08 | $980.25 | $508.83 | $161,844.05 | $0.00 | |
| 228 | 03/01/2041 | $1,489.08 | $983.32 | $505.76 | $160,860.73 | $0.00 | |

## AMORTIZATION SCHEDULE

Loan No.: 104021117122
Borrower(s): Jed Alan Graham

Lender: Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,536.00
Term: 30 years
Interest Rate: 3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 229 | 04/01/2041 | $1,489.08 | $986.39 | $502.69 | $159,874.34 | $0.00 | |
| 230 | 05/01/2041 | $1,489.08 | $989.47 | $499.61 | $158,884.87 | $0.00 | |
| 231 | 06/01/2041 | $1,489.08 | $992.56 | $496.52 | $157,892.31 | $0.00 | |
| 232 | 07/01/2041 | $1,489.08 | $995.67 | $493.41 | $156,896.64 | $0.00 | |
| 233 | 08/01/2041 | $1,489.08 | $998.78 | $490.30 | $155,897.86 | $0.00 | |
| 234 | 09/01/2041 | $1,489.08 | $1,001.90 | $487.18 | $154,895.96 | $0.00 | |
| 235 | 10/01/2041 | $1,489.08 | $1,005.03 | $484.05 | $153,890.93 | $0.00 | |
| 236 | 11/01/2041 | $1,489.08 | $1,008.17 | $480.91 | $152,882.76 | $0.00 | |
| 237 | 12/01/2041 | $1,489.08 | $1,011.32 | $477.76 | $151,871.44 | $0.00 | |
| 238 | 01/01/2042 | $1,489.08 | $1,014.48 | $474.60 | $150,856.96 | $0.00 | |
| 239 | 02/01/2042 | $1,489.08 | $1,017.65 | $471.43 | $149,839.31 | $0.00 | |
| 240 | 03/01/2042 | $1,489.08 | $1,020.83 | $468.25 | $148,818.48 | $0.00 | |
| 241 | 04/01/2042 | $1,489.08 | $1,024.02 | $465.06 | $147,794.46 | $0.00 | |
| 242 | 05/01/2042 | $1,489.08 | $1,027.22 | $461.86 | $146,767.24 | $0.00 | |
| 243 | 06/01/2042 | $1,489.08 | $1,030.43 | $458.65 | $145,736.81 | $0.00 | |
| 244 | 07/01/2042 | $1,489.08 | $1,033.65 | $455.43 | $144,703.16 | $0.00 | |
| 245 | 08/01/2042 | $1,489.08 | $1,036.88 | $452.20 | $143,666.28 | $0.00 | |
| 246 | 09/01/2042 | $1,489.08 | $1,040.12 | $448.96 | $142,626.16 | $0.00 | |
| 247 | 10/01/2042 | $1,489.08 | $1,043.37 | $445.71 | $141,582.79 | $0.00 | |
| 248 | 11/01/2042 | $1,489.08 | $1,046.63 | $442.45 | $140,536.16 | $0.00 | |
| 249 | 12/01/2042 | $1,489.08 | $1,049.90 | $439.18 | $139,486.26 | $0.00 | |
| 250 | 01/01/2043 | $1,489.08 | $1,053.19 | $435.89 | $138,433.07 | $0.00 | |
| 251 | 02/01/2043 | $1,489.08 | $1,056.48 | $432.60 | $137,376.59 | $0.00 | |
| 252 | 03/01/2043 | $1,489.08 | $1,059.78 | $429.30 | $136,316.81 | $0.00 | |
| 253 | 04/01/2043 | $1,489.08 | $1,063.09 | $425.99 | $135,253.72 | $0.00 | |
| 254 | 05/01/2043 | $1,489.08 | $1,066.41 | $422.67 | $134,187.31 | $0.00 | |
| 255 | 06/01/2043 | $1,489.08 | $1,069.74 | $419.34 | $133,117.57 | $0.00 | |
| 256 | 07/01/2043 | $1,489.08 | $1,073.09 | $415.99 | $132,044.48 | $0.00 | |
| 257 | 08/01/2043 | $1,489.08 | $1,076.44 | $412.64 | $130,968.04 | $0.00 | |
| 258 | 09/01/2043 | $1,489.08 | $1,079.80 | $409.28 | $129,888.24 | $0.00 | |
| 259 | 10/01/2043 | $1,489.08 | $1,083.18 | $405.90 | $128,805.06 | $0.00 | |
| 260 | 11/01/2043 | $1,489.08 | $1,086.56 | $402.52 | $127,718.50 | $0.00 | |
| 261 | 12/01/2043 | $1,489.08 | $1,089.96 | $399.12 | $126,628.54 | $0.00 | |
| 262 | 01/01/2044 | $1,489.08 | $1,093.37 | $395.71 | $125,535.17 | $0.00 | |
| 263 | 02/01/2044 | $1,489.08 | $1,096.78 | $392.30 | $124,438.39 | $0.00 | |
| 264 | 03/01/2044 | $1,489.08 | $1,100.21 | $388.87 | $123,338.18 | $0.00 | |
| 265 | 04/01/2044 | $1,489.08 | $1,103.65 | $385.43 | $122,234.53 | $0.00 | |
| 266 | 05/01/2044 | $1,489.08 | $1,107.10 | $381.98 | $121,127.43 | $0.00 | |
| 267 | 06/01/2044 | $1,489.08 | $1,110.56 | $378.52 | $120,016.87 | $0.00 | |
| 268 | 07/01/2044 | $1,489.08 | $1,114.03 | $375.05 | $118,902.84 | $0.00 | |
| 269 | 08/01/2044 | $1,489.08 | $1,117.51 | $371.57 | $117,785.33 | $0.00 | |
| 270 | 09/01/2044 | $1,489.08 | $1,121.00 | $368.08 | $116,664.33 | $0.00 | |
| 271 | 10/01/2044 | $1,489.08 | $1,124.50 | $364.58 | $115,539.83 | $0.00 | |
| 272 | 11/01/2044 | $1,489.08 | $1,128.02 | $361.06 | $114,411.81 | $0.00 | |
| 273 | 12/01/2044 | $1,489.08 | $1,131.54 | $357.54 | $113,280.27 | $0.00 | |
| 274 | 01/01/2045 | $1,489.08 | $1,135.08 | $354.00 | $112,145.19 | $0.00 | |
| 275 | 02/01/2045 | $1,489.08 | $1,138.63 | $350.45 | $111,006.56 | $0.00 | |
| 276 | 03/01/2045 | $1,489.08 | $1,142.18 | $346.90 | $109,864.38 | $0.00 | |
| 277 | 04/01/2045 | $1,489.08 | $1,145.75 | $343.33 | $108,718.63 | $0.00 | |
| 278 | 05/01/2045 | $1,489.08 | $1,149.33 | $339.75 | $107,569.30 | $0.00 | |
| 279 | 06/01/2045 | $1,489.08 | $1,152.93 | $336.15 | $106,416.37 | $0.00 | |
| 280 | 07/01/2045 | $1,489.08 | $1,156.53 | $332.55 | $105,259.84 | $0.00 | |
| 281 | 08/01/2045 | $1,489.08 | $1,160.14 | $328.94 | $104,099.70 | $0.00 | |
| 282 | 09/01/2045 | $1,489.08 | $1,163.77 | $325.31 | $102,935.93 | $0.00 | |
| 283 | 10/01/2045 | $1,489.08 | $1,167.41 | $321.67 | $101,768.52 | $0.00 | |
| 284 | 11/01/2045 | $1,489.08 | $1,171.05 | $318.03 | $100,597.47 | $0.00 | |
| 285 | 12/01/2045 | $1,489.08 | $1,174.71 | $314.37 | $99,422.76 | $0.00 | |

# AMORTIZATION SCHEDULE

Loan No.: 104021117122
Borrower(s): Jed Alan Graham

Lender: Acopia, LLC

Date: 02/02/2022
Loan Amount: $321,536.00
Term: 30 years
Interest Rate: 3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 286 | 01/01/2046 | $1,489.08 | $1,178.38 | $310.70 | $98,244.38 | $0.00 | |
| 287 | 02/01/2046 | $1,489.08 | $1,182.07 | $307.01 | $97,062.31 | $0.00 | |
| 288 | 03/01/2046 | $1,489.08 | $1,185.76 | $303.32 | $95,876.55 | $0.00 | |
| 289 | 04/01/2046 | $1,489.08 | $1,189.47 | $299.61 | $94,687.08 | $0.00 | |
| 290 | 05/01/2046 | $1,489.08 | $1,193.18 | $295.90 | $93,493.90 | $0.00 | |
| 291 | 06/01/2046 | $1,489.08 | $1,196.91 | $292.17 | $92,296.99 | $0.00 | |
| 292 | 07/01/2046 | $1,489.08 | $1,200.65 | $288.43 | $91,096.34 | $0.00 | |
| 293 | 08/01/2046 | $1,489.08 | $1,204.40 | $284.68 | $89,891.94 | $0.00 | |
| 294 | 09/01/2046 | $1,489.08 | $1,208.17 | $280.91 | $88,683.77 | $0.00 | |
| 295 | 10/01/2046 | $1,489.08 | $1,211.94 | $277.14 | $87,471.83 | $0.00 | |
| 296 | 11/01/2046 | $1,489.08 | $1,215.73 | $273.35 | $86,256.10 | $0.00 | |
| 297 | 12/01/2046 | $1,489.08 | $1,219.53 | $269.55 | $85,036.57 | $0.00 | |
| 298 | 01/01/2047 | $1,489.08 | $1,223.34 | $265.74 | $83,813.23 | $0.00 | |
| 299 | 02/01/2047 | $1,489.08 | $1,227.16 | $261.92 | $82,586.07 | $0.00 | |
| 300 | 03/01/2047 | $1,489.08 | $1,231.00 | $258.08 | $81,355.07 | $0.00 | |
| 301 | 04/01/2047 | $1,489.08 | $1,234.85 | $254.23 | $80,120.22 | $0.00 | |
| 302 | 05/01/2047 | $1,489.08 | $1,238.70 | $250.38 | $78,881.52 | $0.00 | |
| 303 | 06/01/2047 | $1,489.08 | $1,242.58 | $246.50 | $77,638.94 | $0.00 | |
| 304 | 07/01/2047 | $1,489.08 | $1,246.46 | $242.62 | $76,392.48 | $0.00 | |
| 305 | 08/01/2047 | $1,489.08 | $1,250.35 | $238.73 | $75,142.13 | $0.00 | |
| 306 | 09/01/2047 | $1,489.08 | $1,254.26 | $234.82 | $73,887.87 | $0.00 | |
| 307 | 10/01/2047 | $1,489.08 | $1,258.18 | $230.90 | $72,629.69 | $0.00 | |
| 308 | 11/01/2047 | $1,489.08 | $1,262.11 | $226.97 | $71,367.58 | $0.00 | |
| 309 | 12/01/2047 | $1,489.08 | $1,266.06 | $223.02 | $70,101.52 | $0.00 | |
| 310 | 01/01/2048 | $1,489.08 | $1,270.01 | $219.07 | $68,831.51 | $0.00 | |
| 311 | 02/01/2048 | $1,489.08 | $1,273.98 | $215.10 | $67,557.53 | $0.00 | |
| 312 | 03/01/2048 | $1,489.08 | $1,277.96 | $211.12 | $66,279.57 | $0.00 | |
| 313 | 04/01/2048 | $1,489.08 | $1,281.96 | $207.12 | $64,997.61 | $0.00 | |
| 314 | 05/01/2048 | $1,489.08 | $1,285.96 | $203.12 | $63,711.65 | $0.00 | |
| 315 | 06/01/2048 | $1,489.08 | $1,289.98 | $199.10 | $62,421.67 | $0.00 | |
| 316 | 07/01/2048 | $1,489.08 | $1,294.01 | $195.07 | $61,127.66 | $0.00 | |
| 317 | 08/01/2048 | $1,489.08 | $1,298.06 | $191.02 | $59,829.60 | $0.00 | |
| 318 | 09/01/2048 | $1,489.08 | $1,302.11 | $186.97 | $58,527.49 | $0.00 | |
| 319 | 10/01/2048 | $1,489.08 | $1,306.18 | $182.90 | $57,221.31 | $0.00 | |
| 320 | 11/01/2048 | $1,489.08 | $1,310.26 | $178.82 | $55,911.05 | $0.00 | |
| 321 | 12/01/2048 | $1,489.08 | $1,314.36 | $174.72 | $54,596.69 | $0.00 | |
| 322 | 01/01/2049 | $1,489.08 | $1,318.47 | $170.61 | $53,278.22 | $0.00 | |
| 323 | 02/01/2049 | $1,489.08 | $1,322.59 | $166.49 | $51,955.63 | $0.00 | |
| 324 | 03/01/2049 | $1,489.08 | $1,326.72 | $162.36 | $50,628.91 | $0.00 | |
| 325 | 04/01/2049 | $1,489.08 | $1,330.86 | $158.22 | $49,298.05 | $0.00 | |
| 326 | 05/01/2049 | $1,489.08 | $1,335.02 | $154.06 | $47,963.03 | $0.00 | |
| 327 | 06/01/2049 | $1,489.08 | $1,339.20 | $149.88 | $46,623.83 | $0.00 | |
| 328 | 07/01/2049 | $1,489.08 | $1,343.38 | $145.70 | $45,280.45 | $0.00 | |
| 329 | 08/01/2049 | $1,489.08 | $1,347.58 | $141.50 | $43,932.87 | $0.00 | |
| 330 | 09/01/2049 | $1,489.08 | $1,351.79 | $137.29 | $42,581.08 | $0.00 | |
| 331 | 10/01/2049 | $1,489.08 | $1,356.01 | $133.07 | $41,225.07 | $0.00 | |
| 332 | 11/01/2049 | $1,489.08 | $1,360.25 | $128.83 | $39,864.82 | $0.00 | |
| 333 | 12/01/2049 | $1,489.08 | $1,364.50 | $124.58 | $38,500.32 | $0.00 | |
| 334 | 01/01/2050 | $1,489.08 | $1,368.77 | $120.31 | $37,131.55 | $0.00 | |
| 335 | 02/01/2050 | $1,489.08 | $1,373.04 | $116.04 | $35,758.51 | $0.00 | |
| 336 | 03/01/2050 | $1,489.08 | $1,377.33 | $111.75 | $34,381.18 | $0.00 | |
| 337 | 04/01/2050 | $1,489.08 | $1,381.64 | $107.44 | $32,999.54 | $0.00 | |
| 338 | 05/01/2050 | $1,489.08 | $1,385.96 | $103.12 | $31,613.58 | $0.00 | |
| 339 | 06/01/2050 | $1,489.08 | $1,390.29 | $98.79 | $30,223.29 | $0.00 | |
| 340 | 07/01/2050 | $1,489.08 | $1,394.63 | $94.45 | $28,828.66 | $0.00 | |
| 341 | 08/01/2050 | $1,489.08 | $1,398.99 | $90.09 | $27,429.67 | $0.00 | |
| 342 | 09/01/2050 | $1,489.08 | $1,403.36 | $85.72 | $26,026.31 | $0.00 | |

