MAY 8 2026 AM 10:14
FILED - USDC - FLMD - OCA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

JED ALAN GRAHAM, M.D.,  Case No.: 5:26-cv-00054-AGM-PRL

    Plaintiff,

v.

PNC BANK, NATIONAL ASSOCIATION;
ACOPIA, LLC; and FEDERAL NATIONAL
MORTGAGE ASSOCIATION ('FANNIE
MAE'),

    Defendants.

_____/

### PLAINTIFF'S OPPOSITION TO DEFENDANTS PNC BANK, N.A. AND FANNIE MAE'S MOTION TO DISMISS SECOND AMENDED VERIFIED COMPLAINT [DOC. 39]

Plaintiff Jed Alan Graham, M.D., proceeding pro se, respectfully submits this Opposition to the Motion to Dismiss filed by Defendants PNC Bank, National Association ('PNC') and Federal National Mortgage Association ('Fannie Mae' or 'FNMA') [Doc. 39, the 'Motion'], and states as follows:

### I. INTRODUCTION

Defendants ask this Court to dismiss a verified complaint with prejudice by inverting the pleading standard, misapplying binding precedent, and ignoring the very statute on which the central claim rests. The Motion's core defects are four:

**First,** the Motion deploys *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), to argue that no 'substantial controversy' exists absent imminent foreclosure. But *MedImmune*

1

expressly rejected the 'reasonable apprehension of imminent suit' test Defendants are reviving. *Id.* at 132 n.11. The Motion misrepresents the very holding it quotes.

**Second,** the Motion's RESPA QWR argument relies on *Bivens v. Bank of America, N.A.,* 868 F.3d 915 (11th Cir. 2017), but proves the Box 8807 designation only by reference to PNC's own *post-QWR* September 26, 2025 response letter — a circular bootstrap that *Bivens* forbids. *Bivens* requires designation be 'clear to a reasonable borrower' *before* the QWR is sent. *Id.* at 921. The Motion also entirely omits 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d)(2)(i)(A) — the post-Dodd-Frank servicer owner-identification duty squarely implicated by Plaintiff's QWR, with a 10-business-day response deadline.

**Third,** Fannie Mae has joined the Motion without offering one word of FNMA-specific argument. The Motion's TILA section concedes that § 1641(g) attaches to the loan owner and not the servicer — an argument that *identifies Fannie Mae* as the proper § 1641(g) defendant while simultaneously failing to defend Fannie Mae from that claim. The Motion never confronts Fannie Mae's distinct posture as the alleged owner of an unrecorded interest with no documented chain of title.

**Fourth,** four of the Motion's principal authorities — *Esteves, Lane, Giles,* and the affirmance in *Dixon* — are unpublished Eleventh Circuit decisions and are not binding precedent in this Circuit. 11th Cir. R. 36-2. The Motion presents them without that qualification, while several published authorities the Motion cites (*Weiland, Clarke, MedImmune*) in fact support the SAC.

On any of these four grounds the Motion fails. Together, they require denial in full. To the extent the Court identifies any pleading defect curable by amendment, Plaintiff respectfully

requests leave to file a Third Amended Complaint under Fed. R. Civ. P. 15(a)(2) and *Foman v. Davis*, 371 U.S. 178 (1962).

## II. RELEVANT PROCEDURAL POSTURE

The Motion was filed April 27, 2026, within the extension Magistrate Judge Lammens granted PNC by Order dated April 24, 2026 [Doc. 38]. Plaintiff does not challenge the Motion on timeliness grounds.

Two procedural realities, however, frame the present briefing. **First,** Fannie Mae is a co-movant. The Motion is filed jointly on behalf of 'Defendants,' but Fannie Mae's interests on the central TILA § 1641(g) issue are directly adverse to PNC's. PNC argues it is 'merely' the servicer (Mot. at 13–14) — an argument that, on its face, identifies Fannie Mae as the loan owner to whom § 1641(g) liability runs. Fannie Mae nevertheless joins the Motion without offering any defense to its own § 1641(g) exposure.

