IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

JED GRAHAM

      Plaintiff,                              Case No.: 5:26-cv-00054-AGM-PRL

vs.

ACOPIA, LLC; PNC BANK NATIONAL
ASSOCIATION; SALLIE MAE, INC.;
and any and all SUCCESSOR ENTITIES,
SERVICERS, ASSIGNEES, OR TRANSFEREES,

      Defendants.

_____/

**DEFENDANT, ACOPIA, LLC'S MOTION FOR SUMMARY JUDGEMENT AGAINST SECOND AMENDED COMPLAINT (D.E. 33) WITH INCORPORATED MEMORANDUM OF LAW**

Defendant, Acopia, LLC ("Acopia"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56, and Local Rule 3.01, respectfully moves this Honorable Court for summary judgement against Plaintiff, Jed Graham's ("Plaintiff' or "Graham") Second Amended Complaint (D.E. 33) (the "Complaint"), as plead against Acopia, in that there is no genuine dispute of material fact and Acopia is entitled to judgment as a matter of law on and against the Complaint,  and in support thereof states as follows:

**I.      Introduction**

Plaintiff has brought a 71 paragraph, four count Complaint, for (i) a declaratory Judgment against all defendants in Court I ("Count I" or the "Declaratory Judgement Count"), (ii) for quiet title against all defendants in Court II ("Count II" or the "Quiet Title Count"), (iii) for violations of the Real Estate Settlement Procedures Act, 12 U.S,C. §2601(b) ("RESPA"), against Acopia and Defendant, PNC Bank, N.A. ("PNC") ("Count III" or the "RESPA Count"), and for violations of the Truth In Lending Act, 15 U.S.C. §1641(g) ("TILA") against just Defendant, PNC ("Count IV"

1

or the "TILA Count")[1] all related to a loan, note and mortgage that Acopia no longer owns nor services, and has in fact disclaimed any interest it had or might have.[2]

## II.    Motion for Summary Judgement

There is no genuine dispute of material fact and Acopia is entitled to judgment as a matter of law on and against the Complaint,  which fails to state any claim against Acopia for multiple independent reasons: (1) Plaintiff fails to adequately allege specific actionable conduct by Acopia in Counts I and II; (2) Count III fails to adequately plead actual damages, or the requisite pattern-of-practice for statutory damages under 12 U.S.C. §2605(f); and (3) Plaintiff's claim for attorney's fees, under ¶65 of Count II, and ¶F of its Prayer for Relief, is legally unavailable because Plaintiff is proceeding pro se and is not an attorney, and which request has now been withdrawn.

## III.    Facts Alleged as They Relate to Acopia

All that Plaintiff has plead against Acopia is (i) that it is the original lender and payee on Plaintiff's February 2, 20222 Promissory Note (the "Note")[3], (ii) who assigned internal account #1001212046 upon boarding the loan[4], (iii) that the Mortgage pledged as collateral on Plaintiff's real property with an address of 6234 Danielson Loop, The Villages, Florida 32163, securing the Note names Mortgage Electronic Registration System ("MERS") solely as nominee for Acopia[5], (iv) that Plaintiff made all of its loan payments prior to Acopia's transfer of its serving to PNC on January 1, 2025 to Acopia's contractual sub-servicer, and not to Acopia[6]. (v) that Plaintiff has

---

[1] Since Count IV is plead just against PNC and not Acopia, there is no need for Acopia to address Count IV in this motion to dismiss.

[2] D.E. 17, Acopia's Disclaimer of Interest.

[3] ¶7 & ¶10 of the Complaint.

[4] ¶11 of the Complaint.

[5] ¶13 of the Complaint.

[6] ¶15 of the Complaint.

2

always been current, and never delinquent, on the loan[7], (vi) that Acopia, sent a single servicer transfer notice to Plaintiff, which he alleges he never received, on information and belief, on or about December 17, 2024, with respect to the effective January 1, 2025 transfer of the servicing of his loan to PNC, which he inaccurately calculates is 14 days, rather than actually 15 days, claiming said notice by Acopia to be in violation of 12 U.S.C. §2605(b)(1)'s 15 day servicing notice requirement[8], (vii) that there are three alleged deficiencies in the allonge transferring the loan documents to PNC, that doesn't affect Acopia, but rather PNC's ability to enforce the loan documents[9], (viii) that the allonge is allegedly unauthenticated, in blank, naming Acopia as payee[10], (ix) that while Acopia originated the loan, Acopia has not demonstrated any interest in the Note or Mortgage at issue, and acknowledges that Acopia currently has no interest in them[11], along with (x) conclusory claims in Count III for actual damages, statutory damages, and attorney's fees[12]. As such, Acopia is entitled to summary judgement on all counts of the Complaint as plead against it.

## IV.    ARGUMENT

### i.    Legal Standard on a Motion for Summary under Fed. R. Civ. P. 56

---

[7] ¶16 of the Complaint.