## AMORTIZATION SCHEDULE

Loan No.:  104021117122
Borrower(s):  Jed Alan Graham

Lender:  Acopia, LLC

Date:  02/02/2022
Loan Amount:  $321,536.00
Term:  30 years
Interest Rate:  3.750 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 343 | 10/01/2050 | $1,489.08 | $1,407.75 | $81.33 | $24,618.56 | $0.00 | |
| 344 | 11/01/2050 | $1,489.08 | $1,412.15 | $76.93 | $23,206.41 | $0.00 | |
| 345 | 12/01/2050 | $1,489.08 | $1,416.56 | $72.52 | $21,789.85 | $0.00 | |
| 346 | 01/01/2051 | $1,489.08 | $1,420.99 | $68.09 | $20,368.86 | $0.00 | |
| 347 | 02/01/2051 | $1,489.08 | $1,425.43 | $63.65 | $18,943.43 | $0.00 | |
| 348 | 03/01/2051 | $1,489.08 | $1,429.88 | $59.20 | $17,513.55 | $0.00 | |
| 349 | 04/01/2051 | $1,489.08 | $1,434.35 | $54.73 | $16,079.20 | $0.00 | |
| 350 | 05/01/2051 | $1,489.08 | $1,438.83 | $50.25 | $14,640.37 | $0.00 | |
| 351 | 06/01/2051 | $1,489.08 | $1,443.33 | $45.75 | $13,197.04 | $0.00 | |
| 352 | 07/01/2051 | $1,489.08 | $1,447.84 | $41.24 | $11,749.20 | $0.00 | |
| 353 | 08/01/2051 | $1,489.08 | $1,452.36 | $36.72 | $10,296.84 | $0.00 | |
| 354 | 09/01/2051 | $1,489.08 | $1,456.90 | $32.18 | $8,839.94 | $0.00 | |
| 355 | 10/01/2051 | $1,489.08 | $1,461.46 | $27.62 | $7,378.48 | $0.00 | |
| 356 | 11/01/2051 | $1,489.08 | $1,466.02 | $23.06 | $5,912.46 | $0.00 | |
| 357 | 12/01/2051 | $1,489.08 | $1,470.60 | $18.48 | $4,441.86 | $0.00 | |
| 358 | 01/01/2052 | $1,489.08 | $1,475.20 | $13.88 | $2,966.66 | $0.00 | |
| 359 | 02/01/2052 | $1,489.08 | $1,479.81 | $9.27 | $1,486.85 | $0.00 | |
| 360 | 03/01/2052 | $1,491.50 | $1,486.85 | $4.65 | $0.00 | $0.00 | |

JED ALAN GRAHAM          2/2/22          DATE

THIS AMORTIZATION SCHEDULE IS BASED ON THE TERMS SET FORTH ABOVE AND ASSUMES THAT PAYMENTS ARE MADE AS SCHEDULED AND THAT NO PREPAYMENTS OCCUR PRIOR TO THE MATURITY DATE OF THE LOAN. IT IS PROVIDED AS AN EXAMPLE ONLY. IF IT IS FOR AN ADJUSTABLE RATE MORTGAGE LOAN, IT ASSUMES HYPOTHETICAL INTEREST RATE AND PAYMENT CHANGES THAT MAY DIFFER FROM ACTUAL CHANGES. PMI PAYMENT MAY BE DISCONTINUED PRIOR TO REACHING THE PMI CANCELLATION DATE IF PREMIUMS WERE PAID AT THE TIME OF LOAN CLOSING.

LOAN #: 104021117122

Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

## HAZARD INSURANCE ENDORSEMENT LETTER

POLICY NUMBER:

AGENT'S NAME AND ADDRESS:
Elizabeth Bowman
ASI
PO Box 33018
St Petersburg, FL 33733
PHONE: 352-751-6622

INSURED'S NAME:  Jed Alan Graham

PROPERTY ADDRESS:  6234 Danielson Loop, The Villages, FL 32163

Please make the changes requested below:

___x___  Correct Mortgagee Clause to read:
Acopia, LLC, Its Successors And/Or Assigns
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072
LOAN #: 104021117122

_____  Change Property address to:

_____  Change Insured's Name to:

_____  The amount of coverage is not sufficient. Please increase coverage to: _____

_____  Other:

Please send the endorsement(s) directly to:
Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072
LOAN #: 104021117122

ICE Mortgage Technology, Inc.

GLOV  0309
GLOV (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

## QUALITY CONTROL RELEASE
## AND AUTHORIZATION TO RE-VERIFY

We, the undersigned borrowers, understand that our mortgage application may be selected by the Lender and/or its Assigns or its Agents for a Quality Control Review. This review is designed to produce and maintain quality service for our borrowers and to comply with agency and investor guidelines. The quality control review will involve verification of all credit information (including employment history, income, bank accounts, and credit references) as well as the property valuation.

We agree to cooperate with the Lender and/or its Assigns or its Agents to the extent necessary to accomplish this review. It is understood that the information may be verified with third parties such as our employers, depository institutions or a credit reporting agency.

We therefore have signed below authorizing the release of employment and/or financial information to assist in the Quality Control review process.

JED ALAN GRAHAM                                02/02/22          DATE

MICHELE GRAHAM                                2/2/22             DATE

ICE Mortgage Technology, Inc.

GQCR 0695
GQCR (CLS)
02/01/2022 02:00 PM PST

## NOTICE OF FURNISHING NEGATIVE INFORMATION

Borrower:  Jed Alan Graham

Date:  February 2, 2022

Loan Number:  104021117122

Property Address:  6234 Danielson Loop
The Villages, FL 32163

Lender:  Acopia, LLC

In accordance with the implementation of the Fair and Accurate Credit Transactions Act of 2003, we are required to provide you the following statement as prescribed by Section 217:

WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.

_____    02/02/22 _____
JED ALAN GRAHAM                                                                        DATE

69 FR 33281, 12 CFR Part 1022 Model Notice B-1
ICE Mortgage Technology, Inc.

GFACT  1212
GFACT (CLS)
02/01/2022 02.00 PM PST

# SIGNATURE/NAME AFFIDAVIT

| RE: | LOAN NUMBER | PROPERTY ADDRESS |
|---|---|---|
| | 104021117122 | 6234 Danielson Loop, The Villages, FL 32163 |

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared, _Jed Alan Graham_

who, after being by me first duly sworn, upon oath does depose and say:

THAT, _Jed Alan Graham_
as the name is signed on the note and/or security instrument is one and the same person as;
Jed A Graham, Jed Graham, Alan Graham Jed, Jed Alan, Alan Graham Jed, Jed A Graahm, Jed Grahm, Ted Graham, Jed Granham,

as the name appears in various loan documents.

JED ALAN GRAHAM                          02/02/22

DATE

State of: ~~FLORIDA~~ _South Carolina_

County of: ~~SUMTER~~ _Greenwood County_

Sworn to (or affirmed) and subscribed before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

My Commission expires: _____    _____

(Seal)                                             (Notary Public)

ICE Mortgage Technology, Inc.

GSNA  0120
GSNA (CLS)
02/01/2022 02:00 PM PST



# SIGNATURE/NAME AFFIDAVIT

| RE: | LOAN NUMBER | PROPERTY ADDRESS |
|---|---|---|
| | 104021117122 | 6234 Danielson Loop, The Villages, FL 32163 |

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared, _Michele Graham_

who, after being by me first duly sworn, upon oath does depose and say:

THAT, _Michele Graham_
as the name is signed on the note and/or security instrument is one and the same person as:

as the name appears in various loan documents.

MICHELE GRAHAM                2/2/22
                              DATE

State of. ~~FLORIDA~~ South Carolina
County of ~~SUMTER~~ Greenwood County

Sworn to (or affirmed) and subscribed before me by means of [ ] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by MICHELE GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

My Commission expires: 6/07/2029    Christian Snead

(Seal)                              (Notary Public)

ICE Mortgage Technology, Inc.

GSNA 0120
GSNA (CLS)
02/01/2022 02:00 PM PST



# HAZARD INSURANCE AUTHORIZATION, REQUIREMENTS AND DISCLOSURE

Borrower(s):  Jed Alan Graham

Date: 02/02/2022

Loan Number: 104021117122

Property Address: 6234 Danielson Loop, The Villages, FL 32163

Lender:  Acopia, LLC, a Corporation

Listed below are your Lender's policies and procedures and minimum requirements for Hazard Insurance which must be provided covering the subject property unless otherwise provided by applicable state law:

1.  Coverage must equal the lesser of the following:

   - 100% of the insurable value of the improvements, as established by the property insurer, or

   - the unpaid principal balance of the mortgage, as long as it equals the minimum amount—80% of the insurable value of the improvements—required to compensate for damage or loss on a replacement cost basis. If it does not, then coverage that does provide the minimum required amount must be obtained.

2.  The insurance company providing coverage must have a(n)   "A"      rating or better in the latest edition of "Best's Insurance Guide," must be licensed in the State in which the property described above is located, and must be licensed to transact the lines of insurance required in the transaction.

3.  Policy shall provide at least "Broad Form" coverage on properties of one to four units, and at least "Vandalism & Malicious Mischief" on properties with over four units, with no deviation. Homeowners policies must provide coverage equal to "HO 2" form.

4.  The maximum deductible must not exceed 5.000 % of the face amount of the insurance policy.

5.  Policy must provide coverage for a term of at least One (1) Year(s).      Premiums may be paid on an annual installment basis only if the policy provides that the Lender will be notified in writing of cancellation 30 days prior to expiration of coverage, for any cause. Binders are not acceptable, unless otherwise mandated by state law.

6.  If any existing policy is provided which will expire within Six (6) Month(s)      from the date of the recording of this loan, said policy must be renewed for the required term as noted in #5 above.

7.  All forms and endorsements pertaining to the Lender's requirements must appear on the "Declaration Page" of the policy.

8.  New policies must be accompanied by a signed "Broker of Record Authorization" if borrower(s) have changed Insurance Agents.

9.  Verification of renewal of insurance policies must be in the Lender's office at least thirty days prior to the expiration date of the existing policy. If this requirement is not met, the LENDER OR ITS SUCCESSORS OR ASSIGNS MAY AT THEIR OPTION, BUT WITHOUT OBLIGATION TO DO SO, PROVIDE COVERAGE TO REPLACE ANY EXPIRING POLICIES WHICH HAVE NOT BEEN PROPERLY RENEWED. The premium for such coverage will be remitted promptly by the undersigned, or Lender may charge borrower's account for the cost thereof.

10. The policy must include a standard "mortgagee loss payee clause" (Lenders Loss Payable Endorsement form 438 BFU or equivalent) in favor of:
    Acopia, LLC, Its Successors And/Or Assigns
    306 Northcreek Blvd, Suite 100
    Goodlettsville, TN 37072

11. Property address and insureds' names must be designated on the policy as on the ALTA Title Policy.

12. The Lender's loan number must appear on the policy and any subsequent endorsements.

13. Effective date of new policies, endorsements, and/or assignments shall be as of, or prior to, the date of recording this loan.