**Second,** counsel for Defendants formalized the dual representation on May 1, 2026 by filing Fannie Mae's Designation of Lead Counsel under M.D. Fla. Local Rule 2.02(a) [Doc. 47], confirming that the same Bradley Arant attorneys represent both PNC and Fannie Mae. Plaintiff preserves all rights with respect to the structural conflict between PNC's 'servicer-only' defense and Fannie Mae's owner posture, but does not rest the present Opposition on that issue.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). To survive dismissal, a complaint must allege facts that 'state a claim to relief

3

that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where, as here, the complaint is verified under 28 U.S.C. § 1746, its factual averments carry the weight of sworn testimony for purposes of the pleading standard. The Court must accept Plaintiff's verified allegations — including non-receipt of any § 1641(g) notice from Fannie Mae and the contents of PNC's QWR response — as true at this stage. Defendants may not inject contrary 'facts' through attorney argument or extrinsic exhibits. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Finally, four of the cases on which the Motion principally relies — *Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632 (11th Cir. 2015); *Lane v. Guaranty Bank*, 552 F. App'x 934 (11th Cir. 2014); *Giles v. Wells Fargo Bank, N.A.*, 519 F. App'x 576 (11th Cir. 2013); and the Eleventh Circuit affirmance in *Dixon v. Green Tree Servicing, LLC*, 859 F. App'x 373 (11th Cir. 2021) — are unpublished and are not binding precedent. 11th Cir. R. 36-2. The Motion presents them without that qualification.

## IV. ARGUMENT

### A. The Second Amended Verified Complaint Is Not a Shotgun Pleading.

Defendants invoke *Keith v. DeKalb County*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014), and *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), to argue that incorporation of preceding paragraphs in SAC ¶¶ 53, 61, and 65 makes the pleading a 'quintessential shotgun.' Mot. at 6. The argument fails on both authorities.

***Weiland* itself is the controlling authority and it cuts the other way.** The Motion quotes *Weiland*'s 'venial sin' language but omits the holding two paragraphs later: a complaint is

4

not subject to dismissal as a shotgun pleading where the 'allegations of the complaint are clear enough that the defendant can frame a responsive pleading.' 792 F.3d at 1322–23. The proof here is Defendants' own conduct. PNC issued a 53-page substantive response to Plaintiff's QWR on September 26, 2025 (SAC ¶ 35); litigated a prior Motion to Dismiss the First Amended Complaint addressing identical theories; and has now filed a fifteen-page Motion responding paragraph-by-paragraph to the SAC. Notice was — and is — adequate.

*Keith* **is distinguishable on its facts.** *Keith* addressed a plaintiff who had filed four successive complaints, each incorporating prior counts en masse, after the district court had warned him about shotgun pleading. 749 F.3d at 1043–45. The SAC is Plaintiff's first amendment in federal court (the FAC was filed in state court before removal); no court has previously identified a shotgun defect or directed an amendment. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018), counsels that dismissal is inappropriate where the plaintiff has not been given a prior opportunity to replead.

The incorporation in SAC ¶¶ 53, 61, and 65 is not blunderbuss adoption of unrelated material; it is the deliberate carry-forward of a common factual predicate — the chain-of-title and evidentiary deficiencies pleaded in ¶¶ 18–29 — that is genuinely common to the declaratory, quiet title, and RESPA counts. The Federal Rules of Evidence allegations Defendants criticize (Mot. at 6) are not 'immaterial facts.' They explain why Defendants' documentary submissions cannot establish, at the pleading stage, the chain of title on which their enforcement authority would have to rest. The proper remedy for any technical concern about the incorporation pattern, where one exists, is leave to amend under Rule 15(a)(2) — not dismissal. *Vibe Micro*, 878 F.3d at 1295.

## B. Plaintiff Has Stated a Claim for Declaratory Relief (Count I).

5

The Motion's declaratory-relief argument turns on a misreading of *MedImmune*. The Motion quotes *MedImmune*'s test — 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,' 549 U.S. at 127 — and then concludes that no such controversy exists because foreclosure is not 'imminent' and Plaintiff is current. Mot. at 7–8. That is the very 'reasonable apprehension of imminent suit' standard *MedImmune* rejected.

*MedImmune* disapproved the requirement that a declaratory plaintiff first incur imminent harm or breach an obligation before invoking the Declaratory Judgment Act. 549 U.S. at 132 n.11 (rejecting the Federal Circuit's 'reasonable apprehension of imminent suit' test). The Court explained that the Declaratory Judgment Act exists precisely to allow parties facing concrete adverse legal positions to obtain *pre-enforcement* clarification of their rights without first having to suffer the harm. *Id.* at 128–29. The Motion's argument inverts this holding.