[8] ¶¶17, 34 & 63 of the Complaint.

[9] ¶¶19 through 22 of the Complaint.

[10] ¶¶47 & 48 of the Complaint.

[11] ¶59 of the Complaint.

[12] ¶65 of the Complaint.

4922-5794-5015, v. 1

Fed. R. Civ. P. 56(a) requires summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c).

The federal summary judgment standard is articulated in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (collectively known as the "*Celotex* Trilogy")." "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part" of rules aimed at "the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. Under the Celotex Trilogy, the courts apply the same standard for summary judgment as is for the standard in deciding a directed verdict standard. *See Anderson*, 477 U.S. at 251 (noting that "the inquiry under each is the same"). Both standards focus on "whether the evidence presents a sufficient disagreement to require submission to a jury." *Id*. at 251-52. And under both standards "[t]he substantive evidentiary burden of proof that the respective parties must meet at trial is the only touchstone that accurately measures whether a genuine issue of material fact exists to be tried." citing, *Thomas Logue & Javier Alberto Soto, Florida Should Adopt the Celotex Standard for Summary Judgments*, 76 Fla. Bar J., Feb. 2002, at 26; *see also Anderson*, 477 U.S. at 255.

Movants, like Acopia herein, can satisfy its initial burden of production in either of two ways: "[I]f the nonmoving party must prove X to prevail [at trial], the moving party at summary judgment can either produce evidence that X is not so, or point out that the nonmoving party lacks the evidence to prove X." *Bedford v. Doe*, 880 F.3d 993, 996-97 (8th Cir. 2018). Acopia in this Summary Judgment Motion has done both.

4922-5794-5015, v. 1

The correct test for the existence of a genuine factual dispute is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court is to view the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. . . . The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1307–08 (S.D. Fla. 2014) (J. Bloom).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact, and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970); *American Viking Contractors, Inc. v. Scribner Equipment Co.,* 745 F.2d 1365 (11th Cir. 1984). To prevail on a motion for summary judgment, the movant must show that the [non-movant] has offered no evidence to support an essential element of his case, or present affirmative evidence that [non-movant] will be unable to prove one or more essential elements of the case at

5

trial. *Celotex Corp v Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant successfully negates an essential element of the [non-movant]'s case, the burden shifts to the [non-movant] to come forward with evidence demonstrating a genuine issue of material fact for trial. *Id.; American Viking* at 1369.

However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48; 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Id* at 248. A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the moving party has carried its initial burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348, 89 L.Ed. 2d 538 (1986). Thus, "[a] mere scintilla of evidence in support of the non-moving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla.,* 358 F.3d 859, 860 (11th Cir. 2004). Likewise, "`unsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion'" and "does not create a genuine issue of fact." *Cordoba v. Dillard's Inc.,* 419 F.3d 1169 (11th Cir. 2005).

Rather, the party opposing summary judgment must either point to evidence in the record, or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex Corp,* 477 U.S. at 333 n. 3 ("Once the moving party has attacked whatever record evidence — if any — the nonmoving party purports to rely upon, the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence

4922-5794-5015, v. 1

attacked in the moving party's papers; (2) produce additional evidence showing the evidence of a genuine issue for trial as provided in Rule 56(c), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f). *Andersen,* 477 U.S. at 250.

In evaluating the evidence presented at the summary judgment phase, this Court should be mindful that "bare and self-serving" allegations that are not based on personal knowledge are inadequate to survive summary judgment. *Stewart v. Booker T. Washington Insurance,* 232 F.3d 844, 851 (11th Cir. 2000).

As demonstrated herein below, based upon the Federal summary judgement standard, this Court should enter summary judgment in favor of Acopia against Plaintiff on all three counts plead against it in the Complaint because Plaintiff's three counts as plead against Acopia are barred, as a matter of law, as such, the Complaint as plead against Acopia should have summary judgment entered in Acopia's favor and against Plaintiff upon it, pursuant to Fed. R. Civ. P. 56, since there is no genuine dispute as to any material fact.

### ii.    Count I for Declaratory Relief

The Complaint lacks any specific allegations as to Acopia in Count I. Plaintiff alleges no actionable conduct by Acopia in Count I warranting declaratory relief. Merely identifying Acopia as the original lender is insufficient. The Complaint violates the Eleventh Circuit's well-established prohibition against shotgun pleading by asserting Count I against all defendants collectively without distinguishing Acopia's role or current legal position. The Eleventh Circuit has repeatedly condemned pleading practices that fail to identify which defendant is responsible for which alleged conduct. In cases addressing this issue, courts have emphasized that when multiple defendants are sued, the complaint must contain sufficient factual matter to raise a reasonable expectation that discovery will reveal evidence supporting the claim against each defendant individually, and that

lumping defendants together without distinguishing their conduct or roles renders the complaint deficient.