# FLORIDA TITLE INSURANCE NOTICE

Borrower(s):    Jed Alan Graham
("we," "us" or "our")

Date:    February 2, 2022

Lender:    Acopia, LLC

Loan Number:    104021117122

Property Address:    6234 Danielson Loop, The Villages, FL 32163.

Title Insurance Co.:    Old Republic National Title Insurance Company

## NOTICE TO PURCHASER-MORTGAGOR

Pursuant to Section 627.798, Florida Statutes, notice is hereby given by the title insurance company shown above to me, undersigned purchaser-mortgagor, that a mortgagee title insurance policy is to be issued to your mortgagee lender, and that such policy does not provide title insurance protection to you as the owner of the real estate you are purchasing.

I have read the above notice and understand that such mortgagee title insurance policy to be issued to the mortgagee lender does not provide title insurance protection to me as owner.

_____ 02/02/20 _____
JED ALAN GRAHAM                                                                    DATE

Fla. Admin. Code 4-186.002
ICE Mortgage Technology, Inc.

FLTIN  1202
FLTIN (CLS)
02/01/2022 02:00 PM PST

Prepared by and return to:
Richard P. Newman/rc
**Peninsula Land & Title**
950 Lakeshore Drive Suite 200
The Villages, FL 32162
352-259-5017
File No.: V20143

_____[Space Above This Line For Recording Data]_____

# Warranty Deed

This Warranty Deed made this 2nd day of February, 2022 between The Villages Land Company, LLC, a Florida limited liability company whose post office address is 3619 Kiessel Road, The Villages, FL 32163 grantor, and Jed Alan Graham and Michele Graham, husband and wife whose post office address is 6234 Danielson Loop, The Villages, FL 32163-5941 grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

WITNESSETH, that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Sumter County Florida to-wit:

PARCEL ID #: K01D029

Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

The initial monthly assessment to be paid by grantee for services to be performed by grantor is, pursuant to the terms of the applicable Declaration of Restrictions, hereby set at $164.00.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD, the same in fee simple forever.

AND the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except easements, restrictions and reservations of record, if any, but this instrument shall not operate to reimpose the same, special assessments not yet due and payable and taxes for the current year.

IN WITNESS WHEREOF, grantor has caused this instrument to be executed the day and year first above written.

_____
Witness Name:_____

The Villages Land Company, LLC, a Florida limited liability company

By: TVL Company, LLC, a Florida limited liability company, its Manager

_____
Witness Name:_____

By:_____
    Martin L. Dzuro, its Manager

State of Florida
County of Sumter

| Office Use Only: | |
|---|---|
| Name: | Graham |
| Unit/Lot: | 71v.29 |
| Close Date: | 2-2-2022 |
| Date Ck. Rec'v. | |

# HOUSE KEYS & GATE PASSES – LAND COMPANY

Since you are closing by mail please select one of the following choices regarding your house keys and gate passes. Garage door openers will remain at the house.

## PLEASE SELECT ONLY ONE OPTION:

**OPTION 1:** _✓_
Please keep all keys and gate passes at the Community Resource Department until my arrival. See note in box below for locations and hours.
- I will contact the Closing Department (352-643-7191) prior to my arrival to schedule a walk-through at my home with the builder.

**OPTION 2:** _____
Please send me all house keys and gate passes via FedEx.
- I understand I will be charged $30.00 for this service and a signature will be required upon receipt.
- Please send a $30.00 personal check made payable to The Villages Land Company, LLC
- Mailbox keys will be available at the Community Resource Department upon arrival
- Address to send keys (Please Print): _____
  _____
- Phone Number: _____
- Is this address a Residential address? YES _____ NO _____

**OPTION 3:** _____
I am authorizing the following person to pick up a key OR all keys and gate passes for me after closing.
- Photo IDs and remaining keys/passes will be processed at the Community Resource Department upon my arrival. See note in box below for locations and hours.
- I will contact the Closing Department (352-643-7191) prior to my arrival to schedule a walk-through at my home with the builder.

AUTHORIZED PERSON'S NAME: _____
(PLEASE PRINT NAME)

Please check one:   To Pick up **One Key Only:** _____
To Pick up **All Keys & Gate Passes:** _____

| COMMUNITY RESOURCE DEPT. LOCATION | HOURS OF OPERATION: |
|---|---|
| - Brownwood: 2705 West Torch Lake Drive (zip:32163)<br><br>800-346-4556 or 352-753-2270 | Mon-Sat: 8:00 a.m. to 5:00 p.m.<br>Sunday:  9:00 a.m. to 5:00 p.m.<br>(Excluding Holidays)<br>NOTE: If you will be arriving after hours you must notify The Villages Community Resource Department during normal business hours to arrange for access to your keys. |

Signature: _Jnl alon Bph_   Date: _02/02/22_

Signature: _Michele Fuhm_   Date: _2/2/22_

If we have questions, what phone number can we use to reach you? _(864) 910-2286_

REV 9/30/2021



## Community Development Districts
## Finance

Welcome to The Villages. The Village Center Community Development Districts (The District) welcomes your comments, questions or suggestions via e-mail at utilities@districtgov.org.

**WATER UTILITY SERVICE REQUEST FORM (Please print legibly)**

Name(s) on Deed: _____ Jed Alan Graham and Michele Graham _____

The Villages Service Address: _____ 6234 Danielson Loop, The Villages, FL, 32163 _____

Customer Mailing Address for Billing: _____

_____

| Address | City, State | Zip |

Contact Phone #1:_____ Contact Phone #2_____

Email address:_____ Please e-mail me my statements: ☐

**Water Service:** The Village Center Community Development Districts provides the billing for 5 separate water utilities in the Villages: Village Center Service Area, Little Sumter Service Area, North Sumter County Utility Dependent District, Central Sumter Utility and South Sumter Utility. Each utility has a rate schedule of base and tiered charges for consumption. Meters are read each month and bills are distributed based upon the meter reading cycle of the property. Payment is due within 20 days. A 5% late payment penalty is accessed on balances remaining after the due date of the bill. (South Sumter Utility's penalty is $5.00.)

The District shall be responsible for maintenance of the meter and delivery system upstream of the meter and the customer shall be responsible for maintenance of the delivery system and fixtures on the outlet side of the meter. Customers are responsible to pay for charges associated for all water that passes through the meter.

**Combined Billing:** As a convenience to customers the District has combined the billing of the deed covenant charges. Depending on which unit your home is located in, your bill may contain charges for water, sewer, irrigation, trash collection and/or the monthly amenity fee.

**Customer Billing Address:** To insure that your bill reaches you in a timely manner please make sure that the Finance Customer Service Office has your correct and current mailing or e-mail address. It is the customer's responsibility to keep this information current. You can e-mail address changes to utilities@districtgov.org or call us at 352-750-0000.

**(Please Turn Over)**

**Utility Fee Schedules:** Please visit www.districtgov.org. Click Departments — Click Utilities, and then select your utility company.

**Attention Seasonal Customers:** Please be advised that as part of the deed covenants water, sewer, irrigation base charges and amenities and sanitation services are charged year round.

**Scheduling Service Requests:** We do not schedule appointments for service requests. Please provide at least two business days' notice for routine service requests. More complex requests (such as installing or removing meters and/or upgrading services) are scheduled and require more notice. Please ensure that all water faucets, inside and outside the location, are shut off when the service is turned on.

**Termination of Water Service:** Only occurs due to non-payment. Disconnection of water services results in a minimum reconnection fee of $57.00 and payment in full of any past due balances. Meters are locked at disconnection of service and any tampering with the lock or meter will result in a fine to the owner of the property.

**Payment Options:** The District accepts cash, check, money order, on-line check debit and credit cards, (Visa, American Express, Master Card and Discover) for payment. (Debit and credit cards and on-line check are processed by a third party and are charged a convenience fee.) Please choose your appropriate utility service name to insure proper crediting of your account. You may also sign up for auto draft from a checking or savings account, at no charge, by completing the back portion of your payment stub or an ACH Draft form.

**Water Conservation:** The District is committed to comply with the Water Management District Consumptive Use Permit and promotes and adheres to Water Management Conservation Orders. It is the owner's responsibility to monitor home and irrigation system settings to avoid high usage.

**First Bill:** Your first bill should arrive within 30-45 days of activating service. District Emergency numbers, as well as other convenience information is listed on the reverse side of the bill. The District website www.districtgov.org is also an excellent information resource.

Our Customer Service staff is committed to providing the best possible service to every customer all of the time. Please feel free to contact us by phone 352-750-0000 or via e-mail, Utilities@districtgov.org.

In accordance with the District Rule, my signature below indicates that I have received and understand the obligations as documented on the Customer Application.

HOMEOWNER'S NAME (Please Print) _Jed Alan Graham and Michele Graham_

HOMEOWNER'S SIGNATURE _[signature]_ _[signature]_

DATE: _02/02/22_

OFFICE USE: RECEIVED BY_____ DATE RECEIVED_____

UNIT_____ LOT_____ ACCOUNT # ASSIGNED_____

District Office: 984 Old Mill Run, The Villages, FL 32162-1675 FAX: 352-674-1999

Email: utilities@districtgov.org



**HOME BUYERS WARRANTY.**

RETURN TO: 2-10 HOME BUYERS WARRANTY

email: 210HBW@2-10.com | phone: 800.488.8844
P.O.Box441525 | Aurora, C080044-1525

## BUILDER/SELLER APPLICATION FOR ENROLLMENT
## This document is not your New Home Warranty

Your builder/seller is applying to enroll in the 2-10 HBW New Home Warranty Program the home whose address is listed below. The builder/ seller is responsible to complete all enrollment requirements, and if not completed, no coverage by the builder/seller's warranty insurer will be provided. If the buyer has not received the Certificate of Warranty Coverage within 30 days after closing, the warranty was not issued and THE BUYER SHOULD CONTACT THE BUILDER/SELLER.

1. Buyer(s): *As recorded on deed.* JED A. AND MICHELE GRAHAM

Buyer(s) Email: _____    Buyer(s) Phone: _____

BuildingDept: _____    Lot/Block: S71V-29    Subdivision: THE VILLAGES

Address of Home: 6234 DANIELSON LOOP    THE VILLAGES    FL    32163-5941
    ADDRESS            CITY    STATE    ZIP

Alternate Mailing Address: _____
    ADDRESS            CITY    STATE    ZIP

2. Builder/Seller Name: The Villages Land Company, LLC    2-10 HBW Builder No: 8805-8007

3. Effective Date of Warranty: *Provide dates for each.*

Date of Closing: 02/02/2022    Date of First Occupancy by anyone: _____

Specify Date Certificate of Occupancy Issued: _____

Coverage: Both the builder/seller and buyer(s) must check and/or initial whichof the following coverage(s) apply to the home beingenrolled.

☒ A. _____ 2-10 Product 1-Year Workmanship / 2-Year Systems / 10-Year Structural Coverage

☐ B. _____ 10-Year Product 10-Year Structural Coverage

☐ C. _____ 2-10 Manufactured Product

4. Type of Home: ☒ Single Family Detached    ☐ Single Family - Duplex, Townhome, Condo

5. Type of Construction: ☒ Site Built    ☐ Modular    ☐ Manufactured

6. FHA/VA Financing: ☐ Yes   ☒ No

7. Rate Formula

| 637,648 | ÷ 1,000 = | 637.65 | X | .500 | = | 318.82 |
| Final Sales Price of the Home | | Builder Rate | | | | Warranty Fee |

ONLY COMPLETE IF LAND IS NOT INCLUDED IN THE FINAL SALES PRICE OF THE HOME

| Multiply the Final Sales Price of Home x 1.25 | Multiply the Warranty Fee x 1.25 |
| | 398.53 |
| Warranty Limit | Warranty Fee |

HOME BUYER'S ACKNOWLEDGEMENT AND CONSENT

Buyer(s) agree that any and all claims or disputes between him (them) and the builder/seller (including any person you contend is responsible for a defect in your home) arising from or relating to any warranty claim filed by the homeowner, shall be submitted to binding arbitration pursuant to the Federal Arbitration Act (9 U.S.C. §§1-16). By signing below, buyer acknowledges reading the 2-10 HBW Warranty Booklet, and CONSENTS TO THE TERMS OF THAT DOCUMENT INCLUDING THE BINDING ARBITRATION PROVISION contained therein. I/We acknowledge that filing a claim form is an election to pursue the warranty as my/our exclusive remedy. Buyer(s) accepts the 2-10 HBW warranty and in return, waives the builder/seller implied warranty of habitability, merchantability or fitness to the extent allowed by law.

Buyer(s) Signature: _____    Date: 02/02/22

Buyer(s) Signature: _____    Date: _____

BUILDER/SELLER'S AUTHORIZED SIGNATURE: _____

PrintName(Builder): Ryan McCabe

OFFICE USE ONLY
Warranty #:



New Construction Division

## SUBTERRANEAN TERMITE TREATMENT CERTIFICATE BUILDER GUARANTEE

| Builder | Cichielo | Acct # 8552820 |
| --- | --- | --- |
| Treated Property Subdivision | Villages | Lot # S71V-29 |
| Street Address | 6234 Danielson Loop | |
| City, State, Zip | The Villages Of Citrus Grove , FL 32163 | |
| Treatment Information | Oct 25, 2021    Boracare 1:1 23% | |
| | Treatment Date    Material Used | |

This will confirm that the above referenced property was treated for subterranean termites on the treatment date indicated. MASSEY SERVICES, INC. does hereby guarantee that the material used in the treatment, its concentration rate, method and application comply in every respect with current regulations and the termiticide label as approved by E.P.A. and the State of Florida.