Applying the correct standard, the SAC pleads a substantial, concrete, and presently existing controversy:

• PNC has affirmatively asserted enforcement authority over Plaintiff's Note and Mortgage by accepting and servicing payments and by issuing a 53-page September 26, 2025 QWR response that characterized PNC as the servicer of record. SAC ¶¶ 30–35.

• Fannie Mae publicly claims ownership of Plaintiff's loan through its official Loan Lookup tool. SAC ¶¶ 8, 39.

• PNC, in formal response to a CFPB complaint dated December 10, 2025, confirmed its servicer status but refused to identify the loan owner — labeling that statutorily required information 'confidential, irrelevant, and privileged.' SAC ¶¶ 35(c), 37.

6

- No assignment of the Mortgage from MERS to PNC, Fannie Mae, or any other party has been recorded in the Official Records of Sumter County, Florida. SAC ¶¶ 13, 22, 48.
- The only purported transfer mechanism for the Note is an unaffixed, blank-endorsed allonge first produced by Acopia in litigation in February 2026 — nearly four years after closing — that was not in PNC's QWR response and bears multiple authentication defects. SAC ¶¶ 18–21, 47.

Those allegations describe a controversy of sufficient immediacy and reality under *MedImmune*'s 'all the circumstances' test. The Motion's invocation of Plaintiff's current-on-payments status (SAC ¶ 16; Mot. at 8) does not defeat the controversy. The dispute is not over default but over authority — to whom payment is owed, who may grant relief or modification, and who could one day bring foreclosure. Those are quintessential questions for declaratory adjudication.

This is not a case about a borrower trying to avoid payment. Plaintiff has paid every required payment since February 2022 and is current as of the date of this filing. SAC ¶¶ 14, 16. **This is a case about determining who has the legal right to receive those payments — and who has the duty, under federal law, to identify themselves to the borrower as such.**

The Motion's other declaratory authorities are inapposite. *Esteves* is unpublished and non-binding (11th Cir. R. 36-2); it also addressed a complaint that pleaded no concrete enforcement assertion against the borrower, unlike the verified record here. *Countrywide Home Loans, Inc. v. Burnette*, 177 So. 3d 1032 (Fla. 1st DCA 2015), addressed a statute-of-limitations declaratory theory not presented here. *U.S. Bank N.A. v. Clarke*, 192 So. 3d 620, 622 (Fla. 4th DCA 2016), in fact *supports* Plaintiff: it holds that standing 'must be established at the inception' of any enforcement effort. That is precisely the declaration Plaintiff seeks here.

### C. Plaintiff Has Stated a Claim for Quiet Title (Count II).

7

The Motion deploys *Bank of New York Mellon v. Lopez*, 408 So. 3d 773 (Fla. 4th DCA 2025), and *Fontaine v. JP Morgan Chase Bank, N.A.*, 2017 WL 9398637 (M.D. Fla. 2017), to argue that Plaintiff lacks standing to challenge any 'purported assignment' of the Note. Mot. at 9. Those cases address *strangers* to an assignment — third parties unconnected to the underlying instrument. Plaintiff is not a stranger. He is the maker of the Note (SAC ¶¶ 7, 10) and, under Fla. Stat. § 673.3011, owes payment only to a person 'entitled to enforce' the instrument. The maker's interest in knowing to whom the duty to pay runs is direct and statutory; *Lopez* and *Fontaine* do not displace it.

The cloud-on-title theory is not, as Defendants frame it, that 'a mortgage exists therefore the title is clouded.' Mot. at 9. The cloud is the conjunction of: (i) no recorded assignment of the Mortgage from MERS to PNC or Fannie Mae (SAC ¶¶ 13, 22, 48); (ii) an allonge that was absent from PNC's QWR response, was first produced in litigation in February 2026, bears a blank endorsement (Fla. Stat. § 673.2051(2)), is unaffixed (Fla. Stat. § 673.2041(1)), and bears no authentication (FRE 901) (SAC ¶¶ 18–21); and (iii) PNC's affirmative refusal to identify the Note owner in response to Plaintiff's QWR (SAC ¶¶ 35(c), 50). That configuration meets *McDaniel v. McElvy*, 91 Fla. 770, 108 So. 820, 830 (1926)'s test that the cloud be shown with 'clearness, accuracy, and certainty.'