Here, the Complaint asserts Count I seeking declarations regarding PNC's authority and enforceability against Acopia without specifying what declaration is sought against Acopia or what present conduct by Acopia supports such relief. The allegations regarding loan origination, allonge production, and disclaimer are not tied to any current enforcement activity or legal position that Acopia maintains. The Eleventh Circuit in *Colburn v. Odom*, 911 F.3d 1110 (11th Cir. 2018) addressed the need for defendant-specific allegations when it vacated a decision where the complaint failed to specify which magistrate allegedly violated the plaintiffs' rights, rendering the claims too vague to support relief, and in doing so emphasized that a complaint must tie allegations to specific defendants and actionable conduct to survive dismissal. This failure to plead Acopia-specific actionable conduct violates the Eleventh Circuit's pleading standards. As such, Count I against Acopia should have summary judgement entered against it as a matter of law.

The Declaratory Judgment Act, 28 U.S.C §2201, requires an "actual controversy" between parties with adverse legal interests. The Eleventh Circuit has interpreted this to mean that the controversy must be real, immediate, and substantial, rather than conjectural or hypothetical. *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342 (11th Cir. 1999) (holding that the plaintiff must allege facts showing a substantial continuing controversy and a definite threat of future injury, and that speculative or contingent claims do not satisfy this requirement): *Emory v. Peeler*, 756 F.2d 1547 (11th Cir. 1985) (the controversy must create a real and immediate threat of injury, and speculative fears of harm are insufficient).

Acopia's disclaimer of interest is fatal to Plaintiff's declaratory judgment claim against it.[13]

---

[13]*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)(without the defendant holding an interest, there was no "substantial controversy" between the parties, which requires a "substantial controversy" of "sufficient

The Declaratory Judgment Act, 28 U.S.C §2201, provides that in a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration. A party that has disclaimed interest in the subject matter cannot be the proper defendant in a declaratory judgment action seeking to establish rights or obligations. By disclaiming interest, Acopia has removed itself from the controversy and eliminated any present legal position that Plaintiff could challenge through declaratory relief.

The fact that Acopia originated the loan and later produced an allonge does not create a present controversy with Acopia. These historical facts relate to Acopia's past role in the transaction, not its current legal position or enforcement authority. Once Acopia disclaimed interest, it ceased to be a party asserting enforceable rights in the loan or note. Plaintiff's request for declarations regarding enforceability and authority cannot logically be directed at a party that has explicitly disclaimed any interest in asserting such rights.

As the Supreme Court has articulated in *MedImmune*, a declaratory judgment action requires the existence of an actual controversy, meaning a real and substantial dispute between parties having adverse legal interests. Acopia's disclaimer of interest eliminates any such controversy. By disclaiming interest, Acopia has taken itself out of the dispute and no longer asserts any legal position that Plaintiff can challenge.

The historical facts alleged, that Acopia originated the loan and later produced an allonge,

---

immediacy and reality" to warrant declaratory judgment); *Ronkowski v. United States,* 2018 U.S. Dist. LEXIS 86414 (W.D. Wis. 2018)(where the defendant disclaimed any interest in the property at issue, filing a formal "Disclaimer of Interest" document, the court held that such a disclaimer deprived it of jurisdiction over the plaintiff's declaratory relief claim); *Gokhberg v. Cap. One, N.A.,* 2026 U.S. Dist. LEXIS 70109 (E.D.N.Y. 2026)(dismissed the plaintiff's declaratory judgment claim after determining that the defendant no longer held any interest in the property or mortgage at issue reasoning that without the defendant holding an interest, there was no "substantial controversy" between the parties, so that the absence of a substantial controversy rendered declaratory relief unwarranted); *Nike, Inc. v. Already, LLC*, 663 F.3d 89 (2d. Cir. 2011)(a covenant not to sue, which broadly disclaimed any intent to pursue legal action against the defendant for both past and future conduct, eliminated any justiciable "case or controversy" under Article III, in that the breadth of the covenant rendered the threat of litigation remote or nonexistent, thereby precluding declaratory relief).

4922-5794-5015, v. 1

do not establish present adversity. These facts relate to Acopia's past role in the transaction. Plaintiff does not allege that Acopia is currently asserting any rights, attempting to enforce the loan, or maintaining any legal position regarding the note or mortgage. Without present adversity, the court lacks subject matter jurisdiction over a declaratory judgment claim against Acopia.

Plaintiff's own allegations establish that the actual controversy is with PNC, not Acopia. The Complaint seeks declarations that PNC lacks enforceable interest and authority. This framing demonstrates that Plaintiff's dispute concerns PNC's current legal position and enforcement authority, not Acopia's. Acopia is not asserting any rights that Plaintiff seeks to challenge through declaratory relief.