BY: _Brenda Larson_

Authorized Agent of MASSEY SERVICES, INC.

## NOTICE TO OWNER

### SUBTERRANEAN TERMITE PROTECTION
### GUARANTEE REGISTRATION ACKNOWLEDGEMENT

Your builder selected MASSEY SERVICES, INC. to provide the subterranean termite protection on your property. This protection provides you with retreatment and repair coverage at no cost to you for one year from the closing date (which must be provided below). In addition, as a new owner, Florida Law, Chapter 482.227 F.S. and 5E-14.105.3 provides that you shall have the option of extending this guarantee annually after the first year for no less than four (4) additional years, provided the previous year's renewal has been paid. (For protection coverage on FHA/VA Mortgages, refer to HUD Form NPCA 99A & 99B). If you have any questions relating to this coverage, please call our Customer Care Department at 888-262-7739.

I acknowledge my understanding of the options available to me under the Florida Statues as outlined above, and by my signature below, I authorize MASSEY SERVICES, INC. to transfer the Subterranean Termite Protection Registration, currently in my builder's name, to:

Name (please print)  Jed A. + michele Graham

Mailing Address (if different from treated property) _____

City, State, Zip _____

Home Phone (    ) _____    Business Phone (    ) _____

Mobile Phone (    ) _____    Email Address _____

Signature _____    Closing Date  2-2-2022

Financing (check one)  ✓ Conventional    ___ FHA/VA    ___ Other _____

*Massey Services ... Expect More ... and Get It!*

JL

NEW HOME SALES

BORROWERS MAILING ADDRESS AFTER CLOSING

BUYERS:  Jed Alan Graham and Michele Graham

SUBJECT PROPERTY:    Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

Property Address:    6234 Danielson Loop, The Villages, FL 32163-5941

BUYERS:

____✓___ WILL _____ WILL NOT OCCUPY PROPERTY

MAILING ADDRESS : _____

_____

Phone Number: _____

Cell Number: _864-993-1984_____

DoubleTime®

## PROPERTY TAX ACKNOWLEDGMENT

**CLOSING DATE:**  February 2, 2022

**SELLER(S):**  The Villages Land Company LLC, a Florida limited liability company

**BUYER(S):**  Jed Alan Graham and Michele Graham, husband and wife

**PROPERTY:**  Lot 29, VILLAGES OF SOUTHERN OAKS UNIT NO. 71, according to the plat thereof as recorded in Plat Book 19, Pages 4, 4A through 4H, Public Records of Sumter County, Florida.

The undersigned hereby acknowledges that, if they purchased a newly constructed home where construction was completed after the first of the year, the current year's tax bill will likely be based solely on the value of the unimproved land. This is based on the fact that the Property Appraiser determines the value of the property on January 1st of each year. The year following the current year and each year thereafter, the tax bill will be based on the value of the land AND the home constructed thereon, which will cause the tax bill to be higher than that of the current year.

However, if you are closing after the first of the year but the home was deemed by the Property Appraiser as ready for occupancy prior to January 1st, then it is possible your tax bill for the current year could be based on the value of the land TOGETHER with the newly constructed home.

BUYER(S):

_____
Jed Alan Graham

_____
Michele Graham

2312ZP 09/14/2021 8:52 AM

| Form **1065** | | U.S. Return of Partnership Income | | | OMB No. 1545-0123 |
|---|---|---|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2020, or tax year beginning .................. , ending ..................
▶ Go to www.irs.gov/Form1065 for instructions and the latest information.

**2020**

| A Principal business activity | | Name of partnership | D Employer Identification number |
|---|---|---|---|
| RENTAL REAL | | ZAPLUTUS ENTERPRISES, LLC | 74-3078638 |
| B Principal product or service | Type or Print | Number, street, and room or suite no. If a P.O. box, see instructions. | E Date business started |
| RENTAL HOUSE | | 1400 MCKINNEY ST. UNIT 908 | |
| C Business code number | | City or town, state or province, country, and ZIP or foreign postal code | F Total assets (see Instructions) |
| 621111 | | HOUSTON        TX 77010 | $ |

G Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☒ Address change (5) ☐ Amended return
H Check accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ▶ ..................
I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ .................. **2**
J Check if Schedules C and M-3 are attached .................. ▶ ☐
K Check if partnership: (1) ☐ Aggregated activities for section 465 at-risk purposes (2) ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include only trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales | 1a | | | |
| | b | Returns and allowances | 1b | | | |
| | c | Balance. Subtract line 1b from line 1a | | | 1c | |
| | 2 | Cost of goods sold (attach Form 1125-A) | | | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | | | 4 | |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | | | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 6 | |
| | 7 | Other income (loss) (attach statement) | | | 7 | |
| | 8 | Total income (loss). Combine lines 3 through 7 | | | 8 | |
| **Deductions (see instructions for limitations)** | 9 | Salaries and wages (other than to partners) (less employment credits) | | | 9 | |
| | 10 | Guaranteed payments to partners | | | 10 | |
| | 11 | Repairs and maintenance | | | 11 | |
| | 12 | Bad debts | | | 12 | |
| | 13 | Rent | | | 13 | |
| | 14 | Taxes and licenses | | | 14 | |
| | 15 | Interest (see instructions) | | | 15 | |
| | 16a | Depreciation (if required, attach Form 4562) | 16a | 963 | | |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | 963 | 16c | 0 |
| | 17 | Depletion (Do not deduct oil and gas depletion.) | | | 17 | |
| | 18 | Retirement plans, etc. | | | 18 | |
| | 19 | Employee benefit programs | | | 19 | |
| | 20 | Other deductions (attach statement) | | | 20 | |
| | 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | 0 |
| | 22 | Ordinary business income (loss). Subtract line 21 from line 8 | | | 22 | |
| **Tax and Payment** | 23 | Interest due under the look-back method—completed long-term contracts (attach Form 8697) | | | 23 | |
| | 24 | Interest due under the look-back method—income forecast method (attach Form 8866) | | | 24 | |
| | 25 | BBA AAR imputed underpayment (see instructions) | | | 25 | |
| | 26 | Other taxes (see instructions) | | | 26 | |
| | 27 | Total balance due. Add lines 23 through 26 | | | 27 | |
| | 28 | Payment (see instructions) | | | 28 | |
| | 29 | Amount owed. If line 28 is smaller than line 27, enter amount owed | | | 29 | |
| | 30 | Overpayment. If line 28 is larger than line 27, enter overpayment | | | 30 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ .................. ▶ ..................
Signature of partner or limited liability company member        Date

May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | JOSEPH T. CIEGLO, CPA | JOSEPH T. CIEGLO, CPA | 09/14/21 | | ********* |
| | Firm's name ▶ CHANCE GAY & CIEGLO PLLC | | | Firm's EIN ▶ | 83-0974051 |
| | Firm's address ▶ 514B AIRPORT RD FOREST, MS                   39074 | | | Phone no. | 601-469-1414 |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2020)

DAA

5593GR 09/14/2021 1:41 PM

| Form 1040 (2020) | JED & MICHELE GRAHAM | | ***-**-3790 | Page 2 |

| | 16 | Tax (see instructions). Check if any from Form(s): 1 ☐ 8814  2 ☐ 4972 | | | |
| | | ☐ 3 | 16 | 26,983 |
| | 17 | Amount from Schedule 2, line 3 | 17 | |
| | 18 | Add lines 16 and 17 | 18 | 26,983 |
| | 19 | Child tax credit or credit for other dependents | 19 | |
| | 20 | Amount from Schedule 3, line 7 | 20 | |
| | 21 | Add lines 19 and 20 | 21 | |
| | 22 | Subtract line 21 from line 18. If zero or less, enter -0- | 22 | 26,983 |
| | 23 | Other taxes, including self-employment tax, from Schedule 2, line 10 | 23 | |
| | 24 | Add lines 22 and 23. This is your total tax ▶ | 24 | 26,983 |
| | 25 | Federal income tax withheld from: | | |
| | a | Form(s) W-2 | 25a 23,208 | |
| | b | Form(s) 1099 | 25b | |
| | c | Other forms (see instructions) | 25c | |
| | d | Add lines 25a through 25c | 25d | 23,208 |

• If you have a qualifying child, attach Sch. EIC.

| | 26 | 2020 estimated tax payments and amount applied from 2019 return. | 26 | |
| | 27 | Earned income credit (EIC) | 27 | |
| | 28 | Additional child tax credit. Attach Schedule 8812 | 28 | |
| | 29 | American opportunity credit from Form 8863, line 8 | 29 | |
| | 30 | Recovery rebate credit. See instructions | 30 614 | |
| | 31 | Amount from Schedule 3, line 13 | 31 | |
| | 32 | Add lines 27 through 31. These are your total other payments and refundable credits ▶ | 32 | 614 |
| | 33 | Add lines 25d, 26, and 32. These are your total payments ▶ | 33 | 23,822 |

• If you have nontaxable combat pay, see instructions.

**Refund**
Direct deposit?
See Instructions

| | 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you overpaid | 34 | |
| | 35a | Amount of line 34 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | 35a | |
| ▶b | Routing number | | ▶c Type: ☐ Checking ☐ Savings | | |
| ▶d | Account number | | | |
| | 36 | Amount of line 34 you want applied to your 2021 estimated tax ▶ | 36 | | |

**Amount You Owe**
For details on how to pay, see instructions.

| | 37 | Subtract line 33 from line 24. This is the amount you owe now ▶ | 37 | 3,161 |
| | | Note: Schedule H and Schedule SE filers, line 37 may not represent all of the taxes you owe for 2020. See Schedule 3, line 12e, and its instructions for details. | | |
| | 38 | Estimated tax penalty (see instructions) ▶ | 38 | | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS? See instructions ▶ ☒ Yes. Complete below.  ☐ No

Designee's name ▶ JOSEPH T. CIEGLO, CPA   Phone no. ▶ 601-469-1414   Personal Identification number (PIN) ▶ 78232

**Sign Here**
Joint return?
See Instructions.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | If the IRS sent you an Identity Protection PIN, enter it here (see inst.) |
| | | PHYSICIAN | |
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.) |
| | | RETIRED | |

Phone no. ____  Email address ____

**Paid Preparer Use Only**

| Preparer's name | Preparer's signature | Date | PTIN | Check if: |
| JOSEPH T. CIEGLO, CPA | JOSEPH T. CIEGLO, CPA | 09/14/21 | ********* | ☐ Self-employed |
| Firm's name ▶ CHANCE GAY & CIEGLO PLLC | | | Phone no. 601-469-1414 | |
| | 514B AIRPORT RD | | | |
| Firm's address ▶ FOREST    MS  39074 | | | Firm's EIN ▶ 83-0974051 | |

Go to www.irs.gov/Form1040 for instructions and the latest information.  Form **1040** (2020)

10/15    INT    39    FTP    79    TOT    3,279

DAA

Form **1120-S**

Department of the Treasury
Internal Revenue Service

**U.S. Income Tax Return for an S Corporation**

▶ Do not file this form unless the corporation has filed or is
attaching Form 2553 to elect to be an S corporation.
▶ Go to *www.irs.gov/Form1120S* for Instructions and the latest information.