Defendants' citation to *Lane v. Guaranty Bank*, 552 F. App'x 934 (11th Cir. 2014) (Mot. at 10), is unpublished (11th Cir. R. 36-2) and distinguishable. *Lane* addressed a borrower who unilaterally demanded documentation and built a quiet-title theory on the bank's silence. Plaintiff here relies not on Defendants' silence but on Defendants' *affirmative* conduct: PNC's 53-page QWR response (which produced no allonge and no assignment), PNC's CFPB response (which

refused owner identification), and Acopia's litigation-produced unauthenticated allonge. The deficiencies Plaintiff alleges are documented in Defendants' *own* submissions.

Florida Statutes § 65.061 expressly authorizes a chancery suit to remove a cloud on title where a party 'claims to own' an interest the holder disputes. The SAC pleads each statutory element: legal title (SAC ¶ 54), Defendants' adverse claim (SAC ¶¶ 56–59), and the authority deficiency creating the cloud (SAC ¶¶ 18–22, 46–51, 57). That is enough at the pleading stage.

Defendants' positions are also internally inconsistent in a way that, alone, defeats dismissal. PNC characterizes its role as that of 'merely' a servicer (Mot. at 14); Fannie Mae's own publicly available Loan Lookup tool identifies Fannie Mae as the owner (SAC ¶ 39); PNC's QWR response refused to identify the owner at all (SAC ¶¶ 35(c), 50). These are not consistent assertions. They are a disputed issue of material fact that cannot be resolved on a motion to dismiss.

### D. Plaintiff Has Stated a Claim Under RESPA (Count III).

#### 1. The Motion's transferee-timing argument does not dispose of Count III.

Defendants advance a single argument under this heading: that PNC's December 18, 2024 notice is timely as a transferee under § 2605(c)(2)(A). Mot. at 10–11. On the strength of that single argument, Defendants seek dismissal of *'Plaintiff's claim against PNC under section 2605'* with prejudice. *Id.* That sweep is unwarranted. Even on its own terms, Defendants' transferee-timing argument cannot dispose of Count III, which rests on multiple independent statutory bases the Motion does not address.

**First,** Count III alleges that Acopia, as transferor, violated § 2605(b)(1) by issuing notice dated December 17, 2024 — only 14 days before the January 1, 2025 effective date — and that Plaintiff never received Acopia's notice at all (SAC ¶¶ 33, 41, 62). The Motion does not address

9

that allegation. The transferor violation persists independently and is the subject of Plaintiff's separately filed Opposition to Acopia's Motion to Dismiss [Doc. 40].

**Second,** Count III alleges PNC's QWR violations under § 2605(e) and § 2605(k)(1)(D) (SAC ¶¶ 34–35, 63). The Motion's transferee-timing argument does not reach those theories. They are addressed below.

**Third,** the relationship between § 2605(b)'s 'Each servicer' obligation and § 2605(c)'s transferee-specific timing rule — and in particular whether (b) and (c) operate cumulatively as to a transferee like PNC — is a question of statutory construction this Court need not reach to deny the relief Defendants seek. Plaintiff reserves all arguments on that question for proceedings where it is squarely presented.

### 2. The QWR violations defeat the Motion.

Before reaching Defendants' three QWR arguments, one binding Eleventh Circuit authority disposes of all three. In *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241 (11th Cir. 2016), the Eleventh Circuit held that a servicer cannot defeat a § 2605(e) RESPA claim at the 12(b)(6) stage by relying on its own post-QWR response letter. The Court was categorical:

> If servicers want to try to shelter behind their RESPA response letters, they must provide a more comprehensive, supported explanation of their findings, or else introduce the supporting attachments into the record and convert their motions to dismiss into motions for summary judgment.

*Renfroe*, 822 F.3d at 1247–48. The reason is fundamental: any contrary rule "would essentially allow the introduction of hearsay at the motion-to-dismiss stage, because it would force courts to accept secondhand descriptions of documents without any way of assessing the validity of those descriptions." *Id.* at 1247 n.2.

Defendants' Composite Exhibit B is precisely what *Renfroe* forbids: PNC's own post-QWR response letter, offered as proof of (i) the QWR address designation, (ii) PNC's

compliance with its statutory duties, and (iii) the absence of a 'servicing-related' request. Mot. at 12. Defendants neither attached the underlying records on which the response letter purports to rest nor moved to convert their Motion to one for summary judgment. *Renfroe* is dispositive: Defendants' use of Composite Exhibit B as the evidentiary foundation for their QWR defenses cannot stand at the pleading stage. *Renfroe* also reaffirms the principle governing every aspect of this analysis: RESPA, 'as a remedial consumer-protection statute, should be construed liberally in order to best serve Congress's intent.' *Renfroe*, 822 F.3d at 1245 (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998)).