Acopia's origination of the loan and production of an allonge in litigation does not unto itself establish a controversy. Origination is a historical fact that does not establish present adversity. Production of an allonge in litigation, without more, does not demonstrate that Acopia is currently asserting enforceable rights or maintaining a legal position that Plaintiff seeks to challenge. The relevant question is whether Acopia currently asserts any legal interest or enforcement authority. Acopia's disclaimer of interest answers this question definitively: Acopia does not. Historical participation in a transaction does not create present adversity sufficient to support declaratory relief.

Further, disputes regarding chain of title and standing do not on their own justify including Acopia as a defendant. Disputes regarding chain of title and standing are properly directed to the party currently asserting rights, PNC or Fannie Mae, not to a former participant that has disclaimed interest. Plaintiff's requested declarations are framed against PNC's authority, not Acopia's. The Complaint seeks declarations that PNC lacks enforceable interest and authority. This language does not address Acopia's legal position or current enforcement authority. Acopia is not the party

10

4922-5794-5015, v. 1

asserting rights that Plaintiff seeks to challenge.

Federal courts have broad discretion to decline declaratory relief when the complaint fails to meet the pleading standards or when adjudication is impractical. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n*, 942 F.3d 1215 (11th Cir. 2019) (declaratory relief is nonobligatory and subject to considerations of practicality and judicial administration, and where there has been a failure to allege actionable conduct or a present controversy dismissal is justified). As such, summary judgement should be entered in favor of Acopia, a non-interest entity, and against Plaintiff on Count I for declaratory relief of the Complaint as plead against Acopia in that there is no genuine dispute of material fact and the Acopia is entitled to judgment as a matter of law on and against Count I for declaratory relief of the Complaint.

### iii. Count II for Quiet Title Fails Against Acopia Because Plaintiff Does Not Plausibly Allege Acopia Currently Asserts Any Adverse Interest In The Property

Under Florida law, a quiet title action may be brought where "a person or corporation not the rightful owner of land has any conveyance or other evidence of title thereto, or asserts any claim . . . which may cast a cloud on the title of the real owner." Fla. Stat. §65.061(2); *Wane v. Loan Corp.*, 552 F. App'x 908, 913 (11th Cir. 2014). A quiet title action is a lawsuit brought to clear a party's title to real property, ultimately eliminating any other claims to title. In order to state a claim to quiet title under Florida law, Plaintiffs must allege: (1) they have title to the property; (2) there is a cloud on their title; and (3) the cloud, which is Defendant's claim—is invalid. *Stark v. Frayer*, 67 So.2d 237, 239 (Fla. 1953)(Florida Supreme Court has clarified "that in a suit to quiet title against an alleged cloud the complaint must contain sufficient allegations to show a cause of action. Such a complaint must not only show title in the plaintiff to the lands in controversy, but also that a cloud exists, before relief can be given against it. Not only must the

11

matter which constitutes the alleged cloud be shown, but facts must be alleged which give the claim apparent validity as well as those which show its invalidity.").

Plaintiff concedes in ¶59 of the Complaint that Acopia has no interest in either the Mortgage or Note. A quiet title action under Florida law requires that the plaintiff establish the existence of an adverse claim or cloud on title created by the defendant. The statutory framework governing quiet title actions in Florida is set forth in Fla. Stat. §65.061, which establishes that such actions are designed to remove clouds on title or to quiet adverse claims. Critically, the defendant in a quiet title action must be asserting or maintaining some present interest in or claim to the property that clouds the plaintiff's title. Without an adverse claim by the defendant, there is no justiciable controversy for the court to resolve, and the defendant cannot be a proper party to the action. *Lane v. Mortg. Elec. Registration Sys.,* 2013 U.S. Dist. LEXIS 195656 (M.D. Fla. 2013) (Judge Moody dismissed a quiet title action under Fla. Stat. §65.061 because the defendant did not assert any adverse claim to the property, because the statute requires the defendant to assert a claim of title or maintain a conveyance that casts a cloud on the plaintiff's title, and that if the defendant does not assert a claim of title, as in the case of a mortgagee who holds only a lien and not title under Florida law, there is no basis for a quiet title action).[14]

This requirement of an adverse claim is not merely procedural; it is fundamental to the