OMB No. 1545-0123

**2020**

For calendar year 2020 or tax year beginning    Jan 01 2020 , ending    Dec 31 2020

| A  S election effective date | | Name  P JONES ENTERPRISES INC | | | D  Employer identification number  81-0691372 |
|---|---|---|---|---|---|
| 11/11/2015 | TYPE | Number, street, and room or suite no. If a P.O. box, see instructions.  1400 MCKNNEY ST 908 | | | E  Date incorporated  11/11/2015 |
| B  Business activity code number (see instructions)  621111 | OR  PRINT | City or town  HOUSTON | State  TX | ZIP code  77010- | F  Total assets (see instructions) |
| | | Foreign country name | Foreign province/state/county | Foreign postal code | $                 194,684 |
| C  Check if Sch. M-3 attached | | | | | |

G  Is the corporation electing to be an S corporation beginning with this tax year?  ☐ Yes  ☒ No  If "Yes," attach Form 2553 if not already filed

H  Check if:  (1) ☐ Final return  (2) ☐ Name change  (3) ☒ Address change  (4) ☐ Amended return  (5) ☐ S election termination or revocation

I  Enter the number of shareholders who were shareholders during any part of the tax year  . . . . . . . . ▶  1

J  Check if corporation:  (1) ☐ Aggregated activities for section 465 at-risk purposes  (2) ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales . . . . . . . . . . . . . . . | 1a | 619,547 |
| | b | Returns and allowances . . . . . . . . . . . . . | 1b | |
| | c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . | 1c | 619,547 |
| | 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . | 3 | 619,547 |
| | 4 | Net gain (loss) from Form 4797, line 17 (attach Form 4797) . . . . . | 4 | |
| | 5 | Other income (loss) (see instructions—attach statement) . . . . . | 5 | |
| | 6 | Total income (loss). Add lines 3 through 5 . . . . . . . . ▶ | 6 | 619,547 |
| **Deductions (see instructions for limitations)** | 7 | Compensation of officers (see instructions — attach Form 1125-E) . . . . | 7 | 180,000 |
| | 8 | Salaries and wages (less employment credits) . . . . . . . . | 8 | 168,013 |
| | 9 | Repairs and maintenance . . . . . . . . . . . . | 9 | 7,316 |
| | 10 | Bad debts . . . . . . . . . . . . . . . | 10 | |
| | 11 | Rents . . . . . . . . . . . . . . . . . | 11 | 68,913 |
| | 12 | Taxes and licenses . . . . . . . . . . . . . | 12 | 387 |
| | 13 | Interest (see instructions) . . . . . . . . . . . . | 13 | 10,000 |
| | 14 | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) . . . . . | 14 | 18,000 |
| | 15 | Depletion (Do not deduct oil and gas depletion.) . . . . . . . | 15 | |
| | 16 | Advertising . . . . . . . . . . . . . . . | 16 | 17,150 |
| | 17 | Pension, profit-sharing, etc., plans . . . . . . . . . . | 17 | |
| | 18 | Employee benefit programs . . . . . . . . . . . | 18 | |
| | 19 | Other deductions (attach statement) . . . . . . . . . . | 19 | 161,268 |
| | 20 | Total deductions. Add lines 7 through 19 . . . . . . . . ▶ | 20 | 631,047 |
| | 21 | Ordinary business income (loss). Subtract line 20 from line 6 . . . . | 21 | -11,500 |
| **Tax and Payments** | 22a | Excess net passive income or LIFO recapture tax (see instructions) . . . | 22a | |
| | b | Tax from Schedule D (Form 1120-S) . . . . . . . . . | 22b | |
| | c | Add lines 22a and 22b (see instructions for additional taxes) . . . . . | 22c | |
| | 23a | 2020 estimated tax payments and 2019 overpayment credited to 2020 . . | 23a | |
| | b | Tax deposited with Form 7004 . . . . . . . . . . . | 23b | |
| | c | Credit for federal tax paid on fuels (attach Form 4136) . . . . . . | 23c | |
| | d | Reserved for future use . . . . . . . . . . . . | 23d | |
| | e | Add lines 23a through 23d . . . . . . . . . . . | 23e | |
| | 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached . . . . . ▶ ☐ | 24 | |
| | 25 | Amount owed. If line 23e is smaller than the total of lines 22c and 24, enter amount owed . . . . | 25 | |
| | 26 | Overpayment. If line 23e is larger than the total of lines 22c and 24, enter amount overpaid . . . . | 26 | |
| | 27 | Enter amount from line 26: Credited to 2021 estimated tax  ▶    Refunded ▶ | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| ▶ | | | May the IRS discuss this return with the preparer shown below? See instructions.  ☐ Yes  ☐ No |
|---|---|---|---|
| Signature of officer | Date | Title | |

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ | | | Firm's EIN ▶ | |
| Firm's address ▶ | | | Phone no. | |
| City | | State    ZIP code | | |

For Paperwork Reduction Act Notice, see separate instructions.
BCA

Form **1120-S** (2020)

2312ZP 09/14/2021 9:37 AM

PARTNER# 1

**Schedule K-1
(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2020**

For calendar year 2020, or tax year

beginning _____ ending _____

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

651119

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number
74-3078638

**B** Partnership's name, address, city, state, and ZIP code
ZAPLUTUS ENTERPRISES, LLC

1400 MCKINNEY ST. UNIT 908
HOUSTON          TX 77010

**C** IRS Center where partnership filed return ▶
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instructions.)
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

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
JED GRAHAM

1400 MCKINNEY UNIT 2305
HOUSTON          TX 77010-4023

**G** ☐ General partner or LLC member-manager  ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner  ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____
Name _____

**I1** What type of entity is this partner? INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

|  | Beginning | Ending |
|---|---|---|
| Profit | 50.000000 % | 50.000000 % |
| Loss | 50.000000 % | 50.000000 % |
| Capital | 50.000000 % | 50.000000 % |

Check if decrease is due to sale or exchange of partnership interest ............... ☐

**K** Partner's share of liabilities:

|  | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ | $ |
| Qualified nonrecourse financing | $ | $ |
| Recourse | $ | $ |

☐ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** Partner's Capital Account Analysis

Beginning capital account ............ $ _____
Capital contributed during the year ............ $ _____
Current year net income (loss) ............ $ _____
Other increase (decrease) (attach explanation) ............ $ _____
Withdrawals & distributions ............ $ ( _____ )
Ending capital account ............ $ _____

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No  If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ............ $ _____
Ending ............ $ _____

| # | Description | Amount | # | Description | Amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | | 15 | Credits | |
| 2 * | Net rental real estate income (loss) | 2,049 | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions | |
| 4a | Guaranteed payments for services | | | | |
| 4b | Guaranteed payments for capital | | | | |
| 4c | Total guaranteed payments | | | | |
| 5 | Interest income | | | | |
| 6a | Ordinary dividends | | | | |
| 6b | Qualified dividends | | 17 | Alternative minimum tax (AMT) items | |
| 6c | Dividend equivalents | | | | |
| 7 | Royalties | | | | |
| 8 | Net short-term capital gain (loss) | | 18 | Tax-exempt income and nondeductible expenses | |
| 9a | Net long-term capital gain (loss) | | | | |
| 9b | Collectibles (28%) gain (loss) | | | | |
| 9c | Unrecaptured section 1250 gain | | | | |
| 10 | Net section 1231 gain (loss) | | 19 | Distributions | |
| 11 | Other income (loss) | | | | |
| | | | 20 | Other information | |
| 12 | Section 179 deduction | | | | |
| 13 | Other deductions | | | | |
| 14 | Self-employment earnings (loss) | | | | |

21 ☐ More than one activity for at-risk purposes*
22 ☐ More than one activity for passive activity purposes*

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions.
DAA

Schedule K-1 (Form 1065) 2020

## Notice of Change Circumstances Reasons Closing Disclosure

Date of Change: February 1, 2022

Loan Number: 104021117122

Borrower(s): Jed Alan Graham

Property Address: 6234 Danielson Loop
The Villages, FL 32163

Lender: Acopia Home Loans

Previously, in connection with your loan application, you were provided Loan Estimate(s) and Closing Disclosure(s) that contained your loan costs and loan terms for the mortgage loan sought. For one or more of the following reasons indicated below, we are providing you with a revised Closing Disclosure:

☐ Change Circumstance affecting Settlement Charges;

☐ Change Circumstance affecting Eligibility. A changed circumstance affecting your creditworthiness or the value of the security for the loan changes, the loan costs or the loan terms;

☐ Revisions Requested by the Consumer. You requested changes to the mortgage loan sought that changes the loan costs or the loan terms;

☒ Interest Rate Dependent Charges;

☐ Rate Lock Expired;

☐ Other:

Changed Circumstance Description(s):
Borrower Locked Loan or requested a change in lock

Comments:
Lock extended at no cost

Should you have questions regarding your revised Closing Disclosure or the Closing Date, please call James M Cannata, Lender Representative at 772-236-3007.

ICE Mortgage Technology, Inc.

GTRIDCDNCCR_S   1119
GTRIDCDNCCRS (POD)
02/01/2022 02:01 PM PST



LOAN #: 104021117122

## Instructions for Form 4506-C, IVES Request for Transcript of Tax Return

Section references are to the Internal Revenue Code unless otherwise noted.

### Future Developments

For the latest information about Form 4506-C and its instructions, go to www.irs.gov and search IVES. Information about any recent developments affecting Form 4506-C (such as legislation enacted after we released it) will be posted on that page.

What's New. Form 4506-C was created to be utilized by authorized IVES participants to order tax transcripts with the consent of the taxpayer.

### General Instructions

Caution: Do not sign this form unless all applicable lines have been completed.

Designated Recipient Notification. Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

Taxpayer Notification. Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

Purpose of form. Use Form 4506-C to request tax return information through an authorized IVES participant. You will designate an IVES participant to receive the information on line 5a.

Note: If you are unsure of which type of transcript you need, check with the party requesting your tax information.

Where to file. The IVES participant will fax Form 4506-C with the approved IVES cover sheet to their assigned Service Center.

### Chart for ordering transcripts

| If your assigned Service Center is: | Fax the requests with the approved coversheet to: |
|---|---|
| Austin Submission Processing Center | Austin IVES Team 844-249-6238 |
| Fresno Submission Processing Center | Fresno IVES Team 844-249-6239 |
| Kansas City Submission Processing Center | Kansas City IVES Team 844-249-8128 |
| Ogden Submission Processing Center | Ogden IVES Team 844-249-8129 |

### Specific Instructions

Line 1b. Enter the social security number (SSN) or individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a.

Line 3. Enter your current address. If you use a P.O. box, include it on this line.

Line 4. Enter the address shown on the last return filed if different from the address entered on line 3.

Note: If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B, Change of Address or Responsible Party — Business, with Form 4506-C.

Line 5b. Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number cannot contain an SSN, ITIN or EIN. Completion of this line is not required.

Note. If you use an SSN, name or combination of both, we will not input the information and the customer file number will reflect a generic entry of "9999999999" on the transcript.

Line 8. Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 transcript.

Signature and date. Form 4506-C must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-C within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, including lines 5a through 8, are completed before signing

 You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed if unchecked.

Individuals. Transcripts listed on on line 6 may be furnished to either spouse if jointly filed. Only one signature is required. Sign Form 4506-C exactly as your name appeared on the original return. If you changed your name, also sign your current name.

Corporations. Generally, Form 4506-C can be signed by:

(1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-C but must provide documentation to support the requester's right to receive the information.

Partnerships. Generally, Form 4506-C can be signed by any person who was a member of the partnership during any part of the tax period requested on line 8.

All others. See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

Note: If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

Documentation. For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

Signature by a representative. A representative can sign Form 4506-C for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to sign Form 4506-C.

Privacy Act and Paperwork Reduction Act Notice. We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-C will vary depending on individual circumstances. The estimated average time is:

Learning about the law or the form ...... 10 min.
Preparing the form ................................. 12 min.
Copying, assembling, and sending the form to the IRS ............................... 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-C simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see Where to file on this page.

Catalog Number 72627P          www.irs.gov          Form 4506-C (9-2020)

LOAN #: 104021117122

| Form **4506-C** (September 2020) | Department of the Treasury – Internal Revenue Service **IVES Request for Transcript of Tax Return** | OMB Number 1545-1872 |
|---|---|---|

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506-C, visit www.irs.gov and search IVES.

| 1a. Name shown on tax return (if a joint return, enter the name shown first) P Jones Enterprises Inc | 1b. First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) 47-2683790 |
|---|---|
| 2a. If a joint return, enter spouse's name shown on tax return. | 2b. Second social security number or individual taxpayer identification number if joint tax return |

3. Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)
Jed Alan Graham
123 Edinborough Circle, Greenwood, SC 29649

4. Previous address shown on the last return filed if different from line 3 (see instructions)
1400 McKinney St 908, Houston, TX 77010

5a. IVES participant name, address, and SOR mailbox ID
Acopia, LLC ISAOA ATIMA
306 Northcreek Boulevard, Suite 100
Goodlettsvile, TN 37072

5b. Customer file number (if applicable) (see instructions)

Caution: This tax transcript is being sent to the third party entered on Line 5a. Ensure that lines 5 through 8 are completed before signing. (see instructions)

6. Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request 1120

  a. Return Transcript, which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. ☒

  b. Account Transcript, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns ☒

  c. Record of Account, which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years ☒

7. Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2016, filed in 2017, will likely not be available from the IRS until 2018. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 ☒

Caution: If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

8. Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions)

| 12/31/2020 | 12/31/2019 | 12/31/2018 | | |
|---|---|---|---|---|

Caution: Do not sign this form unless all applicable lines have been completed.

Signature of taxpayer(s). I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-C on behalf of the taxpayer. Note: This form must be received by IRS within 120 days of the signature date.

☒ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-C. See instructions.

| | | |
|---|---|---|
| Signature (see instructions) *[signature]* | Date 2/2/22 | Phone number of taxpayer on line 1a or 2a 864-993-1984 |
| Print/Type name Jed Alan Graham | | |
| **Sign Here** Title (if line 1a above is a corporation, partnership, estate, or trust) | | |
| Spouse's signature *[signature]* | Date 2/2/22 | |
| Print/Type name Michele GRAHAM | | |

Catalog Number 72627P    www.irs.gov    Form **4506-C** (9-2020)
For Privacy Act and Paperwork Reduction Act Notice, see page 2.

## Instructions for Form 4506-C, IVES Request for Transcript of Tax Return

Section references are to the Internal Revenue Code unless otherwise noted.

### Future Developments

For the latest information about Form 4506-C and its Instructions, go to www.irs.gov and search IVES. Information about any recent developments affecting Form 4506-C (such as legislation enacted after we released it) will be posted on that page.

**What's New.** Form 4506-C was created to be utilized by authorized IVES participants to order tax transcripts with the consent of the taxpayer.