Even if Defendants' three arguments were considered on their merits — which the Court need not do — each fails.

**(a) The *Bivens* argument is circular.** *Bivens* requires that a designated QWR address be 'clear to a reasonable borrower' *before* the QWR is sent. 868 F.3d at 921. The Motion proves Box 8807 as the designated address by reference to one document only: PNC's September 26, 2025 response to Plaintiff's QWR. Mot. at 12 (citing 'PNC's response dated September 26, 2025'). A document created *after* the QWR was received cannot retroactively designate the address to which the QWR should have been sent. *Bivens* forecloses precisely this bootstrap. The December 18, 2024 Notice of Servicing Transfer (Mot. Ex. A) — the document that *Bivens* contemplates as the source of the designation — does not designate Box 8807. All PNC correspondence prior to September 26, 2025 directed Plaintiff to PO Box 1820. That is the address to which Plaintiff sent the QWR. SAC ¶ 34; Mot. Ex. B.

**(b) PNC's substantive 53-page response waives any address defense.** PNC accepted the QWR, processed it, and issued a 53-page substantive response on September 26, 2025 (SAC ¶ 35). Having accepted and responded on the merits, PNC cannot now invoke a procedural

address objection. *See Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676, 689 (7th Cir. 2011) (RESPA places the burden of compliance on the servicer; servicer's affirmative response to a borrower request triggers § 2605(e) duties even where the request departs from form). At minimum, the Motion does not address — and cannot resolve at the pleading stage — whether PNC's voluntary substantive response waives a strict-form objection.

**(c) The Motion entirely omits 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36 — the dispositive provisions.** Congress amended RESPA in 2010 (Dodd-Frank § 1463) to add § 2605(k)(1)(D), which makes it unlawful for a servicer to 'fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan' in response to information requests. Regulation X implements that provision at 12 C.F.R. § 1024.36, and § 1024.36(d)(2)(i)(A) requires the servicer to respond, *within ten business days,* to a borrower's request for *'the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan.'* 12 C.F.R. § 1024.36(d)(2)(i)(A). The 10-day deadline is exclusive to owner-identification requests and cannot be extended; all other information requests are governed by the 30-business-day default in § 1024.36(d)(2)(i)(B). Congress and the CFPB built that fast track for a reason: borrowers are entitled to know — promptly — to whom their obligation runs.

Plaintiff's QWR expressly requested owner identification (SAC ¶ 34). PNC's 53-page response did not provide it. Instead, PNC labeled the statutorily required information *'confidential, irrelevant, and privileged'* (SAC ¶¶ 35(c), 50). A response that refuses to identify the loan owner — by labeling that information 'confidential, irrelevant, and privileged' — fails the duty § 2605(k)(1)(D) imposes. It is the very violation the statute was designed to prevent. The Motion does not mention § 2605(k)(1)(D) or § 1024.36 anywhere.

Defendants' reliance on *Helman* (S.D. Fla. 2014) and *Smith v. Bank of America Home Loans*, 968 F. Supp. 2d 1159 (M.D. Fla. 2013), is misplaced. Both decisions predate the build-out of Reg X § 1024.36 (effective January 10, 2014, with the relevant information-request provisions taking practical effect later) and apply a narrower 'servicing' definition that has been superseded by the Dodd-Frank amendments. The Eleventh Circuit has recognized the post-2010 framework as imposing affirmative information duties beyond payment processing. *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (acknowledging Reg X-implemented duties).

Plaintiff's QWR satisfies the five-element test the Motion itself invokes. *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1348 (S.D. Fla. 2016): (1) PNC is the loan servicer (conceded; SAC ¶ 30); (2) PNC received the September 18, 2025 request (SAC ¶ 34; Mot. Ex. B); (3) the request relates to servicing — it asks for information § 1024.36 expressly identifies as servicer-duty information, including owner identification; (4) PNC failed to respond adequately (failed to produce the allonge or any assignment, refused owner identification) (SAC ¶ 35); and (5) Plaintiff alleges actual and statutory damages (SAC ¶¶ 4, 64). At the pleading stage, that is all Rule 8 requires.