---

[14] *Gokhberg v. Cap. One, N.A.,* 2026 U.S. Dist. LEXIS 70109, *33-34 (E.D.N.Y. March 31, 2026) (the court dismissed a quiet title action where the defendant had assigned its mortgage interest to a third party and disclaimed any current interest in the property, holding that there was no adverse claim to adjudicate, and the action must be brought against the current holder of any alleged interest. This case, and the cases cited therein, underscores that a defendant must have a present interest in the property to maintain a quiet title action); *Gokhvat Holdings LLC v. U.S. Bank Nat'l Ass'n*, No. 23-300, 2024 U.S. App. LEXIS 3834, 2024 WL 677078, at *1 (2d Cir. 2024) (dismissing quiet title appeal as moot where defendant "no longer ha[d] any interest in the property or the mortgage" and plaintiff's "complaint thus [sought] the cancellation of an interest that no longer exist[ed]"); *In re Stephens*, No. 21-42857, 2024 Bankr. LEXIS 22, 2024 WL 74897, at *5 (Bankr. E.D.N.Y. Jan. 5, 2024) (dismissing quiet title claim because "Plaintiff does not allege the [assignor] Defendants have a claim or interest in the Residence that is adverse to the Plaintiff" where defendants "assigned any interest they had in the Residence to the [assignee] Defendants"). Where a former mortgagee no longer holds an interest in the mortgage or the property, "[a]ny action to quiet title with respect to the mortgage must now be brought against the current holder of any alleged interest." *Gokhvat Holdings*, 2024 U.S. App. LEXIS 3834, 2024 WL 677078, at *2.

nature of a quiet title action. A defendant who disclaims any interest in the property cannot simultaneously be said to assert an adverse claim to that same property. When a party explicitly disavows any interest in real property, that party ceases to be an adverse claimant and becomes, at most, a stranger to the title dispute.

Acopia has filed a disclaimer of interest in the Note and Mortgage. This disclaimer is dispositive as to whether Acopia currently asserts any adverse interest in the Property. By disclaiming its interest, Acopia has explicitly renounced any claim to the property and has removed itself from the category of adverse claimants. The disclaimer operates as a legal disavowal of any present interest that could cloud Plaintiff's title.

Acopia's disclaimer need not be recorded to be effective as between the parties and to eliminate the disclaiming party's adverse claim. The recording of a disclaimer is not necessary to render it effective between the parties or to eliminate the disclaiming party's adverse claim. Florida law recognizes that recording requirements primarily serve to provide notice to third parties and establish priority among competing interests, rather than to determine whether a party has abandoned its claim. In *Fuller v. Mortg. Elec. Registration Sys.*, 888 F. Supp. 2d 1257 (M.D. Fla. 2012), Judge Schlesinger explained that the recording statutes are intended to protect subsequent bona fide purchasers or creditors, not to affect the validity of an instrument as between the immediate parties  Furthermore, Fla. Stat. §695.01 confirms that unrecorded interests are valid as between the parties, even if they are not enforceable against third parties without notice. The disclaimer, whether recorded or not, represents Acopia's present legal position: it asserts no interest in the Property. This present position is what matters for purposes of determining whether an adverse claim exists.

As such, the mere fact that Acopia's disclaimer is not recorded in the county records does

13

not resurrect an adverse claim that Acopia has explicitly disclaimed. Recording requirements serve to provide notice to third parties and to establish priority among competing interests. They do not determine whether a party has abandoned its claim. Acopia's disclaimer, as a matter of law, eliminates any basis for finding that Acopia currently asserts an adverse interest in the Property.

Further, just because Acopia was the loan originator and produced an allonge during litigation does not make Acopia a proper defendant. Neither of these facts establishes that Acopia currently asserts an adverse interest in the Property. The fact that Acopia originated the loan is a historical matter. Origination occurred at a point in time in the past and does not, by itself, create a present adverse claim. Many parties may have had interests in a mortgage loan at various points in time, originators, servicers, assignees, and investors, but the question in a quiet title action is whether the defendant currently asserts an adverse claim. Acopia's role as originator is relevant to the chain of title, but it does not establish that Acopia currently claims any interest in the Property.[15] These cases and reflects that mere historical involvement, such as loan origination, does not establish a current adverse claim.

Similarly, Acopia's production of an allonge during litigation does not constitute an assertion of a present adverse claim. The production of documents in litigation is a response to discovery obligations or to factual disputes about the loan's history. It does not represent an assertion that Acopia claims an interest in the Property. Indeed, the production of documents can

---

[15] *See, Stephenson v. Stephenson*, 249 F.2d 203 (7th Cir. 1957) (Emphasizing that a quiet title action cannot be maintained unless the defendant asserts a claim adverse to the plaintiff's title at the time the complaint is filed, finding no evidence that the defendants had made any claim adverse to the plaintiff's rights in the property, either directly or indirectly, and concluded that the absence of such a claim rendered the quiet title action unsustainable); *Koehler v. United States, IRS*, 153 F.3d 263 (5th Cir. 1998) (the purpose of a quiet title action is to resolve disputes over ownership where the defendant asserts an interest adverse to the plaintiff, and that the defendant must have an adverse interest at the time the lawsuit is initiated, again reflecting that past involvement, such as originating a loan, does not constitute a present adverse claim); *In re Independence Realty & Invs.*, 2026 Bankr. LEXIS 251 (Bankr. W.D. Tenn. Jan. 27, 2026) (dismissed a quiet title action against a defendant who was merely associated with an entity involved in the property but did not personally claim any interest to be a proper defendant in a quiet title action, because a defendant must claim ownership, a lien, right of possession, or assert a legal or equitable interest in the property).