### General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506-C to request tax return information through an authorized IVES participant. You will designate an IVES participant to receive the information on line 5a.

**Note:** If you are unsure of which type of transcript you need, check with the party requesting your tax information.

**Where to file.** The IVES participant will fax Form 4506-C with the approved IVES cover sheet to their assigned Service Center.

### Chart for ordering transcripts

| If your assigned Service Center is: | Fax the requests with the approved coversheet to: |
| --- | --- |
| Austin Submission Processing Center | Austin IVES Team 844-249-6238 |
| Fresno Submission Processing Center | Fresno IVES Team 844-249-6239 |
| Kansas City Submission Processing Center | Kansas City IVES Team 844-249-8128 |
| Ogden Submission Processing Center | Ogden IVES Team 844-249-8129 |

### Specific Instructions

**Line 1b.** Enter the social security number (SSN) or Individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B, Change of Address or Responsible Party — Business, with Form 4506-C.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number cannot contain an SSN, ITIN or EIN. Completion of this line is not required.

**Note.** If you use an SSN, name or combination of both, we will not input the information and the customer file number will reflect a generic entry of "9999999999" on the transcript.

**Line 8.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 transcript.

**Signature and date.** Form 4506-C must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-C within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, *including lines 5a through 8,* are completed before signing

 **You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed if unchecked.**

**Individuals.** Transcripts listed on on line 6 may be furnished to either spouse if jointly filed. Only one signature is required. Sign Form 4506-C exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-C can be signed by:

(1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-C but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-C can be signed by any person who was a member of the partnership during any part of the tax period requested on line 8.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-C for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to sign Form 4506-C.

### Privacy Act and Paperwork Reduction Act Notice.

We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-C will vary depending on individual circumstances. The estimated average time is:

Learning about the law or the form ...... 10 min.
Preparing the form ................................ 12 min.
Copying, assembling, and sending the form to the IRS .............................. 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-C simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see Where to file on this page.

---

Catalog Number 72627P

www.irs.gov

Form **4506-C** (9-2020)

LOAN #: 104021117122

| Form **4506-C** (September 2020) | Department of the Treasury – Internal Revenue Service **IVES Request for Transcript of Tax Return** | OMB Number 1545-1872 |

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506-C, visit www.irs.gov and search IVES.

**1a.** Name shown on tax return (if a joint return, enter the name shown first)

Zaplutus Enterprises, LLC

**1b.** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions)

74-3078638

**2a.** If a joint return, enter spouse's name shown on tax return.

**2b.** Second social security number or individual taxpayer identification number if joint tax return

**3.** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

Jed Alan Graham
123 Edinborough Circle, Greenwood, SC 29649

**4.** Previous address shown on the last return filed if different from line 3 (see instructions)

1400 McKinney St., Unit 908, Houston, TX 77010

**5a.** IVES participant name, address, and SOR mailbox ID

Acopia, LLC ISAOA ATIMA
306 Northcreek Boulevard, Suite 100
Goodlettsville, TN 37072

**5b.** Customer file number (if applicable) (see instructions)

**Caution:** This tax transcript is being sent to the third party entered on Line 5a. Ensure that lines 5 through 8 are completed before signing. (see instructions)

**6.** Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request  1065

**a.** Return Transcript, which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years  ☒

**b.** Account Transcript, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns  ☒

**c.** Record of Account, which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years  ☒

**7.** Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2016, filed in 2017, will likely not be available from the IRS until 2018. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213  ☒

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**8.** Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions)

| 12/31/2020 | 12/31/2019 | 12/31/2018 | |

**Caution:** Do not sign this form unless all applicable lines have been completed.

Signature of taxpayer(s). I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-C on behalf of the taxpayer. Note: This form must be received by IRS within 120 days of the signature date.

☒ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-C. See instructions.

| | |
|---|---|
| **Sign Here** | Signature (see instructions) *[signature]* Date 2/2/22  Phone number of taxpayer on line 1a or 2a 864-993-1984 |
| | Print/Type name *Jed Alan Graham* |
| | Title (if line 1a above is a corporation, partnership, estate, or trust) |
| | Spouse's signature *[signature]* Date 2/2/22 |
| | Print/Type name *Michele GRAHAM* |

Catalog Number 72627P    www.irs.gov    Form **4506-C** (9-2020)
For Privacy Act and Paperwork Reduction Act Notice, see page 2.

LOAN #: 104021117122

## Instructions for Form 4506-C, IVES Request for Transcript of Tax Return

Section references are to the Internal Revenue Code unless otherwise noted.

### Future Developments

For the latest information about Form 4506-C and its instructions, go to www.irs.gov and search IVES. Information about any recent developments affecting Form 4506-C (such as legislation enacted after we released it) will be posted on that page.

**What's New.** Form 4506-C was created to be utilized by authorized IVES participants to order tax transcripts with the consent of the taxpayer.

### General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506-C to request tax return information through an authorized IVES participant. You will designate an IVES participant to receive the information on line 5a.

**Note:** If you are unsure of which type of transcript you need, check with the party requesting your tax information.

**Where to file.** The IVES participant will fax Form 4506-C with the approved IVES cover sheet to their assigned Service Center.

### Chart for ordering transcripts

| If your assigned Service Center is: | Fax the requests with the approved coversheet to: |
| --- | --- |
| Austin Submission Processing Center | Austin IVES Team 844-249-6238 |
| Fresno Submission Processing Center | Fresno IVES Team 844-249-6239 |
| Kansas City Submission Processing Center | Kansas City IVES Team 844-249-8128 |
| Ogden Submission Processing Center | Ogden IVES Team 844-249-8129 |

### Specific Instructions

**Line 1b.** Enter the social security number (SSN) or individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B, Change of Address or Responsible Party — Business, with Form 4506-C.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number cannot contain an SSN, ITIN or EIN. Completion of this line is not required.

**Note.** If you use an SSN, name or combination of both, we will not input the information and the customer file number will reflect a generic entry of "9999999999" on the transcript.

**Line 8.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 transcript.

**Signature and date.** Form 4506-C must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-C within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, *including lines 5a through 8*, are completed before signing

 You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed if unchecked.

**Individuals.** Transcripts listed on on line 6 may be furnished to either spouse if jointly filed. Only one signature is required. Sign Form 4506-C exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-C can be signed by:

(1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-C but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-C can be signed by any person who was a member of the partnership during any part of the tax period requested on line 8.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-C for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to sign Form 4506-C.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-C will vary depending on individual circumstances. The estimated average time is:

Learning about the law or the form ...... 10 min.
Preparing the form ............................... 12 min.
Copying, assembling, and sending
the form to the IRS ............................... 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-C simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see Where to file on this page.

LOAN #: 104021117122

| Form **4506-C** (September 2020) | Department of the Treasury — Internal Revenue Service<br>**IVES Request for Transcript of Tax Return** | OMB Number<br>1545-1872 |
|---|---|---|

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506-C, visit www.irs.gov and search IVES.

**1a.** Name shown on tax return (if a joint return, enter the name shown first)

Jed Alan Graham

**1b.** First social security number on tax return, individual taxpayer identification number, or employer identification number (see *instructions*)

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

**2a.** If a joint return, enter spouse's name shown on tax return.

**2b.** Second social security number or individual taxpayer identification number if joint tax return

**3.** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

Jed Alan Graham
123 Edinborough Circle, Greenwood, SC 29649

**4.** Previous address shown on the last return filed if different from line 3 (see instructions)

1400 McKinney Unit 2305, Houston, TX 77010

**5a.** IVES participant name, address, and SOR mailbox ID

Acopia, LLC ISAOA/ATIMA
306 Northcreek Blvd Suite 100
Goodlettsville, TN 37072
615-859-5537

**5b.** Customer file number (if applicable) (see instructions)

Caution: This tax transcript is being sent to the third party entered on Line 5a. Ensure that lines 5 through 8 are completed before signing. (see instructions)

**6.** Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. **1040, W2**

**a.** Return Transcript, which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years ........................................................................ ☒

**b.** Account Transcript, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns ........................................................................ ☒

**c.** Record of Account, which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years ........................................................................ ☒

**7.** Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2016, filed in 2017, will likely not be available from the IRS until 2018. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 ........................................................................ ☒

Caution: If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**8.** Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions)

| 12/31/2020 | 12/31/2019 | | |
|---|---|---|---|

Caution: Do not sign this form unless all applicable lines have been completed.

Signature of taxpayer(s). I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-C on behalf of the taxpayer. Note: This form must be received by IRS within 120 days of the signature date.

☒ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-C. See instructions.

| | Signature (see instructions) | Date<br>2/2/22 | Phone number of taxpayer on line 1a or 2a |
|---|---|---|---|
| **Sign Here** | Print/Type name<br>Jed Alan Graham | | |
| | Title (if line 1a above is a corporation, partnership, estate, or trust) | | |
| | Spouse's signature | Date | |
| | Print/Type name | | |

Catalog Number 72627P    www.irs.gov    Form **4506-C** (9-2020)
For Privacy Act and Paperwork Reduction Act Notice, see page 2.

## BORROWER CONSENT TO THE USE OF TAX RETURN INFORMATION

Borrower(s): Jed Alan Graham AND Michele Graham          Date: February 2, 2022

Loan Number: 104021117122

Property Address: 6234 Danielson Loop
                  The Villages, FL 32163

Lender: Acopia, LLC

I/We,  Jed Alan Graham AND Michele Graham

understand, acknowledge, and agree that the Lender and Other Loan Participants can obtain, use and share tax return information for purposes of (i) providing an offer; (ii) originating, maintaining, managing, monitoring, servicing, selling, insuring, and securitizing a loan; (iii) marketing; or (iv) as otherwise permitted by applicable laws, including state and federal privacy and data security laws.

The Lender includes the Lender's affiliates, agents, service providers and any of aforementioned parties' successors and assigns. The Other Loan Participants includes any actual or potential owners of a loan resulting from your loan application, or acquirers of any beneficial or other interest in the loan, any mortgage insurer, guarantor, any servicers or service providers for these parties and any of aforementioned parties' successors and assigns.

### ACKNOWLEDGEMENT

By signing below, you hereby acknowledge reading and understanding all of the information disclosed above, and receiving a copy of this disclosure on the date indicated below.

JED ALAN GRAHAM                                      2/2/22                     DATE

MICHELE GRAHAM                                       2/2/22                     DATE

©2019 The Mortgage Industry Standards Maintenance Organization. All rights reserved.
ICE Mortgage Technology, Inc.

L00000BCTAXRI  0620
GBCTAXRIJ (CLS)
02/01/2022 02:00 PM PST

## HOLD HARMLESS STATEMENT

LOAN #: 104021117122

RE:  6234 Danielson Loop
The Villages, FL 32163

We, the undersigned, hereby state that we have personally inspected the property located at the above captioned address, and are satisfied with the "as is" condition of the property.

We, further agree to hold (Lender), its successors and/or assigns harmless from any and all liability with respect to the condition of the property, including but not limited to plumbing, heating, electrical, structural soundness, well and septic system if applicable.

Caution: Applicant is cautioned that Lender's appraisal of the property is made solely to determine the value of the property for mortgage purposes (not sales purposes) and does not include a detailed inspection or certification as to the structural soundness of the property or of its plumbing, heating and electrical systems, therefore, Applicant should not rely on Lender for a determination of the sales value or conditions of the property.

Dated this _____ day of _____

_____  02/02/22
JED ALAN GRAHAM                                          DATE

ICE Mortgage Technology, Inc.

I0000HHS  0712
I0000HHS (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

## DISCOUNT POINT FEE DISCLOSURE

Borrower Name(s):  Jed Alan Graham                    Lender: Acopia, LLC

Print Date:  February 2, 2022

Property Address:   6234 Danielson Loop
The Villages, FL 32163

This disclosure explains the effect of your election to pay a fee, commonly known as a discount point(s), which is a percentage of the loan amount and impacts the interest rate on the loan. The comparison below demonstrates the impact that payment of discount points(s) will have on the interest rate for this loan.

| | Starting Adjusted Interest Rate | | | Bought Down or Actual Rate |
|---|---|---|---|---|
| Interest Rate | 0.000 % | | Interest Rate | 3.750 % |
| Discount Points to Obtain Starting Adjusted Rate | 0.000 % | | Discount Points Paid to Obtain the Bought Down Rate | 0.249 % |

There are a total of  0.249 %          discount point(s) on this loan, which may be paid by the borrower, seller, lender and/or third party. You are paying   0.249 %          of the  0.249 %          discount points.

Your interest rate and discount point(s) may be subject to adjustment based on the risk factors of your mortgage application and credit profile. The interest rates and discount point(s) listed above may change prior to loan closing. In addition, if you have not locked in your interest rate, the rates and discount points reflected may change prior to closing the loan.

Exhibit 10   Last updated: April 2015
ICE Mortgage Technology, Inc.