**(d)  PNC's own documents are internally contradictory and defeat any trustworthiness presumption.** PNC's December 18, 2024 Notice of Servicing Transfer says only the servicing transferred and 'nothing else about your mortgage will change.' SAC ¶¶ 30–31. PNC's September 26, 2025 QWR response uses the word 'acquired' in describing PNC's relationship to the loan. SAC ¶¶ 35(d), 38. Those are not consistent positions. Internal contradictions of that kind are 'circumstances indicating a lack of trustworthiness' under Fed. R.

13

Evid. 803(6) and defeat the very business-records presumption Defendants must invoke to use Composite Exhibit B at the 12(b)(6) stage at all.

### E. The TILA Claim Survives — and FNMA Is the Proper § 1641(g) Defendant.

Defendants advance a single textual argument under this heading: that 15 U.S.C. § 1641(g)'s ownership-transfer notice obligation runs against 'the creditor that is the new owner or assignee of the debt,' not against a servicer — and that PNC was 'merely transferred servicing rights.' Mot. at 14. The argument fails as a basis for dismissal of Count IV against Defendants for two independent reasons.

**First, even on its own terms, Defendants' argument identifies Fannie Mae — not Plaintiff — as the entity facing § 1641(g) liability.** By Defendants' own framing, ownership of the loan lies elsewhere than PNC. The SAC alleges that 'elsewhere' is Fannie Mae. SAC ¶¶ 8, 39, 66–70. Defendants do not contend that Fannie Mae is exempt from § 1641(g) (it is not — Regulation Z, 12 C.F.R. § 1026.39, contains no investor exemption applicable here). Defendants do not deny that Fannie Mae claims ownership of Plaintiff's loan (Fannie Mae's own Loan Lookup tool publicly so identifies it; SAC ¶ 39). Defendants do not represent that Fannie Mae ever sent Plaintiff the § 1641(g) notice. The SAC's verified allegation that no creditor has provided § 1641(g) notice (SAC ¶ 69) thus stands unrebutted on this Motion.

**Second, the SAC's allegations encompass Fannie Mae as the alleged § 1641(g) defendant on the face of Count IV.** Paragraph 69 alleges that 'no creditor has provided Plaintiff with the notice required by 15 U.S.C. § 1641(g)' — an allegation that, by its terms, runs against any entity claiming creditor status, including Fannie Mae as the alleged owner-creditor identified by Fannie Mae's own Loan Lookup tool. SAC ¶¶ 39, 69. The need to identify which entity is the proper § 1641(g) defendant in the count caption is itself a direct and foreseeable consequence of

PNC's refusal in its September 26, 2025 QWR response to identify the loan owner. SAC ¶¶ 35(c), 50, 70. Plaintiff ascertained Fannie Mae's claimed ownership only through public sources (the Fannie Mae Loan Lookup tool, SAC ¶¶ 39, 69) and through Acopia's litigation production (Doc. 17 Ex. A). Should the Court read Count IV's caption as limiting the count to PNC, Plaintiff requests leave under Fed. R. Civ. P. 15(a)(2) to make Fannie Mae's status as the § 1641(g) defendant explicit in Count IV's caption. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave 'shall be freely given when justice so requires'). The four *Foman* factors all favor amendment: no undue delay (Fannie Mae has been a Defendant since the SAC filed April 8, 2026); no bad faith; no prior amendment failures relating to this issue; no prejudice (Fannie Mae is represented by the same counsel as PNC and has fully appeared, including by Doc. 47).

The Motion does not contest the timeliness of Count IV. It is nonetheless preserved by the SAC's equitable-tolling and discovery-rule allegations (SAC ¶ 70B), supported by *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998) (TILA limitations subject to equitable tolling where the violation is concealed). PNC's affirmative labeling of statutorily required owner-identification information as 'confidential, irrelevant, and privileged' (SAC ¶¶ 35(c), 50) is active concealment within the meaning of *Ellis*.