4922-5794-5015, v. 1

be entirely consistent with a party's position that it has no present interest in the property. Acopia may have produced the allonge to establish facts about the loan's history or to clarify the chain of title, not to assert a claim to the Property.

Plaintiff's Complaint appears to conflate the existence of historical involvement with the existence of a present adverse claim. These are distinct concepts. A party may have been involved in a transaction without currently asserting an interest in the subject matter of that transaction. Acopia's production of documents during litigation does not negate its disclaimer of interest and does not establish that Acopia currently asserts an adverse claim to the Property.

Plaintiff alleges defects in endorsements and assignments and clouds on title. To the extent these allegations relate to defects in the chain of title or to questions about who currently owns the mortgage, they concern the interests and assertions of the current servicer and owner, entities such as PNC and Fannie Mae, not Acopia's position.

Acopia's disclaimer of interest means that any cloud on title created by defects in endorsements or assignments cannot be attributed to Acopia. If there is a defect in an endorsement or assignment, that defect affects the chain of title and the interests of those who currently claim to own or service the mortgage. Acopia, having disclaimed its interest, is not asserting any claim based on such defects. The cloud on title, if it exists, is created by the recorded instruments and the current assertions of the servicer and owner, not by Acopia's position.

Plaintiff's allegations regarding defects in endorsements and assignments are properly directed at the entities that currently assert interests in the mortgage and the Property, namely, the current servicer and owner. These entities are the ones whose recorded instruments and current assertions create any cloud on title. Acopia, by disclaiming its interest, has removed itself from this dispute. The alleged defects do not create an adverse claim by Acopia; they create questions

15

about the interests of other parties. *See*, *Altier v. Fannie Mae*, 2013 U.S. Dist. LEXIS 172214 (N.D. Fla. 2013) (Judge Jones found that under Florida law, defects in the assignment of a mortgage or note do not affect the obligations of the mortgagor or create a cloud on title unless they directly impact the rights of the current holder or servicer, and held that even if there were deficiencies in the assignment of a mortgage, such deficiencies would not void the obligations under the note and mortgage or create a cloud on title, and that challenges to the assignment must be directed at the entities currently asserting interests in the mortgage, not at prior assignors or parties no longer involved). As such, any alleged defects in endorsements or assignments should be directed at current entities like PNC or Fannie Mae, not Acopia, which has disclaimed its interest.

A party who has assigned away its interest in a mortgage lacks standing to be sued in connection with that mortgage. As such, summary judgement should be entered in favor of Acopia, a non-interest entity, and against Plaintiff on Count II for quiet title of the Complaint as plead against Acopia in that there is no genuine dispute of material fact and the Acopia is entitled to judgment as a matter of law on and against Count II for quiet title of the Complaint.

### iv.    Count III for RESPA Violations as Against Acopia

#### a.    Failure to allege actual damages

Plaintiff has acknowledged in ¶16 of the Complaint, that he has been current and never delinquent on the loan, and there are no allegations that the Mortgage has been foreclosed upon, and that any payments have ever not been creditor or misapplied by Acopia, or any subsequent servicer. Plaintiff's conclusory claims of "actual damages" in ¶65 of the Complaint are therefore insufficient. Federal court cases consistently support the proposition that conclusory claims of "actual damages" under RESPA are insufficient without a demonstration of tangible harm caused by the alleged violation. Courts have adjudicated against RESPA claims where plaintiffs fail to

16

4922-5794-5015, v. 1

plead specific facts showing how the alleged violation caused actual damages, particularly in cases where plaintiffs acknowledge being current on their loans, have no allegations of foreclosure, and do not claim misapplied payments.[16] As such, summary judgement should be entered in favor of Acopia and against Plaintiff on Count III for Statutory RESPA violations of the Complaint as plead against Acopia in that there is no genuine dispute of material fact and the Acopia is entitled to judgment as a matter of law on and against Count III for Statutory RESPA violations of the Complaint.

**b.**  **Acopia's Servicing Notice to Plaintiff Complied With RESPA's Statutory Notice Requirement**

Plaintiff has acknowledged in ¶¶17, 34 & 63 of the Complaint, that Acopia sent its Serving Transfer Notice to Plaintiff on Dec 17, 2024, which actually is 15 days prior to Jan 1, 2025, and not 14 days as miscalculated and alleged by Plaintiff, therefore making Acopia's notice, as plead in the Complaint, compliant with 12 U.S.C. §2605(b)(1). Notwithstanding Plaintiff's vague allegations ("on or about" and "upon information and belief") that he may or may not have received this notice from Acopia, compliance with RESPA's servicing notice requirement is measured by the date it was sent by the servicer, not by the date it was received by the borrower. 12 U.S.C. §2605(b)(1) explicitly requires that the servicer notify the borrower in writing of any assignment,