I0743DPF  1019
I0743DPF (CLS)
02/01/2022 02:00 PM PST

Form SSA-89 (12-2020)
Discontinue Prior Editions
Social Security Administration

OMB No. 0960-0760

## Authorization for the Social Security Administration (SSA) To Release Social Security Number (SSN) Verification

| Printed Name: Jed Alan Graham | Date of Birth: November 18, 1956 | Social Security Number: 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 |
|---|---|---|

Reason for authorizing consent: (Please select one)

[x] To apply for a mortgage    [ ] To apply for a loan    [ ] To meet a licensing requirement
[ ] To open a bank account    [ ] To open a retirement account    [ ] Other
[ ] To apply for a credit card    [ ] To apply for a job

With the following company ("the Company"):

Company Name: Acopia Home Loans

Company Address: 850 NW Federal Hwy., Suite #233, Stuart, FL 34994

The name and address of the Company's Agent (if applicable):

Agent's Name: CoreLogic

Agent's Address: 10277 Scripps Ranch Blvd, San Diego, CA 92131

I authorize the Social Security Administration to verify my name and SSN to the Company and/or the Company's Agent, if applicable, for the purpose I identified. I am the individual to whom the Social Security number was issued or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult. I declare and affirm under the penalty of perjury that the information contained herein is true and correct. I acknowledge that if I make any representation that I know is false to obtain information from Social Security records, I could be found guilty of a misdemeanor and fined up to $5,000.

This consent is valid only for one-time use. This consent is valid only for 90 days from the date signed, unless indicated otherwise by the individual named above. If you wish to change this timeframe, fill in the following:

This consent is valid for 90_____ days from the date signed. _____ (Please initial.)

| Signature: | Date Signed: 2/2/22 |
|---|---|

Relationship (if not the individual to whom the SSN was issued): _____

### Privacy Act Statement Collection and Use of Personal Information

Sections 205(a) and 1106 of the Social Security Act, as amended, allow us to collect this information. Furnishing us this information is voluntary. However, failing to provide all or part of the information may prevent us from releasing information to a designated company or company's agent. We will use the information to verify your name and Social Security number (SSN). In addition, we may share this information in accordance with the Privacy Act and other Federal laws. For example, where authorized, we may use and disclose this information in computer matching programs, in which our records are compared with other records to establish or verify a person's eligibility for Federal benefit programs and for repayment of incorrect or delinquent debts under these programs. A list of routine uses is available in our Privacy Act System of Records Notice (SORN) 60-0058, entitled Master Files of SSN Holders and SSN Applications. Additional information and a full listing of all our SORNs are available on our website at www.socialsecurity.gov/foia/bluebook.

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 3 minutes to complete the form. You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. *Send to this address only comments relating to our time estimate, not the completed form.*

························································ TEAR OFF ····································

### NOTICE TO NUMBER HOLDER

The Company and/or its Agent have entered into an agreement with SSA that, among other things, includes restrictions on the further use and disclosure of SSA's verification of your SSN. To view a copy of the entire model agreement, visit http://www.ssa.gov/cbsv/docs/SampleUserAgreement.pdf.

# HOEPA/HMDA REQUIRED INFORMATION

Due to the amendments to Reg Z relating to higher priced mortgages for transactions secured by the consumer's principal residence, and HMDA requirements for rate spread reporting on all occupancy types, this form must be completed on all loans.

Please complete the below, and submit with the closed loan file for funding:

Borrower's Last Name: _Graham_____

Property Address: _6234 Danielson Loop, The Villages, FL. 32163_____

Loan Number: _104021117122_____

1. Application Date (as defined by RESPA and each Correspondent's policies and procedures) _____
   _January 3, 2022_____

2. Last date you (Correspondent) locked the loan with the borrower _January 18, 2022_____

3. If the loan is an ARM, list the initial index rate _N/A_____

   Note: The dates and rate information required above is not based on when the file was registered, delivered or locked with  Acopia, LLC.

This information is based on the same dates used to run testing and report data to HMDA.

Please refer to http://www.ffiec.gov/ratespread/default.aspx to access the FFIEC Rate Spread Calculator.

**IMPORTANT REMINDERS:** If the loan is secured by the consumer's principal dwelling and is a higher priced mortgage as defined in the amendments to Reg Z, all requirements have been met including, but not limited to the following: Repayment Ability; Income and Asset verification; and for transactions with application dates on or after April 1, 2010, an escrow account has been established (excluding co-ops).

The information contained in this form is not to be construed as legal advice, and is not meant to be used as a summary of the laws. If you have any questions related to this or any other law, you are strongly encouraged to contact your Legal and Compliance Counsel for further guidance.

ICE Mortgage Technology, Inc.

L00000HHR  1212
L00000HHR (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

## NOTICE OF SERVICING TRANSFER

Borrower Name & Address:
**Jed Alan Graham**

**6234 Danielson Loop
The Villages, FL 32163**

The servicing of your mortgage loan is being transferred, effective  April 1, 2022.    This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

**Acopia, LLC**

is now collecting your payments.

**Acopia, LLC**

will stop accepting payments received from you after  April 1, 2022.

**Acopia, LLC**

will collect your payments going forward. Your new servicer will start accepting payments received from you on **April 1, 2022.**
Send all payments due on or after  April 1, 2022    to  Acopia, LLC

at this address:
**306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072**

If you have any questions for either your present servicer, Acopia, LLC

or your new servicer  Acopia, LLC,

about your mortgage loan or this transfer, please contact them using the information below:

Current Servicer:
**Acopia, LLC
their Servicing Department
888-859-5537
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072**

New Servicer:
**Acopia, LLC
their Servicing Department
888-859-5537
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072**

LOAN #: 104021117122

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Acopia, LLC
[NAME OF PRESENT SERVICER]

February 2, 2022
Date

and

Acopia, LLC
[NAME OF NEW SERVICER]

February 2, 2022
Date

JED ALAN GRAHAM                                                          2/2/22
                                                                        DATE

LOAN #: 104021117122

## BORROWER'S CERTIFICATION & AUTHORIZATION

### Certification

The undersigned certify the following:

1. I/We have applied for a mortgage loan from Acopia, LLC

("Lender").

In applying for the loan, I/we completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that Lender reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the Financial Institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### Authorization to Release Information

To Whom It May Concern:

1. I/We have applied for a mortgage loan from Lender. As part of the application process, Lender and the mortgage guaranty insurer (if any) may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to Lender and to any investor to whom Lender may sell my mortgage, and to the mortgage guaranty insurer (if any), any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. Lender or any investor that purchases the mortgage or the mortgage guaranty insurer (if any) may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to Lender, the investor that purchased the mortgage, or the mortgage guaranty insurer (if any) is appreciated.

6. Mortgage guaranty insurer (if any):

### VA, FHA and USDA Loans

This is notice to you as required by the Right to Financial Privacy Act of 1978 that:

N/A    Department of Veterans Affairs (VA)
N/A    Department of Housing and Urban Development
N/A    Department of Agriculture (USDA)

has a right of access to financial records held by a financial institution in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to the agency indicated above without further notice or authorization, but will not be disclosed or released to another Government Agency or Department without your consent except as required or permitted by law. You are authorizing such disclosure for a period of time not in excess of three months. Prior to the time that your financial records are disclosed, you may revoke this authorization at any time; however, your refusal to provide the information may cause your application to be delayed or rejected. If you believe that your financial records have been disclosed improperly, you may have legal rights under the Right to Financial Privacy Act of 1978 [12 USCS Sections 3401 et seq.].

JED ALAN GRAHAM                                          2/2/22
                                                        DATE

ICE Mortgage Technology, Inc.

GBCT  0719
GBCT (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

## Florida Radon Gas Disclosure Statement

RADON GAS:

Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

By executing below, I acknowledge and understand the above statement.

_____    2/8/22
JED ALAN GRAHAM                         DATE

ICE Mortgage Technology, Inc.

FLRGDISC  0802
FLRGDISC (CLS)
02/01/2022 02:00 PM PST

Form W-9 (Rev. 10-2018)

previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 7. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor[*] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity[4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |

| For this type of account: | Give name and EIN of: |
|---|---|
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[*] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships*, earlier.

[*] Note: The grantor also must provide a Form W-9 to trustee of trust.

Note: If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records From Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

- Protect your SSN,
- Ensure your employer is protecting your SSN, and
- Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

Protect yourself from suspicious emails or phishing schemes. Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at *spam@uce.gov* or report them at *www.ftc.gov/complaint*. You can contact the FTC at *www.ftc.gov/idtheft* or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see *www.IdentityTheft.gov* and Pub. 5027.

Visit *www.irs.gov/IdentityTheft* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

## COMPLIANCE AGREEMENT

Borrower(s): Jed Alan Graham

Date: February 2, 2022

Loan Number: 104021117122

Property Address: 6234 Danielson Loop
The Villages, FL 32163

Lender: Acopia, LLC

The undersigned borrower(s), for and in consideration of Lender disbursing loan proceeds for the purchase or refinancing of, or construction of improvements on the aforementioned property, agree(s), if requested by the Lender or someone acting on behalf of said Lender, to fully cooperate in adjusting for clerical errors, on any or all loan closing documentation deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to, an investor, Fannie Mae (FNMA), Government National Mortgage Association (GNMA), Freddie Mac (FHLMC), Department of Housing and Urban Development, Department of Veterans Affairs or any municipal bonding authority.

The undersigned borrower(s) do hereby so agree and covenant as aforesaid in order to assure that the loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to said loan.

Dated effective this _____ day of _____, _____.

_____  2/2/22
JED ALAN GRAHAM                                    DATE

_____  2/2/22
MICHELE GRAHAM                                      DATE

State of ~~FLORIDA~~ South Carolina                    County of ~~SUMTER~~ Greenwood

The foregoing instrument was acknowledged before me by means of [✓] physical presence or [ ] online notarization, this 2nd day of FEBRUARY, 2022 by JED ALAN GRAHAM AND MICHELE GRAHAM, who is/are personally known to me or who has/have produced _____ as identification.

Christian Snead
Signature

Christian Snead
Printed Name

Notary Public
Title or Rank

_____
Serial Number (if any)

ICE Mortgage Technology, Inc.

GCOM 1115
GCOM (CLS)
02/01/2022 02:00 PM PST



## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

Exempt payee code.

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1 – An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2 – The United States or any of its agencies or instrumentalities

3 – A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4 – A foreign government or any of its political subdivisions, agencies, or instrumentalities

5 – A corporation

6 – A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7 – A futures commission merchant registered with the Commodity Futures Trading Commission

8 – A real estate investment trust

9 – An entity registered at all times during the tax year under the Investment Company Act of 1940

10 – A common trust fund operated by a bank under section 584(a)

11 – A financial institution

12 – A middleman known in the investment community as a nominee or custodian

13 – A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for... | THEN the payment is exempt for... |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

Exemption from FATCA reporting code. The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A – An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B – The United States or any of its agencies or instrumentalities

C – A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D – A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E – A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F – A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G – A real estate investment trust

H – A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I – A common trust fund as defined in section 584(a)

J – A bank as defined in section 581

K – A broker

L – A trust exempt from tax under section 664 or described in section 4947(a)(1)

M – A tax exempt trust under a section 403(b) plan or section 457(g) plan

Note: You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

Note: See What Name and Number To Give the Requester, later, for further clarification of name and TIN combinations.

How to get a TIN. If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at www.SSA.gov. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/Businesses and clicking on Employer Identification Number (EIN) under Starting a Business. Go to www.irs.gov/Forms to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to www.irs.gov/OrderForms to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

Note: Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

Caution: A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see Exempt payee code, earlier.

Signature requirements. Complete the certification as indicated in items 1 through 5 below.

1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. Real estate transactions. You must sign the certification. You may cross out item 2 of the certification.

4. Other payments. You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have

835

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code,* later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships,* earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code,* later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation

that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; do not leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note:** ITIN applicant: Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, C corporation, or S corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

### Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

### Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n)... | THEN check the box for... |
|---|---|
| • Corporation | Corporation |
| • Individual<br>• Sole proprietorship, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |



836

LOAN #: 104021117122

**Form W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

Give Form to the
requester. Do not
send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Jed Alan Graham

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☒ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C = C corporation, S = S corporation, P = Partnership) ▶ _____

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

123 Edinborough Circle

**6** City, state, and ZIP code

Greenwood, SC 29649

Requester's name and address (optional)

Acopia, LLC
306 Northcreek Blvd, Suite 100
Goodlettsville, TN 37072

**7** List account number(s) here (optional)

*Print or type.*
*See Specific Instructions on page 2.*

---

**Part I**  **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

4 7 2 – 6 8 – 3 7 9 0

or

Employer identification number

☐ ☐ – ☐ ☐ ☐ ☐ ☐ ☐ ☐

---

**Part II**  **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**

Signature of
U.S. person ▶

Date ▶

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting*, later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

- An individual who is a U.S. citizen or U.S. resident alien;

- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

- An estate (other than a foreign estate); or

- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

---

ICE Mortgage Technology, Inc.

Cat. No. 10231X

Form **W-9** (Rev. 10-2018)
GW9C (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

Acopia, LLC

## EQUAL CREDIT OPPORTUNITY ACT NOTICE

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); or because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is:

Federal Trade Commission
Consumer Response Center
Washington, DC 20580
877-382-4357

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered in determining your creditworthiness.

JED ALAN GRAHAM                                                          2/2/22
                                                                        DATE

ICE Mortgage Technology, Inc.