To put a finer point on the joint posture this Motion presents: PNC says PNC is the servicer. Fannie Mae's own Loan Lookup tool identifies Fannie Mae as the owner. The same Bradley Arant attorneys represent both. Yet neither Defendant has provided Plaintiff with the § 1641(g) notice the statute requires from the owner; neither has even alleged that any such notice was provided. **The conflict between PNC's 'servicer-only' posture and Fannie Mae's ownership claim is Defendants' problem, not Plaintiff's — and it cannot be resolved by a joint motion that takes both positions and defends neither.**

15

### F. Fannie Mae's Joinder Without Argument Cannot Support Dismissal as to FNMA.

A movant under Rule 12(b)(6) bears the burden of identifying a defect in the complaint as to each claim and each defendant for which dismissal is sought. See Fed. R. Civ. P. 7(b)(1)(B) (motion must 'state with particularity the grounds for seeking the order'). The Motion is filed jointly on behalf of PNC and Fannie Mae but contains zero argument addressed to Fannie Mae's distinct posture as the alleged owner of the Note and Mortgage:

• Section II.A (Declaratory Relief) argues 'no imminent foreclosure' and 'current on payments' — both PNC-servicer-focused. Neither addresses Fannie Mae's claimed ownership of an unrecorded interest, the absence of any documented chain of title to Fannie Mae, or the controversy Plaintiff has with Fannie Mae specifically as the alleged owner.

• Section II.B (Quiet Title) argues generic 'no cloud' and stranger-to-assignment law — none of it keyed to Fannie Mae's distinct alleged ownership posture or to the absence of any recorded assignment from MERS to Fannie Mae.

• Section II.C (RESPA) is, by Defendants' own framing, against PNC alone (Count III is pleaded against PNC and Acopia). It does not seek Fannie Mae's dismissal from any RESPA claim.

• Section II.D (TILA) argues that *PNC* is not the proper § 1641(g) defendant. That argument simultaneously identifies Fannie Mae as the proper defendant without defending Fannie Mae from the claim.

Fannie Mae has not carried its movant's burden as to any count. The Motion as to Fannie Mae should be denied for the additional, independent reason that it fails to articulate any FNMA-specific basis for dismissal of any claim against Fannie Mae. **A defendant cannot dismiss claims by the act of joining a co-defendant's motion and saying nothing more.**

16

## V. ALTERNATIVE REQUEST FOR LEAVE TO AMEND

Should the Court identify any pleading defect in the SAC that it considers curable by amendment rather than denial of the Motion, Plaintiff respectfully requests leave to file a Third Amended Complaint under Fed. R. Civ. P. 15(a)(2) limited to: (1) naming Fannie Mae expressly in Count IV's caption as a § 1641(g) defendant — an addition made necessary by Defendants' own framing of PNC as 'merely' a servicer and by PNC's prior refusal to identify the loan owner in response to Plaintiff's QWR; and (2) restructuring the format of ¶¶ 53, 61, and 65 if the Court accepts Defendants' shotgun-pleading characterization of those incorporation paragraphs. The four *Foman v. Davis* factors all favor amendment: there has been no undue delay (this litigation is less than five months old in federal court); no bad faith; no prior failures of amendment relating to either item; and no prejudice — the case remains at the pleading stage, all parties have appeared, and Fannie Mae shares counsel with PNC. 371 U.S. at 182.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court DENY Defendants' Motion to Dismiss [Doc. 39] in its entirety, or, in the alternative, grant Plaintiff leave to file a Third Amended Complaint as set forth above.

Dated: *May 8*, 2026

Respectfully submitted,

**JED ALAN GRAHAM, M.D., Pro Se**
6234 Danielson Loop
The Villages, FL 32163
Phone: 864-993-1984

17

Email: jedgrahammd@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _May 8_, 2026, the foregoing was filed in paper form with the Clerk of Court for the United States District Court for the Middle District of Florida, Ocala Division, located at 207 NW Second Street, Ocala, FL 34475. Pursuant to this Court's Order at Doc. 18 (Mar. 2, 2026), Plaintiff is authorized to receive Notices of Electronic Filing by email; upon the Clerk's docketing of this filing, the Court's CM/ECF system will generate a Notice of Electronic Filing serving all counsel of record, including:

Lauren G. Raines, Esq.
Jessica N. Faucher, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1001 Water Street, Suite 1000
Tampa, FL 33602
lraines@bradley.com / jfaucher@bradley.com
Counsel for Defendants PNC Bank, N.A. and Federal National Mortgage Association

Ivan J. Reich, Esq.
NASON YEAGER GERSON HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
ireich@nasonyeager.com
Counsel for Defendant Acopia, LLC

_____
JED ALAN GRAHAM, M.D., Pro Se

18