---

[16] *Law v. Ocwen Loan Servicing, L.L.C.,* 587 Fed. Appx. 790 (5th Cir. 2014) (where plaintiff alleged that the servicer failed to provide notice of a loan transfer as required under RESPA, the Fifth Circuit dismissed the claim because the plaintiff failed to allege facts demonstrating that the alleged failure caused actual damages in that he sent payments to the wrong servicer or that foreclosure occurred as a result of the alleged violation, and emphasized that "actual damages to the borrower as a result of the failure" must be shown to recover under RESPA); *Daniel v. Ocwen Loan Servicing LLC*, 2019 U.S. Dist. LEXIS 109581 (N,D. Tex. 2019) (court dismissed plaintiffs' RESPA claim because their allegations of damages were conclusory and failed to provide a reasonable basis to infer that the alleged violation caused harm, in that plaintiffs admitted there had been no foreclosure and acknowledged that monetary damages could not yet be ascertained, and found that because actual damages must result from the servicer's failure to comply with RESPA, plaintiffs' conclusory allegations were insufficient); *Udeogu v. Intercontinental Cap.,* 2024 U.S. Dist. LEXIS 112901 (E.D.N.Y. 2024); *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505 (8th Cir. 2012); *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050 (7th Cir. 2018); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016); *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713 (8th Cir. 2018).

4922-5794-5015, v. 1

sale, or transfer of servicing at least 15 days before the effective date of the transfer. The statutory language does not impose a requirement that the borrower receive the notice within this timeframe, only that the notice be sent. Further, 12 C.F.R. §1024.33(b)(3)(i), is the regulation which mirrors this statutory requirement, stating that the transferor servicer must provide notice not less than 15 days before the effective date of the transfer, and clarifies that the timing obligation is on the servicer to send the notice, not on the borrower to receive it.[17] As such, summary judgement should be entered in favor of Acopia and against Plaintiff on Count III for Statutory RESPA violations of the Complaint as plead against Acopia in that there is no genuine dispute of material fact and the Acopia is entitled to judgment as a matter of law on and against Count III for Statutory RESPA violations of the Complaint.

**c.       Statutory Damages Under RESPA Require a Pleading of Pattern or Practice**

Plaintiff alleges only two separate, but different, RESPA violations by Acopia in Count III of the Complaint. However in ¶65 within Count III of the Complaint, Plaintiff also seeks statutory damages under 12 U.S.C. §2605(f), which requires a pleading of a pattern or practice of noncompliance. Pleading two separate, isolated, instances by a servicer against a singular borrower, is insufficient to plead statutory damages under 12 U.S.C. §2605.[18] As such, summary

---

[17] *Martin v. Citimortgage*, 2010 U.S. Dist. LEXIS 88447 (N.D. Ga. 2010) (under 12 U.S.C. §2605(b)(1) the servicer must send notice at least 15 days before the effective transfer date reflecting that the statutory obligation is tied to the timing of the notice being sent); *Catahan v. Wilmington Fin., Inc.,* 2009 U.S. Dist. LEXIS 149880 (W.D. Wash. 2009) (the servicer's compliance with the statutory requirement was based on the date the notice was sent, not the date it was received by the borrower); *Mikel v. Corrington Mortg. Servs., LLC*, 2019 U.S. Dist. LEXIS 149428 (W.D.Tex. 2019); *Bryant v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 83374 (N.D.Tex. 2016)

[18] *Nunez v. J.P. Morgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 65894 (M.D. Fla. 2017) (Judge Presnell stated that two violations of RESPA are insufficient to establish a "pattern or practice" of noncompliance indicating that a plaintiff must allege violations with respect to other borrowers or demonstrate a standard or routine way of operating to plead statutory damages adequately); *Willner v. Wells Fargo Bank, N.A.*, 2023 U.S. App. LEXIS 168, 2023 WL 106855 (11th Cir. 2023) (a "pattern or practice" under 12 U.S.C. §2605 refers to a standard or routine way of operating, and that one or two violations, standing alone, do not constitute a pattern or practice, and are insufficient to support a claim for statutory damages); *Perron v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852 (7th Cir. 2017) (two examples of similar behavior by a servicer, occurring in different states, separated by years, and without evidence of coordination, are insufficient to establish a "pattern or practice" of noncompliance under 12 U.S.C.

judgement should be entered in favor of Acopia and against Plaintiff on Count III for Statutory RESPA violations of the Complaint as plead against Acopia in that there is no genuine dispute of material fact and the Acopia is entitled to judgment as a matter of law on and against Count III for Statutory RESPA violations of the Complaint.

d.    **Pro Se Plaintiff has dropped his claim for the recovery of Attorney's Fees**

Plaintiff, who is representing himself pro se and is not an attorney, at ¶65 of the Complaint, in connection with Acopia's alleged RESPA violations in Count III of the Complaint, sought recovery of his reasonable attorney's fees, which courts consistently hold pro se litigants cannot recover attorney's fees under statutory or contractual fee-shifting provisions[19].