GNTC  0221
GNTC (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

## FLOOD HAZARD DETERMINATION

Date: February 2, 2022

Borrower(s) Name(s): Jed Alan Graham

Property Address: 6234 Danielson Loop, The Villages, FL 32163

Pursuant to federal regulations, the Lender has evaluated whether or not the improved real property or mobile home (the "Property") which will secure your loan is located in an area designated by the Federal Emergency Management Agency ("FEMA") as a "Special Flood Hazard Area." The Lender has determined that according to FEMA the Property is NOT located in a designated Special Flood Hazard Area. Therefore, flood insurance will NOT be required by the Lender as a condition of closing this loan transaction.

The National Flood Insurance Reform Act of 1994 provides that if the loan servicer at any time during the term of the loan determines that the Property is in a Special Flood Hazard Area the loan servicer must notify the borrower that flood insurance must be obtained. In these cases, the borrower has 45 days to respond and provide evidence of acceptable insurance to the loan servicer; if no response is made by the borrower, the loan servicer can force-place flood insurance after 45 days from the date of notification.

The undersigned Borrower(s) agree that flood insurance will be purchased if the Property is located in a Special Flood Hazard Area, and if flood insurance is available in the community. The undersigned Borrower(s) further agree that if the Property at any time is determined to be in a Special Flood Hazard Area, and if insurance is available, Borrower(s) will obtain and pay for such insurance in an amount as required by the Lender or loan servicer.

_____      2/2/22      _____
JED ALAN GRAHAM                                                                          DATE

ICE Mortgage Technology, Inc.

GFLD2 0303
GFLD2 (CLS)
02/01/2022 02:00 PM PST

LOAN #: 104021117122

14. if the security property is a condominium, the master insurance policy must contain a minimum of $1,000,000.00 coverage for "Directors & Officers" liability as well as "walls-in" coverage policy (commonly known as HO-6 policy). The policy must include replacement of improvements and betterment coverage to cover any improvements that you may have made to the unit. A copy of the master policy must be submitted to the Lender prior to funding.

AN ACCEPTABLE POLICY, WITH ENDORSEMENTS AND/OR ASSIGNMENTS, MUST BE FORWARDED TO AND RECEIVED BY LENDER BEFORE THIS LOAN CAN BE FUNDED; OTHERWISE, LENDER MAY BE FORCED TO PLACE INTERIM COVERAGE ON THE PROPERTY AT AN ADDITIONAL COST TO THE BORROWER(S).

Each of the undersigned acknowledges that he or she has read and understands the foregoing provisions and insurance requirements. This authorization will remain irrevocable for the undersigned as owner(s) of the subject property, and for any assignees, for as long as this loan remains on subject property.

_____    2/2/22
JEB ALAN GRAHAM                              DATE

LOAN #: 104021117122

### Page 2

## Who we are

| Who is providing this notice? | Acopia Home Loans |
|---|---|

## What we do

| How does Acopia Home Loans protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
|---|---|
| How does Acopia Home Loans collect my personal information? | We collect your personal information, for example, when you<br><br>• Apply for a loan                                    or<br>• Give us your contact information               or<br>• Give us your employment history               or<br>• Give us your income information                or<br>•<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br><br>• sharing for affiliates' everyday business purposes — information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |

## Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *Acopia Home Loans has no affiliates.* |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *Acopia Home Loans does not share with nonaffiliates so they can market to you.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• *Acopia Home Loans does not jointly market.* |

ICE Mortgage Technology, Inc.
Privacy Policy - No Affiliate No Opt Out

GPRIVNANOPO_S  0919
GPRIVOPOUTS (POD)
02/01/2022 02:00 PM PST



LOAN #: 104021117122
Rev. 1/11

| FACTS | WHAT DOES Acopia Home Loans<br>DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number    and  Employment information<br>• Credit history    and  Income<br>• Assets    and<br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share Customers    personal information to run their everyday business. In the section below, we list the reasons financial companies can share their Customers    personal information; the reasons  Acopia Home Loans chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Acopia Home Loans share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes — such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes — to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | No | We Don't Share |
| For our affiliates' everyday business purposes — information about your transactions and experiences | No | We Don't Share |
| For our affiliates' everyday business purposes — information about your creditworthiness | No | We Don't Share |
| For nonaffiliates to market to you | No | No |

| Questions? | Call 888-859-5537 | or go to www.myacopia.com; www.acopiahomeloans.com |
|---|---|---|

ICE Mortgage Technology, Inc.
Privacy Policy - No Affiliate No Opt Out

Page 1 of 2

GPRIVNANOPO_S  0919
GPRIVOPOUTS (POD)
02/01/2022 02:00 PM PST



# EXHIBIT E

## Acopia September 2025 Mailing

*4 pp. (cover letter, Notice of Servicing Transfer, envelope photograph)*

Pitney Bowes postage-meter imprint dated SEP 25 2025; origin ZIP 60047 (Lake Zurich, IL); $0.64 postage; presorted first class.

- p. 1 — Acopia transmittal cover letter dated September 19, 2025, signed "Cheryl O., Customer Service Department"
- pp. 2–3 — Notice of Servicing Transfer bearing printed date December 17, 2024 (unsigned; closing reads only "Acopia, LLC")
- p. 4 — Color photograph of the Acopia mailing envelope as received

*Received by Plaintiff on or about September 26-27, 2025*

*Graham v. PNC Bank, N.A., et al. — Case No. 5:26-cv-00054-AGM-PRL (M.D. Fla., Ocala Division)*
*Plaintiff's Opposition to Acopia's Motion to Dismiss Second Amended Complaint*



September 19, 2025

MS1140

Jed Alan Graham
6234 Danielson Loop
The Villages FL 32163-

Loan Number: 1462992320

Property Address: 6234 Danielson Loop
                  The Villages FL 32163

Dear Jed Alan Graham :

As requested, we have enclosed the following document(s):

RESPA

If you have any questions, please contact our Customer Service Department at 1-855-447-7210.

Sincerely,

Cheryl O.
CUSTOMER SERVICE DEPARTMENT

Enclosure(s)                                           QC302/CON

Mortgage Servicing
1 Corporate Drive, Suite 360, Lake Zurich, IL 60047-8945
CS 855.447.7210 / F 847.574.7659



EQUAL HOUSING
OPPORTUNITY


ACOPIA
HOME LOANS

1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945

· 2147664 000000237 4156
JED ALAN GRAHAM
6234 DANIELSON LOOP
THE VILLAGES, FL 32163-5941

Old Loan Number: 1462992320
New Loan Number: 00000001001212046

## NOTICE OF SERVICING TRANSFER

Dear Mortgagor(s):

You are hereby notified that the servicing of your mortgage loan, that is the right to collect mortgage payments from you, is being transferred from Dovenmuehle Mortgage, Inc., who has been subservicing your loan under a contractual agreement with Acopia, LLC, ("Present Servicer") to PNC Bank ("New Servicer"), effective January 1, 2025.

The transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments other than terms directly related to the servicing of your loan.

If you have any questions for either Present Servicer or New Servicer about your mortgage loan or this transfer, please contact them using the information below:

**Prior to Transfer Effective Date:**

Present Servicer
Acopia, LLC (by DMI)
Customer Service Department
1-855-447-7210
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945

**On and After Transfer Effective Date:**

New Servicer
PNC Bank
Customer Service Department
1-800-822-5626
PO Box 1820
Dayton, OH 45401-1820

Present Servicer is now collecting your payments. Present Servicer will stop accepting payments from you December 31, 2024.

New Servicer will collect your payments going forward. New Servicer will start accepting payments received from you on and after January 1, 2025.

**Send all payments due on or after January 1, 2025 to New Servicer at the Payment Address set forth below.**

The Payment Address for New Servicer is: PNC Bank Loan Payments
PO Box 771021
Chicago, IL 60677

2147664 000000237 4156

**If you are currently using an online service or 3rd party bill service to pay your mortgage payment, the payment information will need to be updated as directed by New Servicer.**

If your mortgage payments(s) are presently made by automatic deduction, this service will continue. PNC Bank may require the execution of additional documentation and/or impose other requirements in order to continue drafting. Please contact PNC Bank with any questions.

**Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by Present Servicer on or before its due date may not be treated by New Servicer as late, and a late fee may not be imposed on you.**

At year-end, you will receive two statements of account; one reflecting all payments made to Present Servicer and one from New Servicer. You will need to combine the appropriate information on both statements when filing your tax return for the applicable year.

Acopia, LLC

December 17, 2024



EXHIBIT E, page 4 — Acopia-branded mailing envelope as received by Plaintiff, showing Pitney Bowes postage-meter imprint: US POSTAGE, ZIP 60

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

JED ALAN GRAHAM, M.D.,

        Plaintiff,

v.                         Case No. 5:26-cv-00054-AGM-PRL

ACOPIA, LLC; PNC BANK, NATIONAL

ASSOCIATION; FEDERAL NATIONAL

MORTGAGE ASSOCIATION (Fannie Mae);

and ALL SUCCESSORS, SERVICERS,

ASSIGNEES, AND TRANSFEREES,

        Defendants.

_____/

**CERTIFICATE OF VERIFICATION**

    I, Jed Alan Graham, M.D., Plaintiff pro se in *Graham v. PNC Bank, N.A., et al.*, Case No. 5:26-cv-00054-AGM-PRL (M.D. Fla.), certify as follows regarding the **Plaintiff's Opposition to**

Page 1 of 4

**Defendant Acopia, LLC's Motion to Dismiss the Second Amended Complaint (Dkt. 36)**, dated April 24, 2026:

1. **Case law citations.** I have verified each case citation in the Opposition against an authoritative public source — U.S. Reports, the Federal Reporter, the Federal Appendix, the Westlaw database, Google Scholar, or the docket sheet of the issuing court, as applicable — for (a) existence at the stated reporter and volume, (b) accuracy of the pincite, and (c) current good-law status, including a check for subsequent history and negative treatment. No citation relies on a reversed, overruled, vacated, or abrogated decision. This includes the Marion County state-court action *Fed. Home Loan Mortg. Corp. v. Lorenzo*, No. 25CA002155AX (Fla. Cir. Ct. Marion Cnty.), whose docket sheet, Complaint (Doc. #7), and Answer and Affirmative Defenses (Doc. #24) I have personally obtained and confirmed contain the quoted language attributed to them.

2. **Statutes, rules, and regulations.** I have verified each statute, rule, and regulation cited in the Opposition against the current official text — U.S. Code (via House Office of Law Revision Counsel or govinfo.gov), Federal Rules (via the current official rules), the Code of Federal Regulations (via eCFR), the Florida Statutes, and the Fannie Mae Selling Guide — as of the date of this certificate. The cited subsection letters and numbers correspond to the current authoritative version.

3. **Record citations.** I have verified that each record citation in the Opposition (Dkt. XX, Ex. Y, ¶ Z) points to an item actually in the record of this case, and that the Opposition's characterization of that record item is supported by what the record item says.

4. **Quotations.** Each quoted string in the Opposition has been verified against its source, character-for-character, with bracketed insertions and ellipses used only to preserve grammatical fit or conserve space without altering meaning. No quotation has been attributed to a source that does not contain it at the cited location.

5. **Judge-specific requirements.** Neither the Honorable Anne-Leigh Gaylord Moe nor Magistrate Judge Philip R. Lammens currently maintains a posted standing order or chambers procedure that requires disclosure of the use of generative artificial-intelligence tools in the preparation of filings, and neither posts any other standing order bearing on the form or content of this Opposition. Nonetheless, in the interest of full transparency: I used Anthropic's Claude as a drafting and review aid in preparing this Opposition. All legal authorities and quotations were independently verified by me against authoritative public sources and the case record before signing. The final content reflects my own judgment as Plaintiff.

6. **Re-verification.** All citations, quotations, statutes, rules, and record references in any portion of the Opposition that was added, moved, or whose surrounding sentence was revised between the April 18, 2026 pre-filing verification report and today have been re-verified as of today's date. This includes (a) the three restored *Porciello* citations in Count III, (b) the *Lorenzo* characterization and its supporting quotations, (c) the updated Certificate of Service reflecting FedEx overnight delivery to the Clerk and electronic-mail service on counsel for all Defendants pursuant to Fed. R. Civ. P. 5(b)(2)(E), with formal CM/ECF service to follow upon docketing — service on Federal National Mortgage Association is effected through Bradley Arant Boult

Cummings LLP, which appeared on behalf of both PNC Bank, N.A. and FNMA in the joint Motion to Dismiss filed April 23, 2026, and (d) the updated residence address (The Villages, FL 32163) in the signature block.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on this 24th day of April, 2026.

Jed Alan Graham, M.D.

Plaintiff pro se

6234 Danielson Loop

The Villages, Florida 32163

Telephone: (864) 993-1984

Email: jedgrahammd@gmail.com



less.

to its
rely.
g for

the
ditions
ns,

PAP 20

Please recycle. See how we are connecting
the world in responsible and resourceful
ways at **fedex.com/sustainability**.
Recycling options may vary by location.

Scan to learn how we
can help make Earth
a priority together.

x 13-1/4 in
33.66 cm