Plaintiff at page 17 of his filed response to Acopia's original motion to dismiss (D.E. 40) concedes this point and has now dropped his claim for entitlement to attorney's fees under Count III. Acopia asks this Court enter summary judgement in its favor and against Plaintiff as to Plaintiff's attorney's fees request within Count III of the Complaint in that there is no genuine dispute of material fact and the Acopia is entitled to judgment as a matter of law.

---

§2605 emphasizing that statutory damages require evidence of a pattern or practice, which was not demonstrated by the plaintiffs); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430 (E.D.N.Y. 2013)(while there is no specific number of violations required to establish a "pattern or practice," two violations of RESPA are insufficient to support a claim for statutory damages, and a pattern or practice must reflect a standard or routine way of operating); *Gorbaty v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 55284 (E.D.N.Y. 2012)(two alleged violations of 12 U.S.C. §2605 by the servicer were insufficient to establish a "pattern or practice" of noncompliance, in that a "pattern or practice" requires more than isolated incidents and must reflect a standard or institutionalized way of operating); *St.-Fleur v. JPMorgan Chase Bank, N.A.,* 2015 U.S. Dist. LEXIS 188932 (S.D.Fla. 2015)(allegations of two separate failures by the servicer to respond to qualified written requests were insufficient to establish a "pattern or practice" of noncompliance under RESPA since statutory damages require evidence of a standard or institutionalized practice of violations); *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254 (S.D.N.Y. 2017)(two violations of RESPA are insufficient to establish a "pattern or practice" of noncompliance in that a pattern or practice must reflect a standard or routine way of operating, and isolated incidents do not meet this threshold); *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003 (11th Cir. 2016)(one violation of RESPA, standing alone, does not constitute a "pattern or practice.", noting that other courts have held that two violations are insufficient to support a claim for statutory damages under 12 U.S.C. §2605); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016).

[19] *Kay v. Ehrler*, 499 U.S. 432, 437–38 (1991); *Hexamer v. Foreness*, 997 F.2d 93, 94 (5th Cir. 1993); *Rhoads v. FDIC*, 286 F.Supp.2d 532, 543 (D. Md. 2003).

4922-5794-5015, v. 1

## V.    CONCLUSION

WHEREFORE, for the foregoing reasons, Acopia respectfully requests that this Court (ii) enter summary judgement against Plaintiff, and in favor of Acopia on Counts I, II and III as plead against Acopia, including against Plaintiff's request for attorney's fees under Count III, in that there is no genuine dispute of material fact and the Acopia is entitled to judgment as a matter of law on and against the Complaint, and (ii) grant such further relief as this Court deems just and proper.

Respectfully submitted,

> Nason Yeager Gerson Harris & Fumero, P.A.
> *Counsel for Defendant Acopia, LLC*
> 3001 PGA Blvd., Suite 305
> Palm Beach Gardens, FL 33410
> Tel: (561) 982-7114
> *ireich@nasonyeager.com*
> *etorres@nasonyeager.com*
> *llavander@nasonyeager.com*
> *jheredia@nasonyeager.com*
>
> By: */s/ Ivan J. Reich*
>     Ivan J. Reich (Fla. Bar No. 778011)

## CERTIFICATION UNDER PENALTY OF PERJURY THAT ARTIFICIAL INTELLIGENCE WAS USED IN THE PREPARATION OF THIS FILING

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way. Prepared with assistance from Lexis' Protégé AI that through Lexis-Nexis which can and has confirmed that all citations contained herein are verifiable, non-hallucinated, sherardized and stand for the proposition for which they are stated. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil

20

Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

_/s/ Ivan J. Reich_
Ivan J. Reich

## CERTIFICATION OF COMPLIANCE WITH RULE 11

I certify that I have reviewed the Standing Order Requiring Disclosure of the Use of Artificial Intelligence. With regard to this Motion for Summary Judgement, by my signature below I confirm under penalty of perjury that if artificial intelligence was used, every cited authority was personally reviewed by the filer in advance of the filing.

_/s/ Ivan J. Reich_
Ivan J. Reich

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing is being served this 22nd day of June, 2026, upon all parties entitled to receive service through this Court's CM/ECF system, and via email upon Plaintiff at jedgrahammd@gmail.com, and PNC's counsel, Lauren G. Raines, Esq., @ lraines@bradley.com, and Jessica Noelle Faucher, Esq., @ jfaucher@bradley.com.

4922-5794-5015, v. 1

_/s/ Ivan J. Reich_
Ivan J. Reich

Case 5:26-cv-00054-AGM-PRL    Document 60    Filed 06/22/26    Page 22 of 22 PageID 1224

22